# EXHIBIT E

PUBLIC VERSION

# UNITED STATES INTERNATIONAL TRADE COMMISSION
Washington, D.C.

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN COMPUTERS AND COMPUTER PERIPHERAL DEVICES AND COMPONENTS THEREOF AND PRODUCTS CONTAINING THE SAME** | Inv. No. 337-TA-841 |

## INITIAL DETERMINATION ON VIOLATION OF SECTION 337 AND RECOMMENDED DETERMINATION ON REMEDY AND BOND

Administrative Law Judge Theodore R. Essex

(August 2, 2013)

**Appearances:**

*For the Complainant Technology Properties Limited LLC:*

Anthony G. Simon, Esq.; Benjamin R. Askew, Esq.; Michael P. Kella, Esq.; and Stephanie H. To, Esq. of the Simon Law Firm, P.C. of St. Louis, Missouri

*For Respondent Hewlett-Packard Co.:*

Marcia H. Sundeen, Esq.; T. Cy Walker, Esq.; and Aimee N. Soucie, Esq. of Kenyon & Kenyon LLP of Washington, D.C.

Rose Cordero Prey, Esq. and Bradley D. Roush, Esq. of Kenyon & Kenyon LLP of New York, New York

*For Respondent Seiko Epson Corporation:*

Louis S. Mastriani, Esq. and Sarah E. Hamblin, Esq. of Adduci, Mastriani & Schaumberg, LLP of Washington, D.C.

William E. Devitt, P.C.,; Matthew J. Hertko, Esq.; Scott S. Evans, Esq.; Adam M. Kaufmann, Esq. of Kirkland & Ellis LLP of Chicago, Illinois

Edward C. Donovan, Esq. and D. Sean Trainor, Esq. of Kirkland & Ellis LLP of Washington, D.C.

PUBLIC VERSION

*For Respondent Kingston Technology Company, Inc.:*

David M. Hoffman, Esq. of Fish & Richardson, P.C. of Austin, Texas

Christine Yang, Esq. and Victoria Hao, Esq. of Law Offices of S.J. Christine Yang of Fountain Valley, California

*For Respondent HiTi Digital, Inc.:*

Darrin A. Auito, Esq. of Westereman, Hattori, Daniels & Adrian, LLP of Washington, D.C. Jenny W. Chen, Esq. of Chen IP Law Group of Taipei, Taiwan

Vinay V. Joshi of Eastwind Consultants Company Limited of Cleveland, Ohio

*For Respondent Canon Inc.:*

Calvin P. Griffith, Esq., David M. Maiorana, Esq.; David B. Cochran, Esq.; and Tracy A. Stitt, Esq. of Jones Day of Cleveland, Ohio

Ric Macciaroli, Esq. of Jones Day of Washington, D.C.

*For Respondents Newegg Inc. and Rosewill Inc.:*

Kent E. Baldauf, Jr., Esq.; Bryan P. Clark, Esq.; and Ryan J. Miller, Esq. of The Webb Law Firm of Pittsburgh, Pennsylvania

*For Respondent Acer Inc.:*

Eric C. Rusnak, Esq. and Harold Davis, Esq. of K&L Gates LLP of Washington, D.C.

,

**PUBLIC VERSION**

Pursuant to the Notice of Investigation, 77 Fed. Reg. 26041 (May 2, 2012), this is the Initial Determination of the in the matter of *Certain Computers, Computer Peripheral Devices, and Components Thereof, and Products Containing the Same*, United States International Trade Commission Investigation No. 337-TA-841. *See* 19 C.F.R. § 210.42(a).

It is held that no violation of section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, has occurred in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain computers and computer peripheral devices and components thereof and products containing the same that infringe one or more of claims 7, 11, 19, and 21 of U.S. Patent No. 7,162,549; claims 1, 3, 4, 7, 9, 11, 12, and 14 of the U.S. Patent No. 7,295,443; claims 25, 26, 28, and 39 of U.S. Patent No. 7,522,424; claims 17-19 of the U.S. Patent No. 6,976,623; and claims 1-3 of U.S. Patent No. 7,719,847.

