Anthony G. Simon (*pro hac vice*)
Michael P. Kella (*pro hac vice*)
Benjamin R. Askew (*pro hac vice*)
THE SIMON LAW FIRM, P.C.
800 Market Street, Suite 1700
St. Louis, Missouri 63101
P. 314.241.2929
F. 314.241.2029
asimon@simonlawpc.com
mkella@simonlawpc.com
baskew@simonlawpc.com

Henry C. Bunsow
Denise De Mory
Brian A.E. Smith
BUNSOW DE MORY SMITH & ALLISON LLP
351 California Street, Suite 200
San Francisco, CA  94104
T. (415) 426-4747
F. (415) 426-4744
hbunsow@bdiplaw.com
ddemory@bdiplaw.com
bsmith@bdiplaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| TECHNOLOGY PROPERTIES LIMITED LLC and MCM Portfolio LLC, | ) ) ) |
| Plaintiffs, | ) Case Number: C 14-03640-CW ) |
| vs. | ) Hon. Judge Claudia Wilken ) |
| CANON, INC., et al., | ) ) |
| Defendant(s). | ) ) |
| TECHNOLOGY PROPERTIES LIMITED LLC and MCM Portfolio LLC, | ) ) ) |
| Plaintiffs, | ) Case Number: C 14-03641-CW ) |
| vs. | ) Hon. Judge Claudia Wilken ) |

1

2  FALCON COMPUTER SYSTEMS, INC.,  )
    )
3       Defendant(s).  )
    )
4  TECHNOLOGY PROPERTIES LIMITED  )
    LLC and MCM Portfolio LLC,  )
5    )  Case Number: C 14-03643-CW
        Plaintiffs,  )
6    )  Hon. Judge Claudia Wilken
7       vs.  )
    )
8  HEWLETT-PACKARD COMPANY,  )
    )
9       Defendant(s).  )
    )
10  TECHNOLOGY PROPERTIES LIMITED  )
    LLC and MCM Portfolio LLC,  )
11    )  Case Number: C 14-03645-CW
12        Plaintiffs,  )
    )  Hon. Judge Claudia Wilken
13       vs.  )
    )
14  NEWEGG INC., et al.,  )
    )
15       Defendant(s).  )
16    )
    TECHNOLOGY PROPERTIES LIMITED  )
17  LLC and MCM Portfolio LLC,  )
    )  Case Number: C 14-03646-CW
18        Plaintiffs,  )
    )  Hon. Judge Claudia Wilken
19       vs.  )
20    )
    SEIKO EPSON CORPORATION, et al.,  )
21    )
    )
22       Defendant(s).  )
    )
23

24  **PLAINTIFFS' REPLY BRIEF ON CLAIM CONSTRUCTION**

25

26

27

28

1

2

## <u>TABLE OF CONTENTS</u>

3

1.   "mapping"
     ('443 pat., cls. 1, 9) ......................................................................................... 1

2.   The "means for mapping" phrases
     ('424 pat., cls. 25, 26, 28, 29; '847 pat., cl. 1) ................................................ 6

3.   "means for [identifying/determining] the type of memory card inserted into said port"
     ('424 pat., cls. 25 and 28; '847 pat., cl. 2) ................................................... 10

4.   contact pins "are integrated within [the] molded plastic"
     ('443 pat., cls. 1, 9) ....................................................................................... 12

5.   "interconnection means"
     ('424 pat., cls. 25 and 28; '847 pat., cl. 1) ................................................... 13

6.   "memory media card"
     ('443 pat., cls. 1, 9; '424 pat., cls. 25, 28; '847 pat., cl. 1) .......................... 14

7.   "type of memory [media] card"
     ('424 pat., cls. 25, 28; '443 pat., cls. 1, 9; '847 pat., cl. 1) .......................... 14

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) ................................................................. 7

*Atmel Corp. v. Info. Storage Devices, Inc.*,
   198 F.3d 1374 (Fed. Cir. 1999 .......................................................... 8, 10

*Cohesive Tech., Inc. v. Waters Corp.*,
   543 F.3d 1351 (Fed. Cir. 2008) ................................................................. 1

*Eon Corp. IP Holdings LLC v. AT&T Mobility LLC*,
   Appeal No. 2014-1392 (Fed. Cir. May 6, 2015) ...................................... 8

*Function Media, L.L.C. v. Google, Inc.*,
   708 F.3d 1310 (Fed. Cir. 2013) ................................................................. 9

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
   755 F.3d 1367 (Fed. Cir.) ............................................................. 2, 3, 6, 14

*Kara Tech. Inc. v. Stamps.com Inc.*,
   582 F.3d 1341 (Fed. Cir. 2009) ........................................................... 9, 11

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) ................................................................. 12

*Omega Eng'g, Inc, v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) ............................................................... 13

*Telcordia Tech., Inc. v. Cisco Sys., Inc.*,
   612 F.3d 1365 (Fed. Cir. 2010) ............................................................... 10

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
   442 F.3d 1322 (Fed. Cir. 2006) ................................................................. 1

*X2Y Attenuators, LLC v. Int'l Trade Comm'n*,
   757 F.3d 1358 (Fed. Cir. 2014) ................................................................. 6

