1   Anthony G. Simon (*pro hac vice*)
    Michael P. Kella (*pro hac vice*)
2   Benjamin R. Askew (*pro hac vice*)
    THE SIMON LAW FIRM, P.C.
3   800 Market Street, Suite 1700
4   St. Louis, Missouri 63101
    P. 314.241.2929
5   F. 314.241.2029
    asimon@simonlawpc.com
6   mkella@simonlawpc.com
7   baskew@simonlawpc.com

8   Henry C. Bunsow
    Denise De Mory
9   Brian A.E. Smith
    BUNSOW DE MORY SMITH & ALLISON LLP
10  351 California Street, Suite 200
    San Francisco, CA 94104
11  T. (415) 426-4747
12  F. (415) 426-4744
    hbunsow@bdiplaw.com
13  ddemory@bdiplaw.com
    bsmith@bdiplaw.com
14

15  *Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| TECHNOLOGY PROPERTIES LIMITED LLC and MCM PORTFOLIO LLC, | Case Number: C 14-03640-CW |
| Plaintiffs, | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| vs. | |
| CANON, INC., et al., | Date: June 18, 2015 |
| Defendant(s). | Time: 2:00 pm<br>Place: Courtroom 2 – 4th Floor<br>Judge: Hon. Claudia Wilken |

| | | |
|---|---|---|
| 1 | TECHNOLOGY PROPERTIES LIMITED LLC and MCM PORTFOLIO LLC, | ) Case Number: C 14-03643-CW |
| 2 | | ) |
| 3 | Plaintiffs, | ) **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| 4 | vs. | ) |
| 5 | HEWLETT-PACKARD COMPANY, | ) Date: June 18, 2015 |
| 6 | | ) Time: 2:00 pm |
| | Defendant(s). | ) Place: Courtroom 2 – 4th Floor |
| 7 | | ) Judge: Hon. Claudia Wilken |
| 8 | TECHNOLOGY PROPERTIES LIMITED LLC and MCM PORTFOLIO LLC, | ) Case Number: C 14-03645-CW |
| 9 | | ) |
| 10 | Plaintiffs, | ) **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| 11 | vs. | ) |
| 12 | NEWEGG INC., et al., | ) Date: June 18, 2015 |
| 13 | | ) Time: 2:00 pm |
| | Defendant(s). | ) Place: Courtroom 2 – 4th Floor |
| 14 | | ) Judge: Hon. Claudia Wilken |
| 15 | TECHNOLOGY PROPERTIES LIMITED LLC and MCM PORTFOLIO LLC, | ) Case Number: C 14-03646-CW |
| 16 | | ) |
| 17 | Plaintiffs, | ) **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| 18 | vs. | ) |
| 19 | SEIKO EPSON CORPORATION, et al., | ) Date: June 18, 2015 |
| 20 | | ) Time: 2:00 pm |
| | Defendant(s). | ) Place: Courtroom 2 – 4th Floor |
| 21 | | ) Judge: Hon. Claudia Wilken |

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR JUDGMENT ON
THE PLEADINGS

C 14-03640-CW, C 14-03643-CW,
C 14-03645-CW, C 14-03646-CW

**TABLE OF CONTENTS**

**STATEMENT OF THE ISSUE TO BE DECIDED** ................................................................... 1
**PRELIMINARY STATEMENT** ............................................................................................. 1
**STATEMENT OF FACTS** ...................................................................................................... 2
    A.    Procedural Background and the 841 Investigation ........................................................ 2
    B.    TPL's Decision to Not Appeal the Administrative Findings......................................... 3
    C.    The Accused Products Are All Essentially the Same for Purposes of Determining Infringement ................................................................................................................... 4
**ARGUMENT** ........................................................................................................................... 5
I.    Binding Federal Circuit Precedent and Explicit Congressional Intent Dictate that ITC Determinations on Patent Issues Have No Preclusive Effect ............................................. 5
II.    The Century-Old *Kessler* Doctrine Is Inapplicable Here, and No Court Has Ever Held that an ITC Decision Is Preclusive of a Patent Claim or a Patent Issue In a District Court Case ............... 9
    A.    Kessler Created a Narrow "Gap-Filling" Exception that is Inapplicable Here, Because Congress Has Made Clear that ITC Patent Decisions Do Not Preclude District Courts. ......... 9
    B.    The Specific Factual Scenario Potentially Subject to the Kessler Doctrine Is Not Present Here—Even if the Doctrine Was Somehow Applicable in the Context of an ITC Decision............................................................................................................................ 11
    C.    Neither Brain Life Nor Any Other Case Cited by Defendants Supports Their Argument that the ITC Decision Is Preclusive ....................................................... 12
III.    Defendants' Motion Seeks to Rid Plaintiffs of Their Constitutional Right to a Jury Trial on Infringement ........................................................................................................................ 14
**CONCLUSION** ...................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
  501 U.S. 104 (1991) .................................................................................................. 6, 7

