# EXHIBIT 1

**PUBLIC VERSION**

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

| **In the Matter of**<br><br>**CERTAIN COMPUTERS AND COMPUTER PERIPHERAL DEVICES AND COMPONENTS THEREOF AND PRODUCTS CONTAINING THE SAME** | **Inv. No. 337-TA-841** |
|---|---|

**INITIAL DETERMINATION ON VIOLATION OF SECTION 337 AND RECOMMENDED DETERMINATION ON REMEDY AND BOND**

Administrative Law Judge Theodore R. Essex

(August 2, 2013)

**Appearances:**
*For the Complainant Technology Properties Limited LLC:*

Anthony G. Simon, Esq.; Benjamin R. Askew, Esq.; Michael P. Kella, Esq.; and Stephanie H. To, Esq. of the Simon Law Firm, P.C. of St. Louis, Missouri

*For Respondent Hewlett-Packard Co.:*

Marcia H. Sundeen, Esq.; T. Cy Walker, Esq.; and Aimee N. Soucie, Esq. of Kenyon & Kenyon LLP of Washington, D.C.

Rose Cordero Prey, Esq. and Bradley D. Roush, Esq. of Kenyon & Kenyon LLP of New York, New York

*For Respondent Seiko Epson Corporation:*

Louis S. Mastriani, Esq. and Sarah E. Hamblin, Esq. of Adduci, Mastriani & Schaumberg, LLP of Washington, D.C.

William E. Devitt, P.C.,; Matthew J. Hertko, Esq.; Scott S. Evans, Esq.; Adam M. Kaufmann, Esq. of Kirkland & Ellis LLP of Chicago, Illinois

Edward C. Donovan, Esq. and D. Sean Trainor, Esq. of Kirkland & Ellis LLP of Washington, D.C.

*For Respondent Kingston Technology Company, Inc.:*

David M. Hoffman, Esq. of Fish & Richardson, P.C. of Austin, Texas

Christine Yang, Esq. and Victoria Hao, Esq. of Law Offices of S.J. Christine Yang of Fountain Valley, California

*For Respondent HiTi Digital, Inc.:*

Darrin A. Auito, Esq. of Westereman, Hattori, Daniels & Adrian, LLP of Washington, D.C.
Jenny W. Chen, Esq. of Chen IP Law Group of Taipei, Taiwan

Vinay V. Joshi of Eastwind Consultants Company Limited of Cleveland, Ohio

*For Respondent Canon Inc.:*

Calvin P. Griffith, Esq., David M. Maiorana, Esq.; David B. Cochran, Esq.; and Tracy A. Stitt, Esq. of Jones Day of Cleveland, Ohio

Ric Macciaroli, Esq. of Jones Day of Washington, D.C.

*For Respondents Newegg Inc. and Rosewill Inc.:*

Kent E. Baldauf, Jr., Esq.; Bryan P. Clark, Esq.; and Ryan J. Miller, Esq. of The Webb Law Firm of Pittsburgh, Pennsylvania

*For Respondent Acer Inc.:*

Eric C. Rusnak, Esq. and Harold Davis, Esq. of K&L Gates LLP of Washington, D.C.

,

Pursuant to the Notice of Investigation, 77 Fed. Reg. 26041 (May 2, 2012), this is the Initial Determination of the in the matter of *Certain Computers, Computer Peripheral Devices, and Components Thereof, and Products Containing the Same*, United States International Trade Commission Investigation No. 337-TA-841. *See* 19 C.F.R. § 210.42(a).

It is held that no violation of section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, has occurred in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain computers and computer peripheral devices and components thereof and products containing the same that infringe one or more of claims 7, 11, 19, and 21 of U.S. Patent No. 7,162,549; claims 1, 3, 4, 7, 9, 11, 12, and 14 of the U.S. Patent No. 7,295,443; claims 25, 26, 28, and 39 of U.S. Patent No. 7,522,424; claims 17-19 of the U.S. Patent No. 6,976,623; and claims 1-3 of U.S. Patent No. 7,719,847.

