# EXHIBIT 2

Case 4:14-cv-03645-CW   Document 79-2   Filed 05/28/15   Page 2 of 9

# UNFAIR COMPETITION AND THE ITC

A Treatise on Section 337 Actions

**2014-2015 Edition**

Marcia H. Sundeen
John W. Bateman
T. Cy Walker
Aimee N. Soucie

Kenyon & Kenyon LLP



THOMSON REUTERS

# UNFAIR COMPETITION AND THE ITC

## A Treatise on Section 337 Actions
### 2014-2015 Edition

**Marcia H. Sundeen**
**John W. Bateman**
**T. Cy Walker**
**Aimee N. Soucie**

**Kenyon & Kenyon LLP**

### STAFF EDITORS
J.B. Betker
Andrew Kasnevich
Coy Stull


THOMSON REUTERS™

*For Customer Assistance Call 1-800-328-4880*

Mat #41454276

© 2014 Thomson Reuters

Copyright is not claimed as to any part of the original work prepared by a United States Government officer or employee as part of the person's official duties.

For authorization to photocopy, please contact the **Copyright Clearance Center** at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400; fax (978) 646-8600 or **Copyright Services** at 610 Opperman Drive, Eagan, MN 55123, fax (651) 687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use.

This publication was created to provide you with accurate and authoritative information concerning the subject matter covered; however, this publication was not necessarily prepared by persons licensed to practice law in a particular jurisdiction. The publisher is not engaged in rendering legal or other professional advice and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

*eBay*, should have considered the following equitable factors: (1) the PTO rejected some of the asserted claims as unpatentable in the reexamination; and (2) Tessera could be made whole by damages because Tessera is simply a licensor and does not actually practice the invention."[7] The Federal Circuit rejected this argument, stressing the difference between exclusion orders granted under Section 337 and injunctions granted under the Patent Act.[8]

## § 9:9 Standard of review/burden of proof—Temporary relief issues

**Research References**

West's Key Number Digest, Trade Regulation ⚖︎831.1

In a temporary relief case, the Federal Circuit has stated that, on appellate review, it must determine whether in granting or denying temporary relief the ITC abused its discretion.[1] Under this standard, the court "may set aside the decision under review if it rests on the foundation of an erroneous understanding of the law or on clearly erroneous findings of fact."[2] The court concluded that "if no material legal or factual error is discerned, we may set aside a decision committed to the discretion of the review tribunal only if it committed a clear error of judgment, that is, its decision, based on the facts, is patently unreasonable, arbitrary, or fanciful."[3]

## § 9:10 How ITC determinations impact district court proceedings

**Research References**

West's Key Number Digest, Trade Regulation ⚖︎840

ITC determinations impact district court proceedings differently depending on whether the determinations are based on patent rights or other types of intellectual property rights. The Federal Circuit has held that the legislative history of section 337 requires that ITC patent-based determinations, such as infringement, validity, and unenforceability, and appellate decisions of those determinations do not have *res judicata* or preclusive effect; they do not estop fresh consideration by other tribunals.[1] District courts, however, often consider ITC patent-based determinations to be persuasive author-

---

[7]*Spansion, Inc.*, 629 F.3d at 1357.

[8]*Spansion, Inc.*, 629 F.3d at 1359-1360.

[Section 9:9]

[1]Rosemount, Inc. v. U.S. Int'l Trade Comm'n, 910 F.2d 819, 821 (Fed. Cir. 1990) (citing Illinois Tool Works, Inc. v. Grip-Pak, Inc., 906 F.2d 679, 681-682 (Fed. Cir. 1990)).

[2]Rosemount, Inc. v. Int'l Trade Comm'n, 910 F.2d 819, 821 (Fed. Cir. 1990).

[3]Rosemount, Inc. v. U.S. Int'l Trade Comm'n, 910 F.2d 819, 821 (Fed. Cir. 1990) (citations omitted).