It is held that a violation of section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, has occurred in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain computers and computer peripheral devices and components thereof and products containing the same that infringe one or more of claims 1-4 and 9-12 of U.S. Patent No. 6,976,623.

As Dr. Mercer explained, when the SD card is inserted the compatibility between the SD and MMC cards allows the controller to begin communication with the inserted card, performing card initialization (*i.e.*, hand shaking) and data transfer without the need for "mapping." (RX-2888C at Q/A 172; RDX-0484 through RDX-0488.) Therefore, the ALJ finds that a card reader does not need to perform the claimed mapping" to accommodate SD and MMC card types in the same slot. (RX-2888C, Q/A 56-60; RDX-0412.)



Figure 19 (RDX-0412)

The SD and MMC card types are designed to have compatible pin configurations, and they are treated exactly the same in the '443, '424, and '847 Patents. (*See, e.g.*, Figs. 4 and 5 of JX-0003, JX-0004, and JX-0006.) Therefore, the ALJ finds that a card reader does not need to perform the claimed "mapping" to accommodate SD and MMC card types in the same slot. (RX-2888C, Q/A 56-60; RDX-0412.)

The SD Specifications describe the initialization process as follows:

46

[Figure redacted]

The ALJ finds that when a card is inserted into a card reader, the SD Specifications [redacted] (RX-2888C, Q/A 170-76.) As shown in RDX-0487, [redacted] (RX-2888C, Q/A 175; RDX-0487.) However, [redacted] (Id.) After the card type is identified, [redacted] (RX-2888C, Q/A 177-79.) However, as Dr. Mercer explains, [redacted]

████████████████████████████████████████████████████████

██████████████████████████████████████ (Buscaino, Tr. 538:16-539:4.)

The ALJ finds that Mr. Berg explained that distinguishing between an SD and MMC cards does not show evidence of the claimed "mapping" because, the evidence only shows that

████████████████████████████████████████████████████████

(RX-2885C, Q/A 81-92; *see also id.* at Q/A 103-05, 110, 112-13, 119-21 (as to Acer).) Specifically, the ALJ finds that a communication with an MMC card and communication with an SD card occurs across a 1-bit wide data bus. (*Id.* at 87.) The ALJ finds that Mr. Buscaino provided no evidence that any device ever operates using a data bus wider than 1-bit when an SD card is inserted, and Mr. Berg explained that such functionality is optional. (*Id.* at 88, 91-92.) Thus, although the ALJ notes that TPL's arguments regarding mapping were eminently reasonable, the ALJ finds that they have not proven that the "mapping" elements found in all the asserted claims of the '443, '424, and '847 Patents. Accordingly, the ALJ finds that because TPL has failed to prove the presence of all of the elements of the asserted claims, TPL has failed to prove infringement of the asserted claims of the '443, '424, and '847 Patents.

### 2. Respondents' Products Which Support Only One Memory Card Type Do Not Infringe

Respondents contend that under the ALJ's claim construction, the "mapping limitations of the asserted claims of the '443, '424, and '847 Patents require that "at least some of the contact pins must be shared by different memory card types." (RIB at 83 (quoting Order No. 23 at 31).) Respondents argue that certain Respondents have modified products in this investigation or added new products that do not read from or write to MMC memory cards. (RIB at 83.) Thus, the memory card adapters of these new and modified products only support one card type

### 10.   Written Description

Respondents contend that claim 1-3 of the '847 Patents are invalid for lack written description. (RIB at 162-163.) Respondents argue that this claim "refers to two controllers at two different locations within an adapter." (RIB at 163.) Respondents assert that "[t]he second controller is between the signal lines and contact pins." (RIB at 163.) Respondents further assert that "[t]he first controller is provided on one side of the contact pins, away from an interconnection means which is recited as being on another side of the signal lines connecting those signal lines to the contact pins." (RIB at 163.) Respondents conclude that "[t]hus, the two controllers are recited as being in separate locations from each other." (RIB at 163.) Respondents argue that there is no written description of a "dual-controller" system. (RIB at 163.)