**Statutes**

35 U.S.C. § 112 .................................................................................. 6, 7, 10

35 U.S.C. § 132 ............................................................................................ 5

**Other Authorities**

Manual of Patent Examining Procedure, Ch. 2100, § 2163 ......................... 5

1

## TABLE OF EXHIBITS

2

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| U | May 21, 2015 Declaration of Dale E. Buscaino |
| V | Initial Determation on Violatoin of Section 337, USITC, Inv. No. 337-TA-841 (Aug. 2, 2013) |
| W | '424 File History, Notice of Allowance |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DISPUTED TERMS [1]

**1.**      **"mapping"** ('443 pat., cls. 1, 9)

Defendants' entire brief on "mapping" is merely attorney argument that seeks to have the Court improperly prejudge the ultimate infringement analysis by adopting—according to Defendants—a "case dispositive" construction to exclude the accused products that support SD and MMC from meeting the "mapping" elements.[2] *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir. 2006).

Instead of construing "mapping," Defendants ask the Court to rule that certain aspects of the accused products (namely, SD and MMC card support) are not within the scope of the claims. *Cohesive Tech., Inc. v. Waters Corp.*, 543 F.3d 1351, 1367 (Fed. Cir. 2008) ("[I]t is not appropriate for the court to construe a claim solely to exclude the accused device.") (internal citations and quotations omitted).  The task at hand is to construe "mapping"—a term never defined at the ITC.  The task is not to determine whether the accused products infringe.  After the Court provides a construction for "mapping," infringement and validity can be assessed.  To

_____

[1] After Plaintiffs filed the opening brief, Defendants abandoned multiple constructions and contentions.  __*First*__**,** Defendants no longer seek construction of the following phrase in claims 25 and 28 of the '424 patent and claim 1 of the '847 patent: contact pins "mounted on said surface at locations adapted to interface with the electrical contacts of a corresponding one of a plurality of different types of memory media cards when inserted into said port."  __*Second*__**,** Defendants abandoned their contention that "said controller" in claim 2 of the '847 patent is indefinite. __*Third*__**,** Defendants abandoned their contention that "means for mapping" in claims 25 and 28 of the '424 patent and claim 1 of the '847 patent is indefinite "because it does not provide reasonable certainty as to whether 'between' modifies the signals or the structure of the means." __*Finally*__**,** Defendants have abandoned their construction for "controller integrated into the multi-memory media adapter" of claim 9 of the '443 patent.

[2] Plaintiffs disagree that Defendants' proposed construction is case dispositive.  *See* Defs.' Br. at 11.  Plaintiffs oppose Defendants' construction because 1) it is improper and 2) Plaintiffs suspect Defendants will argue that their "varying" limitation or "fixed assignments" exclusion requires physically changing the connection between contact pins and signal lines.  Such an interpretation was soundly rejected at the ITC, where the ALJ found that Defendants conceded that mapping was a logical function and does not require some physical connection to be changed.  Order No. 23 at 26, 29, USITC, Inv. No. 337-TA-841, Ex. N to Pltfs.' Op. Br ("ITC CC Order").  To the extent that Defendants interpret their construction to require physically changing connections, Defendants should be required to so state at the hearing.

construe "mapping," the Court must accord "mapping" its plain and ordinary meaning to one of skill in the art when read in the context of the intrinsic evidence. *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir.), *cert. denied*, 135 S. Ct. 719 (2014).  This meaning is "logically assigning."  Dkt. No. 282 at 5-6 ("Pltfs.' Op. Br.").[3]

**The claims.**  Defendants first argue that the claim language supports Defendants' "varying" limitation.  Dkt. No. 299 at 5-6 ("Defs.' Br.").  According to Defendants, because each asserted claim requires mapping to occur depending upon, or based on, the identified type of memory media card, the assignments of contact pins to signal lines must be "varied."  *Id.* Otherwise, Defendants assert, the type of card inserted would be of no consequence.  *Id.*  This is false.  The asserted claims already set forth that "mapping" occurs depending upon, or based on, the identified type of memory media card.  Pltfs.' Op. Br. at 7-8.

As such, Plaintiffs agree that "mapping" (1) only occurs after a card is inserted, (2) only occurs based on the identified type of card, and (3) that *logical* assignments of contact pins to signal lines cannot be fixed in advanced.  *See id.*  To the extent clarification is needed, the Court may do so without adding Defendants' "varying the assignments of" limitation, which only serves to confuse.  Assignment of contact pins to signal lines does not occur until a memory media card is inserted into the port.  Therefore, *before* the card is inserted, there is no "assigning" (there would be no reason to).  *After* the card is inserted, "assigning" or "mapping" is then performed based on the identified card type.  But, there are no pre-existing assignments to "vary."  It makes no sense to construe "mapping" to require "varying of" something that does not exist.

**The specification.**  Defendants next argue that the specification provides no guidance as to the proper construction of "mapping."  Defs.' Br. at 6-7.  Defendants, however, largely agree

---

[3] All citations to the record are to the docket in *Technology Properties Limited LLC, et al., v. Canon, Inc., et al.*, No. 14-03640-CW (N.D. Cal.).  All citations to page numbers are to printed page numbers.

with Plaintiffs as to how the invention disclosed in the specification works. Defendants admit

that "the adapter disclosed and described in the specification determined . . . what type of card

was inserted, and then signals were sent along the prewired connection between that set of . . .

contact pins and the set of connector pins according to the [pin mapping] tables in Figures 4 and

5." *Id.* at 7. Defendants' explanation comports with Plaintiffs' explanation of the technology,

including "mapping." *See* Pltfs.' Op. Br. at 1-2, 5-6. And, Defendants do not—and cannot—

credibly dispute that the specifications' disclosure of logically assigning signals to signal lines

depending on identified card type constitutes "mapping" as disclosed in the specification.