*Bio-Technology Gen. Corp. v. Genentech, Inc.*,
  80 F.3d 1553 (Fed. Cir. 1996) ............................................................... 5, 7, 10, 13, 14

*Brain Life, LLC v. Elekta, Inc.*,
  746 F.3d 1045 (Fed. Cir. 2014) .............................................................. 10, 11, 12, 13

*Burgos v. Hopkins*,
  14 F.3d 787 (2d Cir. 1994) ........................................................................................ 8

*Corning Glass Works v. United States Int'l Trade Comm'n*,
  799 F.2d 1559, 230 USPQ 822, (Fed. Cir. 1986) ................................................... 5, 6

*Kessler v. Eldred*,
  206 U.S. 285, 27 S. Ct. 611 (1907) ....................................................................... 9, 11

*Lannom Mfg. Co., Inc. v. U.S. Int'l Trade Comm'n*,
  799 F.2d 1572 (Fed. Cir. 1986) .................................................................................. 5

*MGA, Inc. v. General Motors Corp.*,
  827 F.2d 729 (Fed. Cir. 1987) ............................................................................ 11, 13

*SpeedTrack, Inc. v. Office Depot, Inc.*,
  No. C 07-3602 PJH, 2014 WL 1813292 (N.D. Cal. May 6, 2014) ......................... 13

*SSIH Equip., S.A. v. U.S.I.T.C.*,
  718 F.2d 365 (Fed. Cir. 1983) .................................................................................. 11

*Tandon Corp. v. United States Int'l Trade Comm'n*,
  831 F.2d 1017, 4 USPQ2d 1283, (Fed. Cir. 1987) ................................................. 5, 6

*Texas Instruments, Inc. v. Cypress Semiconductor Corp.*,
  90 F.3d 1558 (Fed. Cir. 1996) ................................................... 1, 2, 4, 5, 6, 7, 13, 14

**STATEMENT OF THE ISSUE TO BE DECIDED**

Does the *Kessler* doctrine of preclusion bar Plaintiffs' claims for infringement of the patents-in-suit despite decades of Federal Circuit case law holding that ITC decisions on patent issues are not preclusive?

**PRELIMINARY STATEMENT**

Plaintiffs Technology Properties Limited LLC ("TPL") and MCM Portfolio LLC ("MCM") (collectively, "Plaintiffs") file this memorandum in opposition to Defendants' motion for judgment on the pleadings (hereinafter "Defendants' motion" or "Defs.' Mot.") (Doc. 302 in Case No. 4:14-cv-3640; Doc. 88 in Case No. 4:14-cv-3643; Doc. 74 in Case No. 4:14-cv-3645; Doc. 85 in Case No. 4:14-cv-3646).[1]

Defendants' motion goes against three decades of well-established precedent. Without exception, ITC decisions on patent issues are not preclusive. The *Kessler* doctrine is not applicable to ITC decisions, and ITC decisions are not subject to the *Kessler* doctrine. This is not an open issue. Defendants' motion also seeks to deprive Plaintiffs of their constitutional right to a jury trial on infringement. Defendants' motion should be denied.

Defendants ask this Court to make new law. Defendants ask this Court to be the first to not follow twenty-nine years of precedential Federal Circuit case law holding that ITC decisions on patent issues have no preclusive effect. In 1996, the Federal Circuit reaffirmed its prior holdings on this issue and held that "the rule that decisions of the ITC involving patent issues have no preclusive effect in other forums has not changed" despite changes to ITC procedures. *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568-69 (Fed. Cir. 1996).

This is not an unsettled issue of first impression as Defendants argue. The *Kessler* doctrine is a preclusion doctrine. The Federal Circuit and the ITC have both made clear that the ITC's decisions "involving patent issues have no preclusive effect." *TI v. Cypress*, 90 F.3d at 1569. There are no exceptions to this rule depending on the type of preclusion sought or the issue being decided. Defendants argue that ITC non-infringement findings are preclusive while

---

[1] The other defendant, Falcon Northwest Computer Systems, Inc., did not join in this motion.

admitting that all other ITC findings on any issue of patent law are not preclusive. This is nonsensical, unconstitutional, and directly contrary to Congressional intent and well-established case law.

The ITC was created in 1916 (originally called the U.S. Tariff Commission) and has conducted administrative proceedings under section 337 of the Tariff Act of 1930 for eighty-five years. Congress amended the Tariff Act of 1930 with the Trade Reform Act of 1974. The *Kessler* doctrine has existed since 1907. Since that time, no court has held or even indicated that the very specific and rarely-invoked type of preclusion created in the *Kessler* case could apply to an ITC decision. Instead, based on decades of precedent and the legislative history of the Trade Reform Act of 1974, the Federal Circuit has held that no ITC decision on any patent issue can have any preclusive effect. The Seventh Amendment right to a jury trial on the issue of infringement is one of the reasons for repeatedly holding that ITC decisions are not preclusive. *See Cypress*, 90 F.3d at 1569, n.10.