It is held that a violation of section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, has occurred in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain computers and computer peripheral devices and components thereof and products containing the same that infringe one or more of claims 1-4 and 9-12 of U.S. Patent No. 6,976,623.

| | | | |
|---|---|---|---|
| ███████████ | ███████████████ | ███████████████ | |
| ███████ | | | |
| ███████ | | ████ | ████ |
| ███████ | | ████ | ████ |
| ███████ | | ████ | ████ |
| ███████ | | ████ | ████ |
| ███████ | | ████ | ████ |
| ███████ | | ████ | ████ |

(CIB at 69-70.)

Thus, TPL argues that the controller in the accused products maps contact pins 7, 8, 9, 1, 2, and 5 to signal lines ███████████████████████████████████ ███████████████████████ respectively, if the identifed type of card is SD (for 4-bit data mode). However, only contact pins 7, 1, 2, and 5 are mapped to signal lines ████████ ███████████████████████████ respectively, if the identifed type of card is MMC (for 1-bit data mode). (CIB at 70.)

Respondents argue that this is simply not "mapping" within the meaning of claims. First, Respondents argue that the claims require that "'mapping' must occur between between between disparate physical structures—contact pins at one two physical elements—the interconnection pins/means or signal/power lines at the other end." (RIB at 62.) Second, Respondents argue that "mapping" cannot simply mean a pre-selected, fixed assignment of contact pins to signal/power lines or interconnection pins/means because a fixed assignment of contact pins is contrary to the plain language of the claims. (RIB at 62-63.) Respondents argue that the ability of a card reader

41

to accommodate and distinguish between SD cards and MMC cards is nothing more than a fixed assignment of pins. (RIB at 63.) The ALJ considers each in turn.

TPL argues that mapping signals does not require the controller physically fix and un-fix different contact pins to different signals or interconnction pins/means. TPL asserts that this theory would require the controller be somehow located between the contact pins and signal lines which TPL contends makes no sense in the context of the these patents.

The ALJ agrees that the accused products do not perform "mapping" within the meaning of the claim elements of the '443, '424, and '847 Patents, but not for all the reasons that Respondents provide. The ALJ would first like to finally lay to rest Respondents' "physically between" arguments. Respondents have built an edifice of various convuluted arguments on a brief discussion in the ALJ's claim construction, while ignoring any other contrary discussion in the same claim construction order. The discussion in question is from the ALJ's construction of the terms "contact pins" and "interrconnection means":

> The claim language in both the '424 Patent and the '847 Patent also support such a construction. Claims 25 and 28 clearly indicate that the "interconnection means" is a "separate and distinct" structure from the connection pin. Claims 25 and 28 require a "means for mapping" between "interconnection pins/means" and contact pins. ('424 Patent claim 25 and 28.) Thus, in order to map signals between "interconnection pins/means" and contact pins, "interconnection pins/means" and contact pins must be separate and distinct structures. Similarly, claim 1 of the '847 Patent claims an "interconnection means" that "connect[s] said signal lines to one or more contact pins."

Order No. 23 at 20.

In this discussion, the ALJ was attempting to decide the parties' claim construction dispute about whether the "contact pins" and "interconnection means" had to be separate structures or could be the same structure. (*See* Order No. 23 at 18-20 (laying out the dispute between the parties). This discussion was not directed at whether mapping requires connecting

or creating paths between different physical structures or not. Indeed, this claim construction dispute has matured into the lengthy infringement dispute between the parties as to whether structures that TPL has identified as the "contact pins" and "interconnection means" are separate structures or not. (*See* RIB at 53-63.) The ALJ was not seeking to resolve anything more than that claim construction dispute. The ALJ was simply noting that the claim language describes these two things — the contact pins and interconnection means — as distinct things, which supported the argument that the contact pins and interconnection means were could not be the same thing as TPL was arguing, without rendering the claim language superfluous.