[Section 9:10]

[1]Tandon Corp. v. U.S. Int'l Trade Comm'n, 831 F.2d 1017 (Fed. Cir. 1987) (citing S. Rep. No. 93-1298, reprinted in 1974 U.S. Code, Cong. & Admin. News 7186, 7329); Texas Instruments Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1568-1569 (Fed. Cir. 1996); Bio-Tech. Gen. Corp. v. Genentech, Inc., 80 F.3d 1553, 1564 (Fed. Cir. 1996); Lannom Mfg. Co., Inc. v. U.S. Int'l Trade Comm'n, 799 F.2d 1572, 1577-1578 (Fed. Cir. 1986); Corning Glass Works v. U.S. Int'l Trade Comm'n, 799 F.2d 1559, 1570 n.12 (Fed. Cir. 1986); *see also* In re Convertible Rowing Exerciser Patent Litig., 721 F. Supp. 596 (D. Del. 1989) (ITC determination of patent invalidity under section 337, *affirmed* by Federal Circuit, does not estop or preclude federal district court from adjudicating the same patent validity question under its original and exclusive jurisdiction found in 28 U.S.C.A. § 1338 (1982)). *But see* In re Convertible Rowing Exerciser Patent Litig., 814 F. Supp. 1197 (D. Del. 1993) (granting preclusive effect against a complainant to ITC findings of fact). The

ity, and the Federal Circuit has supported this practice.[2] On the other hand, the Second Circuit has determined that non-patent-based ITC determinations, such as trademark and antitrust, do not fall under this jurisdictional bar.[3] These non-patent-based determinations generally are binding on other tribunals.[4]

### (a) Patent-based Determinations

The Federal Circuit has declined to give preclusive effect to ITC determinations based on Congress' intent that the ITC be primarily responsible for administering the trade laws, not the patent laws:

> [I]n patent-based cases, the Commission considers, for its own purposes under section 337, the status of imports with respect to the claims of U.S. patents. The Commission's findings neither purport to be, nor can they be, regarded as binding interpretations of the U.S. patent laws in particular factual contexts. Therefore, it seems clear that any disposition of a Commission action by a Federal Court should not have a *res judicata* or collateral estoppel effect in cases before such courts.[5]

Even though ITC decisions reviewed by the Federal Circuit may not have *res judicata* or collateral estoppel effect, such decisions are persuasive. The Federal Circuit squarely addressed this issue in *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, stating:

> TI also argues that by our denying preclusive effect to ITC determinations and to our decisions in appeals from ITC decisions, district courts would be free to ignore our decisions. That is not correct. District courts are not free to ignore holdings of this court that bear on cases before them.[6]

The Federal Circuit in *Texas Instruments* then proceeded to address the effect of its earlier decision on a subsequent Federal Circuit panel and stated:

> Subsequent panels of this court are similarly not free to ignore precedents set by prior panels of the court. . . .
>
> The district court can attribute whatever persuasive value to the prior ITC decision that it considers justified. And we, on appeal, must be free to thoroughly review the district court's decision. As a court we are bound to follow our own precedents, and, to the extent that we have previously ruled on a matter, a subsequent panel will have powerful incentives not to deviate from that prior holding, short of thoroughly justified grounds.[7]

---

court stated: "It is sound policy to apply principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity." *Convertible Rowing Exerciser*, 814 F. Supp. at 1202 (citation omitted).

[2]*Texas Instruments v. Cypress Semiconductor*, 90 F.3d at 1569 ("The district court can attribute whatever persuasive value to the prior ITC decision that it considers justified."); *see*, e.g., Minn. Mining & Mfg. Co. v. Beautone Specialties Co., 117 F. Supp. 2d 72 (D. Mass. 1999); Fuji Photo Film Co. v. Jazz Photo Corp., 173 F. Supp. 2d 268 (D.N.J. 2001); Alloc, Inc. v. Norman D. Lifton Co., 2007 Markman 2089303, 2007 WL 2089303 (S.D.N.Y. 2007); Solomon Techs. Inc. v. Toyota Motor Corp., 93 U.S.P.Q.2d 1698, 2010 WL 669736 (M.D. Fla. 2010); Flexsys Am. LP v. Kumho Tire U.S.A., Inc., 695 F. Supp. 2d 609 (N.D. Ohio 2010); Lincoln Electric Co. v. National Standard, LLC, 2011 WL 2181697 (N.D. Ohio 2011).

[3]Union Mfg. Co. v. Han Baek Trading Co., 763 F.2d 42, 45-46 (2d Cir. 1985).