The ALJ rejects Respondents' argument. It is based on their strained and unnatural reading of the claims and appears to reprise an argument that the ALJ has repeatedly rejected. (*See* Order No. 40.) In the motion for summary determination of non-infringement ruled upon in Order No. 40, Respondents first floated this argument that the controller must be located between the signal lines and the contact pins. They based it on a strained reading of the claims. The ALJ lays out a little extra reasoning to help prevent this argument from rising from the grave a third time.

Respondents' argument is based on the final element of claim 1 of the '847 Patent, which states:

> Means for mapping power ground and data signals between said lines and said contact pins depending upon the identification of the type of memory card inserted into said port; wherein the means for mapping comprises a controller.

Respondents' underlying "logic" (which is laid out fully in their summary determination motion) is that in Order No. 23, the ALJ construed this element (and the other similar elements in the other '443, 424, and '847 Patents) as a "controller." Respondents then performed what can best be described as a "mad lib" exercise substituting "controller" in for this element. However, where their reasoning went wildly off track is that they limited the element to only the phrase "means for mapping," despite the *Markman* Order's clear explanation that the construction was for the entire element (not just the phrase "means for mapping"). (*See* Order No. 23 at 33-39.) Thus, the element, in their understanding, came to read "[controller for mapping power ground and data signals] between said lines and said contact pins depending upon the identification of the type of memory card inserted into said port; wherein the means for mapping comprises a controller." Based on this substitution, they reasoned that the "controller" must be located between the contact pins and signal lines.

This reading is absurd –the element is not limited to the phrase "means for mapping." As the parties *agreed* at the Markman hearing, the function for the element is not just "mapping," it is "mapping power, ground, and data signals between said lines and said contact pins depending on the type of memory card inserted into said port." (*See* EDIS Doc. No. 486171, Respondents Responsive Markman Br. at 20 (showing both parties proposed functions and claim element for this term).) Thus, this is all functional and not structural language. The language "between said lines and said contact pins" does not describe the physical location of the controller–it is attempting to describe the function of the controller. In other words, the function of the controller is to take a signal at a certain contact pin, *e.g.*, the power signal, and map it to a particular signal line, *e.g.*, line 1, based on the type of card inserted into the controller. While the ALJ freely admits that the claim element was poorly drafted, the ALJ's claim construction, when

correctly followed, reads more naturally since the controller maps the identity of the signal that comes in at the contact pin to a particular signal line. Under this reading the controller connected to the signal lines in the first element of the claim is the controller that does the mapping in the last element of the claim. Thus, the ALJ finds that there is no "dual-controller" requirement of the claims and no written description problem.

### E.  '549 Patent

#### 1.  The AwYong Thesis

The Respondents contend that the asserted claims of the '549 Patent are anticipated and rendered obvious by a thesis authored by Chee-Kong AwYong entitled "An Integrated Control System Design of Portable Computer Storage Peripherals" that states that it was submitted to the Department of Electrical and Control Engineering at the National Chiao-Tung University in Taiwan (the "AwYong Thesis"). (RX-0456). Respondents claim that the AwYong Thesis was publically available as of December 22, 2000. (RIB at 185.) In support of this contention, Respondents submit the testimony of Dr. Robert Ellett, a librarian Respondents hired to testify. Respondents contend that "Dr. Ellett explained the MARC (Machine Readable Cataloging) system and his inspection of the MARC record for the AwYong Thesis[,] which he obtained the National Chiao-Tung University (NCTU) Library in Hsinchu, Taiwan." (RIB at 185.) Respondents further contend that "[Dr. Ellett] testified about the process by which the AwYong Thesis was indexed, cataloged, shelved, and publicly searchable." (RIB at 186.) Respondents argue that "[a]s explained by Dr. Ellett, the thesis was submitted in June 2000 (as indicated on the cover of the thesis); approved by the thesis advisor on June 9, 2000 (as indicated on page 2 of the thesis); and indexed, cataloged, shelved, and publicly accessible as of December 22, 2000 (as indicated on the back cover of the thesis)." (RIB at 186.) Respondents continue that "[a]s Dr.