**The prosecution history.** Because one of ordinary skill in the art would understand

"mapping" to mean "logically assigning" in the context of the claims and specification,

Defendants seek to manufacture support elsewhere for their self-serving construction.

Defendants argue that a claim amendment discussion of Hung-Ju during prosecution of the '443

patent somehow compels a construction of "mapping" that requires a different type of "mapping"

than what is disclosed in the specification. *See* Defs.' Br. at 7-8.

The legal basis for Defendants' confusing prosecution history argument is unclear and not

stated. Defendants clearly do not argue lexicography or disclaimer. The law is straightforward.

Claim terms are generally to be given their plain and ordinary meaning to one of skill in the art

when read in the context of the intrinsic evidence. *Hill-Rom Servs., Inc.*, 755 F.3d at 1371. There

are only two exceptions: 1) when a patentee sets out a definition and acts as his own

lexicographer, or 2) disavows the full scope of the claim term in the specification or during

prosecution. *Id.* The standards for finding lexicography and disavowal are exacting. *Id.*

Defendants do not, and cannot, dispute that the plain and ordinary meaning of "mapping"

to one of skill in the art, when read in context of the specification, is "logically assigning." Pltfs.'

Op. Br. at 2-7. Defendants do not, and cannot, dispute that extrinsic evidence confirms this

meaning.  *Id.* at 6 n.9.  Defendants do not, and cannot, argue that the applicant acted as a set out a definition of "mapping" to require "varying the assignments."  Defendants do not, and cannot, argue that the applicant disavowed the full scope of "mapping" to exclude the "use of additional signal lines in some circumstances but not others, based upon fixed assignments."

Instead, Defendants argue that one of ordinary skill in the art would have somehow concluded, based on the applicant's claim amendment and discussion of Hung-Ju, that "mapping" as claimed is something different than the "mapping" described in the specification.  Defs.' Br. at 8-10.  The specification's discussion of "mapping" is clear.  Defendants' prosecution history argument is confusing at best.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (the prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes.")

Defendants do not dispute that "mapping," as used in the specification, is "logically assigning."  There is no demonstration in the prosecution history that the applicant understood "mapping" differently or limited "mapping" to Defendants' proposed definition.  The applicant merely clarified that, unlike Hung-Ju, the '443 patent's claimed invention was directed to, *inter alia*, "a controller chip to map [logically assign] at least a subset of the at least one set of contact pins to a set of signal lines or power lines, based on an identified type of memory media card."  *See* '443 File History, Resp. to 11/2/2006 Office Action at 2, 2-6, Ex. 3 to Defs.' Br.  The applicant never differentiated Hung-Ju on the basis that "mapping" required "varying assignments," or suggested that Hung-Ju did not disclose "mapping" because Hung-Ju used "additional signal lines in some circumstances but not others, based upon fixed assignments."

Nor did the applicant suggest it was "changing course" from the type of "mapping" disclosed in the specification.  *See* Defs.' Br. at 7-8.  To the contrary, the applicant twice expressly indicated that the "mapping" limitation added during prosecution was consistent with

the specification's disclosure of "mapping," including "mapping" as disclosed in Figure 4.

> card. Applicant respectfully disagrees. Rather, Applicant asserts that there is no suggestion or
> teaching in Hung-Ju *of a controller chip to "*__map at least a subset of the at least one set of__
> __contact pins to a set of signal lines or power lines__*" based on an identified type of a memory*
> *media card (Figure 4 of Applicant's disclosure)*, as recited in applicant's  independent claims 1,
> and 12.

'443 File History, Resp. to 11/2/06 Office Action at 2, 2-6, Ex. 3 to Defs.' Br.  (yellow

annotations added); *id.* at 7-8 (referring to "to map" in context of Fig. 4); 5/21/15 Decl. of Dale. E.

Buscaino at ¶¶ 20-21, 13-19 ("5/21/15 Buscaino Decl."), Ex. U.

By explaining that, unlike Hung-Ju, "one set of pins is ***mapped to different signals***

depending on the type of identified memory card," the applicant affirmed the specification's

disclosure of "mapping" as "logically assigning" (i.e., logically assigning one set of pins to

different signals depending on card type).  *Id.* at 7.  Thus, one of ordinary skill in the art would

have understood that the "mapping" limitation added during prosecution referred to the same type

of "mapping" disclosed in the specification (e.g., Fig. 4), where signals are mapped, or logically

assigned, to particular pins based on memory media card type.[4]  Pltfs.' Op. Br. at 6; 5/21/15

Buscaino Decl. at ¶¶ 20-21, 13-19.   Even the ALJ acknowledged that "mapping" is logically

assigning, as disclosed in the specification.  Initial Determination on Violation of Section 337 at

44, USITC, Inv. No. 337-TA-841 (Aug. 2, 2013), Ex. V. ("What does make sense to the ALJ is

making a logical connection between physical points and some other data.  For example, a logical

connection can be made between a fixed electrical path and the identity of the signal that travels

along that path.  This is what is shown in Figures 4 and 5 of the patent.")