The *Kessler* doctrine was created to fill a gap between issue preclusion and claim preclusion. It is limited to very specific situations where preclusion is appropriate but neither issue nor claim preclusion apply. This rarely used, gap filling doctrine does not apply here, because Federal Circuit law and legislative history make clear that ITC findings on patent issues are not preclusive in any way. Claim preclusion and issue preclusion are not applicable here. Therefore, there is no gap between the doctrines of claim and issue preclusion when applied to these district court cases—because the doctrines cannot be applied to these cases at all.

## STATEMENT OF FACTS

### A.   Procedural Background and the 841 Investigation

On March 27, 2012, TPL filed its complaint in the ITC, which resulted in the ITC instituting Inv. No. 337-TA-841 ("the 841 investigation"). On March 28, 2012, TPL filed its complaints in district court against the Defendants. At Defendants' request pursuant to 28 U.S.C. § 1659, the district court cases were stayed pending the outcome of the ITC investigation. The patents-in-suit were among the patents at issue in the 841 investigation. A minority of the accused products in this case were accused products in the 841 investigation.

The Initial Determination in the 841 investigation made administrative findings including non-infringement of the asserted patents, infringement of the '623 patent, that each of the patents is not invalid (rejecting Defendants' § 102, § 103, and § 112 arguments), and that TPL satisfied the domestic industry requirement. The 841 investigation was terminated with an administrative finding of no violation of section 337 after the ITC reversed the ALJ's findings of infringement of the '623 patent and that TPL satisfied the domestic industry requirement.

### B. TPL's Decision to Not Appeal the Administrative Findings

Defendants emphasize that TPL did not appeal the ITC decision to the Federal Circuit. Although TPL's decision does not change the fact that the *Kessler* doctrine is inapplicable here and that ITC findings are not preclusive, there are numerous reasons to support and explain Plaintiffs' decision to proceed in this Court rather than appeal, which further explain why Defendants' requested relief is inequitable and contrary to law.[2]

Defendants are correct that the only support for the ALJ and ITC finding non-infringement of the patents-in-suit was that Defendants' products did not meet the "mapping" limitations. Despite finding non-infringement of the patents-in-suit—and while not expressly construing mapping—the ALJ stated the following when describing how he understood "mapping" as that term was used in the patents-in-suit:

> What does make sense to the ALJ is making a logical connection between physical points and some other data. For example, **a logical connection can be made between a fixed electrical path and the identity of the signal that travels along that path. This is what is shown in Figures 4 and 5 of the patent**.

Initial Determination on Violation of Section 337 at 44, USITC, Inv. No. 337-TA-841 (Aug. 2, 2013) (attached as Exhibit 1) (emphasis added). The ITC affirmed this part of the ALJ's decision. (Doc. 302-1 at Ex. A, p. 21). The above description of mapping is what the accused products in this case do—i.e., assign a logical connection between fixed electrical paths and the

---

[2] It also would be improper and unfair to in a case of first impression take away Plaintiffs right to have its cases heard in an Article III Court when Plaintiffs, when making the decision to not appeal the ITC decision, had a right to rely on the decades of precedent noted herein that ITC decisions are not preclusive.

1  identity of the signals that travel along those paths. Whether the accused products infringe is an
2  issue on which Plaintiffs are entitled to a jury trial, and ITC decisions "concerning patent
3  infringement" are not preclusive. *See, e.g., TI v. Cypress*, 90 F.3d at 1568 n.9, 1569, 1569 n.10.

4  While TPL could have prevailed at the Federal Circuit on the "mapping" issue, TPL also
5  needed the Federal Circuit to rule in TPL's favor on the dispositive issue of domestic industry in
6  order to have the chance at obtaining ITC exclusion orders. If the Federal Circuit reversed the
7  ITC on the "mapping" and the domestic industry issues, the investigation likely would have been
8  remanded to the ITC for another hearing on infringement causing further delay in these cases.
9  However, even if TPL appealed the ITC decision and prevailed, Plaintiffs would not have
10 received a jury trial on infringement without pursuing these district court cases.

11 Regardless, if TPL prevailed at the ITC after remand from the Federal Circuit, the result
12 would have been a largely hollow victory. The ITC can issue exclusion orders and cannot award
13 monetary damages. During the latter stages of the 841 investigation, many respondents began
14 discontinuing accused products, discontinuing importation of accused products, or informing TPL
15 that such discontinuation or alteration of the accused products was forthcoming. The Defendants
16 have discontinued importing certain accused products. Defendants are altering their printers,
17 laptops, cameras, and card readers as technology changes. An exclusion order regarding
18 discontinued products would not sufficiently protect Plaintiffs' intellectual property.