The ALJ was not deciding through that brief paragraph whether the claim imposes any physical requirements on mapping. Indeed, the ALJ dealt (and thought he had resolved) the parties' disputes regarding whether mapping required altering physical connections in another part of Order No. 23:

> Respondents appear to concede that the mapping is a logical function and does not require some physical connection be changed in the device in order to accomplish it. Thus, TPL's concerns that the phrase "selectively connecting" will be used by Respondents to argue that the controller must physically connect the contact pins to different signal lines is also without foundation.

Order No. 23 at 29.

Now, Respondents seek impose a requirement that "[m]apping' as disclosed and claimed in the '443, '424, and '847 Patents, involves establishing a physical or logical connection between physical point 'A' (*i.e.*, 'contact pins') and physical point 'B' (i.e., interconnection pins/means' or 'signal/power lines')." (RIB at 63.) The ALJ notes that by including the words "logical connection", Respondents appear to be an attempt to harmonize this argument with their concession at the Markman stage that they wouldn't require a physical connection be changed for mapping to occur. However, the ALJ has no idea how one creates a logical connection or path between two physical points for a signal (which is another physical thing) to travel. The

testimony of Mr. McAlexander that Respondents offer (RIB at 63) on this point is incomprehensible. It seems to use logical path and physical path the same way:

> And so you have separate, distinct, identifiable, separated isolated structures, in this case at least one set of contact pins on one side and a set of signal lines or power lines on the other. And "to map" means to interconnect, to create a map between these two sets of disparate or different sets of structures, such as the contact pins and the power lines. So "to map" is to create the path. It's to identify the path. Now, that path can be physical, it can be logical. But there has to be a connectivity, has to be a path that's established. And that's what mapping is.

(Tr. 1471:18-1427:7.)

What does make sense to the ALJ is making a logical connection between physical points and some other data. For example, a logical connection can be made between a fixed electrical path and the identity of the signal that travels along that path. This is what is shown in Figures 4 and 5 of the patent. Thus, as those figures demonstrate, if an xD card is inserted, the controller knows that signal on contact pin 10 is the D0 signal and can map or logically associate the identity of that signal to that contact pin.

The ALJ finds, however, that this logical pathway leads to a point that TPL conceded: there cannot be fixed logical assignments of signals. (Order No. 23 at 29.) And on this point, Respondents raise an excellent and coherent argument: that the accused products cannot infringe because the logical assignments for the various contact pins is never mapped and is fixed. (RIB at 72-79.) The ALJ agrees.

Respondents argue that SD and MMC cards have compatible pin configurations, and the SD Specifications were drafted such that a single set of contact pins can accept both card types without the need to perform the "mapping" required for incompatible pin configurations. (RIB at 72.) Respondents assert that the ability of a card reader to distinguish between SD cards and MMC cards [redacted]

[redacted] and thus neither of these processes can constitute the claimed "mapping" of the '443, '424, or '847 Patents.

The ALJ finds that as can be seen above in the Figures [redacted] (CX-354C.18; CX-296C.27.) [redacted] (*Id.*; RX-2888C at Q/A 82, 164; RX-2885C at Q/A 59, RX-2369.0019; JX-0068.0019.) The only difference between the cards is that the data in the SD card is four bit bus, which requires four pins for data, and the MMC card only requires one. (RX-2369.0019; RDX-0482.) [redacted] (RX-2888C, Q/A 56-60, 160-79; RX-22369.0019-20; JX-0068.0019-20; RDX-0412; RDX-0480; RDX-0481.)

SUBJECT TO PROTECTIVE ORDER

[redacted]



**PUBLIC VERSION**

As Dr. Mercer explained, when the SD card is inserted the compatibility between the SD and MMC cards allows the controller to begin communication with the inserted card, performing card initialization (*i.e.*, hand shaking) and data transfer without the need for "mapping." (RX-2888C at Q/A 172; RDX-0484 through RDX-0488.) Therefore, the ALJ finds that a card reader does not need to perform the claimed mapping" to accommodate SD and MMC card types in the same slot. (RX-2888C, Q/A 56-60; RDX-0412.)