[4]*See*, e.g., Telectronics Proprietary, Ltd. v. Medtronic, Inc., 687 F. Supp. 832 (S.D.N.Y. 1988); Baltimore Luggage Co. v. Samsonite Corp., 727 F. Supp. 202, 205 (D. Md. 1989); Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3 (1st Cir. 1992).

[5]Tandon Corp. v. U.S. Int'l Trade Comm'n, 831 F.2d 1017 (Fed. Cir. 1987) (quoting the above-cited Senate Report which accompanied the Trade Act of 1974).

[6]Texas Instruments Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1569 (Fed. Cir. 1996).

[7]Texas Instruments v. Cypress Semiconductor, 90 F.3d at 1569.

District courts have relied on this language to afford Federal Circuit claim interpretations in ITC decisions what the court in *Alloc, Inc. v. Norman D. Lifton Co.* called a "strong presumption of correctness."[8]

In *Alloc, Inc.*,[9] the district court reasoned that "the proper interpretation of *Texas Instruments* in the claim construction context is that a district court should afford Federal Circuit claim interpretation on appeal from the ITC a strong presumption of correctness, and deviate only where the party advancing an alternative interpretation provides compelling reasons to do so." In *Alloc, Inc.*, the parties had already litigated the matter before the ITC, and on appeal the Federal Circuit had interpreted the relevant claims in the patent.[10] The Federal Circuit found the prosecution history and the specification to each be independently sufficient to interpret the claims as having a "play" limitation. After the Federal Circuit decision, the Patent Office reissued the patent, and in the reissue proceedings, plaintiffs made repeated assertions that the claims had no "play" limitation. Plaintiffs attempted to overcome the strong presumption of correctness afforded to the Federal Circuit's claim constructions by arguing "that the [Federal Circuit] erred in finding a disavowal of non-play systems during the original [patent] prosecution, and in the alternative that the reissue proceeding supersedes any prior disavowal."[11] In commenting on the application of *Texas Instruments*, the court stated:

> [T]exas Instruments strongly suggests that future Federal Circuit panels should not deviate from prior rulings except on "thoroughly justified grounds." At a minimum, what is a suggestion to future Circuit panels must be understood as a command to district courts. Given the greater authority and capacity of the Federal Circuit, a district court should accord prior rulings more deference than would a subsequent Circuit panel.
>
> This conclusion is supported by "the importance of uniformity" relied on by the Supreme Court in holding claim construction to be entirely an issue of law for the court to determine. *Markman, 517 U.S. at 391*. The Court hoped that legal conclusions as to claim construction would promote certainty through stare decisis even where issue preclusion did not apply. As the Court noted, the Federal Circuit was created precisely to ensure consistent ruling on patent scope, preventing a "zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims." Id. [citation omitted] When inventors and entrepreneurs may not rely on the Federal Circuit's own determination of the limitations of an existing patent, just such a 'zone of uncertainty' exists. *Deviation from Federal Circuit findings should therefore be considered only under unusually compelling circumstances.*[12]

The district court found that, "[a]bsent compelling reason to deviate from the Federal Circuit's findings, the Court must construe the relevant claim terms as incorporating a play limitation."[13] The court also gave examples of what might qualify as compelling reasons to deviate: "Such reasons might include evidence or arguments not presented to the Circuit panel or, in the rarest of cases, plain error on the face of the Federal Circuit opinion."[14]

---

[8]Alloc, Inc. v. Norman D. Lifton Co., 2007 WL 2089303 at *11 (S.D.N.Y. 2007).

[9]Alloc, Inc. v. Norman D. Lifton Co., 2007 WL 2089303 at *11 (S.D.N.Y. 2007).

[10]Alloc, Inc. v. U.S. Int'l Trade Comm'n, 342 F.3d 1361 (Fed. Cir. 2003).

[11]Alloc, Inc. v. Norman D. Lifton Co., 2007 WL 2089303 at *11 (S.D.N.Y. 2007).

[12]Alloc, Inc. v. Norman D. Lifton Co., 2007 WL 2089303 at *10 (S.D.N.Y. 2007) (emphasis added); see also Alloc, Inc. v. Pergo, LLC, 2009 Markman 1939034, 2009 WL 1939034 (E.D. Wis. 2009).