---

[4] Defendants emphasize that the "mapping" limitation was added during prosecution.  There is nothing unusual about an applicant adding a limitation already disclosed in the specification to the claims.  In fact, there must be support in the specification to add a term to the claims during prosecution.  35 U.S.C. § 132; MPEP, Ch. 2100, § 2163, *available at* http://www.uspto.gov/web/offices/pac/mpep/s2163.html.  This requirement further confirms that the meaning of "mapping" is the same as in the specification.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

Defendants focus on portions of Hung-Ju that were not even discussed during prosecution and argue that Hung-Ju would "infringe," or anticipate, the asserted claims if Plaintiffs' construction is adopted.  Defs.' Br. at 10.   This is an issue for trial or summary judgment—not claim construction.[5]  *X2Y Attenuators, LLC v. Int'l Trade Comm'n*, 757 F.3d 1358, 1365-66  (Fed. Cir. 2014) ("[I]nvalidity considerations  . . . cannot dictate the [claim construction] process.") (Reyna, J., concurring); *Hill-Rom*, 755 F.3d at 1374 ("Courts should be cautious not to allow claim construction to morph into a mini-trial on validity."); *Phillips*, 415 F.3d at 1327-28.

**2.     The "means for mapping" phrases[6]** ('424 pat., cls. 25, 26, 28, 29; '847 pat., cl. 1)

    **a.     Claim 1 of the '847 patent and claims 26 and 29 of the '424 patent**

The "means for mapping" phrases in '847 patent claim 1 and '424 patent claims 26 and 29 are not governed by 35 U.S.C § 112, ¶ 6.  *See* Pltfs.' Op. Br. at 10-12.  Each expressly claims "a controller" for "mapping," which is sufficient structure for performing the "mapping" function. *Id.*  The presumption that 35 U.S.C § 112, ¶ 6 governs is overcome.  *See id.*   The Court need not import structure.  Thus, Defendants' algorithm argument and indefiniteness contention is moot.[7]

Recognizing that this is fatal to their indefiniteness contention, Defendants argue that "'a controller' defines no structure at all."  Defs.' Br. at 23.  Defendants offer no evidence to support

20
21
22
23
24

[5] Defendants make much of Hung-Ju's discussion of SD and MMC cards in relation to Figure 1 of Hung-Ju.  However, neither the applicant nor the examiner discussed this aspect of Hung-Ju. There is no basis for Defendants to argue that one skilled in the art would conclude the applicant somehow narrowed the scope of "mapping" to exclude "mapping" based on whether the card type is SD or MMC, or to exclude "mapping" where certain signal lines are used in some instances but not others.  Given that the applicant made no statements in relation to SD or MMC cards, Figure 1 of Hung-Ju, "varying assignments," or "use of additional signal lines in some circumstances but not others, based upon fixed assignments," there is no basis to find disclaimer or lexicography.

25
26
27

[6] Defendants argue that the "mapping" function of these claims should be construed as "varying the assignment of."  There is no basis in the intrinsic evidence, or elsewhere, for such construction.  *See supra* section 1.  Unlike the '424 patent, Defendants do not propose a qualifier that "[t]he mere use of additional signal lines in some circumstances but not others, based upon fixed assignments, does not constitute mapping" for these claims.  *See* Defs.' Br. at 4, 12-13.

28

[7] To the extent this term is governed by 35 U.S.C. § 112, ¶ 6 for '443 patent claims 26 and 29 or '847 patent claim 1, the structure is "a controller," for the reasons explained below.

1   this assertion.  Defendants also ignore Mr. Buscaino's testimony and the definitions for

2   "controller," which confirm that "a controller" is sufficient structure.  Pltfs.' Op. Br. at 11 n.19,

3   12-13; 8/2/2012 Decl. of Dale E. Buscaino at ¶¶ 19-20, Ex.O to Pltfs.' Op. Br ("8/2/12 Buscaino

4   Decl.).

5

6          Defendants' argument is especially flawed in light of their position on claims 1 and 9 of

7   the '443 patent.  Defendants (1) do not dispute that "a controller" is sufficient structure to "map"

8   for these claims, (2) do not contend these claims are subject to 35 U.S.C. § 112, ¶ 6, (3) do not

9   ask the Court to import structure into these claims, and (4) do not argue that the specification

10  needs to disclose an algorithm for these claims.

11         Had Defendants truly believed that "a controller" was insufficient structure to perform the

12  "mapping" function in claims 1 and 9 of the '443 patent, Defendants would have argued that

13  claims 1 and 9 invoked 35 U.S.C § 112, ¶ 6.  *See, e.g., Apple Inc. v. Motorola, Inc.,* 757 F.3d

14  1286, 1297 (Fed. Cir. 2014) ("When a claim limitation lacks the term 'means,' it creates a

15  rebuttable presumption that Section 112, ¶ 6 does not apply.  This presumption may be overcome

16  if the claim . . . merely recites a function without reciting *sufficient structure* for performing that

17  function.")   Tellingly, Defendants did not—and cannot—argue that "a controller" is insufficient

18  structure for performing the "mapping" function of claims 1 and 9 of the '443 patent.  If "a

19  controller" is not insufficient to "map" in the '443 patent claims, it cannot be insufficient to

20  perform the "mapping" for claim 1 of the '847 patent and claims 26 and 29 of the '424 patent.