19 **C. The Accused Products Are All Essentially the Same for Purposes of**
20 **Determining Infringement**

21 Defendants admit that all accused products in these cases "are essentially the same" as the
22 accused products in the ITC investigation. Plaintiffs agree—a position Plaintiffs have maintained
23 since filing suit. It is now undisputed by all parties that the products are functionally equivalent
24 for purposes of determining infringement. Despite this judicial admission, Defendants Canon and
25 Epson continue to argue that Plaintiffs' infringement contentions based on representative products
26 are insufficient. If Defendants had not finally admitted that all products are essentially the same
27 for purposes of infringement, a motion to dismiss based on the *Kessler* doctrine would make no
28 sense. Defendants' motion argues for dismissal because: 1) certain accused products were

deemed non-infringing by the ITC, and 2) all other accused products should also be deemed non-infringing because they are functionally equivalent for purposes of infringement. If the parties did not agree that all products were the same, then Defendants' *Kessler* argument could only apply to the products at issue in the ITC investigation.

## ARGUMENT

### I. Binding Federal Circuit Precedent and Explicit Congressional Intent Dictate that ITC Determinations on Patent Issues Have No Preclusive Effect

It is well-established that patent decisions from the ITC do not bind a district court and have no preclusive effect. Defendants argue that the ITC's "finding is binding on this Court." (Defs.' Mot. at 4). This argument has no support and is directly contradicted by Federal Circuit law. *TI v. Cypress*, 90 F.3d at 1568-69; *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1019 (Fed. Cir. 1987) ("our [the Federal Circuit's] treatment of decisions of the Commission does not estop fresh consideration by other tribunals"); *Lannom Mfg. Co., Inc. v. U.S. Int'l Trade Comm'n*, 799 F.2d 1572, 1577-78 (Fed. Cir. 1986) (analyzing ITC history and legislative history and repeatedly distinguishing between the ITC and courts); *Corning Glass Works v. U.S. Int'l Trade Comm'n*, 799 F.2d 1559, 1570 n.12 (Fed. Cir. 1986); *Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553 (Fed. Cir. 1996). "The Federal Circuit has held that the legislative history of section 337 requires that ITC patent-based determinations, such as infringement, validity, and unenforceability, and appellate decisions of those determinations do not have *res judicata* or preclusive effect; they do not estop fresh consideration by other tribunals." Marcia H. Sundeen, Unfair Competition and the ITC, p. 373 (2014-2015 Edition) (attached as Exhibit 2).[3]

Defendants "recognize that [these cases] are binding on this Court." Defs.' Mot. at 11, n.6. Nevertheless, Defendants argue that the ITC's decision in the 841 investigation on

---

[3] Two of the authors of this treatise, Marcia Sundeen and T. Cy Walker, are counsel for Defendant HP in Case No. 4:14-cv-03643. The treatise goes on to state that all ITC patent-based determinations are not preclusive. Like the Federal Circuit cases, there is no distinction between the type of patent-based determination nor any indication that non-infringement is somehow unique or may invoke the *Kessler* doctrine.

infringement is somehow binding. "[A]n administrative agency decision, issued pursuant to a statute, ***cannot*** have preclusive effect when Congress, either expressly or impliedly, indicated that it intended otherwise." *TI v. Cypress*, 90 F.3d at 1568 (citing *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 110 (1991) (emphasis added).

In the Trade Reform Act of 1974, Congress amended section 337 to allow respondents to raise patent-related defenses in 337 investigations before the ITC. In doing so, Congress stated:

> [I]n patent-based cases, the Commission considers, for its own purposes under section 337, the status of imports with respect to the claims of U.S. patents. The Commission's findings neither purport to be, nor can they be, regarded as binding interpretations of the U.S. patent laws in particular factual contexts. Therefore, it seems clear that any disposition of a Commission action by a Federal Court should not have a res judicata or collateral estoppel effect in cases before such courts.

S. Rep. No. 1298, 93d Cong., 2d Sess. 196 (1974) U.S. Code Cong. & Admin. News 1974, p. 7186; *see also TI v. Cypress*, 90 F.3d at 1569. Therefore, ITC decisions involving patent issues have no preclusive effect on the federal courts. Defendants ignore this statutory limitation that goes to the heart of the ITC's congressional mandate.

Here, it cannot be disputed that Congress has never indicated that it intended ITC findings to be preclusive. The opposite is true. Congress expressly indicated its intent that ITC findings not be preclusive, which is why the Federal Circuit has repeatedly held that ITC findings on patent law have no preclusive effect on the courts. For this reason alone, Defendants' motion must be denied.