**Figure 19 (RDX-0412)**

The SD and MMC card types are designed to have compatible pin configurations, and they are treated exactly the same in the '443, '424, and '847 Patents. (*See, e.g.*, Figs. 4 and 5 of JX-0003, JX-0004, and JX-0006.) Therefore, the ALJ finds that a card reader does not need to perform the claimed "mapping" to accommodate SD and MMC card types in the same slot. (RX-2888C, Q/A 56-60; RDX-0412.)

The SD Specifications describe the initialization process as follows:

[redacted]

[redacted]

The ALJ finds that when a card is inserted into a card reader, the SD Specifications [redacted] (RX-2888C, Q/A 170-76.) As shown in RDX-0487, [redacted] (RX-2888C, Q/A 175; RDX-0487.) However, [redacted] (Id.) After the card type is identified, [redacted] (RX-2888C, Q/A 177-79.) However, as Dr. Mercer explains, [redacted]

[redacted] (Buscaino, Tr. 538:16-539:4.)

The ALJ finds that Mr. Berg explained that distinguishing between an SD and MMC cards does not show evidence of the claimed "mapping" because, the evidence only shows that [redacted] (RX-2885C, Q/A 81-92; *see also id.* at Q/A 103-05, 110, 112-13, 119-21 (as to Acer).) Specifically, the ALJ finds that a communication with an MMC card and communication with an SD card occurs across a 1-bit wide data bus. (*Id.* at 87.) The ALJ finds that Mr. Buscaino provided no evidence that any device ever operates using a data bus wider than 1-bit when an SD card is inserted, and Mr. Berg explained that such functionality is optional. (*Id.* at 88, 91-92.) Thus, although the ALJ notes that TPL's arguments regarding mapping were eminently reasonable, the ALJ finds that they have not proven that the "mapping" elements found in all the asserted claims of the '443, '424, and '847 Patents. Accordingly, the ALJ finds that because TPL has failed to prove the presence of all of the elements of the asserted claims, TPL has failed to prove infringement of the asserted claims of the '443, '424, and '847 Patents.

**2. Respondents' Products Which Support Only One Memory Card Type Do Not Infringe**

Respondents contend that under the ALJ's claim construction, the "mapping limitations of the asserted claims of the '443, '424, and '847 Patents require that "at least some of the contact pins must be shared by different memory card types." (RIB at 83 (quoting Order No. 23 at 31).) Respondents argue that certain Respondents have modified products in this investigation or added new products that do not read from or write to MMC memory cards. (RIB at 83.) Thus, the memory card adapters of these new and modified products only support one card type

## VIII. CONCLUSIONS OF LAW

1. The Commission has personal jurisdiction over the parties and subject-matter and *in rem* jurisdiction over the accused products.

2. The importation or sale requirement of section 337 is satisfied.

3. The Accused Products do not infringe the '443, '424, '847, and '549 Patents.

4. The Accused Products infringe the asserted claims of the '623 Patent.

5. TPL has failed to prove that Respondents induced infringement of the '623 Patent.

6. The '443, '424, '847,'549, and '623 Patents are not invalid under 35 USC § 102 for anticipation.

7. The '443, '424, '847,'549, and '623 Patents are not invalid under 35 USC § 103 for obviousness.

8. The '424 and '847 Patents are not invalid under 35 USC § 112 for indefiniteness.

9. The '424 Patent is not invalid under 35 USC § 112 for new matter.

10. The '847 and '549 Patents are not invalid under 35 USC § 112 for lack of written description.

11. The technical prong of the domestic industry requirement has not been satisfied.

12. The economic prong of the domestic industry requirement under 19 U.S.C. § 1337(a)(3)(C) has been satisfied.

13. It has not been established that a violation exists of section 337 for the asserted claims of the '443, '424, '847, and '549 Patents.

14. It has been established that a violation exists of section 337 for claims 1-4 and 9-12 of the '623 Patent.

Any party seeking to have any portion of this document deleted from the public version thereof must submit to this office (1) a copy of this document with red brackets indicating any portion asserted to contain confidential business information by the aforementioned date and (2) a list specifying where said redactions are located. The parties' submission concerning the public version of this document need not be filed with the Commission Secretary.

**SO ORDERED.**

Theodore R. Essex
Administrative Law Judge