[13]Alloc, Inc. v. Norman D. Lifton Co., 2007 WL 2089303 at *11 (S.D.N.Y. 2007).

[14]Alloc, Inc. v. Norman D. Lifton Co., 2007 WL 2089303 at *11 (S.D.N.Y. 2007).

# § 9:10 UNFAIR COMPETITION AND THE ITC

In *Solomon Techs. Inc. v. Toyota Motor Corp.*,[15] the district court relied on the Federal Circuit's holding in an appeal of an earlier ITC proceeding to grant summary judgment in favor of the defendant.[16] Solomon had previously brought an ITC proceeding against Toyota. After a ruling of noninfringement by the ITC and an unsuccessful appeal to the Federal Circuit, Solomon proceeded against Toyota in district court renewing its claims of infringement, but did so on a theory that conflicted with the theory it had put forth in the ITC. The district court, relying on *Texas Instruments*, stated that its "window of review is effectively a narrow slit."[17] The court found "that Solomon is estopped from taking a contrary position to its administrative stance and no reason to deviate from the Federal Circuit's holding" and granted summary judgment in favor of Toyota.[18]

Likewise, in *Flexsys Am. LP v. Kumho Tire U.S.A., Inc.*,[19] the district court, citing *Alloc, Inc.*,[20] reasoned that prior rulings of the Federal Circuit should be afforded more deference by the district court than would a subsequent Circuit panel.[21] In that case, the parties had already litigated the matter before the ITC.[22] The key issue in the ITC proceeding was the definition of the term "controlled amount." The Federal Circuit, in overruling the Commission, adopted the definition urged by defendants.[23] The district court, after taking additional evidence, agreed with the Federal Circuit's definition, noting that the prior claim interpretation by the Federal Circuit was entitled to a strong presumption of correctness.[24]

Even without a Federal Circuit holding, district courts use ITC patent-based determinations as persuasive authority. For example, in *Glasstech, Inc. v. AB Kyro Oy*,[25] the court issued a preliminary injunction on the basis of an ITC final determination of patent validity and infringement,[26] and a showing of irreparable injury if the ITC respondent were allowed to evade the existing ITC exclusion order.[27]

However, not all district courts have viewed ITC patent-based determinations favorably. *In re Convertible Rowing Exerciser Patent Litigation*,[28] a consolidated case involving nine separate patent infringement actions, illustrates this principal. Diversified Products Corporation, the plaintiff, also filed a complaint in the ITC against the various defendants alleging importation of goods infringing one of the same patents

---

[15]Solomon Techs. Inc. v. Toyota Motor Corp., 93 U.S.P.Q.2d 1698, 2010 WL 669736 (M.D. Fla. 2010).

[16]Solomon Techs., Inc. v. U.S. Int'l Trade Comm'n, 524 F.3d 1310 (Fed. Cir. 2008).

[17]Solomon Techs. Inc. v. Toyota Motor Corp., 93 U.S.P.Q.2d at 1701.

[18]Solomon Techs. Inc. v. Toyota Motor Corp., 93 U.S.P.Q.2d at 1699.

[19]Flexsys Am. LP v. Kumho Tire U.S.A., Inc., 695 F. Supp. 2d 609 (N.D. Ohio 2010).

[20]Alloc, Inc. v. Norman D. Lifton Co., 2007 WL 2089303 at *10 (S.D.N.Y. 2007).

[21]Flexsys Am., 695 F. Supp. 2d at 617.

[22]Rubber Antidegradants, Inv. No. 337-TA-533.

[23]Sinorgchem Co., Shandong v. U.S. Int'l Trade Comm'n, 511 F.3d 1132 (Fed. Cir. 2007).

[24]Flexsys Am., 695 F. Supp. 2d at 617 (quoting Alloc, Inc. v. Norman D. Lifton Co., 2007 WL 2089303 at *11 (S.D.N.Y. 2007)).

[25]Glasstech, Inc. v. Ab Kyro Oy, 635 F. Supp. 465 (N.D. Ohio 1986).

[26]Glass Tempering Systems, Inv. No. 337-TA-171, 48 Fed. Reg. 52136 (1984).