21

22

23         **b.     Claims 25 and 28 of the '424 patent**

24         Defendants improperly seize on the *Aristocrat* line of cases to manufacture argument that

25  "a controller" is a general purpose computer or microprocessor, thereby requiring disclosure of an

26  algorithm.  Defendants ignore the dictionary definitions confirming that "a controller" is not a

27  general purpose computer or microprocessor.  Pltfs.' Op. Br. at 11 n.19, 20; *see also Atmel Corp.*

28

1   *v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999) (holding that dictionary

2   definitions may be used to understand the structure disclosed by the specification).  The controller

3   need not even include a computer or microprocessor.  8/2/12 Buscaino Decl. at ¶ 20.[8]

4       The dependent claims also confirm that "a controller" need not include a computer or

5   microprocessor.  Claims 27 and 30 of the '424 patent each require that the "means for mapping is

6   selected from a group consisting of simple wires, flat cables, printed circuit board

7   interconnections, or wiring traces."  These components are not computers or microprocessors.  If

8   the "means for mapping," which Defendants agree is a controller, is constructed from these

9   components, then it is nonsense to argue that the "controller" is, or requires, a general purpose

10  computer or microprocessor.  Defendants' *Aristocrat* cases are inapplicable here.[9]

11
12              i.      **Defendants' have no evidence that "a controller" is a general purpose**
13                      **computer or microprocessor.**

14      Defendants' support that "a controller" is a general purpose computer or microprocessor is

15  limited to their expert declaration that cites discussion of "an alternative embodiment . . . with the

16  controller and an associated memory device (e.g., ROM) embedded into the molded plastic."  '424

17  pat. at 7:56-59; Defs.' Br. at 22, 24; Decl. of Dr. Gary S. Tjaden at ¶ 20, Ex. 18 to Defs. Br

18  ("Jaiden Decl.").  From this, Defendants' expert concludes that "the disclosed controller or

19

20  ─────────────────────

21      [8] Defendants attempt to find fault with Mr. Buscaino's testimony where none exists.
    Defendants suggest that Mr. Buscaino improperly failed to identify or address the '443 patent file
22  history or Hung-Ju when opining on the "mapping" issue.  Defs.' Br. at 24.  The '443 patent file
    history and Hung-Ju have no bearing on the "mapping" dispute.  Moreover, the task at hand is to
23  determine whether "a controller" is a general purpose computer or microprocessor.  Neither the
    file history nor Hung-Ju have anything to do with this determination.   Mr. Buscaino confirmed
24  the '443 patent file history and Hung-Ju do not alter his opinions. 5/21/15 Buscaino Decl. at ¶¶ 6-
    21.  Defendants also suggest that Mr. Buscaino's validity opinion from another ITC investigation
25  supports their position.  Defs.' Br. 24-25.  Defendants' argument is confusing.  Nowhere did Mr.
    Buscaino state or suggest that the "controller" is a general purpose computer or microprocessor.
26      [9] *Eon Corp. IP Holdings LLC v. AT&T Mobility LLC*, Appeal No. 2014-1392 (Fed. Cir. May
27  6, 2015), filed in Defendants' Notice of Supplemental Authority, is also inapplicable.  Unlike
    here, the functions performed in *Eon* by the "means" were all performed by computer software
28  and the only structure disclosed was a microprocessor.  *See* Dkt. No. 306-1 at 7-8.

**PLAINTIFFS' REPLY BRIEF ON CLAIM**                    8               C 14-03640-CW, C 14-03641-CW,
**CONSTRUCTION**                                                        C 14-03643-CW, C 14-03645-CW,
                                                                        C 14-03646-CW

1
2
3
4
5
6
7
8
9
10
11
12

controller chip is a computer-based or microprocessor-based controller or controller chip." *Id.* This conclusion is rife with problems. First, ROM is discussed in relation to "an alternative embodiment," which cannot be limiting. *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009). Second, in this alternative embodiment, ROM is not *part* of the controller. Third, there is no suggestion that ROM, or any hypothesized general purpose computer or microprocessor, performs "mapping." Defendants' expert does not state that "a controller" is itself a general purpose computer or microprocessor. Instead, he carefully states that the controller is "computer-*based* or microprocessor-*based*." That a controller may be *based* on a computer or microprocessor does not mean the controller is somehow relegated to a general purpose computer or microprocessor.

<strong>ii.      If an algorithm is required, sufficient algorithm is disclosed.</strong>

13
14
15
16
17
18
19
20

Defendants ague that that the specification does not disclose an algorithm linked to the "mapping" function because Figures 4 and 5 represent static, one-to-one prewired connections and are examples of results. Defs.' Br. at 16, 19. This is false. As confirmed by Mr. Buscaino, these "pin mapping" tables, and discussion thereof, are clearly linked to the "mapping" function and disclose how to "map" (i.e., an algorithm).[10] Pltfs.' Op. Br. at 14-15; 8/2/12 Buscaino Decl. at ¶¶ 20-31.