In *TI v. Cypress*, the Federal Circuit analyzed the legislative history of the Trade Reform Act of 1974 including the above block quote and held that:

> Based on this legislative history, we have stated that Congress did not intend decisions of the ITC on patent issues to have preclusive effect. *See Tandon Corp. v. United States Int'l Trade Comm'n,* 831 F.2d 1017, 1019, 4 USPQ2d 1283, 1285 (Fed. Cir. 1987) ("[O]ur appellate treatment of decisions of the Commission does not estop fresh consideration by other tribunals."). *See also Texas Instruments Inc. v. United States Int'l Trade Comm'n,* 851 F.2d 342, 344, 7 USPQ2d 1509, 1510 (Fed. Cir. 1988) (stating that ITC determinations regarding patent issues should be given no collateral estoppel effect); *Corning Glass Works v. United States Int'l Trade Comm'n,* 799 F.2d 1559, 1570 n. 12, 230 USPQ 822, 830 n. 12 (Fed. Cir. 1986) (stating that the legislative history of the Trade Reform Act of 1974

> supports the position that ITC decisions have no preclusive effect in district courts).
>
> * * *
>
> However, once we accept, as we have done at least since 1986, that ITC decisions are not binding on district courts in subsequent cases brought before them, it necessarily follows that accused infringers can raise whatever defenses they believe are justified, regardless whether they previously raised them and lost in the ITC. The district court can attribute whatever persuasive value to the prior ITC decision that it considers justified….

*Id*. at 1569.

The Federal Circuit analyzed all other relevant statutes and changes to ITC procedures and held that "none of these statutory amendments or their legislative histories dealt with the possible preclusive effect of ITC determinations or indicated an intent contrary to Congress's stated intention in 1974." *Id.* "Thus, the rule that decisions of the ITC involving patent issues have no preclusive effect in other forums has not changed." *Id.* Therefore, based on Congress's stated intent and Supreme Court precedent regarding whether administrative agency decisions may be preclusive, ITC decisions "cannot have preclusive effect." *Id.* at 1568; *Astoria*, 501 U.S. at 110.[4]

Notably, these binding cases do not leave room for any exception based on the particular patent issue or type of preclusion sought. Defendants' motion does not raise a novel, undecided issue. There is simply no support for the argument that this case is somehow different because the ITC finding was non-infringement and the preclusion sought is based on the *Kessler* doctrine. In fact, the Federal Circuit has stated the opposite, holding that ITC infringement findings are not preclusive. *See Bio-Technology*, 80 F.3d 1553. In *TI v. Cypress*, the ITC found infringement of some claims and non-infringement of others, but the Federal Circuit held that "no holding in the prior ITC case or its affirmance by our court precludes our affirmance of the district court here." 90 F.3d at 1562-63, 1570. The court also held that the district court did not err in not informing the jury of the ITC decision, because the ITC decision "does not control this case." *Id.* at 1570.

The Federal Circuit has applied this legal principle on multiple occasions. In *Bio-Technology v. Genentech*, the court noted that whether an ITC decision should have a preclusive

---

[4] The Federal Circuit went on to affirm the district court's denial of TI's JMOL motion – *i.e.*, affirming a finding of non-infringement – even though the Federal Circuit previously affirmed the ITC's finding of infringement on the same patent claims. *TI v. Cypress*, 90 F.3d at 1570.

effect on a later district court case also depends on the difference in remedies available in each forum. *Bio-Technology*, 80 F.3d 1553. For example, "where a plaintiff was precluded from recovering damages in the initial action by formal jurisdictional or statutory barriers, not by plaintiff's choice, a subsequent action for damages will not normally be barred by res judicata even where it arises from the same factual circumstances as the initial action." *Id*. at 1563 (citing *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994).

> Importantly … the ITC does not have the power to award damages for patent infringement. This form of relief may only be provided by the United States District Courts, which have original and exclusive jurisdiction over patent infringement cases. *See* 28 U.S.C. § 1338(a) (1994).
>
> The legislative history of the Trade Reform Act of 1974 supports the view that ITC decisions with respect to patent issues should have no claim preclusive effect in later district court litigation….

*Id*. at 1564. After analyzing the legislative history of the Trade Reform Act of 1974, and "in view of the jurisdictional limitations on the relief available in the ITC," the court held "that the ITC's prior decision cannot have claim preclusive effect in the district court. *See also Texas Instruments, Inc. v. United States Int'l Trade Comm'n,* 851 F.2d 342, 344, 7 USPQ2d 1509, 1510 (Fed. Cir. 1988) ("[T]his court has stated that the ITC's determinations regarding patent issues should be given no res judicata or collateral estoppel effect."). *Id*. at 1564.

An accused infringer may obtain a mandatory stay of a district court patent infringement case when facing the same allegation in the ITC:

> **(a) Stay. –** In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, ***at the request of a party to the civil action that is also a respondent in the proceeding before the Commission***, the district court ***shall stay***, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission….

28 U.S.C. § 1659(a). Section 1659 is perfectly consistent with Congress's previously expressed intent that ITC decisions are not preclusive. Indeed, Section 1659 merely protects the accused infringer from defending the cases simultaneously, while preserving the patent owner's ability to seek patent damages in the district court. Section 1659(b) also provides for the transmission of

the Commission's record to the district court after the dissolution of a stay, which further supports Congress's stated intent regarding preclusion. The record "shall be admissible in the civil action, subject to such protective order as the district court determines necessary, to the extent permitted under the Federal Rules of Evidence and the Federal Rules of Civil Procedure." 28 U.S.C. § 1659(b). Far from binding the district court, "[t]he district court can attribute whatever persuasive value to the prior ITC decision that it considers justified."