[27]Glasstech, 635 F. Supp. at 468; see also Lincoln Electric Co. v. National Standard, LLC, 2011 WL 2181697 at *3 (N.D. Ohio 2011) ("although this Court is not bound by the ITC decision, the Court finds it persuasive and, thus, adopts that construction of the term.").

[28]In re Convertible Rowing Exerciser Patent Litig., 721 F. Supp. 596, 603-04 (D. Del. 1989).

involved in the parallel district court litigation.[29] The ITC found no violation of section 337 because it found the patent invalid for obviousness. Following the Federal Circuit's affirmation of the ITC decision, the defendants filed for summary judgment on the same issue in district court. The district court denied the motion for summary judgment based on "the exclusive jurisdiction of [district courts] in patent matters and the stark contrast in both form and substance between questions on appeal before the Federal Circuit from the ITC" and the district court.[30]

Recently, in *LG Elecs. USA, Inc v. Whirlpool Corp.*,[31] a district court excluded a parallel ITC final determination from evidence in a jury trial. Whirlpool had instituted an ITC investigation[32] prior to LG filing suit in district court over the same patents. Whirlpool then counter-claimed against LG in district court. The ITC issued a final determination finding invalidity after the district court had issued its claim construction order.[33] LG, rather than arguing that the ITC final determination should be awarded preclusive effect as to validity, argued that the ITC final determination should be dispositive, or at the very least should be admitted as being probative, as to the issue of willful infringement.[34] The court rejected LG's arguments finding that there were factual issues preventing the court from finding the ITC final determination to be dispositive on willfulness and that the evidence was too prejudicial to be admitted before a jury.[35]

In summary, while some district courts have deviated from prior ITC determinations, others have followed *Texas Instruments* and given patent-based ITC determinations persuasive authority.

### (b) Non Patent-based Determinations

The Second Circuit has held that the jurisdictional bar on *res judicata* discussed above for patent-based ITC determinations does not apply to determinations relating to certain unfair trade practices. It distinguished ITC determinations under section 337 in trademark and other nonpatent based determinations from patent-based determinations in *Union Mfg. Co. v. Han Baek Trading Co.*,[36] and other courts have followed suit.[37]

In *Union Manufacturing*,[38] Union had filed an ITC complaint alleging that Han Baek and 11 other Korean respondents had violated section 337 by engaging in common law trademark infringement and passing off a false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C.A. 1125(a).[39] When the ITC ruled in favor of the respondents, Union filed suit in district court against Han Baek instead of appealing the

---

[29]Convertible Rowing Exercisers, Inv. No. 337-TA-212; Diversified Prods. Corp. v. Weslo Design Int'l, 616 F. Supp. 1134 (D. Del. 1985).

[30]Convertible Rowing Exerciser Patent Litig., 721 F. Supp. at 603-04; *see also* PCTEL, Inc. v. Agere Sys., Inc., 2006 Markman 734385, 2006 WL 734385, at *8 (N.D. Cal. 2006) ("Moreover, the Court finds the ITC analysis unpersuasive on this particular issue.")

[31]LG Elecs. U.S.A., Inc. v. Whirlpool Corp., 2009 WL 3738306 (D. Del. 2009).

[32]Refrigerators, Inv. No. 337-TA-632 (instituted Feb. 26, 2008).

[33]*See* Order Construing the Terms (D.I. 204), LG Elecs., No. 08-234 (D. Del. Aug. 4, 2009).

[34]Transcript of Telephone Conference, LG Elecs. (D.I. 368), No. 08-234 (D. Del. Feb. 17, 2010).

[35]Transcript of Telephone Conference, LG Elecs. (D.I. 368), No. 08-234 (D. Del. Feb. 17, 2010).

[36]Union Mfg. Co. v. Han Baek Trading Co., 763 F.2d 42 (2d Cir. 1985).

[37]*See*, e.g., Telectronics Proprietary, Ltd. v. Medtronic, Inc., 687 F. Supp. 832 (S.D.N.Y. 1988); Baltimore Luggage Co. v. Samsonite Corp., 727 F. Supp. 202 (D. Md. 1989); Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3 (1st Cir. 1992).

[38]Union Mfg., 763 F.2d 42.

[39]Vacuum Bottles, Inv. No. 337-TA-108.