21
22
23
24
25
26

Defendants argue that Mr. Buscaino improperly attempts to "add additional information into the specification as purported disclosure of algorithm" and "to fill in gaps." Defs.' Br. at 19. This too is false. This is not a case like *Function Media, L.L.C. v. Google, Inc* where there is total omission of structure or algorithm in the specification. *See* 708 F.3d 1310, 1318-19 (Fed. Cir. 2013). Sufficient structure (a controller) and algorithm linked to the "mapping" function is

27
28

---

[10] Defendants again fault Mr. Buscaino for not stating that he reviewed the '443 patent file history and Hung-Ju. Mr. Buscaino has confirmed the '443 patent file history and Hung-Ju in no way alter his opinion. 5/21/15 Buscaino Decl. at ¶¶ 6-21, Ex. U.

disclosed.  *Atmel Corp.*, 198 F.3d at 1382 ("All one needs to do in order to obtain the benefit of that claiming device is to recite some structure…. §112, ¶ 6 thus does not raise the specter of an unending disclosure of what everyone in the field knows.").  Mr. Buscaino's testimony confirms that one skilled in the art would find that the specification discloses an algorithm clearly linked to the "mapping" function.  *Id.* at 1382.   Defendants' argument was soundly rejected by the ALJ at the ITC and should be rejected here.  CC Order at 37-39, Ex. N to Pltfs.' Op. Br.

**3.**     **"means for [identifying/determining] the type of memory card inserted into said port" ('424 pat., cls. 25 and 28; '847 pat., cl. 2)**

Instead of focusing on the structure that actually performs the "identifying" function, Defendants seek to manufacture non-infringement arguments by asking the Court to inject limitations that do not actually perform the function and, indeed, are not even required.

**a.      Defendants concede that the structure that actually performs the "identifying" function is a controller.**

The structure is to be limited to that which actually performs the "identifying" function. *Telcordia Tech., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1376 (Fed. Cir. 2010).  At the ITC, Defendants agreed that "a controller" is the structure that actually performs the "identifying" function.[11]  Defendants admit here that the "controller" is the sole structure that actually identifies the card type.  *E.g.,* Defs.' Br. at 22 ("[W]hen the controller receives a low voltage signal on pin 11 of the Figure 5 embodiment, *the controller recognizes the inserted card*....") (emphasis added).

**b.      Defendants' reliance on embodiments to support their "card detect lines" and "multiplexing" limitations is misplaced.**

The Court should not construe the structure to include all things necessary to enable a "controller" to perform the "identifying" function.  *Telcordia*, 612 F.3d at 1376.  Defendants improperly seek to inject into the structure extraneous elements from embodiments.  These

---

[11] At the ITC, Defendants' proposed structure was "a controller that *reads* card detect lines . . . ." ITC CC Order at 47.  Thus, Defendants agreed that card detect lines were not part of the structure itself.  Defendants' give no explanation for their flip flop.

1   extraneous elements are external to the controller and not required for "identifying."[12]

2       **First**, Defendants point to a passage of the specification that discusses "one embodiment"

3   where the controller *uses* multiplexed data bus lines to serve as card-detect lines.  Defs.' Br. at

4   20-21; '424 pat. at 6:32-49.  As an initial matter, claims are not to be limited to embodiments.

5   *Kara Tech. Inc.*, 582 F.3d at 1348.  Setting this aside, this passage actually contradicts

6   Defendants' construction.  It explains that, in this embodiment, card type is identified or

7   determined "*by detection* of which of the card detect lines is pulled low . . . . " '424 pat. at 6:44-

8   46.  While card detect lines may enable the controller to identify card type (i.e., by enabling the

9   controller to monitor an external line that delivers indication of card type), card detect lines do not

10  actually perform the "identifying" function.  The controller performs this function.

11      **Second**, Defendants rely on Figures 4 and 5 (which are merely embodiments) to argue that

12  "card detect lines" and "multiplexing" are necessary to perform the "identifying" function.  Defs.'

13  Br. at 21.  However, Defendants do not dispute that the invention need not be implemented to

14  support each of the card types shown in Figures 4 and 5.  Defendants do not dispute that the

15  invention may be implemented to support "any generic flash media." '424 pat. at 8:32-36.

16  Defendants do not dispute that the invention may be implemented only to support MiniSD, RS

17  MMC, and Memory Stick Duo.  Defendants do not dispute that when only these three card types

18  are supported, no multiplexing is required.  Pltfs.' Op. Br. at 19-20.  Defendants also do not

19  dispute that if the invention is implemented to support only SD and MMC card types, the

20  embodiments of Figures 4 and 5 do not require "card detect lines"—let alone "multiplexing" —to

21  enable the controller to perform the "identifying" function.

22      **Third**, Defendants confusingly rely on Figures 4A-E of the '638 patent to support their

---

[12] Defendants propose a "supplemental" limitation that adds additional features, external to the controller, that do not actually perform the "identifying" function.  Defs.' Br. at 23.  This limitation should also be rejected because it is not  required to perform the "identifying" function.

extraneous limitations.  Defs.' Br. at 22.  Defendants' argument is confusing at best.  But, the intrinsic evidence is clear, and Defendants admit that the controller is what identifies card type— not external elements like "card detect lines," or "multiplexing."  *See* Pltfs.' Op. Br. at 18.