ITC patent decisions do not bind district courts on infringement, validity, enforceability, or any other patent issue. Defendants' motion should be denied.

**II.     The Century-Old *Kessler* Doctrine Is Inapplicable Here, and No Court Has Ever Held that an ITC Decision Is Preclusive of a Patent Claim or a Patent Issue in a District Court Case**

In the face of binding precedent and unequivocal congressional intent, Defendants improperly attempt to use the *Kessler* doctrine to create an exception that destroys the rule.

**A.     Kessler Created a Narrow "Gap-Filling" Exception that is Inapplicable Here, Because Congress Has Made Clear that ITC Patent Decisions Do Not Preclude District Courts.**

The *Kessler* doctrine was first announced by the Supreme Court in *Kessler v. Eldred,* 206 U.S. 285, 27 S. Ct. 611 (1907). In that case, Eldred held a patent for an electric cigar lighter and sued Kessler for patent infringement in the District of Indiana. The court found that Eldred did not infringe, and the Seventh Circuit affirmed. Eldred then sued Kessler's customer (Breitwieser) in the Western District of New York for selling the same Kessler lighters that were at issue in the Indiana suit. Kessler indemnified Breitwieser in New York, but also sued Eldred in district court in Illinois to enjoin Eldred from suing Breitwieser based on the earlier judgment. The Illinois district court and Seventh Circuit agreed with Kessler, and enjoined Eldred.

The Supreme Court affirmed, finding that the final judgment in the first action between Eldred and Kessler "settled finally and everywhere . . . that Kessler has the right to manufacture, use, and sell the [previously accused] electric cigar lighter." *Kessler*, 206 U.S. at 287, 27 S. Ct. 611. The Court reached this result even though certain formal requirements for the application of

claim preclusion and/or collateral estoppel were missing. For example, there was no mutuality of parties, because Eldred sued Breitwieser (not Kessler) in the second suit.[5] In addition, the Court found preclusion even for acts of infringement that occurred *after* the final judgment in the first case. In short, the Court "did not rely on traditional notions of claim or issue preclusion in crafting this protection for Kessler." *See Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014). As the Federal Circuit explained in *Brain Life*:

> [T]raditional notions of claim preclusion do not apply when a patentee accuses new acts of infringement, i.e., post-final judgment, in a second suit – even where the products are the same in both suits. Such claims are barred under general preclusion principles only to the extent they can be barred by issue preclusion, with its attendant limitations. **The *Kessler* Doctrine fills the gap between these preclusion doctrines**, however, allowing an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result.

*Id*. at 1056 (emphasis added).

But there is no "gap" to fill with respect to issue preclusion and claim preclusion here. Federal Circuit law holds that neither issue preclusion nor claim preclusion apply to ITC findings on patent issues, because Congress expressly indicated that ITC findings on patent issues are not preclusive. Three decades of Federal Circuit law – that Defendants admit is binding – make clear that there is no potential gap to fill in a district court case preceded by ITC findings on the same patent issues. Simply put, ITC findings on patent issues do not have *any* preclusive effect.[6]

---

[5] The Federal Circuit recently noted: "At the time *Kessler* was decided, 'the judge-made doctrine of mutuality of estoppel, ordain[ed] that, unless both parties (or their privies) in a second action [were] bound by a judgment in a previous case, neither party (nor his privy) in the second action may use the prior judgment as determinative of an issue in the second action.' . . . The Supreme Court, therefore, may have created the *Kessler* Doctrine as an exception to the strict mutuality requirement that existed at that time, rather than to espouse a specific doctrine of substantive patent law." *Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045, 1057 (Fed. Cir. 2014) (internal citation omitted).

[6] Claim preclusion would not bar Plaintiffs' claims in this Court – even in the absence of Congress's clear legislative intent that ITC decisions have no preclusive effect. This is because Plaintiffs' current claims for patent infringement are not the "same claim" as an ITC investigation regarding a violation of Section 337. Money damages are not available in the ITC. "[T]he ITC does not have the power to award damages for patent infringement. This form of relief may only be provided by the United States District Courts." *Bio-Technology*, 80 F.3d at 1564.

1  The narrow exception of the judicially created *Kessler* doctrine cannot trump Congress's clear intent that ITC decisions on patent issues have no preclusive effect. And Defendants have cited no case to support their argument, because no such case exists. No court has ever applied the *Kessler* doctrine to bar a case, claim, or issue in district court based on an ITC decision.