**4.      contact pins "are integrated within [the] molded plastic" ('443 pat., cls. 1, 9)**

**Defendants' "embedded within" limitation.**  Defendants do not dispute that "integrated within" will be readily comprehensible to a jury.  Instead, Defendants argue that "integrated within" should be rewritten as "embedded within" because the claims require contact pins that are "integrated within [the] molded plastic."  Defs.' Br. at 25.  Plaintiffs do not dispute that the contact pins must be "integrated within [the] molded plastic."  However, there is no intrinsic evidence that justifies rewriting "integrated within" as "embedded with."  If construed as such, the Court will likely have to construe its own construction to discern the difference, if any, between "integrated within" and "embedded within."  This limitation should be rejected.

**Defendants' negative limitation.**  Defendants argue the claims should be construed to exclude "floating contact pins" because the specification describes advantages over floating contact pins in the prior art. [13]  But, the '443 patent describes multiple advantages over the prior art.  *See, e.g.,* '443 pat. at 2:43-2:63; 3:11-17; 4:3-36.  The fact that a patent asserts that an invention achieves several objectives does not compel a construction that limits the invention to structure capable of achieving all objectives.  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 908 (Fed. Cir. 2004); *Phillips*, 415 F.3d at 1326-27.  Indeed, when describing advantages over prior art, the '443 patent explains that "[i]t is *another* intended advantage of *one embodiment* of the present invention to provide an adapter card with contact pins that retain their resiliency to a greater degree than floating contact pins."  The '443 patent thus confirmed that not all claimed embodiments need to improve upon floating contact pins.

---

[13] Defendants do not even articulate what the allegedly disclaimed "float contact pin" is.  Unless "floating contact pin" is construed, Defendants' negative limitation will make no sense.

1
2
3
4
5
6

Defendants also argue that that applicant disclaimed "floating contact pins" during prosecution. Defs.' Br. at 26.   The alleged disclaimer must be both clear and unmistakable. *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003).  Here, there is no clear and unmistakable evidence that the applicant disclaimed "floating contact pins" from the scope of contact pins that are "integrated within [the] molded plastic."

7
8
9
10
11
12
13
14
15
16

Each claim was amended to require that contact pins be "integrated within [the] molded plastic."  '443 File History, Resp. to 11/2/06 Office Action at 1-4, Ex. 3 to Defs.' Br.   The prosecution history merely reflects, at worst, that the applicant distinguished  Hung-Ju because it had contact pins "of a floating structure sitting on an exterior or interior surface of the upper and lower frames [which are not molded plastic] rather than being "***integrated within***" the two planar elements [of the claims, where molded plastic is required]."  *Id.* at 8-9.  In other words, the applicant did not clearly and unmistakably differentiate Hung-Ju solely on the basis that Hung-Ju's contact pins were "floating contact pins," let alone "floating contact pins" that were "integrated [within] the molded plastic."  Defendants' negative limitation must be rejected.

17

**5.      "interconnection means"** ('424 pat., cls. 25 and 28; '847 pat., cl. 1)

18
19
20
21
22
23
24
25
26

Instead of asking the Court to actually construe this term, Defendants ask the Court to define a relation between interconnection means and contact pins, a different claim element (i.e., that they are "structures separate and distinct").  But, the task at hand is to construe "interconnection means," which are simply conductive elements that electrically connect.[14] Pltfs.' Op. Br. at 20-21.  The task is not to make a finding of fact and determine whether "the same piece of metal [can] be both an interconnection means and a contact pin" in every possible scenario, as Defendants request.   *See* Defs.' Br. at 28.  Defendants' proposal should be rejected.

27
28

[14] While Plaintiffs agree that the "interconnection means" are located between the contact pins and signal lines, there is no intrinsic evidence requiring that "interconnection means" must be "separate and distinct" from the "contact pins."

1

**6.**     **"memory media card"** ('443 pat., cls. 1, 9; '424 pat., cls. 25, 28; '847 pat., cl. 1)

2

3          Defendants seek to read out the "media" limitation from "memory media card," so that

they can later argue that SIM cards in the alleged prior art are "memory media cards." To the

4

extent Defendants believe SIM cards are within the scope of the claims, that is an issue of fact,

5

not a claim construction issue. *Hill-Rom Servs., Inc.*, 755 F.3d at 1374. There is no basis in the

6

intrinsic evidence for removing the "media" limitation. Defendants do not, and cannot, argue that

7

the applicant set forth a definition  that removes the "media" limitation. The patents repeatedly

8

and consistently refer to "*media* cards," "memory *media*", and "memory *media* cards" throughout

9

the specification.[15]  Indeed, when describing the invention's embodiments generically, the

10

patents state that they are "applicable to . . . flash *media*." *Id.* at 8:22-23 (emphasis added).

11

12          Defendants assert that "there is no generally accepted definition for 'memory media

13

card,'" yet turn to extrinsic evidence for support. Defs.' Br. at 30. This extrinsic evidence should

14

be disregarded, as Defendants cite no passages that discuss "memory media cards."[16]

15

**7.**     **"type of memory [media] card"** ('424 pat., cls. 25, 28; '443 pat., cls. 1, 9; '847 pat., cl. 1)

16

17          Defendants do not even address, or provide any support for, the first part of their proposal.

This language has no support in the intrinsic evidence and will only invite future dispute about

18

what "incompatible electrical and electrical physical interfaces" are and should be rejected.