**B.  The Specific Factual Scenario Potentially Subject to the Kessler Doctrine Is Not Present Here—Even if the Doctrine Was Somehow Applicable in the Context of an ITC Decision**

As explained above, during "the heyday of the federal mutuality of estoppel rule," the *Kessler* doctrine was created to fill a gap between issue preclusion and claim preclusion and is limited to very specific situations. *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1057-58 (Fed. Cir. 2014) (citing *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729 (Fed. Cir. 1987). The doctrine prevents a plaintiff from suing a defendant for alleged infringing acts that: 1) occurred after final judgment in a prior civil lawsuit, and 2) involve products deemed to not infringe in the first civil lawsuit. *Id.* at 1056-68; *Kessler*, 206 U.S. at 288-89. *Kessler* granted "a limited trade right which is 'the right to have that which [a court has determined] it lawfully produces freely bought and sold without restraint or interference.'" *Brain Life*, 746 F.3d at 1057 (citing *MGA*, 827 F.2d at 734 (quoting *Rubber Tire Wheel Co. v Goodyear Tire & Rubber Co.*, 323 U.S. 413-418-19 (1914)). *Kessler* "bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent; otherwise, the effect of the prior judgment would be virtually destroyed." *MGA*, 827 F.2d at 734.

Each of the following reasons distinguishes these district court cases from the narrow situations in which *Kessler* may be applicable. The ITC is an administrative body. The ITC determines the status of imports into the United States in relation to the claims of United States patents. It has no judicial powers. "The Commission's findings neither purport to be, nor can they be, regarded as binding interpretations of the U.S. patent laws in particular factual contexts." S. Rep. No. 1298, 93d Cong., 2d Sess. 196 (1974) U.S. Code Cong. & Admin. News 1974, p. 7186. There has been no final judgment here. Only a court can issue a final judgment on patent issues – not the ITC. There has been no prior civil lawsuit here. ITC proceedings are not civil

1   actions. *SSIH Equip., S.A. v. U.S.I.T.C.*, 718 F.2d 365, 370 (Fed. Cir. 1983).  TPL's infringement
2   case has not been tried in federal court or heard by a jury.  Most of the products here were not at
3   issue in the ITC.  Regardless, the ITC investigation was not a "court" determining infringement.
4   The vast majority of the infringing acts at issue in these district court lawsuits occurred ***before*** the
5   ITC investigation terminated.  The vast majority of damages at issue in these cases are based on
6   infringing sales that occurred ***before*** the ITC investigation terminated.  This civil action is not a
7   situation where a second lawsuit was filed concerning allegedly infringing acts that took place
8   after the final judgment in a prior case.  It is Plaintiffs' first lawsuit for monetary damages.  This
9   case was filed in tandem with the 841 investigation.  It concerns many accused products that are
10  no longer for sale (e.g., older model laptops and printers).

11  Defendants' motion argues that ITC findings, at least with respect to non-infringement,
12  are binding interpretations of U.S. patent law.  Granting Defendants' motion would be contrary to
13  28 U.S.C. § 1338, which grants the district courts exclusive jurisdiction of civil actions arising
14  under any Act of Congress relating to patents.  Defendants' motion should be denied.

### C. Neither Brain Life Nor Any Other Case Cited by Defendants Supports Their Argument that the ITC Decision Is Preclusive

17  Although Defendants rely heavily on *Brain Life*, that case had nothing to do with whether
18  an ITC decision could preclude a district court from considering infringement of the same patent.
19  In *Brain Life*, MIDCO sued Elekta in the Southern District of California for infringement of
20  the '684 patent, which included apparatus and method claims.  Prior to trial, the district court
21  dismissed the method claims without prejudice.  Although the jury found that Elekta infringed the
22  apparatus claims, the Federal Circuit reversed the district court's claim construction and held that
23  there was no infringement based on the correct claim construction.  On remand, the district court
24  refused to allow MIDCO to revive the '684 patent by asserting only the method claims, and
25  entered final judgment against MIDCO and in favor of Elekta.  *Brain Life*, 746 F.3d at 1049-50.
26  MIDCO then licensed the '684 patent to another company, which licensed it to Brain Life.
27  Brain Life then sued Elekta in the same district court for infringement of the '684 method claims.
28  The suit included some Elekta products that had been at issue in the earlier case filed by MIDCO

1  and some new products. The district court granted Elekta's motion for summary judgment of
2  claim preclusion, finding that MIDCO had voluntarily given up its assertion of the method claims
3  in the earlier suit. The district court also found that there was no material difference between the
4  accused Elekta products in the second suit and those that were accused in the earlier MIDCO suit.
5  Brain Life appealed to the Federal Circuit. *Id*. at 1050-52.

6  In a detailed analysis, the Federal Circuit found that a strict application of claim and issue
7  preclusion did *not* bar a substantial portion of Brain Life's claims against Elekta. For example,
8  traditional estoppel doctrines could not bar Brain Life's assertion of the '684 patent against Elekta
9  for acts of infringement that occurred *after* the final judgment in the earlier case by MIDCO. *See*
10 *Brain Life*, 746 F.3d at 1053-55. However, the Federal Circuit applied the *Kessler* doctrine to
11 find that Elekta's accused devices had "acquired a noninfringing status vis-à-vis the '684 patent
12 by virtue of the first case." *Id*. at 1058. But *Brain Life* involved the effect of one district court
13 action on a later district court action – not whether an ITC decision can preclude a district court.
14 Moreover, claim and issue preclusion did not bar many of Brain Life's claims against Elekta; thus,
15 *Kessler* provided a "gap-filling" function in *Brain Life*. As explained above, there is no gap-
16 filling function to potentially apply here.