19

Presumably, Defendants seek this construction because they believe it comports with the second

20

part of their proposal—that SD and MMC cards are the same type of memory media card.

21

22          Defendants' arguments lack merit. Defendants argue that the patents treat MMC and SD

23

identically. However, Defendants concede that MMC and SD have different "pin out" (i.e., a

24

25          [15] *See, e.g.*, '443 pat. at 1:63-64, 2:29, 2:37, 2:66-3:10, 3:21-32, 4:4, 4:15, 4:30, 5:6, 5:11,

26    5:52. Defendants cite the '638 patent to support their proposal, unlike the asserted patents, the
'638 patent does not claim "memory media cards." *See* '638 pat., Ex. D to Pltfs.' Op. Br.

27          [16] Instead, Defendants cite extrinsic passages in attempt to evidence that SIM cards can store

28    data. What SIM cards can or cannot do is irrelevant to the claim construction analysis.

different pin configuration).  *See, e.g.,* '424 pat. at 2:2-4.  If MMC and SD have different "pin out" or configurations, they must be different card types, including for purposes of the patents.

Defendants also argue that Figures 4 and 5 treat MMC and SD identically.  This is false. *See* Pltfs.' Op. Br. at 21-22.  Figures 4 and 5 merely show MMC and SD in the same column because they had certain similarities (e.g., SD used 9 contact pins and MMC used 7 of these same 9 pins).  *See* '424 File History, Resp. to 3/14/08 Office Action at 11, Ex. S to Pltfs.' Op. Br. ("'424 File History 3/14/08 OA Resp.")  But, they are still different card types for purposes of the claims.  *See id.*  For example, as the applicant explained, SD can use 4 data signal lines (i.e., 4-bit serial mode, which corresponds to pins/lines 10-13 in Figure 4).  *See* '847 File History, Resp. to 3/9/09 Office Action at 10, Ex. R to Pltfs.' Op. Br. ("'847 File History 3/9/09 OA Resp.").  MMC, however, used only 1 data signal line (i.e., 1-bit serial mode, which corresponds to only one of pins/lines 10-13 in Figure 4).  *See id.*  Thus, data signals still must be mapped depending on the identified type of card. [17]   And, the type of card still must be identified as either SD or MMC because the controller must map data signals properly to support 1-bit MMC data or 4-bit SD data.  One of ordinary skill would understand this based on the intrinsic evidence. [18]  Mr. Buscaino confirms the same.  8/2/12 Buscaino Decl. at ¶ 26.

Defendants argue that the prosecution history compels their construction, but do not argue disclaimer or lexicography.  Nor can they.  Defendants provide no explanation of how the applicant's statements in relation to Hung-Ju surrendered SD and MMC from being different card types for purposes of the claims.

---

[17] Defendants argue that the applicant described differences between MMC and SD when no rejection was pending.  This is false.  *See, e.g.,* '424 File History 3/14/08 OA Resp. at 10; '847 File History OA Resp. at 4.  For example, the Response to the 3/14/08 Office Action in the '424 patent file history was made in response to a non-final rejection.  The '424 patent was thereafter allowed.  '424 File History, Notice of Allowance, Ex. W.

[18] One of ordinary skill in the art would understand these differences especially in light of the fact that the parent '638 patent, incorporated by reference into the patents-in-suit, shows in Figure 5 that MMC uses 1 data signal (DIO) on signal line 19.  *See* '638 pat., Ex. D to Pltfs.' Op. Br.

1    Dated:  May 21, 2015                   Respectfully submitted,

2                                           /s/ *Michael P. Kella*
3                                           Anthony G. Simon (*pro hac vice*)
                                            Michael P. Kella (*pro hac vice*)
4                                           Benjamin R. Askew (*pro hac vice*)
                                            THE SIMON LAW FIRM, P.C.
5                                           800 Market Street, Suite 1700
                                            St. Louis, Missouri 63101
6                                           P. 314.241.2929
                                            F. 314.241.2029
7                                           asimon@simonlawpc.com
8                                           mkella@simonlawpc.com
                                            baskew@simonlawpc.com
9
10                                          Henry C. Bunsow
                                            Denise De Mory
11                                          Brian A.E. Smith
                                            BUNSOW DE MORY SMITH & ALLISON LLP
12                                          351 California Street, Suite 200
                                            San Francisco, CA  94104
13                                          T. (415) 426-4747
                                            F. (415) 426-4744
14                                          hbunsow@bdiplaw.com
15                                          ddemory@bdiplaw.com
                                            bsmith@bdiplaw.com
16
                                            *Attorneys for Plaintiffs Technology Properties*
17                                          *Limited LLC and MCM Portfolio LLC*

18

19                          **CERTIFICATE OF SERVICE**

20
            The undersigned hereby certifies that a copy of the foregoing was served on all counsel
21
     for all parties of record on May 21, 2015 via the Court's CM/ECF system.
22
                                            /s/ *Michael P. Kella*
23

24

25

26

27

28

**PLAINTIFFS' REPLY BRIEF ON CLAIM CONSTRUCTION**          16          C 14-03640-CW, C 14-03641-CW, C 14-03643-CW, C 14-03645-CW, C 14-03646-CW