17 Similarly misplaced is Defendants' reliance on *MGA, Inc. v. General Motors Corp.,* 827
18 F.2d 729 (Fed. Cir. 1987) and *SpeedTrack, Inc. v. Office Depot, Inc.*, No. C 07-3602 PJH, 2014
19 WL 1813292 (N.D. Cal. May 6, 2014). Neither case addresses whether an ITC decision can
20 preclude a district court's consideration of the same patent infringement issue. Without any legal
21 support, Defendants are trying to apply *Kessler* as an exception that swallows the congressionally
22 mandated rule that an ITC decision does *not* preclude a district court's consideration of exactly
23 the same patent issue that the ITC decided. In short, "in view of the jurisdictional limitations on
24 the relief available in the ITC, we hold that the ITC's prior decision cannot have claim preclusive
25 effect in the district court." *Bio-Technology*, 80 F.3d at 1564.[7]

26

27 [7] The Federal Circuit decided *Bio-Technology* and *TI v. Cypress* in 1996—only nine years after
    the Federal Circuit's decision to apply *Kessler* in *MGA, Inc. v. General Motors*. The Federal
28  Circuit did not need to explicitly mention the *Kessler* doctrine in its seminal 1996 decisions,

1  Defendants argue that TPL was required to appeal the ITC decision before pursuing these
2  district court cases; otherwise, the *Kessler* doctrine applies. Defs.' Mot. at 11-13. Regardless of
3  the reasons for not appealing, Defendants' argument is directly refuted by well-established
4  Supreme Court and Federal Circuit law on the preclusive effect of administrative decisions
5  generally and the ITC specifically. Defendants' cited support is inapposite to whether ITC
6  decisions on infringement are preclusive. *Id.* Nevertheless, TPL's decision to not appeal is
7  explained above in the Statement of Facts, which refutes Defendants' speculation. There are
8  numerous reasons to support Plaintiffs' decision to proceed in this Court rather than appeal.

9  Assuming *arguendo* the *Kessler* doctrine arguably applied here, it would not apply to the
10 infringement that occurred prior to the conclusion of the ITC investigation. Therefore, even if the
11 Court created new law by applying *Kessler* to hold that the ITC decision on infringement is
12 preclusive, the judgment could only pertain to acts of infringement occurring *after* the 841
13 investigation concluded.

14 **III.  Defendants' Motion Seeks to Rid Plaintiffs of Their Constitutional Right to a Jury
15      Trial on Infringement**

16 If this Court decides not to follow Federal Circuit precedent and grants Defendants'
17 Motion, Plaintiffs would be deprived of their Seventh Amendment right to a jury trial on
18 infringement. Plaintiffs have a constitutional right to a jury trial on the issue of infringement.
19 The Federal Circuit has cited this right as a reason to not allow "ITC decisions on patent
20 infringement questions" to have preclusive effect. *TI v. Cypress*, 90 F.3d 1558, 1569, n.10.
21 Notably, this is yet another instance where the ITC does not open the door to any exception to the
22 rule by holding that ITC decisions on any infringement question are not preclusive.

23 **CONCLUSION**

24 The Federal Circuit has made clear that "ITC decisions on patent infringement questions"
25 and "decisions of the ITC involving patent issues" and ITC decisions "concerning patent
26 infringement" are not preclusive. *TI v. Cypress*, 90 F.3d 1558, 1569; *Bio-Technology*, 80 F.3d

---

28 because Congress had made it clear that ITC patent decisions do not bind district courts and are not preclusive period, regardless of the preclusion doctrine.

1553 (Fed. Cir. 1996).  This rule encompasses ITC decisions of non-infringement.  Defendants' attempt to cast non-infringement as something other than a "patent infringement question" must be rejected.

      Defendants ask this Court to make new law.  Defendants ask this Court to reject Supreme Court precedent on preclusion, reject Federal Circuit precedent on ITC findings on patent issues not being preclusive, and ignore explicit congressional intent.  Defendants' motion should be denied.

Dated:  May 28, 2015        By:  */s/Benjamin R. Askew*   (*pro hac vice*)
*Attorney for Plaintiffs Technology Properties Limited LLC and MCM Portfolio LLC*

### CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a copy of the foregoing was served on all counsel for all parties of record on May 28, 2015 via the Court's CM/ECF system.

/s/*Benjamin R. Askew*

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS     15     C 14-03640-CW, C 14-03643-CW, C 14-03645-CW, C 14-03646-CW