UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CLAUDIA WILKEN, JUDGE

TECHNOLOGY PROPERTIES LIMITED LLC

AND MCM PORTFOLIO LLC,

PLAINTIFFS,

VS.                                              NO. C-14-3640 CW

CANON, INC., ET AL.,                             PAGES 1 - 103

DEFENDANTS.
_____

TECHNOLOGY PROPERTIES LIMITED,

PLAINTIFF,

VS.                                              NO. C-14-3541 CW

FALCON NORTHWEST COMPUTER SYSTEMS,

INC.,

DEFENDANT.

_____

OAKLAND, CALIFORNIA

JUNE 18, 2015

TRANSCRIPT OF PROCEEDINGS

(CAPTION CONTINUED ON NEXT PAGE)

REPORTED BY:  KATHERINE WYATT, CSR, RPR, RMR

OFFICIAL REPORTER, USDC
COMPUTERIZED TRANSCRIPTION BY ECLIPSE

1   TECHNOLOGY PROPERTIES LIMITED,

2                    PLAINTIFF,

3     VS.                                    NO. C-14-3642 CW

4   HITI DIGITAL, INC., ET AL.,

5                    DEFENDANTS.

6   _____

7   TECHNOLOGY PROPERTIES LIMITED LLC,

8                    PLAINTIFF,

9     VS.                                    NO. C-14-3643 CW

10  HEWLETT-PACKARD COMPANY,

11                   DEFENDANT.

12  _____

13  TECHNOLOGY PROPERTIES LIMITED LLC,

14                   PLAINTIFF,

15    VS.                                    NO. C-14-3644 CW

16  KINGSTON TECHNOLOGY, CO., INC.,

17                   DEFENDANT.

18  _____

19  TECHNOLOGY PROPERTIES LIMITED LLC,

20                   PLAINTIFF,

21    VS.                                    NO. C-14-3645 CW

22  NEWEGG INC., ET AL.,

23                   DEFENDANTS.

24  _____

25                  (CAPTION CONTINUED)

KATHERINE WYATT, PRO TEM REPORTER, CSR, RMR (925) 212-5224

1    TECHNOLOGY PROPERTIES LIMITED LLC,

2                          PLAINTIFF,

3      VS.                                    NO. C-14-3646 CW

4    SEIKO EPSON CORPORATION, ET AL,

5                          DEFENDANTS.

6    _____

7    TECHNOLOGY PROPERTIES LIMITED LLC,

8                          PLAINTIFF,

9      VS.                                    NO. C-14-3647 CW

10   SHUTTLE, INC.,  ET AL.,

11                         DEFENDANTS.

12   _____

13   TECHNOLOGY PROPERTIES LIMITED LLC,

14                         PLAINTIFF,

15     VS.                                    NO.  C-14-4616 CW

16   ACTION ELECTRONICS, CO., LTD., ET AL.,

17                         DEFENDANTS.

18   _____

19

20   APPEARANCES ON NEXT PAGE.

21

22

23

24

25

```
 1   APPEARANCES:

 2   FOR PLAINTIFF:

 3   THE SIMON LAW FIRM, P.C.

 4   800 MARKET STREET, SUITE 1700

 5   ST. LOUIS, MISSOURI 63101

 6   BY:  ANTHONY SIMON, ESQUIRE

 7        BENJAMIN R. ASKEW, ESQUIRE

 8        MICHAEL P. KELLA, ESQUIRE

 9   AND

10   BUNSOW, DE MORY, SMITH & ALLISON

11   600 ALERTON STREET, SUITE 101

12   REDWOOD CITY, CALIFORNIA 94063

13   BY:  DENISE M. DE MORY, ATTORNEY AT LAW

14

15   FOR DEFENDANT SEIKO EPSON:

16   (C-14-3646)

17   JONES DAY

18   77 W. WACKER, SUITE 3500

19   CHICAGO, ILLINOIS 60601

20   BY:  WILLIAM E. DEVITT, ESQUIRE

21        MATTHEW HERTKO, ESQUIRE.

22   JONES DAY

23   NORTH POINT  901 LAKESIDE AVENUE

24   CLEVELAND, OHIO 44114

25   BY:  DAVID M. MAIORANA, ESQUIRE
```

```
 1    APPEARANCES CONTINUED:

 2    JONES DAY

 3    51 LOUISIANA AVENUE, N.W.

 4    WASHINGTON, D.C. 20001-2113

 5    BY:  TRACY A. STITT, ATTORNEY AT LAW

 6

 7    FOR DEFENDANT SONY:

 8    (C-14-4616)

 9    KENYON & KENYON

10    1500 K STREET, NW

11    WASHINGTON, DC 20006-1257

12    BY:  T. CY WALKER, ESQUIRE

13

14    AND

15

16    KENYON & KENYON

17    1801 PAGE MILL ROAD, SUITE 210

18    PALO ALTO, CALIFORNIA 94304-1216

19    BY:  MEGAN WHYMAN OLESEK, ATTORNEY AT LAW

20

21

22

23    APPEARANCES CONTINUED ON NEXT PAGE.

24

25
```

```
 1   FURTHER APPEARANCES:

 2

 3   FOR DEFENDANT FALCON NORTHWEST:

 4   (C-14-3641)

 5   NEWEGG

 6   (C-14-3641

 7   LITIGATION LAW GROUP

 8   1801 CLEMENT AVENUE

 9   SUITE 101

10   ALAMEDA, CALIFORNIA 94501

11   BY:  GORDON M. FAUTH, JR., ESQUIRE

12

13   FOR DEFENDANT HEWLETT-PACKARD:

14   GOODWIN PROCTER, LLP

15   901 NEW YORK AVENUE, NW

16   WASHINGTON, D.C. 20001

17   BY:  MARCIA H. SUNDEEN, ATTORNEY AT LAW

18

19

20

21

22

23

24

25
```

```
1    JUNE 18, 2015                      2:00 O'CLOCK P.M.

2

3                         P R O C E E D I N G S

4         THE CLERK:  WE ARE CALLING C-14-3640, TECHNOLOGY

5    PROPERTIES LIMITED, LLC VERSUS CANON, INC., ET AL.

6         COUNSEL, PLEASE COME TO THE PODIUM, AND STATE YOUR

7    APPEARANCES.

8         MR. SIMON:  TONY SIMON, SIMON LAW FIRM, ON BEHALF OF

9    THE PLAINTIFFS.

10        SHOULD I HAVE EVERYONE COME UP OR SHOULD I --

11        THE COURT:  NO.

12        MR. SIMON:  NO?

13        THE COURT:  JUST SAY ALL THEIR NAMES.

14        MR. SIMON:  OKAY.  BENJAMIN ASKEW FROM THE SIMON LAW

15   FIRM.

16        AND WE ALSO HAVE MICHAEL KELLA FROM THE SIMON LAW FIRM.

17        DENISE DE MORY FROM THE BUNSOW DE MORY LAW FIRM.

18        THE CLERK:  AND FROM CANON?

19        MR. MAIORANA:  GOOD AFTERNOON, YOUR HONOR.  DAVID

20   MAIORANA FROM JONES DAY ON BEHALF OF CANON, INC. AND CANON USA,

21   INC.

22        I AM JOINED BY TRACY STITT, MY PARTNER.

23        THE CLERK:  CALLING CIVIL CASE 14-3646, TECHNOLOGY

24   PROPERTIES LIMITED, LLC VERSUS SEIKO EPSON CORPORATION, ET AL.

25        THE COURT:  WE HAVE THE SAME PLAINTIFFS FOR EVERYBODY,
```

1    I PRESUME.

2             **MR. SIMON:**  YES, YOUR HONOR.

3             **MR. DEVITT:**  BILL DEVITT, JONES DAY, REPRESENTING SEIKO

4    EPSON AND EPSON AMERICA.  WITH ME IS MY COLLEAGUE MATT HERTKO,

5    JONES DAY.

6             **THE CLERK:**  CALLING CIVIL CASE 14-3645, TECHNOLOGY

7    PROPERTIES LIMITED, LLC VERSUS NEWEGG, INC., ET AL.

8             **MR. FAUTH:**  GOOD AFTERNOON, YOUR HONOR.  GORDON FAUTH

9    REPRESENTING NEWEGG, INC. AND ROSEWILL, INC.

10            **THE CLERK:**  AND NOW CALLING CIVIL CASE 14-3643,

11   TECHNOLOGY PROPERTIES LIMITED, LLC VERSUS HEWLETT-PACKARD

12   COMPANY.

13            **MS. SUNDEEN:**  GOOD AFTERNOON, YOUR HONOR.  MARCIA

14   SUNDEEN ON BEHALF OF HEWLETT-PACKARD.  WITH ME ARE CY WALKER AND

15   MEGAN OLESEK.

16            **THE COURT:**  ALL RIGHT.  WELL, WITH RESPECT TO THE

17   MOTION FOR JUDGMENT ON THE PLEADINGS, I AM INCLINED TO DENY THAT

18   MOTION.  I THINK THE LANGUAGE ABOUT THE COURT OF COMPETENT

19   JURISDICTION DOESN'T COVER THE ITC AS CONGRESS HAS INDICATED THAT

20   THE ITC WASN'T INTENDED TO BE DISPOSITIVE OF SUCH THINGS, SO

21   UNLESS SOMEBODY HAS SOME STARTLING NEW INSIGHTS MY INCLINATION

22   WOULD BE TO DENY THAT ONE.

23         WITH RESPECT TO THE CLAIM CONSTRUCTION, I THINK MAYBE THE

24   BEST THING WOULD BE FOR ME TO GO THROUGH THE DISPUTED TERMS AND

25   TELL YOU WHAT I THINK ABOUT SOME OF THEM OR WHAT MY QUESTIONS ARE

1    ABOUT SOME OF THEM.

2         AND THEN, I DON'T KNOW IF DEFENDANTS HAVE CONSOLIDATED THEIR

3    ARGUER INTO ONE PERSON OR IF EVERYONE HAS SOMETHING THEY WANT TO

4    SAY BUT --

5              **MR. DEVITT:**  YOUR HONOR, WE HAVE THEM BY TERMS, SO IF

6    YOU HAVE A QUESTION WITH A PARTICULAR TERM WE HAVE A

7    REPRESENTATIVE BASED ON THAT.

8              **THE COURT:**  OKAY.  AND THEN, WE HAVE THE CASE

9    MANAGEMENT ISSUES, WHICH WE HAVE TO TALK ABOUT, AS WELL.  PLEASE

10   DON'T LET ME FORGET THAT.

11        TO START WITH I THINK WE NEED TO BE CLEAR THAT WHAT WE HAVE

12   HERE IS CLAIM CONSTRUCTION AND NOT AN OMNIBUS MOTION ON THE

13   VALIDITY OF THE PATENT OR THE DEFINITENESS OF THE CLAIMS OR THE

14   ENABLEMENT OR NOT OR ANY OF THOSE OTHER THINGS.

15        A NUMBER OF THOSE THINGS ARE REFERRED TO BUT THOSE -- ALL

16   I'M DOING NOW IS CONSTRUING CLAIMS.

17             **MR. SIMON:**  AGREED.

18             **THE COURT:**  I MEAN, I CAN'T -- I CAN'T FIND THE PATENT

19   INVALID BASED ON --

20             **MR. SIMON:**  WE AGREE.

21             **THE COURT:**  MAYBE WHAT I WOULD DO WOULD LEAD LATER TO

22   SOME SUCH FINDING, BUT NONE OF THAT IS TEE'D UP AT THE MOMENT, I

23   DON'T THINK.

24             **MR. DEVITT:**  CAN'T CROSS THAT, YOUR HONOR.

25             **THE COURT:**  OKAY.

1          **MR. DEVITT:**  WITH RESPECT TO THE 112-6 INDEFINITENESS

2    ISSUE, WE BELIEVE YOU --

3          **THE COURT:**  WELL, I CAN SAY WHAT IS A

4    MEANS-PLUS-FUNCTION CLAIM.

5          **MR. DEVITT:**  CORRECT.

6          **THE COURT:**  I CAN SAY WHAT THE FUNCTION IS AND I CAN

7    SAY WHAT THE STRUCTURE IS.

8          **MR. DEVITT:**  AND OUR VIEW IS IF THERE IS AN ADEQUATE

9    STRUCTURE YOU COULD SAY IT'S INDEFINITE AT THIS TIME.

10          **THE COURT:**  I DON'T THINK SO. WHAT WOULD GIVE ME THAT

11    AUTHORITY?  YOU DIDN'T MAKE A MOTION TO THAT EFFECT.

12          **MR. DEVITT:**  WE DIDN'T MOVE FOR IT, BUT THE CASE LAW IS

13    THAT ON CLAIM CONSTRUCTION YOU CAN HAVE A FINDING OF

14    INDEFINITENESS IF YOU FIND AS A MATTER OF LAW THAT THERE IS AN

15    ADEQUATE STRUCTURE DISCLOSED.

16          **THE COURT:**  DO YOU AGREE WITH THAT?

17          **MR. SIMON:**  YOUR HONOR, WE DO AGREE THAT IF YOU WERE TO

18    FIND THERE IS NOT ADEQUATE STRUCTURE, THEN WE WOULD PROBABLY JUST

19    AGREE THAT THE CLAIM COULD BE FOUND INDEFINITE.  BUT WE DO AGREE

20    THEY HAVEN'T BROUGHT A MOTION FOR SUMMARY JUDGMENT.

21          **THE COURT:**  YES.  I MEAN, THE PROBLEM WITH DECIDING

22    WHETHER THE STRUCTURE IS ADEQUATE IS THAT THAT'S A QUESTION OF

23    FACT THAT I'M NOT SURE I HAVE TEE'D UP.

24        IN OTHER WORDS, JUST TO CUT THE SUSPENSE, I DO THINK THAT

25    ALL OF THE ONES THAT USE THE WORD "MEANS" ARE MEANS-PLUS-FUNCTION

```
 1    CLAIMS.  I THINK THE FUNCTIONS ARE PRETTY CLEAR, AND I THINK THE

 2    STRUCTURE OF CONTROLLER IS INADEQUATE, IS NOT ADEQUATE.

 3    THEREFORE, WE NEED TO GO TO THE PATENT SPECIFICATION AND SEE IF

 4    WE CAN FIND SOME STRUCTURE IN THERE.

 5         AND WE FIND WORDS.  WE FIND CHARTS.  WE FIND THINGS, BUT

 6    WHETHER THOSE ARE SUFFICIENT, I DON'T KNOW.  I MEAN, YOU THINK I

 7    WOULD EVALUATE THE CREDIBILITY OF THE EXPERTS AND DECIDE WHETHER

 8    THOSE CHARTS, THE FIGURES FOUR AND FIVE, FOR EXAMPLE, AND THE

 9    DESCRIPTION OF THE LOWER VOLTAGE AND ALL THAT, I WOULD JUST

10    DECIDE BASED ON WHAT I HAVE BEFORE ME WHETHER THAT WAS SUFFICIENT

11    TO DO THE FUNCTION, PERFORM THE FUNCTION?

12         MR. DEVITT:  OBVIOUSLY, YOUR HONOR, WE WOULD LIKE YOU

13    TO DO THAT, BUT IF YOU NEED FURTHER BRIEFING ON THAT POINT WE ARE

14    CERTAINLY PREPARED TO DO SO.  IF YOU THINK IT WOULD BE HELPFUL TO

15    HAVE EXPERTS ON IT, WE ARE HAPPY TO DO SO, AS WELL.  BUT WE DO

16    THINK THAT COULD BE SOMETHING THAT COULD BE DONE.

17         THE COURT:  WELL, HAVE YOU DONE IT ALREADY?

18         MR. DEVITT:  WE HAVE SUBMITTED EXPERT DECLARATIONS THAT

19    SUPPORT OUR BRIEFS.  AND WE HAVE TWO -- ON THAT POINT, YOUR

20    HONOR, YES.

21         THE COURT:  OKAY.

22         MR. DEVITT:  SO THERE IS EXPERT DECLARATIONS WHERE

23    THEIR EXPERT SAYS THERE IS -- WELL, THERE'S DIFFERENT THINGS.  I

24    WON'T CHARACTERIZE IT, BUT OUR EXPERT SAYS IT'S NOT ADEQUATE.

25         THE COURT:  OKAY.  SO STARTING WITH "TO MAP," WHAT I
```

1    THINK ABOUT THAT IS I THINK GENERALLY THAT DEFENDANTS'

2    DESCRIPTION OF WHAT THIS PATENT WOULD HAVE TO CLAIM IN ORDER TO

3    BE VALID AND IN ORDER TO BE NOT -- TO BE INVENTIVE OVER PRIOR ART

4    AND SO ON, WOULD BE SOMETHING LIKE WHAT YOU ARE SAYING.  WOULD BE

5    THAT YOU CAN'T JUST HAVE A DIFFERENT CONTACT POINT FOR EVERY

6    ADAPTER CARD.  YOU HAVE TO HAVE SOME DEGREE OF FLEXIBILITY,

7    MULTIPLEXING OR SOMETHING TO BE INVENTIVE, TO BE ANY KIND OF

8    ADVANCE OVER THE PRIOR ART.

9        I THINK THAT'S GENERALLY TRUE.  BUT TO CRAM ALL OF THAT

10   CONTENT INTO THE WORD "MAP" I THINK IS WRONG.  THE WORD "MAP"

11   JUST MEANS TAKING A GROUP OF THINGS ON THE ONE SIDE AND ASSIGNING

12   THEM TO A GROUP OF THINGS ON THE OTHER SIDE.  IT DOESN'T TALK

13   ABOUT WHETHER IT HAS TO BE CHANGED, WHETHER IT'S DYNAMIC, WHETHER

14   IT VARIES OR ANYTHING ELSE.  IT'S JUST A SIMPLE MAPPING,

15   ASSIGNING FUNCTION.

16       SO I CAN SAY "MAP" MEANS ASSIGNING.  I CAN THINK IN MY MIND

17   THAT THE PATENT MEANS MORE THAN THAT, BUT THE WORD "MAP" DOESN'T

18   MEAN MORE THAN THAT.  SO THAT'S WHERE I'M SAYING I CAN CONSTRUE

19   THE WORD "MAP" BUT THAT ISN'T GOING TO GET YOU EVERYWHERE YOU

20   WANT TO GO WITH IT.

21       I DO HAVE AN ISSUE WITH "TO LOGICALLY ASSIGN," BECAUSE I

22   DON'T KNOW WHAT THAT MEANS, AND I DON'T THINK THE JURY IS GOING

23   TO KNOW WHAT THAT MEANS.

24       TO ME, TO LOGICALLY ASSIGN MEANS TO ASSIGN IN A WAY THAT IS

25   RATIONAL AND LOGICAL AND NOT IN A WAY THAT IS IRRATIONAL AND

```
 1   ILLOGICAL.  IF YOU ARE TRYING TO MEAN SOMETHING ELSE, WHICH I
 2   KNOW THAT YOU ARE, YOU WOULD NEED TO SAY THAT.  TO ASSIGN IN
 3   VIRTUAL SENSE OR AN ELECTRONIC SENSE, NOT IN A PHYSICAL SENSE.
 4   OR I DON'T REALLY KNOW WHAT YOU WOULD SAY.  IF I HAVE TO DO IT
 5   MYSELF I WOULD JUST SAY "TO ASSIGN," AND LEAVE OUT THE WORD
 6   "LOGICALLY" UNLESS I WAS REALLY GOING TO EXPLAIN WHAT THE WORD
 7   "LOGICALLY" MEANT, WHICH I COULDN'T DO WITHOUT FURTHER HELP.
 8        SO THAT'S THAT.
 9             MR. SIMON:  YOUR HONOR, CAN I APPROACH?
10             THE COURT:  PARDON ME?
11             MR. SIMON:  MAY I APPROACH?
12             THE COURT:  YOU MAY APPROACH, BUT I AM GOING TO GO
13   THROUGH ALL OF THESE BEFORE I HEAR FROM YOU.
14             MR. SIMON:  OKAY.  THAT'S WHAT I WAS GOING TO ASK YOU.
15   WAIT?
16             THE COURT:  YES.
17        "MEANS FOR MAPPING," AS I SAY, I THINK IS A
18   MEANS-PLUS-FUNCTION CLAIM AND THE FUNCTION IS MAPPING.  THAT IS
19   THE FUNCTION IS ASSIGNING INCOMING CONTACT POINTS TO ADAPTER
20   CONTACT POINTS, OR WHATEVER YOU WANT TO SAY.  BUT I DON'T THINK
21   THAT THE WORD "CONTROLLER" IS ENOUGH.
22        NOW, I DON'T CARE WHETHER "CONTROLLER" MEANS COMPUTER OR IT
23   MEANS MICROPROCESSOR OR IT JUST MEANS AN INTEGRATED CIRCUIT WITH
24   ON/OFF SWITCHES.  WHATEVER IT MEANS, IT DOESN'T TELL ME HOW TO DO
25   THIS BY ITSELF.  IT'S SORT OF LIKE SAYING:
```

1            "NOW I AM GOING TO FLY, AND I AM GOING TO FLY USING A

2       CONTROLLER.

3            "WELL, HOW IS THE CONTROLLER GOING TO FLY?

4            "WE DON'T KNOW."

5       IT'S TO ME "CONTROLLER," THE WORD "CONTROLLER" IS JUST NOT

6   ENOUGH TO MAKE THIS THING WORK.  WHERE YOU GO IN THE

7   SPECIFICATION TO FIND OUT WHAT THE CONTROLLER IS GOING TO DO, I

8   DON'T KNOW.  YOU PROBABLY WILL WANT TO TELL ME.

9       I DON'T THINK -- SO IT NEEDS AN ALGORITHM, I SUPPOSE.

10  WHETHER IT'S A COMPUTER OR AN IC IT NEEDS SOMETHING.  MAYBE IT'S

11  NOT AN ALGORITHM.  MAYBE IT'S, I DON'T KNOW, SOMETHING ELSE.  BUT

12  IT NEEDS SOMETHING TO EXPLAIN HOW THE CONTROLLER IS GOING TO DO

13  ALL THE WORK THAT YOU ARE PUTTING ON IT.

14            "MEANS FOR IDENTIFYING THE TYPE OF MEMORY CARD INSERTED

15       INTO THE PORT."  AGAIN, THAT'S A MEANS-PLUS-FUNCTION CLAIM.

16  THE FUNCTION IS SORT OF SELF-EVIDENT.  THE STRUCTURE IS IT JUST

17  CONTROLLER?  IS IT ENOUGH?  NEEDING TO LOOK AT THE SPECIFICATION.

18  IF WE LOOK AT THE SPECIFICATION WE FIND TWO CANDIDATES.  ONE IS

19  "CARD DETECT LINES" AND THE OTHER IS "MULTIPLEX LINES."

20       PLAINTIFF SAYS THAT NEITHER OF THOSE IS NECESSARY, BUT THE

21  PROBLEM WITH THAT POSITION IS THAT SOMETHING IS NECESSARY.  AND

22  IF IT'S NOT ONE OF THOSE TWO THINGS, THEN IT HAS TO BE SOMETHING

23  ELSE THAT'S IN THE SPECIFICATION, AND I DON'T KNOW WHAT THAT

24  WOULD BE.

25       SO FAILING TO FIND ANYTHING ELSE, I WOULD SAY IT'S "CARD

1    DETECT LINES" OR "MULTIPLEX LINES."  AND IF YOU CAN TELL ME IS

2    THERE'S ANYTHING ELSE IN THERE.

3         I HAVE A LITTLE PROBLEM WITH PLAINTIFF'S -- WHAT WAS THE

4    DISCUSSION OF THE '638 PATENT IN THIS CONTEXT.  I GUESS THE

5    QUESTION ABOUT THE PASSIVE ADAPTER AND HOW THAT FITS IN.  MAYBE

6    IT'S RELEVANT, BUT I DIDN'T UNDERSTAND THE BACK AND FORTH ON THAT

7    TOO WELL.

8         CONTACT PINS EMBEDDED WITHIN THE MOLDED PLASTIC, I THINK

9    THAT THAT DOES NEED CONSTRUCTION.  AND I THINK THAT THE

10   CONSTRUCTION WOULD WELL BE CONTACT PINS ARE EMBEDDED IN MOLDED

11   PLASTIC.  I DON'T THINK WE CAN GO ON TO SAY THAT CONTACT PINS DO

12   NOT CORRESPOND TO FLOATING CONTACT PINS BECAUSE THAT BEGS THE

13   QUESTION OF WHAT IS THE FLOATING CONTACT PIN, WHICH I DON'T KNOW

14   THE ANSWER TO, NOR WILL THE JURY.

15        THE ONLY PROBLEM WITH USING "EMBEDDED" I SUPPOSE IS ONE

16   WOULD HAVE TO SAY THAT IT CAN'T BE FULLY EMBEDDED, BECAUSE THEN

17   IT WOULDN'T MAKE AN ELECTRICAL CONNECTION, RIGHT, IF IT WERE

18   FULLY COVERED BY PLASTIC?

19        SO IT HAS TO BE ONLY PARTLY EMBEDDED.  HOW EMBEDDED DOES IT

20   HAVE TO BE?  ARE WE GOING TO BE MEASURING THE MICRO NANO

21   MILLILITERS OF HOW MUCH IS IN THE PLASTIC?  I DON'T KNOW.  MAYBE

22   THERE HAS TO BE SOMETHING SAID ABOUT THAT.

23        OR MAYBE YOU ALL COULD EXPLAIN TO ME WHAT A FLOATING CONTACT

24   PIN IS.  AND MAYBE IF THAT'S CLEAR, MAYBE THAT WOULD BE A WAY TO

25   DIFFERENTIATE THINGS.  THEY ARE EITHER FLOATING OR THEY ARE

1   EMBEDDED SOME NANO MILLILITER'S WORTH.

2        INTERCONNECTION MEANS.  PLAINTIFF SAYS "CONDUCTIVE ELEMENTS

3   THAT ELECTRICALLY CONNECT."

4        THAT'S FINE AS FAR AS IT GOES, BUT YOU NEED TO ADD TO THAT

5   "CONNECT X WITH Y" SUCH THAT THE INTERCONNECTION MEANS IS NEITHER

6   X NOR Y.  SOMETHING CAN'T CONNECT TWO OTHER THINGS UNLESS IT'S

7   DIFFERENT FROM BOTH OF THEM, IT SEEMS TO ME.

8        DEFENDANTS SAY IT'S DIFFERENT THAN THE CONTACT PINS, BUT

9   IT'S ALSO DIFFERENT FROM EVERYTHING ELSE THAT IS BEING CONNECTED.

10  SO DEFENDANTS' IS A LITTLE CONFUSING IN THAT IT ONLY SAYS ONE

11  THING THAT IT ISN'T.  AND IT ISN'T -- THERE'S MORE THAN ONE

12  THING THAT IT ISN'T.

13       BUT GENERALLY I AGREE WITH DEFENDANTS THAT IT CAN'T BE -- A

14  CONNECTOR CAN'T BE THE THING -- ATTEMPTING TO SAY THAT'S THE

15  THING THAT'S CONNECTING.

16       MEDIA, MEMORY MEDIA CARD, I DO THINK THIS NEEDS

17  CONSTRUCTION.  AND I'M NOT SURE WHAT IT MEANS.  THAT'S WHY IT

18  NEEDS CONSTRUCTION.  WHAT IS MEDIA?  I GUESS MEDIA IS THE THING

19  THAT IS ON THE CARD.  I GUESS MEDIA COULD ALSO BE THE STORAGE

20  MEDIUM LIKE A HARD DRIVE OR A USB DRIVE OR A CD OR A, YOU KNOW,

21  MAGNETIC TAPE, WHATEVER.

22       IT COULD BE THAT.  I DON'T THINK THAT.  I THINK WHAT THEY

23  ARE TRYING TO SAY IS THAT IT'S THE MEDIA, THE CONTENTS THEMSELF

24  THAT IS ON THE CARD THAT YOU ARE TRYING TO READ, WHICH WOULD BE

25  ARCHETYPALLY PHOTOGRAPHS, BUT IT COULD BE ANYTHING.  MEDIA COULD

1  BE PHOTOGRAPHS.  IT COULD BE A VIDEO.  IT COULD BE A RINGTONE.

2  IT COULD BE MUSIC.  IT COULD BE WORDS.  IT COULD BE NUMBERS.  IT

3  COULD BE -- AND I KNOW YOU DON'T WANT IT TO BE A SIM CARD, BUT I

4  DON'T SEE HOW YOU CAN HAVE IT NOT BE A SIM CARD BECAUSE WHERE DO

5  YOU DRAW THE LINE BETWEEN WHAT'S MEDIA CONTENTS AND WHAT ISN'T

6  MEDIA CONTENTS?  EVERYTHING IS MEDIA, REALLY.  ALL CONTENTS IS

7  MEDIA WHETHER IT'S IN THE FORM OF NUMBERS AND LETTERS OR VISUAL

8  IMAGES OR WHATEVER.  IT'S MEDIA.

9      SO IN ORDER TO DEFINE "MEMORY MEDIA CARD," WE HAVE TO SAY

10  WHAT MEDIA WE ARE TALKING ABOUT AND HOW WE ARE DISTINGUISHING

11  THAT FROM EVERYTHING ELSE.

12      AND WE HAVE "TYPE OF MEMORY MEDIA CARD."  AND THAT, TOO,

13  DOES NEED TO BE DISTINGUISHED OR CONSTRUED BECAUSE I GATHER THAT

14  SORT OF THE CRUX OF THIS CASE WHEN WE GET AROUND TO INFRINGEMENT

15  IS GOING TO BE WHETHER AN SD AND A -- WHAT ARE THEY -- MMS OR

16  MMC/SD, ARE THOSE ONE TYPE OR ARE THOSE TWO TYPES?

17      IF THEY ARE ONLY ONE TYPE, THEN MAYBE THIS ISN'T AN ADAPTER

18  AT ALL.  IT'S JUST SINGLE ONE-TRICK PONY.  IF IT'S TWO TYPES,

19  THEN MAYBE IT IS AN ADAPTER.  SO WHAT IS A TYPE?  HOW DIFFERENT

20  DOES SOMETHING HAVE TO BE FROM SOMETHING ELSE TO BE A DIFFERENT

21  TYPE?  WHAT DEFINES "TYPE"?

22      I CERTAINLY DON'T KNOW THE ANSWER TO THAT, BUT I THINK THAT

23  THE JURY IS GOING TO NEED TO KNOW, IN OTHER WORDS, TO ANSWER THE

24  QUESTION OF WHETHER AN MMS AND SD ARE TWO TYPES OR ONE TYPE.

25      SO THOSE ARE MY ISSUES THAT ARE SORT OF ALL OVER THE MAP, SO

```
1   I DON'T KNOW HOW YOU WANT TO ADDRESS IT.  I GUESS WE CAN HAVE

2   PLAINTIFFS GO FIRST, AND THEN WHOEVER'S OX IS BEING GORED FROM

3   THE DEFENDANTS' SIDE CAN ADDRESS IT.

4          MR. SIMON:  THAT'S FINE, YOUR HONOR.

5          THE COURT:  OKAY.

6          MR. SIMON:  WE ACTUALLY AGREED ON AN ORDER AND WE

7   THOUGHT WE WOULD TAKE THE "TO MAP" FIRST AND DIRECT OUR

8   ARGUMENTS.  WE HAVE ANSWERS TO ALL YOUR QUESTIONS.

9          THE COURT:  WELL, THAT'S ENCOURAGING.

10          MR. SIMON:  WITH YOUR PERMISSION I WOULD LIKE TO USE

11  THE PODIUM WITH THE ELMO JUST SO I CAN PLACE THESE ON THERE, YOUR

12  HONOR.

13          THE COURT:  OKAY.  YOU CAN DO THAT, BUT IT MAY BE

14  EASIER FOR ME IF YOU TELL ME -- IF IT'S A FIGURE, TELL ME WHERE

15  IT IS, BECAUSE I'VE LOOKED AT ALL THIS STUFF.  AND THEN, IT WOULD

16  LOOK MORE FAMILIAR TO ME IF I FOUND IT IN MY OWN PAPERS.

17          MR. SIMON:  OKAY.  YOUR HONOR, EVEN BETTER THAN THAT

18  WHEN WE COMPARE EXHIBITS AND WE ARE PULLING THINGS OUT OF THE

19  PATENTS AND WE WANT TO COMPARE A FIGURE, SAY, WITH THE

20  SPECIFICATION, WE HAVE PREPARED SLIDES TO GUIDE YOU THROUGH.

21          THE COURT:  WELL, THIS IS THE PART I DON'T LIKE,

22  BECAUSE I'M USED TO WHAT I HAVE.

23          MR. SIMON:  NO PROBLEM.

24          THE COURT:  AND I WANT TO BE ABLE TO FIND IT IF I'VE

25  ALREADY READ IT AND NOT HAVE TO START COMPARING NEW STUFF THAT
```

1   YOU ARE GIVING ME SO I --

2              **MR. SIMON:**  UNDERSTOOD.  WE ACTUALLY CITE TO THE ACTUAL

3   RECORD ON THE SLIDES.

4              **THE COURT:**  OKAY.

5              **MR. SIMON:**  I CAN PULL THAT OUT AS I GO THROUGH.

6              **THE COURT:**  OKAY.

7              **MR. SIMON:**  I CAN PLACE THINGS ON THE ELMO.

8              **THE COURT:**  ALL RIGHT.

9              **MR. SIMON:**  SO, YOUR HONOR, THE FIRST THING I WANTED TO

10  GET TO WAS THE WORD "LOGICALLY ASSIGNED" BECAUSE YOU HAD

11  ADDRESSED LOGICALLY.  I THINK YOU AGREE WITH THE PARTIES THAT

12  THAT MEANS ASSIGNING.  AND I'M ASSUMING FROM YOUR COMMENTS THAT

13  THE ADDITIONAL VERBIAGE THE DEFENDANTS WANTED THAT SAYS:

14         "THE MERE USE OF ADDITIONAL SIGNAL LINES IN SOME

15      CIRCUMSTANCES BUT NOT OTHERS, BASED UPON FIXED ASSIGNMENTS,

16      DOES NOT CONSTITUTE MAPPING."  WE WILL NOT AGREE WITH THAT

17  ALSO, SO WE DON'T HAVE TO ADDRESS THAT.  OR WOULD YOU LIKE US TO

18  ADDRESS THAT?

19              **THE COURT:**  WELL, THAT IS -- I THOUGHT WHAT THEY WANTED

20  TO SAY WAS TO VARY THE ASSIGNMENT.

21              **MR. SIMON:**  CORRECT, YOUR HONOR.  THEY WANT TO VARY THE

22  ASSIGNMENT ON -- FOR ALL THREE OF THE PATENTS.  AND THEN, THEY

23  WANTED "TO MAP" JUST FOR THE '443 PATENT, THEY WANTED SOME

24  DISCLAIMER LANGUAGE.

25              **THE COURT:**  ALL RIGHT.

1        WHAT'S NEXT?

2              **MR. SIMON:**  THAT'S FINE.  I CAN ADDRESS THAT, AS WELL.

3              **THE COURT:**  ALL RIGHT.

4              **MR. SIMON:**  THERE IS ONE PRELIMINARY MATTER I WOULD

5   LIKE TO ADDRESS, AND THE CLAIM WE ARE TALKING ABOUT HERE -- I

6   JUST HAVE THE EXEMPLAR CLAIM HERE.  AND THIS IS EXHIBIT -- THIS

7   IS THE '424 PATENT.  I'LL JUST PUT THIS UP HERE VERY QUICKLY SO

8   THE WORDS ARE IN CONTEXT, YOUR HONOR.

9        IT'S EXHIBIT B AT COLUMN 8, LINES 53 TO 60.  THIS IS THE

10  LANGUAGE OF THE CLAIM:

11            "A CONTROLLER CHIP TO MAP."

12       AND THE DEFENDANTS, BY THE WAY, AGREE THAT THIS IS

13  SUFFICIENT STRUCTURE.  THERE IS NO FIGHT ABOUT THAT ON THIS

14  PARTICULAR PATENT.  THEY ARE SAYING THIS IS NOT

15  MEANS-PLUS-FUNCTION.

16            **THE COURT:**  SO WHAT --

17            **MR. SIMON:**  WE AGREE WITH THAT, AS WELL.  SO WITH

18  RESPECT TO THE COMMENTS ABOUT A CONTROLLER'S MEANS-PLUS-FUNCTION,

19  THAT WOULDN'T BE APPLICABLE HERE.  I JUST WANT TO MAKE THAT

20  CLEAR.  FOR THE '424 PATENT, THAT'S JUST NOT SOMETHING THEY ARE

21  ARGUING.

22            **THE COURT:**  WELL, I SEE THE WORD "MEANS" HERE ON --

23            **MR. SIMON:**  RIGHT.

24            **THE COURT:**  -- CLAIM 25.

25            **MR. SIMON:**  OKAY.

1               **THE COURT:**  "APPARATUS COMPRISING."

2           **MR. SIMON:**  AND WHAT I'VE DONE HERE, I'VE SUMMARIZED

3    THE DIFFERENCES BETWEEN THE PARTIES' POSITIONS.  SO THE FIRST

4    ISSUE IS WE SAY "LOGICALLY."  THEY SAY "VARYING."

5       I THINK YOU ADDRESSED "VARY."  WE AGREE WITH YOU THAT "VARY"

6    WOULD NOT BE APPROPRIATE BECAUSE WE AGREE WITH YOU, YOUR HONOR,

7    THAT SOMETHING HAS TO CHANGE WHEN YOU PUT THE MEMORY CARD IN.

8    WHAT HAS TO HAPPEN IS THE ASSIGNMENTS ARE CREATED WHEN YOU PUT

9    THE MEMORY CARD IN.

10       THIS IS THE ADDITIONAL LANGUAGE THAT THE DEFENDANTS WANT:

11           "THE MERE USE OF ADDITIONAL SIGNAL LINES IN SOME

12       CIRCUMSTANCES BUT NOT OTHERS, BASED UPON FIXED ASSIGNMENTS

13       DOES NOT CONSTITUTE MAPPING."

14       AND I JUST NOTE THAT THEY ONLY PROPOSE THIS FOR THIS PATENT,

15    THE '443 AND NOT FOR THE '424 OR THE '447.

16       I'M SORRY.  THE '847.

17       YOUR HONOR, THERE'S ONE POINT OF DISPUTE WITH THE LOGICAL,

18    LOGICALLY.  THIS IS ONE ISSUE THAT I THINK WE WOULD ASK YOU

19    CONSTRUE.  WE PUT THIS IN A FOOTNOTE IN OUR REPLY BRIEF.  AND I

20    BRING THIS UP AS A PRELIMINARY MATTER SIMPLY BECAUSE -- AND THIS

21    IS WHY WE PUT "LOGICAL" IN OUR PROPOSED CONSTRUCTION.

22       THE DEFENDANTS AT THE ITC IN THE MARKMAN PHASE TRIED TO SAY

23    IT WAS PHYSICAL CHANGING, LIKE A RAILROAD SWITCH, FLIPPING FROM

24    ONE TRACK TO ANOTHER.  AND THE ADMINISTRATIVE LAW JUDGE SAID:

25           "RESPONDENTS APPEAR TO CONCEDE THAT THE MAPPING IS A

```
 1          LOGICAL FUNCTION AND DOES NOT REQUIRE SOME PHYSICAL

 2          CONNECTION BE CHANGED."

 3               THE COURT:  DEFINE "LOGICAL."

 4               MR. SIMON:  "LOGICAL" IS NOT -- IT'S NOT IN THE LOGIC

 5     SENSE BUT IN THE COMPUTER SENSE.  AND WITH RESPECT TO ALL THESE

 6     TERMS --

 7               THE COURT:  TELL THE JURY THAT.

 8               MR. SIMON:  YES.  IT WOULD BE WHAT ONE WHO IS SKILLED

 9     IN THE ART WOULD SAY IS, FOR EXAMPLE -- AND I'VE GOT SOME SLIDES

10     ON THAT -- ASSIGN A CONNECTION.  BASICALLY SAYING IN THE

11     COMPUTER, THE CONTROLLER IS GOING TO SAY:

12          "I'M GOING TO TAKE PATH A, AND I'M GOING TO LINK THAT

13          LOGICALLY," WHICH IS HOW YOU SAY IT IN A COMPUTER, "WITH THE

14          DATA THAT IS COMING FROM THE SD CARD YOU PUT IN."

15     SO, FOR EXAMPLE --

16               THE COURT:  USING A WORD TO DEFINE A WORD, WHICH ISN'T

17     A GOOD WAY TO DEFINE THINGS.

18               MR. SIMON:  OKAY.

19               THE COURT:  LOGICALLY --

20               MR. SIMON:  WOULD BE TO CREATE, AS YOU SAID, A VIRTUAL

21     CONNECTION, FOR EXAMPLE, BETWEEN -- THAT SD CARD HAS FOUR DATA

22     LINES, AND THERE'S FOUR SIGNAL LINES THAT CONNECT THE CONTROLLER.

23     SO I'M GOING TO CREATE A VIRTUAL CONNECTION SO THE CONTROLLER

24     KNOWS WHEN IT GETS DATA FROM AN SD CARD IT CONNECTS THE FOUR DATA

25     LINES AS OPPOSED TO, FOR EXAMPLE, AN MMC CARD, THE CONTROLLER
```

1    KNOWS I'M ONLY GOING TO GET DATA FROM ONE DATA LINE.

2         AND SO THAT PARTICULAR PATENT, INSTEAD OF USING FOUR LINES

3    IT WILL USE ONE LINE FOR MMC CARDS AND FOUR LINES FOR SD CARDS.

4    AND WHAT THE CONTROLLER WILL DO IS IT WILL CREATE A CONNECTION, A

5    VIRTUAL CONNECTION IN ITS MIND TO SAY:

6              "WELL, WHAT LINES SHOULD I LOOK FOR FOR DATA FROM THE

7         CARD THAT IS IN?  IF IT'S SD I'M GOING TO WATCH FOUR LINES.

8         IF IT'S MMC I'M GOING TO WATCH ONE LINE."

9         SO IT WOULD BE A VIRTUAL LINKING IS WHAT I WOULD SAY FOR

10   LOGICAL CONNECTION.

11            **THE COURT:**  BUT IT WOULD HAVE TO BE A PHYSICAL LINKING

12   BECAUSE ELECTRICITY IS A PHYSICAL ACTIVITY.  YOU CAN'T JUST THINK

13   ABOUT IT. YOU HAVE TO ACTUALLY HAVE A CONNECTION.

14            **MR. SIMON:**  WELL, THAT'S THE POINT.  HERE'S THE BENEFIT

15   OF THIS WHOLE INVENTION, YOUR HONOR.  I AM GOING TO PUT ON THE

16   SCREEN HERE FIGURE 5.

17        THIS IS FIGURE 5 FROM THE PATENTS, ALL THREE PATENTS.  AND

18   WHAT YOU GET HERE IS YOU HAVE ON THE LEFT A NUMBER OF SIGNAL

19   LINES.  AND THAT'S THE PATH THAT THEY ARE GOING TO TAKE.

20        ALONG THE TOP YOU HAVE THE TYPES OF MEMORY CARDS AT ISSUE.

21   WHAT THIS TABLE SHOWS YOU IS IF YOU PUT IN A MMC/SD CARD, THESE

22   ARE THE ASSIGNMENTS THAT ARE GOING TO HAPPEN TO THESE LINES IN

23   THE FIRST COLUMN.

24        AND THE REASON I BRING THAT UP IS THESE PHYSICAL CONNECTIONS

25   ARE ALREADY THERE.  THE WHOLE POINT OF THIS INVENTION IS TO SAY

```
1    WE DON'T WANT TO HAVE TO RUN 41 OR 42 OF THESE CONNECTOR LINES.

2    WE ARE ONLY GOING TO RUN 18 IN THIS INSTANCE, 18.  AND WE CAN

3    SHARE THOSE 18 LINES BY A CONTROLLER DECIDING:

4             "WHAT TYPE OF CARD DO I HAVE?"

5        AND THEN USING THIS CHART TO SAY:

6             "OKAY.  IF I'VE GOT A SMARTMEDIA CARD, LINE ONE IS

7           GOING TO BE GROUND.  AND THE DATA IS GOING TO COME ON D0,

8           D1, ALL THE WAY DOWN TO D5.  MY POWER IS GOING TO GO ON

9           LINE 18."

10       AND THEN, YOU CAN USE THOSE SAME 18 PHYSICAL, ELECTRICAL

11   PATHS THAT ARE ALREADY THERE IF YOU WANT TO PLUG IN AN RSMMC

12   CARD, BUT YOU CAN ONLY USE A SUBSET OF THOSE.

13       SO --

14             THE COURT:  OKAY.  BUT ULTIMATELY THERE WILL BE A

15   PHYSICAL CONNECTION BETWEEN THE CARD AND THE CONTACT PIN.

16             MR. SIMON:  BUT THAT PHYSICAL CONNECTION WAS ALREADY

17   CREATED, AND IT WAS IN THE PRIOR ART.

18             THE COURT:  WELL, THAT'S FINE, BUT IT'S STILL THERE.

19             MR. SIMON:  ABSOLUTELY.  WE ARE NOT SAYING IT'S NOT.

20             THE COURT:  SO WHY WOULD YOU SAY "LOGICALLY"?  YOU

21   WOULD JUST SAY IT'S ASSIGNED.

22             MR. SIMON:  BECAUSE WHEN WE GOT TO THE ITC TRIAL,

23   THAT'S WHAT THEIR EXPERT SAID?  EVEN THOUGH THEY CONCEDED IT

24   WASN'T PHYSICAL, THEY TRIED TO SAY IT HAD TO BE PHYSICAL.  AND

25   THAT CAUSED A BIG FIGHT.
```

1    AND HERE, RIGHT NOW IN THEIR PAPERS, THEY DON'T SAY WHETHER

2    THEY THINK THE CHANGING THE ASSIGNMENT HAS TO BE PHYSICAL OR IF

3    IT CAN BE LOGICAL.

4    OUR POINT IS THE PHYSICAL PATHS ALREADY EXIST.  EVERYBODY

5    AGREES WITH THAT.  WE THINK WHAT THEY ARE TRYING TO SAY, AS THEY

6    DID IN THE ITC WAS YOU WOULD PHYSICALLY HAVE TO CHANGE THAT PATH

7    LIKE A SWITCH ON A RAILROAD PATH MECHANICALLY AS OPPOSED TO JUST

8    LOGICALLY SAYING:

9    "ALL RIGHT.  I AM GOING TO USE SIX OF THESE 18 PATHS OR

10   FIVE OF THESE 18 PATHS OR ALL 18 OF THESE 18 PATHS DEPENDING

11   ON THE TYPE OF MEMORY CARD."

12   THAT IS A DISPUTE IN THIS CASE.  AND I CAN GUARANTEE WE ARE

13   GOING TO BE FIGHTING ABOUT WHETHER IT'S A PHYSICAL SWITCHING OR

14   ASSIGNING OR IF IT'S A LOGICAL ASSIGNING.  AND ALL THE DEFENDANTS

15   KNOW WHAT "LOGICAL" MEANS.  THEY KNEW WHAT IT MEANT IN THE ITC.

16   I AGREE WE WILL HAVE TO EXPLAIN IT TO A JURY.

17   **THE COURT:**  WELL, I GUESS, WHO IS SPEAKING FOR THIS

18   CLAIM?  WOULD IT BE EASIER TO COME ON UP, THEN, AND TELL ME

19   WHETHER YOU ARE ABLE TO SAY --

20   **MR. DEVITT:**  SO, YES, YOUR HONOR.  AND I'M BILL DEVITT.

21   SO WE --

22   **THE COURT:**  CAN YOU TELL ME WHETHER YOU ARE GOING TO BE

23   SAYING THAT MAPPING IS PHYSICAL VERSUS LOGICAL, NEITHER OR BOTH?

24   **MR. DEVITT:**  YES, IT IS PHYSICAL.  YOU HAVE TO HAVE A

25   PHYSICAL ASSIGNMENT.  AND CONTRARY TO WHAT COUNSEL HAS SAID, WE

1   NEVER CONCEDED ANYTHING.  IN FACT, I DON'T KNOW WHERE THAT CAME

2   FROM.  I WENT THROUGH THE TRANSCRIPT OF THE MARKMAN HEARING IN

3   THE OTHER CASE, AND THERE'S NO SUCH CONCESSION.  SO I WISH WE

4   COULD JUST KIND OF PUT THAT ASIDE.

5        YOUR HONOR IS RIGHT.  IN ORDER TO GET FROM THE CONTACT PINS

6   TO THE CONTROLLER, ELECTRONS NEED TO GO ALONG A PATH.  YOU NEED A

7   PHYSICAL PATH.  YOU ARE ABSOLUTELY, ONE HUNDRED PERCENT CORRECT.

8        SO THE ISSUE IS HOW YOU GET FROM THE CONTACT PINS TO THE

9   CONTROLLER.  AND THERE'S DIFFERENT SPOTS.  I THINK WHAT WE CAN

10  AGREE ON IS THE INTERMEDIATE SPOTS.  AND JUST TO BE CLEAR ON THAT

11  I WOULD JUST LIKE TO GO THROUGH IT.

12            THE COURT:  WELL, YOU COULD DECIDE WHICH PATHS TO USE

13  IN A, SHALL WE SAY, LOGICAL FASHION.  AND YOU COULD USE ONE OF A

14  NUMBER OF PATHS, I SUPPOSE.

15            MR. DEVITT:  WHEN YOU SAY "LOGICAL FASHION," YOU ARE

16  AGAIN USING KIND OF, QUOTE, "PHILOSOPHICAL LOGIC," SO I THINK I

17  WOULD LIKE TO AVOID USING THAT TERM BECAUSE IT DOESN'T -- IT'S

18  NOT HELPFUL IN THIS CONTEXT, YOUR HONOR.

19        SO WHAT THE ISSUE IS, YOUR HONOR, IS WE HAVE CONTACT PINS

20  THAT NEED TO GET CONNECTED TO INTERCONNECT PINS OR INTERCONNECT

21  MEANS.

22            THE COURT:  WHAT IS THE THING ON THE CARD ITSELF?  IS

23  THAT A CONTACT PIN, AS WELL?  THE CARDS HAVE LITTLE --

24            MR. DEVITT:  THE CARDS HAVE --

25            THE COURT:  -- LITTLE PIECES --

1          **MR. DEVITT:**  --WE --

2          **THE COURT:**  -- OF COPPER ON THEM, AND YOU STICK THEM IN

3   SOMETHING.

4          **MR. DEVITT:**  RIGHT.

5          **THE COURT:**  AND THEY MESH UP WITH OTHER LITTLE PIECES

6   OF COPPER.  SO WHAT DO YOU CALL THE LITTLE PIECES OF COPPER ON

7   THE CARD ITSELF?

8          **MR. DEVITT:**  JUST CONTACT POINTS.  CONTACTS.

9          **THE COURT:**  CONTACT POINTS ARE MESHING WITH OTHER

10  CONTACT POINTS.

11          **MR. DEVITT:**  OR PATH.  AND THEY CONTACT -- I THINK WE

12  HAVE ONE.

13          **THE COURT:**  MAYBE THEY ARE COPPER.

14          **MR. DEVITT:**  I CAN SHOW YOU IF YOUR HONOR WOULD --

15          **THE COURT:**  NO, I SEE THEM.  I JUST DIDN'T KNOW WHAT

16  YOU CALL THEM.  YOU CALL THEM "CONTACT PINS" ALSO?

17          **MR. DEVITT:**  WE CALL THOSE CONTACTS ON THE CARDS.  BUT

18  WHEN I'M REFERRING TO A CONTACT PIN, CAN YOU SEE --

19          **THE COURT:**  WELL, I KNOW THERE'S CONTACT PINS IN THE

20  DEVICE.

21          **MR. DEVITT:**  IN THE CONNECTOR ITSELF.  AND THAT'S WHAT

22  THESE ARE.  THESE ARE WHERE THE CARD WOULD GO IN.  WHEN YOU ARE

23  TALKING ABOUT YOU TAKE YOUR CAMERA CARD OUT WITH THE LITTLE PATHS

24  ON THEM.  YOU PRESS THEM INTO A CONNECTOR.  THIS IS A CONNECTOR

25  THAT HAS OPENED UP.  AND THESE FULL LINES ARE THE CONTACT PINS.

1    AND THESE ARE DIFFERENT SETS FOR DIFFERENT TYPES OF --

2              **THE COURT:**  BUT WHAT DO YOU CALL THE LITTLE THINGS ON

3    THE CARDS?

4              **MR. DEVITT:**  PATHS OR CONTACTS.  JUST THOSE TERMS.

5              **THE COURT:**  OKAY.

6              **MR. DEVITT:**  SO YOU GO FROM THE MEMORY CARD THAT YOU

7    SET.  AND I HAVE THE LITTLE GOLD CONTACTS ON THEM.  THEY GET

8    PUSHED INTO A SLOT AND THEY MAKE CONTACT WITH THE CONTACT PINS.

9    FROM THE CONTACT PINS THERE NEEDS TO BE A CONNECT TO

10   INTERCONNECTION MEANS OR AN INTERCONNECTION PIN OR SIGNAL LINE,

11   WHICH IS NEXT IN THE PATH.  AND THEN IT GOES TO THE CONTROLLER.

12   WE ALL AGREE ON THAT.

13       THAT'S IN THEIR BRIEF RIGHT IN PAGE TWO.  CONTACT PINS,

14   INTERCONNECTION PINS, SIGNAL LINES, CONTROLLER.  WE ALL AGREE

15   THOSE ARE THE INTERMEDIATE POINTS.  BUT CONNECTIONS NEED TO BE

16   MADE PHYSICALLY BETWEEN THOSE POINTS.

17             **THE COURT:**  OKAY.

18             **MR. DEVITT:**  OKAY?  THIS --

19             **THE COURT:**  BUT IS THERE SOME OTHER THING BESIDES

20   PHYSICALLY THAT NEEDS TO HAPPEN THAT THEY ARE CALLING "LOGICALLY"

21   AND --

22             **MR. DEVITT:**  THE CONCERN THAT I HAVE ABOUT SAYING THE

23   TERM "PHYSICALLY" IS THEN YOU WOULD SAY IS IF I FLASH A LIGHT AT

24   YOU IT CAN SIGNAL IT.  OR RADIO WAVES, IS THAT PHYSICAL?  SOMEHOW

25   ELECTRONS NEED TO GET FROM POINT A TO POINT B.  THE PHYSICAL WAY

1   THEY DESCRIBE IT IN THE PATENT IS WIRES.

2       THE ISSUE WE HAVE, YOUR HONOR, IS WITH RESPECT TO THE

3   CONTACT PINS HOW MANY SETS NEED TO BE MAPPED?  RIGHT?  I KNOW THE

4   MAPPING HAS TO BE BETWEEN CONTACT PINS AND INTERCONNECT PINS OR

5   CONTACT PINS AND SIGNAL LINES.  IT'S THE SAME IDEA.

6       OUR POINT IS WHAT THEY HAVE SAID IN THE PROSECUTION HISTORY

7   WITH RESPECT TO HUNG-JU, THEY SAID OUR MAPPING, WHAT WE MAP IS

8   FROM A SET OF CONTACT PINS, RIGHT?  AND THAT NEEDS TO BE ABLE TO

9   SAY:

10          "OKAY.  WHAT CARD AM I?"  ONE SET OF CONTACT PINS, NOT

11  MULTIPLE SETS.  THAT'S WHAT'S IN THE PRIOR ART.  PRIOR ART HAD

12  MULTIPLE SETS OF CONTACT PINS.  I MEAN, CONTACT PINS FOR MEMORY

13  STICK.  IT WOULD HAVE ITS OWN CONTACT PINS.

14      ALL THE PRIOR ART INCLUDING THE SD AND MMC, THEY SHARE A SET

15  OF CONTACT PINS.  WHAT OUR POINT IS IS WHAT THEY SAID IN THE

16  PROSECUTION HISTORY IS THEY SAID:

17          "NO.  NO.  WE'RE NOT MULTIPLE SETS OF CONTACT PINS.

18      WE ARE A SINGLE SET, AND WE MAP.  WE HAVE THIS MAGIC SET OF

19      CONTACT PINS THAT I CAN PUT A CARD ON.  I IDENTIFY WHAT TYPE

20      OF CARD ON BECAUSE I KNOW HOW TO MAKE THOSE PHYSICAL

21      CONNECTIONS TO THE SIGNAL LINES WITH THE INTERCONNECT PINS."

22      THAT'S WHAT -- THAT'S WHERE THOSE ASSIGNMENTS ARE DONE.

23  THAT'S WHAT OUR BRIEF IS TALKING ABOUT.

24          **THE COURT:**  OKAY.

25          **MR. DEVITT:**  I SEEM TO HAVE CONFUSED YOUR HONOR. I WANT

1   TO MAKE SURE, AM I NOT BEING CLEAR?

2          **THE COURT:**  I'M NOT SURE WHAT THE DIFFERENCE IS BETWEEN

3   WHAT YOU ARE SAYING.

4          **MR. SIMON:**  I HAVE GOT AN EXHIBIT I THINK WILL HELP.

5          **THE COURT:**  IF YOU JUST BOTH STAY UP THERE INSTEAD OF

6   GOING BACK AND FORTH.

7          **MR. DEVITT:**  OKAY.

8          **MR. SIMON:**  OKAY.  YOUR HONOR, WHAT I --  SORRY.

9          **THE COURT:**  JUST TELL ME, WHY DON'T WE JUST SAY "TO

10  ASSIGN"?

11         **MR. SIMON:**  WE COULD SAY "TO ASSIGN," BUT THIS IS THE

12  POINT I WANT TO MAKE.

13      I AM SORRY.  MR. DEVITT, CAN WE SWITCH, PLEASE?

14      IF YOU LOOK, THIS IS A PICTURE OF EXACTLY WHAT IS GOING ON.

15  SO WE HAVE THE CARD HERE.  IT'S GOT THE PATHS ON IT.  WE HAVE THE

16  CONTACT PIN TO TOUCH THE CARD.

17      WE HAVE THE INTERCONNECTION PINS HERE (INDICATING).  WE HAVE

18  GOT THE SIGNAL LINES IN-BETWEEN AND WE HAVE GOT A CONTROLLER.

19      WHAT WE ARE SAYING IS THOSE PATHS ALREADY EXIST.  THEY ARE

20  ALREADY LAID DOWN.  THERE ARE EIGHT OF THEM IN THIS INSTANCE.

21  WHEN YOU PUT AN SD CARD IN ON THE TOP, FOUR OF THE LINES ARE USED

22  FOR DATA.  WHEN YOU PUT AN MMC CARD IN ON THE BOTTOM -- WHEN YOU

23  PUT AN MMC CARD IN ON THE BOTTOM -- I APOLOGIZE.

24      WHEN YOU PUT AN MMC CARD IN ON THE BOTTOM, ONE LINE IS USED

25  FOR DATA.  WE THINK WHAT THEY ARE ARGUING IS THERE HAS TO BE LIKE

```
1   A LITTLE RAILROAD SWITCH HERE THAT MOVES.  WHEN YOU PUT THE CARD

2   IN IT CONNECTS DIFFERENT LINES.  AND WE ARE SAYING:

3              "NO.  NO.  NO.  YOU HAVE GOT IT ALL WRONG.  THE

4         PHYSICAL CONNECTIONS ARE ALREADY THERE.  THE CONTROLLER IS

5         JUST SAYING, FOR EXAMPLE, IN THIS INSTANCE: 'I AM SHARING

6         THE SETS OF CONTACT PINS.  WHICH LINES SHOULD I SEND DATA

7         ON?'"

8         AND THEN, LOGICALLY, INSIDE THE CONTROLLER IT SAYS:

9              "OH, I'M GOING TO LOOK AT FOUR LINES IF IT'S AN SD

10        CARD.  I'M GOING TO LOOK AT ONE LINE IF IT'S AN MMC."

11        THEY ARE ARGUING YOU HAVE TO PHYSICALLY THROW A LITTLE METAL

12   SWITCH INSIDE THERE.  AND WE ARE SAYING:

13             "NO.  NO.  NO.  IT'S ALREADY THERE."

14        THE COURT:  I'M NOT HEARING THEM ARGUING THAT.

15        MR. SIMON:  THAT'S WHAT THEY ARE ARGUING, SO --

16        THE COURT:  WELL, I DIDN'T HEAR THAT.

17        MR. SIMON:  THAT'S WHAT THEY ARGUED --

18        THE COURT:  SO IF THEY SAY THAT SOMETIME, THEN YOU CAN

19   OPPOSE THEM.

20        MR. SIMON:  OKAY.

21        THE COURT:  BUT AT THE MOMENT YOU ARE TRYING TO TELL ME

22   THAT WE DO THIS ASSIGNMENT ONLY LOGICALLY AND WE DON'T HAVE A

23   PHYSICAL ASSIGNMENT.  AND YOU SAY:

24             "OH, IT'S ALREADY THERE."

25        WELL, I DON'T CARE WHETHER IT'S ALREADY THERE OR ISN'T
```

1    ALREADY THERE, IT'S GOT TO BE THERE OR YOU ARE NOT GOING TO HAVE

2    AN ELECTRICAL --

3              **MR. SIMON:**  I APOLOGIZE, YOUR HONOR.  I'M NOT SAYING

4    THERE IS NOT A PHYSICAL PATH.  WHAT I AM SAYING IS THERE'S ONE

5    SET -- THERE'S A SET OF EIGHT PATHS IN THIS CASE.  FOR SD/MMC

6    THERE'S EIGHT LINES.  WHAT THE CONTROLLER DOES IS PICK SUBSETS OF

7    THOSE PATHS TO SEND DATA ON.  THAT'S WHAT I'M SAYING.

8              **THE COURT:**  BUT I'M ONLY WORRIED ABOUT WHAT "TO MAP"

9    MEANS.

10             **MR. SIMON:**  RIGHT.

11             **THE COURT:**  "TO MAP" MEANS YOU ASSIGN ONE THING TO

12   ANOTHER THING.  AND YOU DO THAT PHYSICALLY, BECAUSE IF YOU DON'T

13   DO IT PHYSICALLY, YOU ARE NOT GOING TO GET ANY ELECTRICITY FOR

14   IT.

15             **MR. SIMON:**  NO.

16             **THE COURT:**  I DON'T SEE WHY WE WOULD SAY TO LOGICALLY

17   ASSIGN.  WE JUST SAY "TO ASSIGN."  AND LET THE CHIPS FALL WHERE

18   THEY MAY.

19             **MR. SIMON:**  BECAUSE --

20             **MR. DEVITT:**  BECAUSE THAT'S WHAT WE WANT, YOUR HONOR.

21             **MR. SIMON:**  NO, THAT'S WHAT THE CLAIM DOES SAY, YOUR

22   HONOR.  I CAN PUT IT BACK UP.  THE CLAIM ACTUALLY SAYS:

23             "TO MAP THESE THINGS THAT ALREADY EXIST, THESE PHYSICAL

24        THINGS THAT ALREADY EXIST."

25        SO WHEN IT SAYS "TO MAP" IT'S NOT TO CREATE THE PHYSICAL

1    CONNECTION.  THE CLAIM READS THE PHYSICAL CONNECTION IS ALREADY

2    THERE, AND YOU ARE SELECTING --

3              **THE COURT:**  YOU CHOOSE WHICH ONE YOU ARE GOING TO USE.

4          **MR. SIMON:**  THAT'S IT.  THAT'S RIGHT. JUST CHOOSING

5    PREEXISTING PHYSICAL PATHS HERE, PICKING WHICH ONE YOU ARE GOING

6    TO USE, JUST LIKE WE HAVE HERE.  AND THAT'S WHY IF YOU -- THE ONE

7    I PUT UP THERE, ACTUALLY, THE OTHER ONE IS IN THIS INSTANCE AT

8    THE BOTTOM IF THE CONTROLLER THINKS THIS IS AN SD CARD, IT'S

9    GOING TO BE LOOKING AT FOUR LINES, FOUR PHYSICAL PATHS FOR DATA

10   AND IT'S NOT GOING TO GET THE RIGHT DATA.  IT WON'T WORK.

11             **THE COURT:**  OKAY.

12             **MR. SIMON:**  SO THAT'S WHY IT HAS TO MAP.

13             **THE COURT:**  OKAY.  SO I GUESS THE ONLY THING THAT YOU

14   HAVE A PROBLEM WITH IS YOU WANT TO HAVE YOUR ENTIRE CASE SUBSUMED

15   IN THE DEFINITION OF THE WORD "MAP" AND I DON'T THINK THAT THAT'S

16   RIGHT.  SO --

17             **MR. DEVITT:**  THAT'S NOT --

18             **THE COURT:**  -- ARE YOU GOING TO TALK ME OUT OF THAT

19   SOMEHOW?

20             **MR. DEVITT:**  IS THIS ON?  CAN YOU HEAR ME OKAY?

21             **THE COURT:**  I CAN HEAR YOU.

22             **MR. DEVITT:**  SO THAT'S -- THIS CASE ISN'T ENTIRELY

23   WRAPPED UP IN MAP.  THEIR CASE ISN'T ENTIRELY WRAPPED UP IN MAP.

24   THEY STILL HAVE TO PROVE A LOT OF OTHER LIMITATIONS, YOUR HONOR,

25   RELATED TO MEANS FOR IDENTIFYING CONTACT PINS, THINGS LIKE THAT,

1    SO -- BUT WE DO THINK THAT NO ONE MAPS.  AND THAT'S WHAT THE ITC,

2    THE ALJ ESSEX, JUDGE ESSEX FOUND.

3            **THE COURT:**  THAT WHAT?

4            **MR. DEVITT:**  NONE OF THESE PRODUCTS MAP.  AT THE ITC --

5            **THE COURT:**  NONE OF YOUR PRODUCTS.

6            **MR. DEVITT:**  NONE OF ANY OF OUR CLIENT PRODUCTS MAP

7    BECAUSE -- AND THE COMMISSION FOUND AND THE JUDGE FOUND THAT.

8    AND IF I CAN EXPLAIN WHY I WOULD LIKE TO DO SO.  I KNOW WE ARE

9    GETTING INTO -- BUT IT'S IMPORTANT TO UNDERSTAND THE CONCEPT OF

10   MAPPING.

11           **THE COURT:**  BUT DO I HAVE TO DEFINE IT IN SOME WAY --

12           **MR. DEVITT:**  NO, YOU DO HAVE TO DEFINE IT.  IT'S CLAIM

13   CONSTRUCTION, YOUR HONOR, UNFORTUNATELY.

14           **THE COURT:**  RIGHT, BUT I WAS DEFINING IT AS SAYING

15   "ASSIGN."  AND IF YOU WANT TO SAY THERE'S ELSEWHERE IN THE PATENT

16   THAT REQUIRES IT TO BE A CERTAIN WAY, WHETHER IT'S PRIOR ART THAT

17   MEANS THAT YOU DON'T INFRINGE, THAT'S ALL FINE.  BUT THAT ISN'T

18   ALL EXPLAINED IN THE DEFINITION OF THE SINGLE WORD "MAP."

19           **MR. DEVITT:**  RIGHT.  IF YOUR HONOR -- THE CLAIM

20   REQUIRES YOU TO MAP BASED ON THE TYPE OF CARD INSTALLED.  THAT'S

21   WHAT THEY SAY.

22           **THE COURT:**  RIGHT.

23           **MR. DEVITT:**  AND SO --

24           **THE COURT:**  WELL, NOT THAT'S ANOTHER --

25           **MR. DEVITT:**  RIGHT.

1          **THE COURT:**  BUT THOSE ARE DIFFERENT WORDS.  THOSE

2     AREN'T THE WORD "MAP."

3          **MR. DEVITT:**  SO OUR POINT IS IS THAT FOR AN SD AND MMC

4     CARD, WHICH SHARE THE SAME SET OF PINS BECAUSE THE MMC CARDS, AND

5     THEN THE NEXT GENERATION WAS SD CARDS AND THEY WANTED TO BE ABLE

6     TO USE THE SAME ONES IN THE SAME CAMERAS.  SO THEY USED THE SAME

7     FOOTPRINT.  USED A COUPLE MORE PINS.  AND AS TECHNOLOGY IMPROVED

8     A LITTLE BIT WE WENT FROM ONE BIT SERIAL TRANSFER TO FOUR BIT

9     PARALLEL TRANSFER.  BUT IT LOOKS LIKE THE SAME CARD, SO THEY FIT

10    IN THE SAME SLOT.

11         BUT NO MAPPING IS REQUIRED FOR THOSE CARDS BECAUSE THEY ARE

12    ALREADY CONNECTED.  AND THEY ALREADY KNOW HOW TO -- WHAT SIGNALS

13    GO ON WHAT LINES.  SO THIS WHOLE IDEA OF LOGICALLY ASSIGNING IS

14    TRYING TO CREATE A OR COME UP WITH AN INFRINGEMENT ARGUMENT FOR

15    SD AND MMC.  AND THAT'S WHY WE TALKED A LOT ABOUT WHAT HAPPENS IN

16    THE PRIOR ART WHAT THEY TALKED ABOUT AND WHAT HAPPENS IN HUNG-JU.

17         AND IN FACT WHY THE GOT REJECTED IN HUNG-JU BECAUSE THEY

18    ORIGINALLY NEVER HAD THE IDEA OF MAPPING.  IF YOU RECALL THAT --

19    IF YOU TURN TO THE DEFENDANTS' BRIEF THERE, WOULD YOU?

20         **THE COURT:**  YES.

21         **MR. DEVITT:**  IF YOU TURN TO PAGE EIGHT OF DEFENDANTS'

22    BRIEF, WHICH SAYS "DOCKET NUMBER 82."  DO YOU HAVE IT YOUR

23    HONOR?

24         **THE COURT:**  YES.

25         **MR. DEVITT:**  AND YOU SEE THERE IS IN THE SECTION THREE,

1   ABOUT LINE 23 THROUGH 25 WE HAVE A QUOTE FROM THE AMENDMENT THAT

2   THEY HAD IN THE PROSECUTION OF THE '443 PATENT.  AND IT USED TO

3   BE A CONTROLLER CHIP OPERABLE TO DIFFERENTIATE PIN CONFIGURATIONS

4   BASED ON AN INSERTED MEDIA CARD.  AND THE PATENT OFFICE REJECT

5   THAT BASED ON A PRIOR ART THAT'S CALLED "HUNG-JU," WHICH THE

6   ARGUMENT'S ON THE NEXT PAGE WE'LL GET TO.

7        AND THEY WERE TALKING ABOUT BEING ABLE TO DIFFERENTIATE

8   DIFFERENT TYPES OF CARDS.  THE IDEA OF MAPPING AND WHAT THIS

9   THING THAT WE ARE SPENDING SO MUCH TIME ON THIS MORNING, OR THIS

10  AFTERNOON, YOUR HONOR, CAME INTO CREATION ONLY THROUGH SOME

11  PATENT LAWYER COMING UP WITH IT HERE.

12       AND THE REASON THAT WE'RE TALKING THAT FIXED ASSIGNMENT AND

13  SD AND MMC CARDS DON'T MAP IS BECAUSE THOSE SHARE A SET -- A

14  COMMON SET OF CONTACT PINS THAT ALREADY PREWIRED, SO YOU DON'T

15  NEED TO MAP.

16       BUT WHAT THEY SAID IS, AS YOU TURN TO PAGE NINE OF OUR

17  BRIEF, AND LINES THREE THROUGH NINE, THERE'S A LONG BLOCK QUOTE.

18       THIS IS A PROSECUTION HISTORY WHERE THEY TALK ABOUT THE

19  HUNG-JU REFERENCE. AND I'D LIKE TO DIRECT YOUR ATTENTION IN

20  PARTICULAR TO LINES --

21            **THE COURT:**  WELL, OKAY. I THINK I HAVE THE PICTURE

22  HERE.

23            **MR. DEVITT:**  OKAY.

24            **THE COURT:**  LET'S MOVE ON TO "MEANS FOR MAPPING."

25            **MR. DEVITT:**  OKAY.

```
 1              THE COURT:  OKAY?

 2              MR. SIMON:  YOUR HONOR, CAN I MAKE ONE MORE POINT?

 3              THE COURT:  WHAT I NEED FOR YOU TO TELL ME IS WHAT THE

 4    STRUCTURE IS --

 5              MR. DEVITT:  YES.

 6              THE COURT:  -- ASSUMING WE NEED A STRUCTURE, WHAT IS IT

 7    GOING TO BE.

 8              MR. SIMON:  THANK YOU, YOUR HONOR.

 9         I APOLOGIZE.

10              MR. DEVITT:  YOUR HONOR, WHILE HE'S WAITING, THERE'S

11    ONE --

12              MR. SIMON:  YES, I'VE GOT IT RIGHT HERE.  "MEANS FOR

13    MAPPING."

14              MR. DEVITT:  HE DOESN'T WANT ME TO TALK.

15              MR. SIMON:  WELL, I WOULD RATHER FOCUS ON THE MERITS --

16    THE CLAIM CONSTRUCTION.

17         SO "MEANS FOR MAPPING," WHAT I HEARD YOU SAY, YOUR HONOR, IS

18    THAT YOU AGREE THAT IT'S A CONTROLLER.  AGREE THAT SECTION 112

19    PARAGRAPH 6 APPLIES.  THE FIRST POINT I WOULD LIKE TO MAKE IS FOR

20    ONE OF THE PATENTS THEY AGREE THAT SECTION 112-6 DOESN'T APPLY

21    AND THEY ARE NOT REQUIRING THAT CONTROLLER TO HAVE AN ALGORITHM

22    AND THEY ARE NOT SAYING THERE'S NOT SUFFICIENT STRUCTURE

23    DISCLOSED IN HERE.

24              THE COURT:  IS THAT TRUE?

25              MR. DEVITT:  THAT'S TRUE.  THAT'S THE '443, YOUR HONOR.
```

```
1    IT'S NOT A MEANS-PLUS-FUNCTION CLAIM.

2              THE COURT:  OKAY.

3              MR. SIMON:  OKAY.  SO FOR THE OTHER TWO PATENTS, "MEANS

4    FOR MAPPING," BOTH SIDES AGREE IT'S A CONTROLLER.  AND I HEARD

5    YOU SAY AND I WROTE DOWN IN MY NOTES THAT YOU HAVE TO KNOW WHAT

6    THE CONTROLLER IS GOING TO DO.  AND IF YOU GO LOOK AT THE

7    SPECIFICATION, AND --

8              THE COURT:  THERE'S A MEANS-PLUS-FUNCTION CLAIM --

9              MR. SIMON:  WELL --

10             THE COURT:  -- SO WE NEED A MEANS OR A FUNCTION.  AND

11   IF THE MEANS ISN'T SUFFICIENTLY DESCRIBED WITHIN THE CLAIM

12   ITSELF, WHICH IT ISN'T, THEN WE NEED TO LOOK AT THE SPECIFICATION

13   TO FIND OUT WHAT THE STRUCTURE IS.  AND YOU ARE LIMITED TO THAT

14   STRUCTURE.  AND THAT'S HOW I SEE IT.

15        BUT YOU NEED TO TELL ME WHERE IN THE SPECIFICATION, COLUMN

16   AND LINE, WHAT YOU WOULD SAY IS THE STRUCTURE.  AND THAT THAT IS

17   WHAT YOU WILL BE LIMITED TO, THAT AND THE --

18             MR. SIMON:  YES.  AND WHAT I WOULD SAY, YOUR HONOR, IS

19   THE STRUCTURE IS THE CONTROLLER.  WE ALL AGREE ON THAT.  WE

20   DISAGREE THAT YOU HAVE TO GIVE PROGRAMMING FOR OUR CONTROLLER.

21             THE COURT:  THAT'S ALL I HAVE TO SAY:  YOU NEED

22   SOMETHING.

23             MR. SIMON:  I --

24             THE COURT:  YOU TELL ME WHAT YOU NEED THAT THE ARTISAN

25   IS GOING TO LOOK AT AND SAY:
```

1      "OH, THIS IS HOW YOU DO IT."

2          **MR. SIMON:**  I AGREE.  AND YOU NEED SOMETHING.  AND WHAT

3  THE PERSON WOULD LOOK AT IS FIGURES 4 AND 5 OF THE PATENT.  AND

4  SAY:

5          "I'M GOING TO HAVE A CONTROLLER.  AND WHAT I'M GOING TO

6      HAVE MY CONTROLLER DO IS I AM GOING TO MAP, BECAUSE THAT'S

7      THE FUNCTION, IS TO MAP."

8      AND ALL THAT THE PERSON OF ORDINARY SKILL IN THE ART WOULD

9  HAVE TO DO -- AND THIS IS SOMEBODY WHO IS EXPERIENCED IN CREATING

10 CONTROLLERS.  AND I'VE REFERENCED THIS <u>TELCORDIA</u>

11 CASE, YOUR HONOR, THAT WE CITED WHERE THE STRUCTURE AND A

12 MEANS-PLUS-FUNCTION CLAIM WAS A CONTROLLER.

13         **THE COURT:**  SO YOU ARE LOOKING AT FIGURE 4 AND 5.  IS

14 THAT IT?

15         **MR. SIMON:**  WELL, I MEAN, FIGURE 4 AND 5 AND COLUMNS

16 THAT GO WITH IT.

17         **THE COURT:**  WHICH ARE?

18         **MR. SIMON:**  WHICH ARE WITH RESPECT TO -- WITH RESPECT

19 TO THE '424 PATENT, IT'S COLUMN 5, LINES 54 THROUGH COLUMN 5,

20 LINE 63.

21     WITH RESPECT TO THE '847, IT'S COLUMN 5, AT 41 THROUGH 6 AT

22 49.

23         **THE COURT:**  IS THIS ALL WRITTEN DOWN SOMEWHERE IN THE

24 RECORD OR --

25         **MR. SIMON:**  YES.  IT'S IN THE BRIEF.  IT'S IN THE

1    BRIEF, YOUR HONOR.  IT'S IN THE BRIEF.

2         THE POINT I WANT TO MAKE, THOUGH, IS THE TELCORDIA CASE

3    WHERE IT WAS MEANS -- A MEANS FOR SECTION 112-6.  IN THE SPEC THE

4    CONTROLLER -- THE CONTROLLER WASN'T EVEN IN THE CLAIMS.  IT WAS

5    IN THE SPEC.  AND THE FEDERAL CIRCUIT SAID THAT IS SUFFICIENT

6    STRUCTURE.  AND THE FEDERAL CIRCUIT SAID:

7              "THE ABSENCE OF MATERNAL CIRCUITRY IN THE WRITTEN

8         DESCRIPTION DOES NOT AUTOMATICALLY RENDER THE CLAIM

9         INDEFINITE."

10        YOU DON'T HAVE TO GIVE THAT.  AND IT DID NOT SAY YOU HAVE TO

11   DISCLOSE AN ALGORITHM.  IT DOES NOT HAVE TO DO THAT.  SO ALL WE

12   ARE --

13             **THE COURT:**  MAYBE IT DOESN'T DEPENDING ON WHAT THE

14   INVENTION IS, BUT IN THIS CASE IT DOES NEED TO BECAUSE OTHERWISE

15   IT'S A --

16             **MR. SIMON:**  WELL, AN ACTUALLY THAT WAS THE ARGUMENT IN

17   TELCORDIA.  THEY SAID ALL YOU SHOW -- CISCO SAID THE FIGURE IN

18   THE PATENT JUST SHOWS A BLACK BOX.  NOTHING IN THE FIGURE

19   DESCRIBES THE DETAILS OF THE CIRCUITRY.  AND THE FED CIRCUIT SAID

20   YOU DON'T HAVE TO AS LONG AS A PERSON OF ORDINARY SKILL WOULD BE

21   ABLE TO DO IT.

22        AND WE HAVEN'T JUST CITED -- IN OUR BRIEFING, YOUR HONOR, WE

23   ACTUALLY HAVE A DECLARATION THAT IS UNREBUTTED OF A PERSON OF

24   ORDINARY SKILL IN THE ART THAT SAYS:

25             "HERE'S HOW I FIGURE OUT HOW TO MAP.  AND THIS IS WHAT

KATHERINE WYATT, PRO TEM REPORTER, CSR, RMR (925) 212-5224

1    YOU DO."

2        AS I SAID BEFORE, IT'S REALLY NOT THAT DIFFICULT.  YOU HAVE

3    THESE LINES.

4            **THE COURT:**  I JUST UNDERSTOOD FOUR AND FIVE.

5            **MR. SIMON:**  YES.

6            **THE COURT:**  YOU ARE GOING TO BE STUCK WITH THOSE.

7            **MR. SIMON:**  WELL, AND EQUIVALENTS --

8            **THE COURT:**  SO --

9            **MR. SIMON:**  RIGHT.  AND SO, FOR EXAMPLE, WITH SD AND

10   MMC, RIGHT HERE (INDICATING) YOU WOULD USE SD0 FOR DATA FOR MMC

11   AND YOU WOULD USE SD0, 1, 2, 3 AND MAP FOUR DATA LINES FOR SD.

12   AND THAT'S EXACTLY WHAT THE DISPUTE IS IN THIS CASE.

13           **THE COURT:**  OKAY.

14           **MR. SIMON:**  SO THAT'S EXACTLY WHAT THEY DO.

15           **THE COURT:**  NOW WHERE WOULD I FIND THE COLUMN

16   DESCRIPTION THAT THEY RELY ON?

17           **MR. SIMON:**  IN OUR BRIEF, YOUR HONOR, WE HAVE CITED IN

18   THE BRIEF, IN THE SECTIONS IN THE BRIEF THE COLUMNS. THESE ARE

19   JUST TAKEN RIGHT OUT OF THE BRIEFS.

20           **THE COURT:**  YOU DIDN'T THINK YOU NEEDED TO DO THIS, SO

21   I'M JUST CURIOUS HOW I'M GOING TO FIND IN THE BRIEFS WHERE YOU

22   SAY WHAT YOU WOULD NEED TO DO WHEN YOU DIDN'T THINK YOU DID NEED

23   TO DO IT.

24           **MR. SIMON:**  WE DID IT IN AN ABUNDANCE OF CAUTION, YOUR

25   HONOR.

1          **THE COURT:**  WELL, THAT'S GOOD.

2          **MR. SIMON:**  WE PUT THE EVIDENCE IN, ANYWAY.  WE SAID

3    ONE OF ORDINARY SKILL IN THE ARE, MR. BUSCAINO.  HERE'S HIS

4    DECLARATION.  AND HE PUTS IN HIS DECLARATION:

5              "HERE'S WHAT I LOOK AT TO PROGRAM THE CONTROLLER OR TO

6          CREATE A CONTROLLER."

7          AND HE CITES THE COLUMNS AND LINE NUMBERS, AND WE PUT THAT

8    IN OUR BRIEF.

9          **THE COURT:**  FOR EACH OF THE INSTANCES.

10         **MR. SIMON:**  YES.  FOR EACH INSTANCES OF A CONTROLLER.

11         **THE COURT:**  OKAY.

12         **MR. SIMON:**  YES.

13         **THE COURT:**  DO YOU AGREE WITH THAT --

14         **MR. DEVITT:**  CAN I RESPOND TO THAT, YOUR HONOR?  I

15   DON'T -- OH, ARE THOSE CITES IN HIS BRIEF?  I DON'T HAVE THAT.

16   HE CAN SHOW IT TO ME.

17         **MR. SIMON:**  HERE, YOUR HONOR.  IT'S DOCUMENT 282.  THIS

18   IS OUR BRIEF AND IT'S FOOTNOTES 23, 24, 25, 26.  THIS IS

19   SUBSECTION TWO.  IT SAYS:

20             "EVEN IF AN ALGORITHM DISCLOSURE WAS REQUIRED, THE

21         SPECIFICATION DISCLOSES AN ALGORITHM."

22         OKAY.  AND WE GO THROUGH A DISCUSSION OF IT.

23         **THE COURT:**  OKAY.  SO FOOTNOTES 23 THROUGH 26?

24         **MR. SIMON:**  YES.

25         **THE COURT:**  AND IT CITES TO EACH PATENT, THE COLUMN  --

1              **MR. SIMON:**  RIGHT.

2              **THE COURT:**  SO IT WILL TELL ME THE STRUCTURE THAT WOULD

3    BE REQUIRING THE CONTROLLER.

4              **MR. SIMON:**  YES.  YOU WILL SEE A CONTROLLER PROGRAMMED

5    IN ACCORDANCE WITH FIGURES FOUR AND FIVE AND THE TEXT IN THE

6    COLUMNS RELATED AND EQUIVALENTS THEREOF.

7              **THE COURT:**  OKAY.  DO YOU HAVE ANY PROBLEM WITH THAT?

8         WELL, YOU WOULD LIKE ME THEN TO GO BEYOND THAT AND LOOK AT

9    WHAT THE EXPERTS SAY AND SAY THEY DON'T --

10             **MR. DEVITT:**  IF I COULD POINT OUT A COUPLE OF THINGS --

11             **THE COURT:**  -- THE DESCRIPTIONS AREN'T ADEQUATE AND

12   COMPARED TO WHAT THE TWO EXPERTS HAVE TO SAY AND MAKE A DECISION

13   BASED ON THEIR DECLARATIONS.  AND I'LL JUST TAKE ANOTHER LOOK, AS

14   I -- WELL, MAYBE I WILL. BUT OTHERWISE I'LL JUST SAY THAT WILL BE

15   FOR FUTURE MOTION PRACTICE OR PERHAPS FOR TRIAL.

16             **MR. DEVITT:**  I WOULD LIKE TO RESPOND TO IT BRIEFLY, BUT

17   THAT'S FINE, YOUR HONOR.

18             **THE COURT:**  OKAY.

19             **MR. SIMON:**  YOUR HONOR?

20             **THE COURT:**  ARE YOU GOING TO BE USING THE ELMO?

21             **MR. DEVITT:**  I DO.  I WANT TO PUT UP THE FIGURES FROM

22   THE PATENT.  I WANT TO POINT SOMETHING OUT.

23             **THE COURT:**  OKAY.

24             **MR. DEVITT:**  AS YOU SAID, THEY'LL BE STUCK WITH THE

25   ALGORITHM BEING FIGURES FOUR AND FIVE, AND I WANT TO HIGHLIGHT

1   SOMETHING, YOUR HONOR.  WE ARE TALKING A LOT ABOUT SD AND MMC.

2   AND I THINK ONE OF THE THINGS IS WHETHER IT'S GOING TO BE ONE

3   TYPE OF CARD OR TWO TYPES OF CARDS THAT COUNSEL IS GOING TO

4   ADDRESS.

5        BUT IF YOU LOOK AT FIGURES FOUR AND FIVE AS FAR AS THE

6   ALGORITHM, THEY ARE TREATED IDENTICAL. THERE'S ONLY ONE COLUMN

7   WHERE I DON'T SEE SD.  AND --

8        **THE COURT:**  YOU'RE LOOKING AT FIGURE THREE.

9        **MR. DEVITT:**  I'M SORRY.  I'M LOOKING AT FIGURE FOUR

10  RIGHT DOWN HERE.  I DON'T HAVE A SPACE.  I APOLOGIZE.  BUT IF YOU

11  LOOK AT FIGURE FOUR HE'S SAYING THIS IS THE ALGORITHM HOW TO DO

12  IT.  AND HE'S SAYING:

13        "I DO IT THE EXACT SAME WAY FOR MMC AND SD."

14     SO THEY DON'T DO AN ALGORITHM TO DISTINGUISH THE TWO.

15     SIMILARLY WITH FIGURE FIVE, YOUR HONOR, YOU WILL SEE --

16       **THE COURT:**  YOU'RE MAKING A NONINFRINGEMENT ARGUMENT.

17       **MR. DEVITT:**  NO, I'M TELLING YOU THAT THERE'S NO

18  ALGORITHM TO DISTINGUISH THE MAPPING BETWEEN MMC AND SD.  THERE'S

19  NO DISCLOSURE OF AN ALGORITHM TO DISTINGUISH BETWEEN THOSE TWO.

20       **THE COURT:**  OKAY.  AND WHETHER HE NEEDS THAT OR NOT IS

21  AN INFRINGEMENT QUESTION.

22       **MR. DEVITT:**  CORRECT.  BUT I'M SAYING WITH -- NO.  I'M

23  ARGUING WHETHER THERE'S ADEQUATE DISCLOSURE OF AN ALGORITHM TO

24  DISTINGUISH MMC AND SD.

25       **THE COURT:**  ASSUMING THAT I NEED ONE, WHICH I DON'T

KATHERINE WYATT, PRO TEM REPORTER, CSR, RMR (925) 212-5224

```
1    KNOW IF I DO OR NOT.

2              MR. DEVITT:  FAIR ENOUGH, YOUR HONOR.

3         ONE OTHER POINT I WANT TO GET BACK TO BECAUSE I DIDN'T GET

4    TO FINISH WITH RESPECT TO THE ASSIGNING POINT, AND THE PART THAT

5    IS IMPORTANT, YOUR HONOR --

6              THE COURT:  WELL, WE REALLY NEED TO GO --

7              MR. DEVITT:  I KNOW.  JUST TWO SECONDS.

8              THE COURT:  --  BECAUSE IT'S THREE O'CLOCK.

9              MR. DEVITT:  TWO SECONDS, IF I CAN INDULGE YOU.  IS

10   THAT IN THE PATENT -- AND IF I CAN GRAB IT HERE.  THIS IS COLUMN

11   TWO OF THE PATENT, THE '443 PATENT, THEY TALK ABOUT HOW YOU HAVE

12   A CONTROLLER THAT BASICALLY DOES HANDSHAKING.  AND IN THE PRIOR

13   ART, EVEN THE ADMITTED PRIOR ART THAT THEY TALK ABOUT THEY HAVE

14   MULTIPLE SETS OF PINS.  THEY CAN PUT A CARD IN AND THAT CARD

15   WOULD BE IDENTIFIED BY A CONTROLLER.  THIS IS RIGHT HERE IN

16   COLUMN TWO OF THE PATENT.  I BELIEVE IT'S LINES 20 THROUGH 23, I

17   BELIEVE, OR 24.

18        AND WHAT IT IS, YOUR HONOR, IS YOU CAN PUT A CARD IN.  IT

19   HANDSHAKES IT, IDENTIFIED, AND THEN IT TRANSFERS DATA BACK AND

20   FORTH, EVEN WITH SD AND MMC CARDS.

21        SO THAT WAS ALREADY KNOWN.  THAT'S ALREADY IN THE PRIOR ART,

22   THE ADMITTED PRIOR ART, IN COLUMN TWO.  SO I COMMEND YOUR

23   ATTENTION TO THAT, AS WELL.

24              MR. SIMON:  YOUR HONOR?

25              THE COURT:  WE NEED TO MOVE ON TO THE "MEANS FOR
```

1   IDENTIFYING THE TYPE OF MEMORY CARD INSERTED."

2       AND, AGAIN, ASSUMING THAT THIS IS A MEANS-PLUS-FUNCTION

3   CLAIM AND THE CONTROLLER ISN'T ENOUGH AND WE NEED TO TURN TO THE

4   SPECIFICATION TO FIND OUT HOW WE ARE GOING TO IDENTIFY THE TYPE

5   OF MEMORY CARD.  THE TWO CANDIDATES WE HAVE GOT ARE CARD WITH

6   SET LINES AND A MULTIPLEXER.  AND YOU DON'T THINK IT HAS TO BE

7   EITHER OF THOSE.

8           **MR. SIMON:**  WITH YOUR PERMISSION, YOUR HONOR --

9           **THE COURT:**  SO I NEED TO HEAR FROM YOU AS TO WHETHER IT

10  IS AT LEAST SOMETIMES ONE OF THOSE.  OR IF YOU DON'T LIKE THEM

11  AND IF YOU DON'T LIKE THEM, WHAT YOU ARE GOING TO GIVE ME

12  INSTEAD.

13          **MR. SIMON:**  MR. KELLA IS GOING TO ADDRESS THAT, IF IT'S

14  ALL RIGHT.

15          **THE COURT:**  OKAY.  ALL RIGHT.

16          **MR. KELLA:**  WOULD IT BE OKAY, YOUR HONOR, IF I USE THE

17  ELMO TO HELP ILLUSTRATE?

18          **THE COURT:**  WELL, YOU CAN IF YOU DON'T JUST GET ALL

19  DISTRACTED AND SHUFFLING PAPERS.  IT'S MORE HELPFUL TO ME IF YOU

20  JUST TELL ME THINGS.

21          **MR. KELLA:**  I WILL DO MY BEST, YOUR HONOR.  SO ON

22  "MEANS FOR IDENTIFYING," IF I UNDERSTAND YOUR CONCERN CORRECTLY,

23  IS IS WHAT DOES -- WHAT IS USED TO PERFORM THE FUNCTION --

24          **THE COURT:**  WHAT IS THE STRUCTURE?

25          **MR. KELLA:**  -- IN ADDITION TO THE CONTROLLER?

1    **THE COURT:**  CORRECT.

2         **MR. KELLA:**  AND THE DEFENDANTS, AS YOUR HONOR KNOWS,

3    ARE ARGUING IT'S NOT JUST THE CONTROLLER.  IT'S THE CONTROLLER

4    AND CARD DETECT LINES.  AND WE ARE SAYING THE STRUCTURE IS NOT

5    LIMITED TO A CONTROLLER AND CARD DETECT LINES.

6         AND THERE'S TWO MAIN REASONS FOR THAT.  AND THE FIRST REASON

7    IS THAT THE LAW SAYS YOU CONSTRUE THE STRUCTURE AS THE STRUCTURE

8    THAT ACTUALLY PERFORMS THE CLAIMED FUNCTION.

9         **THE COURT:**  IF IT'S DESCRIBED IN THE SPECIFICATION.

10        **MR. KELLA:**  CORRECT.  AND ALL PARTIES -- I APOLOGIZE,

11   YOUR HONOR.  ALL PARTIES AGREE THAT THE CONTROLLER AT LEAST

12   PARTICIPATES IN IDENTIFYING THE CARD TYPE.

13        AND PLAINTIFF'S POSITION IS THE CONTROLLER ITSELF

14   IDENTIFIES --

15        **THE COURT:**  WELL, THAT IS FINE.  BUT THE CLAIMS DON'T

16   TELL ME HOW IT DOES SO.  AND SO IT'S NOT SUFFICIENT.  AND SO I'M

17   GOING TO LOOK IN THE SPECIFICATION TO FIND HOW IT DOES SO.

18        AND YOU TELL ME WHERE IN THE SPECIFICATION SHOULD I LOOK TO

19   SEE HOW IT DOES THAT.

20        **MR. KELLA:**  CORRECT, YOUR HONOR.  IF I COULD --

21        **THE COURT:**  LIKE COLUMNS AND LINES.

22        **MR. KELLA:**  ASSUMING TELCORDIA DOES NOT APPLY, AND YOUR

23   HONOR FINDS THAT THE SPEC MUST TALK ABOUT HOW TO PERFORM --

24        **THE COURT:**  I DO THINK THAT, YES.

25        **MR. KELLA:**  VERY GOOD.  FOR EXAMPLE, YOUR HONOR, IN THE

```
 1     '424 PATENT, IF WE LOOK AT LINES -- LINE SIX -- COLUMN SIX, LINE

 2     15 TO 17, IT STATES THAT:

 3              "THE CONTROLLER CHIP DIFFERENTIATES THE PIN

 4          CONFIGURATION FOR EACH FLASH MEDIA TYPE."

 5          AND I THINK ALL PARTIES WOULD AGREE THAT THAT INDICATES THAT

 6     THE CONTROLLER --

 7              THE COURT:  OH, SURE.  BUT HOW DOES IT DO IT?

 8              MR. KELLA:  WELL, IT COULD USE A NUMBER.

 9              THE COURT:  TWO OR FIVE?

10              MR. KELLA:  WELL, I THINK THERE'S A COUPLE OF

11     ALTERNATIVES.

12              THE COURT:  WE WOULD NEED SOMETHING TO TELL SOMEONE

13     SKILLED IN THE ART HOW TO MAKE A CONTROLLER DO THAT.  SO WHERE IS

14     THAT?

15              MR. KELLA:  ABSOLUTELY.  AND ONE POSSIBILITY IS CARD

16     DETECT LINES.

17              THE COURT:  RIGHT.

18              MR. KELLA:  AND WE AGREE CARD DETECT LINES CAN BE USED.

19              THE COURT:  GOOD.

20              MR. KELLA:  ONE POSSIBILITY WOULD BE --

21              THE COURT:  MULTIPLEXING.

22              MR. KELLA:  WELL, IF I COULD TAKE UP MULTIPLEXING

23     SEPARATELY, BECAUSE I THINK MULTIPLEXING IS A SEPARATE ISSUE

24     ASIDE FROM --

25              THE COURT:  WELL, YOU ARE GOING TO BE LIMITED TO WHAT
```

1   YOU TELL ME.  SO I AGREE YOU CAN USE CARD DETECT LINES.

2              **MR. KELLA:**  I UNDERSTAND.

3              **THE COURT:**  THAT'S ONE.  IF YOU WANT ANYTHING MORE,

4   TELL ME WHAT IT IS.

5              **MR. KELLA:**  OR YOU COULD USE BINARY STATE OF DATA OR

6   OTHER CARD PINS.  AND THAT'S RIGHT IN THE CONTROLLER.

7              **THE COURT:**  BINARY STATE OF DATA MEANS ZEROS AND ONES.

8   THAT'S NOT ENOUGH TO TELL SOMEBODY HOW TO MAKE A MACHINE.

9              "OH, USE ZEROS AND ONES.

10             "OKAY, GREAT."

11             **MR. KELLA:**  WELL, THAT'S ACTUALLY A VERY SIMPLE

12  FUNCTION WHEN IT COMES DOWN TO IT THAT ONE OF ORDINARY SKILL IN

13  THE ART WOULD UNDERSTAND.  AND MR. BUSCAINO IN HIS DECLARATION

14  HAS EXPLAINED --

15             **THE COURT:**  WHAT IS SIMPLE?

16             **MR. KELLA:**  WELL --

17             **THE COURT:**  YOU ARE GOING TO STICK FIVE DIFFERENT CARDS

18  IN A SLOT AND SOMEHOW THE MACHINE IS GOING TO TELL WHICH ONE YOU

19  STUCK IN THERE.  THAT ISN'T SIMPLE.

20             **MR. KELLA:**  CORRECT.

21             **THE COURT:**  YOU NEED TO KNOW HOW THE MACHINE IS GOING

22  TO DO THAT.

23             **MR. KELLA:**  AND IF WE COULD LOOK AT FIGURE FIVE OF THE

24  '424 PATENT, HERE'S AN EXAMPLE.  IF WE LOOK AT THE MINI SD CARD,

25  WE SEE PIN 14 AND -- I'M SORRY.  PIN 13.  AND WE SEE THAT THAT

1    SERVES AS A CARD DETECT LINE.

2              **THE COURT:**  WE'VE AGREED ON CARD DETECT LINE.  YOU'VE

3    GOT THAT.

4              **MR. KELLA:**  AS ONE OPTION.

5              **THE COURT:**  YES.

6              **MR. KELLA:**  CORRECT.

7              **THE COURT:**  DO YOU WANT ANYMORE OPTIONS?

8              **MR. KELLA:**  MCMD COMMAND SIGNALS ARE ANOTHER OPTION.

9    AND THAT'S DISCLOSED --

10             **THE COURT:**  OKAY.  WHERE IS THAT?

11             **MR. KELLA:**  AND THAT'S DISCLOSED -- THAT'S DISCLOSED IF

12   WE LOOK AT FIGURE FIVE AND FIGURE FOUR FOR MMC AND SD WE SEE PIN

13   THREE, WHICH IS MCMD.  AND THOSE ARE COMMAND SIGNALS.  AND THOSE

14   ARE DISCUSSED IN THE '424 PATENT AT COLUMN SIX, LINE EIGHT TO

15   NINE.

16      A COMMAND SIGNAL.  IT SAYS "CMD" IN THE SPEC, BUT THERE'S A

17   CERTIFICATE OF CORRECTION THAT CORRECTS "CMD" TO READ AS MCMD."

18      AND COMMAND CONTROL SIGNALS ARE ALSO DISCUSSED IN COLUMN

19   FIVE, LINES 65 TO 67.  AND ALSO IN COLUMN SIX, LINES 51 TO 53.

20      AND ONE OF ORDINARY SKILL IN THE ART -- AND THIS IS

21   CONFIRMED BY EXPERT TESTIMONY -- IS GOING TO SEE IN THE SPEC WHEN

22   WE'RE TALKING ABOUT MMC AND SD, WE'RE TALKING ABOUT MCMD

23   COMMANDS.  AND UNDERSTAND THAT THAT IS A WAY TO IDENTIFY WHETHER

24   AN MMC OR AN SD CARD HAS BEEN INSERTED.

25      AND MR. BUSCAINO IN PARAGRAPH --

1          **THE COURT:**  TO DISTINGUISH BETWEEN THOSE TWO?

2          **MR. KELLA:**  TO DISTINGUISH BETWEEN THOSE TWO CARD

3     TYPES, CORRECT.

4          **THE COURT:**  BUT NOT ALL THE OTHERS.

5          **MR. KELLA:**  WELL, IT DEPENDS ON THE EMBODIMENT.

6          **THE COURT:**  HOW ARE YOU GOING TO TELL WHETHER IT'S AN X

7     WHATEVER?  THERE'S ABOUT SIX OF THEM.

8          **MR. KELLA:**  SURE.  AND I CAN EXPLAIN HOW IT WORKS IN

9     PRACTICE.  AND THIS IS --

10         **THE COURT:**  WELL, NO.  WHAT I NEED TO SEE IS WHERE IT

11    IS IN THE SPECIFICATION.

12         **MR. KELLA:**  SURE.  THAT'S IN COLUMN -- IN FIGURE FIVE,

13    IN FIGURE FOUR.

14         **THE COURT:**  SO THIS IS -- YOU ARE REFERRING TO THOSE

15    SAME CHARTS WITH THE 18 PINS AND THE DIFFERENT CARDS.

16         **MR. KELLA:**  CORRECT.  AND IN TERMS OF THIS, THIS IS THE

17    ATMEL CASE WE HAVE CITED.  THE PERSPECTIVE AND THE VIEWPOINT OF

18    ONE OF ORDINARY SKILL IN THE ART CAN BE USED TO UNDERSTAND WHAT

19    STRUCTURE IS DISCLOSED.

20         **THE COURT:**  I'M AWARE OF THAT.  BUT IT HAS TO BE

21    WRITTEN DOWN SO THEY CAN LOOK AT IT AND SEE WHAT IT IS.

22         **MR. KELLA:**  THAT'S CORRECT.  AND THAT'S THE M --

23         **MR. SIMON:**  YOUR HONOR, MAY I INTERRUPT ONE SECOND?  I

24    JUST WANT TO CORRECT SOMETHING.  I WANT TO MAKE SURE WE DIDN'T

25    MISSTATE ANYTHING.  WE DO NOT AGREE THAT THE SPECIFICATION HAS TO

```
1   TELL AN EXPERT IN THIS FIELD HOW TO DO THIS.

2       AND THAT'S WHAT WE CITE IN OUR BRIEF.  WHAT THE CASES SAY IS

3   THAT ONE OF ORDINARY SKILL IN THE ART IS PRESUMED TO HAVE THAT

4   KNOWLEDGE.

5       AND, FOR EXAMPLE, THERE'S A SPECIFICATION THAT SAYS:

6           "IF YOU WANT TO READ MMC CARDS AND SD CARDS, HERE'S

7       WHAT YOU DO AND HERE ARE THE SIGNALS YOU SEND."

8       THOSE WERE ALL IN EXISTENCE AT THE TIME THE PATENT WAS

9   FILED.  IF YOU HAD TO PUT EVERYTHING ON HOW TO DO EVERYTHING IN

10  THE PATENT, THE PATENTS WOULD BE LIKE PHONE BOOKS.  SO THE LAW IS

11  WE JUST HAVE TO TEACH ONE OF ORDINARY SKILL IN THE ART.

12      SO I JUST WANT TO MAKE IT CLEAR THAT WE DON'T AGREE THAT,

13  FOR EXAMPLE, A CONTROLLER IS NOT SUFFICIENT OR THAT YOU HAVE TO

14  PUT IN THE SPEC HOW THESE THINGS OPERATE.  THAT'S REALLY AN

15  ENABLEMENT ISSUE, A VALIDITY ISSUE.

16          THE COURT:  WELL, THE MEANS-PLUS-FUNCTION CLAIMS YOU

17  NEED TO IDENTIFY THE STRUCTURE IN THE SPECIFICATION.

18          MR. SIMON:  CORRECT.

19          THE COURT:  THAT'S WHAT I'M LOOKING FOR.

20          MR. SIMON:  RIGHT.  BUT YOU DON'T HAVE TO SAY HOW THE

21  STRUCTURE WORKS IN THE SPECIFICATION.  AND ONE OF ORDINARY SKILL

22  IN THE ART, AND WE CITE THE CASES IN OUR BRIEF, WOULD UNDERSTAND

23  THAT.

24          THE COURT:  WELL, WHAT IS THE STRUCTURE DISCLOSED?

25          MR. SIMON:  YES.
```

1           **THE COURT:**  RIGHT.  THAT'S WHAT I'M TRYING TO FIND.

2    WHAT IS THE STRUCTURE DISCLOSED THAT WOULD EXPLAIN TO SOMEONE OF

3    ORDINARY SKILL IN THE ART HOW TO MAKE THIS LITTLE SLOT RECOGNIZE

4    WHAT KIND OF CARD HAS BEEN STUCK INTO IT.

5           **MR. SIMON:**  RIGHT.  AND THAT'S THE CONTROLLER.  AND

6    THAT'S THE STRUCTURE.  YOU'RE ASKING US TO POINT OUT HOW THE

7    STRUCTURE WORKS AND WHERE THAT'S EXPLAINED -- I'M SORRY -- HOW

8    THE CONTROLLER WORKS AND DOES THE DETERMINATION OF WHAT CARD.

9    AND WE'RE SAYING THAT'S NOT THE LAW.  WE JUST HAVE TO IDENTIFY

10   THE STRUCTURE.  I'M JUST SAYING --

11          **THE COURT:**  I THINK WE DIFFER ON THAT.  SO I'M GOING TO

12   LIMIT YOU TO THE STRUCTURE THAT I FIND IN THE SPECIFICATION.  SO

13   I'M TRYING TO GIVE YOU A CHANCE TO TELL ME WHAT THAT IS BECAUSE

14   YOU ARE GOING TO BE LIMITED TO IT.

15          **MR. SIMON:**  UNDERSTOOD.  WE UNDERSTAND.

16          **THE COURT:**  AND SO FAR I'VE GOT CARD DETECT LINES AND

17   SOMETHING ABOUT COMMAND.

18          **MR. KELLA:**  CORRECT, YOUR HONOR.  AND I WOULD SAY A

19   CONTROLLER THAT USES CARD DETECT LINES OR COMMAND SIGNALS.

20          **THE COURT:**  COMMAND SIGNALS.

21          **MR. KELLA:**  SUCH AS MCMD COMMANDS.

22          **THE COURT:**  MCMD COMMANDS.  OKAY.

23          **MR. KELLA:**  AND THAT'S CONFIRMED IN EXHIBIT O TO

24   PLAINTIFF'S OPENING BRIEF.

25          **THE COURT:**  OKAY.

1          **MR. KELLA:**  IN PARAGRAPH 40 OF MR.  BUSCAINO'S

2    DECLARATION.  AND HE DISCUSSES SPECIFICALLY HOW HE AS ONE SKILLED

3    IN THE ART LOOKS AT THIS, LOOKS AT THIS SPEC AND LOOKS AT THE

4    FIGURES AND SEES THAT MCMD COMMANDS ARE DISCLOSED.  AND

5    UNDERSTANDS THAT THESE ARE MMC AND SD CARD TYPES.  AND HOW ONE OF

6    SKILL IN THE ART UNDERSTANDS THAT THERE ARE SPECIFICATIONS

7    ASSOCIATED WITH THOSE CARD TYPES AND WOULD KNOW HOW TO IDENTIFY A

8    CARD USING MCMD COMMANDS BASED ON THEIR KNOWLEDGE AS ONE SKILLED

9    IN THE ART BASED ON THE DISCLOSURE OF A CONTROLLER THAT USES MCMD

10   COMMANDS AND CARD DETECT LINES.

11          **THE COURT:**  OKAY.  SO YOU DON'T WANT MULTIPLEXING?

12          **MR. KELLA:**  YOUR HONOR, WE DISAGREE WITH MULTIPLEXING.

13   AND I CAN DISCUSS WHY IN ADDITION TO THE FACT THAT THE --

14          **THE COURT:**  JUST TELL ME WHETHER YOU WANT IT OR NOT.

15          **MR. KELLA:**  NO, WE DO NOT WANT MULTIPLEXING, YOUR

16   HONOR.

17          **THE COURT:**  OKAY.

18       SO THE TWO THINGS YOU WANT ARE CARD DETECT LINES OR MCMD

19   COMMANDS WHICH WOULD DIFFERENTIATE BETWEEN SD AND MMC CARDS,

20   ALTHOUGH IT WOULDN'T DIFFERENTIATE ANY OTHER KINDS OF CARDS.

21          **MR. KELLA:**  QUITE HONESTLY, YOUR HONOR --

22          **THE COURT:**  COMING BACK TO BITE YOU.

23          **MR. KELLA:**  -- SOMEONE MIGHT BE ABLE TO BUILD A

24   CONTROLLER WHERE MCMD COMMANDS ARE USED TO DIFFERENTIATE OTHER

25   TYPES OF CARDS.

1          **THE COURT:**  THEY WILL GET A NEW PATENT.

2          **MR. KELLA:**  WELL, FOR PURPOSES OF THE DISPUTE HERE I

3     THINK MCMD COMMANDS IS SUFFICIENT.

4          **THE COURT:**  OKAY.  DO YOU WANT TO RESPOND TO THAT?

5          **MR. WALKER:**  YES, YOUR HONOR.  THANK YOU.  CY WALKER.

6          **THE COURT:**  ON THE CARD DETECT LINES, THAT'S WHAT YOU

7     THINK.

8          **MR. WALKER:**  THAT'S CORRECT.  AND IT'S NOT JUST WHAT IS

9     DISCLOSED IN THE PATENT.  IT'S WHAT IS DISCLOSED AND CLEARLY

10    LINKED TO THE CLAIMED FUNCTION.  SO YOU COULD HAVE A LOT OF WORDS

11    YOU COULD POINT TO OF THINGS THAT ARE DISCLOSED AND YOU COULD

12    COME UP WITH WAYS THAT EXPERTS MAY LOOK AT THOSE THINGS AND

13    FIGURE OUT HOW TO DO SOMETHING WITH THEM IN ORDER TO DO THE

14    CLAIMED FUNCTION.  BUT WHAT IS IMPORTANT IS WHAT IS DISCLOSED AND

15    CLEARLY LINKED IN THE PATENT.

16       AND WHEN YOU LOOK AT THE PATENT --

17         **THE COURT:**  WE DON'T NEED TO WORRY ABOUT THAT BECAUSE

18    THEY HAVE LIMITED THEMSELVES TO THE CARD DETECT LINES --

19         **MR. WALKER:**  UNDERSTOOD.

20         **THE COURT:**  -- WHICH YOU POINT OUT YOURSELF, AND THEN

21    THIS MCMD COMMAND.

22         **MR. WALKER:**  AND SO THE MCMD COMMAND IS NEVER CLEARLY

23    LINKED TO THE CLAIMED FUNCTION OF DETERMINING WHAT TYPE OF CARD

24    IS IN THERE.

25         **THE COURT:**  OH.

1          **MR. WALKER:**  THERE'S NO DISCUSSION OF THAT AT ALL.

2          **THE COURT:**  OH.

3          **MR. WALKER:**  AND SO THAT'S WHY THE MCMD LINE, IT NEVER

4    SAYS THAT YOU CAN USE THAT ANYWHERE IN THE PATENT TO

5    DIFFERENTIATE BETWEEN THESE CARDS.

6          AND EON, THE EON CASE FROM THE FEDERAL CIRCUIT CASE RECENTLY

7    SAYS WHAT AN EXPERT MIGHT BE ABLE TO KNOW OR COULD DO IN TERMS OF

8    ENABLEMENT IS IRRELEVANT.  IT'S COMPLETELY IRRELEVANT FOR

9    PURPOSES OF A MEANS-PLUS-FUNCTION CLAIM.

10         IT'S STRICTLY LIMITED TO WHAT IS WITHIN THE FOUR CORNERS OF

11   THE PATENT, DISCLOSED AND CLEARLY LINKED TO THAT CLAIMED

12   FUNCTION.  AND YOU CAN READ THIS ENTIRE PATENT AND IT WILL NOT

13   TALK ABOUT THIS MCMD LINE BEING USED TO DIFFERENTIATE BETWEEN

14   TYPES OF CARDS.

15         **THE COURT:**  MAYBE IF WE COULD TAKE THIS OPPORTUNITY IF

16   YOU CAN DO IT BRIEFLY IF YOU THINK IT'S IMPORTANT TO EXPLAIN TO

17   ME WHAT YOU WERE TALKING ABOUT IN TERMS OF THE '638 PATENT.

18         **MR. WALKER:**  WELL, I DON'T THINK IT'S IMPORTANT

19   BECAUSE --

20         **THE COURT:**  OKAY.

21         **MR. WALKER:**  -- IT CERTAINLY -- IT DISCLOSES IT.  IT

22   CLEARLY LINKS IT.  BUT WHEN YOU LOOK AT IT THOSE STRUCTURES ARE

23   NOT IN PLAY IN THIS CASE.  AND IN FACT THEY DON'T -- I'M SORRY?

24         **THE COURT:**  THE PASSIVE ADAPTER?

25         **MR. WALKER:**  EXCUSE ME?

1          **THE COURT:**  THE PASSIVE ADAPTER?

2          **MR. WALKER:**  CORRECT.  THE CLAIMS OF THE '424 AND '847

3    ARE DRAFTED TO A UNIVERSAL ADAPTER.  IT FITS ALL THE DIFFERENT

4    CARDS IN THEM WITHOUT ANY NEED FOR PASSIVE ADAPTERS.  AND SO IN

5    THE ABSENCE OF THE PASSIVE ADAPTERS YOU DON'T HAVE THE STRUCTURE.

6    FOR COMPLETENESS WE DON'T CARE IF IT'S IN THERE OR NOT.

7          WE'VE IDENTIFIED THAT STRUCTURE IN OUR BRIEF.

8          ONE POINT THAT I DO WANT TO MAKE CLEAR, THE MULTIPLEXING

9    POINT THAT YOU BROUGHT UP.  SO WHEN THIS PATENT TALKS ABOUT THESE

10   CARD DETECT LINES AND WHERE THOSE COME FROM.  AND THIS IS AT

11   COLUMN SIX IN THE '424 PATENT.  AND IT IS AT LINES 36, 37.

12         SO THIS PART STARTS OFF, AND IT SAYS:

13            "THE DATA LINES FOR SMARTMEDIA AND XD INTERFACE CARDS

14         HAVE A PARALLEL DATABUS OF EIGHT BITS."

15         AND IT DENOTES THEM DO THROUGH D7 THAT OCCUPY PINS TEN

16   THROUGH 17.  AND YOU CAN SEE THAT RIGHT HERE.  SO THESE PINK PINS

17   HERE (INDICATING) DO THROUGH D7 OCCUPY PINS, CONNECTOR PINS TEN

18   THROUGH 17.  YOU SEE THAT RIGHT THERE.

19         AND SO THEN THE PATENT CONTINUES:

20            "THESE DATABUS LINES ARE MULTIPLEXED TO SERVE AS CARD

21         DETECT LINES FOR THE REMAINING TYPES OF CARDS."

22         AND RIGHT HERE IN YELLOW YOU CAN SEE THE CARD DETECT LINES.

23   AND SO YOU HAVE PARALLEL DATABUS LINES THAT ARE MULTIPLEXED TO

24   SERVE AS CARD DETECT LINES FOR THE REMAINING TYPES OF CARDS.

25         THAT'S WHAT IS CLEARLY DISCLOSED IN THE PATENT AND CLEARLY

1    LINKED DETECTION, THE DETECTION OF THE TYPE OF CARD.

2        AND SO THIS STRUCTURE THAT IS DISCLOSED TALKS ABOUT HOW IT

3    DOES THAT.  AND YOU CAN LOOK IN FIGURE FOUR, AS WELL, RIGHT?

4    HERE AGAIN WE HAVE --

5            **THE COURT:**  SO THAT'S ALL GOOD.  THAT'S THE STRUCTURE

6    THAT THEY ARE POINTING TO AND THE ONE THAT YOU ARE POINTING TO

7    AND --

8            **MR. WALKER:**  CORRECT.

9            **THE COURT:**  -- THEY WOULD BE LIMITED TO THAT WITH THE

10   POSSIBLE ADDITION OF THIS MCMD COMMAND.  SO SEEMS LIKE WE'RE ALL

11   SOMEWHAT IN AGREEMENT.

12           **MR. WALKER:**  WELL, WE SAY THAT THE CARD DETECT LINES

13   HAVE TO BE MULTIPLEXED WITH A PARALLEL DATABUS LINE.  IF IT'S

14   NOT -- BECAUSE THAT'S WHAT IT SAYS:

15           "THESE PARALLEL DATABUS LINES ARE MULTIPLEXED TO BE A

16       CARD DETECT" --

17           **THE COURT:**  OKAY.  I WAS -- I MISUNDERSTOOD, THEN.  I

18   WAS ASSUMING THAT MULTIPLEXNESS WAS AN ALTERNATIVE.

19           **MR. WALKER:**  NO.

20           **THE COURT:**  AND THAT THAT WOULD BE SOMETHING ELSE THAT

21   THEY MIGHT WANT TO POINT ME TO CITATIONS FOR SO THAT I COULD

22   UNDERSTAND THAT THAT WAS PART OF THE STRUCTURE.  AND THEY SAID,

23   NO, THEY DIDN'T HAVE A SEPARATE MULTIPLEX STRUCTURE ARGUMENT.

24       NOW, YOU'RE SAYING THAT MULTIPLEX IS A NECESSARY PART OF

25   CART DETECT LINES.

1          **MR. WALKER:**  IT IS WHAT IS DISCLOSED AS OPERATING AS

2     THE CARD DETECT LINES IN EVERY EMBODIMENT.

3          **THE COURT:**  OKAY.  WELL, IF IT'S IN THERE, THEN THAT

4     WILL BE PART OF WHAT THE STRUCTURE WILL BE.

5          **MR. WALKER:**  OKAY.

6          **MR. KELLA:**  YOUR HONOR, MAY I BE HEARD ON THE

7     MULTIPLEXING POINT AND ONE OTHER POINT BRIEFLY?

8          **THE COURT:**  OKAY.

9          **MR. KELLA:**  ON MULTIPLEXING WE'RE FINE IF THE COURT

10    WOULD REQUIRE THE STRUCTURE TO OPTIONALLY USE MULTIPLEXING.  THE

11    ISSUE WE HAVE WITH ADDING THIS MULTIPLEXING IN IS TWOFOLD.

12    MULTIPLEXING IS NOT STRUCTURE.  MULTIPLEXING IS A FUNCTION.  AND

13    OUR JOB HERE IS TO CONSTRUE THE STRUCTURE, NOT THE FUNCTION, NOT

14    THE IDENTIFYING.

15         AND DEFENDANTS HAVE NEVER PROPOSED A CONSTRUCTION OTHER THAN

16    WHAT IS IN THE CLAIM ITSELF FOR IDENTIFYING THE TYPE OF CARD.  SO

17    MULTIPLEXING IS NOT STRUCTURE.  AND I DON'T THINK DEFENDANTS WILL

18    ACTUALLY SAY THAT MULTIPLEXING IS STRUCTURE.  IT'S JUST NOT

19    STRUCTURE.

20         **THE COURT:**  WELL, THEY DO.  THEY DO.  I HAVE A QUOTE

21    RIGHT IN FRONT OF ME WHERE THEY SAY THAT.

22         **MR. KELLA:**  WELL.  THEY SAY "WHEREIN."

23         **THE COURT:**  RIGHT.

24         **MR. KELLA:**  SO THEY SAY:

25         "A CONTROLLER THAT USES CARD DETECT LINES WHEREIN

```
 1              CERTAIN LINES HAVE MULTIPLEXED WITH OTHER LINES."

 2         THE COURT:  RIGHT.

 3         MR. KELLA:  THAT'S DESCRIBING AN ENVIRONMENT.

 4         THE COURT:  WELL, IT'S DESCRIBING A STRUCTURE AND IN A

 5    MEANS-PLUS-FUNCTION CLAIM YOU ARE LIMITED TO THE STRUCTURE THAT'S

 6    DESCRIBED IN THE SPECIFICATION.  SO IF THAT'S IN THERE, THEN,

 7    YES, THAT IS WHAT YOU'LL BE LIMITED TO AND ITS EQUIVALENTS.

 8         MR. KELLA:  SURE.  WELL, MULTIPLEXING ITSELF IS NOT

 9    STRUCTURE.  AND I REALLY DON'T THINK DEFENDANTS WILL SAY

10    MULTIPLEXING IS STRUCTURE.

11         THE COURT:  THEY DO SAY THAT.

12         MR. KELLA:  IT'S A FUNCTION.

13         THE COURT:  THEY DO SAY THAT.  YOU MAY DISAGREE WITH

14    THEM, BUT THEY CLEARLY SAY IT.  BUT, ANYWAY, LET'S MOVE ON TO

15    CONTACT PINS IN THE MOLDED PLASTIC.

16         MR. WALKER:  IF I COULD JUST CORRECT ONE THING FOR THE

17    RECORD.  MY COLLEAGUES TELL ME THAT I MISSPOKE AND SAID THAT MCMD

18    WAS A STRUCTURE.  AND IF I DID SAY THAT, I WAS INCORRECT.  AND IT

19    WAS UNINTENTIONAL.

20         THE COURT:  OKAY.

21         MR. WALKER:  IT'S JUST A SIGNAL.

22         THE COURT:  OKAY.  SO WHAT IS A FLOATING PIN AND WHAT'S

23    WRONG WITH OR DO WE NEED TO FURTHER EXPLAIN HOW EMBEDDED

24    SOMETHING MUST BE TO BE INTEGRATED?  ARE YOU TALKING ABOUT --

25         MR. KELLA:  I'M HAPPY TO ADDRESS THAT, YOUR HONOR.
```

1     WITH RESPECT TO THE EMBEDDED LIMITATION THAT DEFENDANTS WANT

2   TO PUT IN THERE, WE DON'T SEE WHAT THE POINT OF THAT IS.  THE

3   CLAIM ITSELF IS --

4          **THE COURT:**  BECAUSE "INTEGRATED" IS A MUSHY WORD.

5   "INTEGRATED" COULD MEAN ELECTRICALLY INTEGRATED OR LOGICALLY

6   INTEGRATED OR THEORETICALLY INTEGRATED OR CONCEPTUALLY

7   INTEGRATED.  IT DOESN'T -- IT ISN'T A PHYSICAL WORD TO ME.  SO IT

8   SEEMS TO ME THAT WHAT WE NEED IS THIS CONTACT ACTUALLY BEING

9   PHYSICALLY ATTACHED TO THE PLASTIC IN SOME WAY.

10     SO YOU TELL ME A DIFFERENT WAY.  BUT IT'S GOT TO BE

11   SOMETHING BESIDES "INTEGRATED."

12          **MR. KELLA:**  WELL, I THINK -- I DON'T THINK -- TO BE

13   QUITE HONEST, THE WAY I VIEW "INTEGRATED" I CAN'T THINK OF A

14   BETTER WORD FOR IT.  BUT IF WE'RE GOING TO SAY "EMBEDDED" --

15          **THE COURT:**  "INTEGRATED" IS NOT A PHYSICAL WORD.

16          **MR. KELLA:**  WELL, I THINK "SURROUNDED" WOULD BE AN

17   APPROPRIATE WORD CHOICE.

18          **THE COURT:**  "SURROUNDED"?  THAT'S WRONG.  YOU CAN'T

19   CONDUCT ELECTRICITY IF YOUR CONTACT POINT IS SURROUNDED BY

20   PLASTIC.

21          **MR. KELLA:**  WELL --

22          **THE COURT:**  PLASTIC DOESN'T CONDUCT, DOES IT?

23          **MR. KELLA:**  I THINK THAT'S A VERY GOOD POINT AND THAT'S

24   CORRECT.  PLASTIC DOES NOT CONDUCT ELECTRICITY.  BUT I THINK

25   DEFENDANTS WANT THE EMBEDDED LIMITATION BECAUSE THEY WANT TO SAY

1    THAT BECAUSE THE CLAIM REQUIRES BEING EMBEDDED IT MUST BE

2    COMPLETELY SURROUNDED BY MOLDED PLASTIC.  IN OTHER WORDS --

3             **THE COURT:**  I DON'T THINK THEY WOULD SAY THAT, EITHER,

4    BECAUSE THEY WOULD UNDERSTAND THAT IT WOULDN'T WORK IF IT WERE

5    COMPLETELY SURROUNDED.

6        SO I THINK EVERYONE IS IN AGREEMENT THAT IT MUST BE

7    PHYSICALLY ATTACHED TO THE PLASTIC, BUT IT CAN'T BE FULLY

8    SURROUNDED BY THE PLASTIC OR IT WOULDN'T CONDUCT.  SO WE NEED

9    SOME FURTHER DESCRIPTION.  AND I CAN'T THINK HOW TO DO IT OTHER

10   THAN PERHAPS WITH MEASUREMENTS LIKE THAN NANO WHATEVERS.  OR,

11   WHAT, EMBEDDED TO A DEGREE --

12            **MR. KELLA:**  WELL --

13            **THE COURT:**  -- SUCH THAT ENOUGH METAL ISN'T EMBEDDED SO

14   THAT IT CAN STILL CONDUCT ELECTRICITY, OR SOMETHING LIKE THAT.

15            **MR. KELLA:**  WELL, I DON'T THINK IT HAS TO BE -- I DON'T

16   THINK IT HAS TO BE PHYSICALLY TOUCHING THE PLASTIC.  AND I CAN

17   PROVIDE A SCENARIO FOR THAT.

18       IF YOU HAVE A CONTACT PIN IS THAT INTEGRATED WITHIN THE

19   MOLDED PLASTIC.

20            **THE COURT:**  WHAT DO YOU MEAN BY THAT?  WHAT DO YOU MEAN

21   "INTEGRATED"?  YOU'RE DEFINING IT.

22            **MR. KELLA:**  SURROUND THE MOLDED PLASTIC.

23            **THE COURT:**  NO, WE ALREADY AGREED IT CAN'T BE

24   SURROUNDED.

25            **MR. KELLA:**  WELL, I CAN'T BE COMPLETELY ENVELOPED BY

1    THE MOLDED PLASTIC.

2              **THE COURT:**  OKAY.  SO WHAT IS IT?

3              **MR. KELLA:**  SO IF I'M USING MOLDED PLASTIC, AND I CAN

4    USE IT ALMOST AS A GUIDE.  AND ONE OF THE GOALS OF THE PATENT IS

5    THAT --

6              **THE COURT:**  USE WORDS.

7              **MR. KELLA:**  SURROUNDED.

8              **THE COURT:**  WE ALREADY RULED OUT "SURROUNDED."  USE A

9    DIFFERENT WORD.

10             **MR. KELLA:**  WELL, AT LEAST PARTIALLY SURROUNDED.

11             **THE COURT:**  "PARTIALLY SURROUNDED."  OKAY.  WE'LL GO

12   WITH PARTIALLY SURROUNDED.

13             **MR. KELLA:**  AND IN THAT EVENT THE MOLDED PLASTIC COULD

14   SERVE THE FUNCTION BECAUSE IT CAN PREVENT THE CONTACT PIN FROM

15   GETTING OFF COURSE WHEN CARDS ARE PULLED IN AND OUT.

16             **THE COURT:**  WHAT IS A FLOATING CONTACT PIN?

17             **MR. KELLA:**  QUITE HONESTLY, YOUR HONOR, I'M NOT SURE

18   EXACTLY WHAT A FLOATING CONTACT PIN IS.  AND I THINK WE WILL BE

19   BACK HERE ARGUING THAT.

20             **MR. MAIORANA:**  I CAN TELL YOU WHAT A FLOATING PIN IS,

21   YOUR HONOR.

22        THIS IS DAVID MAIORANA, YOUR HONOR.  THANK YOU.

23        THE REASON THAT WE'RE TALKING ABOUT FLOATING PINS, YOUR

24   HONOR, IS NOT BECAUSE WE'RE TRYING TO MANUFACTURE SOME

25   NONINFRINGEMENT ARGUMENT.  THE REASON WE'RE HERE IS BECAUSE THEY

1    DISTINGUISHED FLOATING PINS DURING PROSECUTION IN ORDER TO GET

2    THEIR PATENT.

3         WHAT I'M SHOWING ON THE SCREEN IS THE HUNG-JU PATENT YOU

4    HEARD EARLIER.  THESE ARE FLOATING PINS.  THEY TOLD THE EXAMINER

5    THEY ARE FLOATING PINS.

6         AND THE REASON IT'S CALLED A FLOATING PIN IS IT FLOATS LIKE

7    A BOAT.  A BOAT FLOATS ON THE WATER.  THE FLOATING PIN FLOATS.

8    YOU STICK A CARD IN, IT KIND OF FLOATS UP AND LIFTS UP WHEN THE

9    CARD IS UNDER.  THAT'S WHY THEY ARE CALLED "FLOATING."

10             **THE COURT:**  I'M ASSUMING THERE'S NOT WATER IN THESE

11   THINGS.

12             **MR. MAIORANA:**  NO.  NO.

13             **THE COURT:**  WHAT IS IT FLOATING ON?

14             **MR. MAIORANA:**  IT'S FLOATING OVER THE SURFACE OF THE

15   CONNECTOR.  IF YOU LOOK AT THE SCREEN, YOUR HONOR, YOU CAN SEE

16   HERE THE BOTTOM PART.  THIS IS FIGURE FIVE FROM THE HUNG-JU

17   PATENT.  THE PIN IS CONNECTED AT ONE END.  IT GOES THROUGH THE

18   PLASTIC.  AND THE MAJORITY OF THE PIN STICKS OUT, FLOATS OVER THE

19   SURFACE.  IT'S NOT IN THE PLASTIC.  IT'S OVER ON TOP OF IT.

20        AND SO THE PIN FLOATS --

21             **THE COURT:**  THE LITTLE CURVED PORTIONS.

22             **MR. MAIORANA:**  THE WHOLE THING THAT YOU'RE SEEING HERE

23   IS FLOATING OVER THE PLASTIC.

24             **THE COURT:**  WELL, IS IT ATTACHED TO THE PLASTIC?

25             **MR. MAIORANA:**  IT'S NOT SHOWN IN THIS FIGURE, BUT I'LL

1   SHOW YOU IN THE PATENT, THE '443 PATENT, A BETTER DEPICTION.  BUT

2   I WANT TO SHOW YOU THE PRIOR ART SHOWS FLOATING PINS.  DURING

3   PROSECUTION --

4           **THE COURT:**  I DON'T KNOW IF IT DOES OR NOT.  I CAN'T

5   TELL FROM THAT PICTURE WHETHER IT'S ATTACHED TO THE PLASTIC OR

6   ISN'T.

7           **MR. MAIORANA:**  SO DURING THE PROSECUTION --

8           **THE COURT:**  YOU'RE SAYING A FLOATING PIN IS UNATTACHED

9   TO THE PLASTIC?

10          **MR. MAIORANA:**  SO IN SOME EMBODIMENTS WHAT HAPPENS IS

11  THE PLASTIC IS MOLDED WITH SLITS IN IT.  AND THEN, THE PINS SLIDE

12  THROUGH THE SLITS.  AND THE PIN THEN STICKS OUT AT THE OTHER END

13  AND FLOATS OVER THE PLASTIC.  SO JUST ONE END IS SORT OF HELD --

14          **THE COURT:**  PART OF THE PIN FLOATS.  THE OTHER PART IS

15  IN THE SLIT, PRESUMABLY.

16          **MR. MAIORANA:**  THE PIN HAS TO BE CONNECTED SOMEWHERE

17  OTHERWISE IT IS GOING TO FALL OUT OF THE DEVICE.  SO IN SOME

18  EMBODIMENTS, IN SOME PRODUCTS THE PIN IS CONNECTED AT ONE END AND

19  THE REST OF IT STICKS OUT AND FLOATS OVER IT LIKE I WAS SHOWING

20  YOU IN HUNG-JU.  SO --

21          **THE COURT:**  WELL, THAT'S FINE.  BUT THE PART THAT

22  DOESN'T STICK OUT IS EMBEDDED IN THE PLASTIC OR PARTLY SURROUNDED

23  BY THE PLASTIC.

24          **MR. MAIORANA:**  SO I'M GOING TO EXPLAIN WHY WE CHOSE THE

25  WORD "EMBEDDED," BUT I WANT TO POINT OUT WHY FLOATING PINS

1    MATTER.

2         THEY WERE -- THE CLAIMS WERE REJECTED OVER THE HUNG-JU

3    REFERENCE THAT I JUST SHOWED YOU.  AND SO IN THE PROSECUTION

4    HISTORY -- THIS IS THE '443 PATENT -- RESPONSE TO THE NOVEMBER

5    2ND, 2006 OFFICE ACTION, THE APPLICANT SAID:

6              "AS CAN BE SEEN FROM FIGURE FIVE OF HUNG-JU," WHICH I

7         JUST SHOWED YOU, "THE PINS 104A AND 104B, THOSE ARE THOSE

8         FLOATING PINS, THEY ARE THE FLOATING STRUCTURES SITTING ON

9         AN EXTERIOR OR INTERIOR SURFACE OF THE UPPER AND LOWER

10        FRAMES 102 RATHER THAN BEING INTEGRATED WITHIN, THE TWO

11        PLANAR ELEMENTS AS RECITED IN APPLICANT'S INDEPENDENT CLAIMS

12        ONE AND 12."

13             **THE COURT:**  WHAT ARE THE FRAMES?

14             **MR. MAIORANA:**  THE FRAMES ARE 102 AND 102.  THEY ARE

15   THE STRUCTURE, THE MOLDED PLASTIC THAT THE PINS ARE CONNECTED TO.

16   SO WHAT THEY ARE SAYING IS THIS, THIS ARRANGEMENT IN HUNG-JU IS

17   DIFFERENT FROM INTEGRATED WITHIN.  THIS WHOLE THING, FLOATING

18   PINS SITTING ON --

19             **THE COURT:**  PLANAR ELEMENTS ARE THE SAME AS THE FRAMES?

20             **MR. KELLA:**  YOUR HONOR --

21             **MR. MAIORANA:**  RIGHT.  SO YES.  THE PLANAR ELEMENTS ARE

22   THE TWO PARTS THAT FORM THE SLOT THAT THE CARD IS INSERTED INTO.

23             **THE COURT:**  AND THOSE ARE ALSO THE UPPER AND LOWER

24   FRAMES.

25             **MR. MAIORANA:**  RIGHT.

1          **THE COURT:**  SO THE FRAMES ARE THE SAME AS THE PLANAR

2     ELEMENTS.

3          **MR. MAIORANA:**  AND WHAT'S DIFFERENT IS IN HUNG-JU IT'S

4     A FLOATING PIN.

5          **THE COURT:**  WELL, IN THE TOP PICTURE IT APPEARS TO BE

6     ON TOP OF THE FRAME OR PLASTIC, OR WHATEVER.  AND THE LOWER ONE

7     IT'S --

8          **MR. MAIORANA:**  UNDERNEATH.

9          **THE COURT:**  -- IT WOULD APPEAR TO BE INSIDE WHEN YOU

10    STICK -- I'M ASSUMING THOSE TWO PARTS GET STUCK TOGETHER.  THE

11    PINS SEEM TO BE INSIDE.

12         **MR. MAIORANA:**  YES.

13         **THE COURT:**  WHICH WOULD SEEM TO BE THE SAME AS BEING

14    EMBEDDED WITHIN THE PLASTIC.

15         **MR. MAIORANA:**  LET ME SHOW YOU FIGURES TO EXPLAIN IT A

16    LITTLE FURTHER, YOUR HONOR.  THIS IS FIGURE TWO OF THE '443

17    PATENT, WHICH THEY IDENTIFIED AS PRIOR ART.  THIS IS ANOTHER

18    EXAMPLE OF FLOATING PINS.  YOU SEE THE PIN IS CONNECTED AT ONE

19    END, AND THEN IT FLOATS OVER THE SURFACE.

20         **THE COURT:**  WELL, I JUST THINK TRYING TO USE "FLOATING

21    PINS" TO DEFINE IT WHEN WE DON'T -- WE'RE DEFINING SOMETHING WITH

22    USING A WORD THAT WE ALSO DON'T KNOW WHAT IT MEANS.  SO WE'RE

23    DEFINING X BY SAYING:

24         "WELL, X IS Y."

25       AND WE SAY:

1              "WELL, WHAT IS Y?"

2          WE DON'T KNOW THAT EITHER, SO IT'S NOT HELPFUL IN DEFINING X

3     TO SAY -- TO USE A WORD WE LIKEWISE DON'T UNDERSTAND.  SO I'M NOT

4     GETTING ANY PERCENTAGE IN DEFINING IT BY CALLING IT "NOT A

5     FLOATING PIN."

6          LET'S DEFINE IT USING WORDS.  YOU PROPOSE "EMBEDDED."  I

7     SORT OF LIKE THAT.  TO ME THAT MEANS STUCK INTO, BUT NOT FULLY

8     BURIED IN.  BUT THEY THINK THAT THAT'S -- THEY DON'T LIKE THAT

9     ONE.  SO THEY ARE PROPOSING "PARTLY SURROUNDED," WHICH I COULD

10    ALSO GO WITH.

11         SO DO YOU HAVE SOME OTHER IDEA?

12              **MR. MAIORANA:**  THE REASON THAT --

13              **THE COURT:**  WHAT'S YOUR PROBLEM WITH "PARTLY

14    SURROUNDED"?

15              **MR. MAIORANA:**  WELL, THE REASON THAT WE PUT THE

16    NEGATIVE LIMITATION INTO OUR CONSTRUCTION IS BECAUSE WE HAVE

17    TRIED TO COME UP WITH WORDS THAT SAY THE MEANING OF IT IT'S NOT A

18    FLOATING PIN.  BUT WE THINK IT'S CLEAR AND A PERSON SKILLED IN

19    THE ART WOULD KNOW WHAT A FLOATING PIN IS AND THAT THAT CANNOT BE

20    INCLUDED --

21              **THE COURT:**  THE JURY WON'T.

22              **MR. MAIORANA:**  BUT WE'LL HAVE AN EXPERT, YOUR HONOR,

23    EXPLAIN IT TO THE JURY.

24              **THE COURT:**  I NEED A DEFINITION THAT I CAN PUT IN A

25    JURY INSTRUCTION.  THAT'S WHAT WE'RE DOING HERE IS WE'RE WRITING

1    A JURY INSTRUCTION.

2              **MR. MAIORANA:**  RIGHT.  AND OUR INSTRUCTION TO THE JURY

3    IS:  IT'S EMBEDDED IN THE MOLDED PLASTIC, AND IT CANNOT BE A

4    FLOATING PIN.

5              **THE COURT:**  AND WHAT IS A FLOATING PIN?

6              **MR. MAIORANA:**  IT'S A PIN THAT FLOATS OVER THE SURFACE,

7    AS I JUST EXPLAINED.

8              **THE COURT:**  IT WON'T FLOAT, BECAUSE IT'S NOT WATER.

9    WE'RE GOING AROUND IN CIRCLES HERE.

10             **MR. MAIORANA:**  WELL, IT FLOATS IN THE AIR, YOUR HONOR.

11             **THE COURT:**  WE'RE NOT GOING TO DEFINE A TERM WITH

12   ANOTHER TERM THAT WE THEN HAVE TO DEFINE.  I UNDERSTAND YOUR

13   ARGUMENT.  YOU WANT IT TO BE MORE CLEAR THAT THEY ARE ESTOPPED BY

14   THEIR DIFFERENTIATION OF HUNG-JU.  AND YOU CAN MAKE THAT

15   ARGUMENT.  THAT'S FINE.  BUT THAT ISN'T A DEFINITION.  SO THE

16   DEFINITION IS EITHER GOING TO BE "EMBEDDED" OR "PARTLY

17   SURROUNDED."

18        WHAT'S YOUR PROBLEM WITH "PARTLY SURROUNDED"?

19             **MR. MAIORANA:**  WELL, I MEAN, PARTLY SURROUNDED DOESN'T

20   REQUIRE IT NECESSARILY TO EVEN CONTACT THE PLASTIC.  AND

21   MR. KELLA SAID A FEW MINUTES AGO HE DOESN'T EVEN THINK IT HAS TO

22   TOUCH THE PLASTIC.

23        I MEAN "INTEGRATED" IN HAS TO MEAN IT'S INSIDE.  IT'S INSIDE

24   THE PLASTIC LIKE THEY SHOW --

25             **THE COURT:**  WELL, I GUESS IT DOESN'T HAVE TO TOUCH IT

1    IF IT WERE SO WELL CONSTRUCTED THAT IT WAS HELD INSIDE A LITTLE

2    SLIT AND IT COULDN'T GET OUT, BUT IT DIDN'T ACTUALLY TOUCH THE

3    SLIT.  I CAN PICTURE THAT.  I SUPPOSE THAT WOULD BE OKAY.

4           **MR. MAIORANA:**  WELL, THESE THINGS ARE MADE OUT OF

5    PLASTIC.  FOR THE PIN TO STAY IN THERE THEY HAVE TO BE -- THEY

6    HAVE TO BE TOUCHING THE PLASTIC.  THEY CAN'T --

7           **THE COURT:**  NO.  THEY COULD BE IN A LITTLE SLIT THAT

8    WAS SO TIGHTLY FITTED THAT IT COULDN'T GET OUT EVEN THOUGH IT

9    WASN'T ACTUALLY TOUCHING.

10          **MR. MAIORANA:**  BUT IT'S A SLIT IN THE PLASTIC.  IT

11   STILL HAS TO TOUCH THE PLASTIC.

12          **THE COURT:**  I KNOW.  I MEAN, I SUPPOSE GRAVITY MIGHT

13   MAKE IT GO DOWN TO THE BOTTOM PART.

14          **MR. MAIORANA:**  IF WE DON'T PUT SOMETHING IN ABOUT

15   FLOATING PINS, THEN WE'RE NOT GIVING ANY EFFECT TO THE DISCLAIMER

16   IN THE PROSECUTION HISTORY.

17          **THE COURT:**  YOU CAN ARGUE THAT.  YOU CAN ARGUE ALL YOU

18   WANT.  IT'S NOT A DEFINITION.

19          **MR. MAIORANA:**  OKAY.  SO IT'S SAYING WHAT IT'S NOT.

20   IT'S DEFINING IT BY WHAT IT'S NOT.  IT'S STILL A DEFINITION, YOUR

21   HONOR, WITH ALL DUE RESPECT.

22          **THE COURT:**  YOU'RE DEFINING IT BY WHAT IT IS NOT.  AND

23   THE NOT IS NOT SOMETHING THAT WE KNOW WHAT IT IS.  WE HAVE TO

24   DEFINE THE NOT, AND THAT'S NOT HELPING US ANY.  SO DON'T SAY THAT

25   AGAIN.

 1          OKAY.  SO I'LL EITHER USE "EMBEDDED" OR "PARTLY SURROUNDED."

 2     I'LL FIGURE IT OUT.  OKAY.

 3     SO THEN LET'S MOVE ON TO --

 4          **MR. KELLA:**  CAN I --

 5          **THE COURT:**  -- "INTERCONNECTION MEANS."

 6     AND I GUESS, DEFENDANTS, MAYBE YOU'D WANT TO SAY NOT ONLY

 7     THAT IT'S NOT CONTACT PINS, BUT IT'S ALSO NOT ALL THE OTHER

 8     THINGS THAT IT ISN'T.  OR MAYBE PLAINTIFFS WANT TO SAY THE TWO

 9     THINGS OR THE MORE THAN TWO THINGS THAT IT ISN'T.

10          **MR. MAIORANA:**  RIGHT.  WE AGREE WITH YOUR HONOR, YOUR

11     PRELIMINARY COMMENT THAT THE INTERCONNECTION MEANS IS CONNECTING

12     TWO THINGS.  YOU SAID X AND Y.  IT CAN'T BE THE X AND Y.

13          **THE COURT:**  RIGHT.

14          **MR. MAIORANA:**  AND THE CLAIM SAYS IT'S INTERCONNECTION

15     MEANS BETWEEN ITS MAPPING BETWEEN CONTACT PINS AND SIGNAL LINES.

16     IT CAN'T BE A CONTACT PIN.  IT CAN'T BE A SIGNAL LINE.  WE AGREE

17     A HUNDRED PERCENT WITH THAT.

18          **THE COURT:**  OKAY.

19          **MR. KELLA:**  YOUR HONOR, JUST TO BE CLEAR, WE ARE NOT

20     ARGUING THAT THE SAME PIN THAT'S A CONTACT PIN CAN BE AN

21     INTERCONNECTION PIN OR AN INTERCONNECTION MEAN.  THEY ARE

22     SEPARATE CLAIM ELEMENTS. AND WE'RE NOT INTENDING TO CALL THE SAME

23     THING CONTACT PINS AND INTERCONNECTION PINS.  AND I THINK --

24          **THE COURT:**  THEN YOU DON'T HAVE ANY PROBLEM WITH SAYING

25     "CONDUCTIVE STRUCTURE."  WELL, WE CAN SAY IT'S A CONDUCTIVE

1    ELEMENT STRUCTURE.  I DON'T THINK THAT'S A BIG DEAL.  THAT

2    ELECTRICALLY CONNECTS.  YOU AGREE IT ELECTRICALLY CONNECTS.

3          **MR. MAIORANA:**  YES.

4          **THE COURT:**  AND IT ELECTRICALLY CONNECTS CONTACT PINS

5    WITH SIGNAL LINES.  AND BY DEFINITION, THEN, IT IS NEITHER A

6    CONTACT PIN NOR A SIGNAL LINE, BUT RATHER SOMETHING THAT CONNECTS

7    THOSE TWO, ELECTRICALLY CONNECTS THEM AND IT'S A CONDUCTIVE

8    ELEMENT.

9          **MR. MAIORANA:**  OUR PROBLEM WITH PLAINTIFF'S

10   CONSTRUCTION IS IT DOESN'T GO FAR ENOUGH.  IT JUST SAYS "A

11   CONDUCTIVE ELEMENT THAT ELECTRICALLY CONNECTS."  IT DOESN'T

12   SAY --

13         **THE COURT:**  ALL RIGHT.  THEN WE CAN ADD "ELECTRICALLY

14   CONNECTS CONTACT PINS AND SIGNAL LINES."

15         **MR. MAIORANA:**  AND SO WE BUILT INTO OUR CONSTRUCTION

16   THAT THEY ARE SEPARATE.  IT HAS TO BE SEPARATE FROM THE TWO

17   THINGS IT'S CONNECTING.

18      SO OUR -- DEFENDANTS' PREFERENCE, YOUR HONOR, WOULD BE TO

19   HAVE THE CONSTRUCTION SAY THAT IT'S SEPARATE AND DISTINCT FROM

20   CONTACT PINS AND SIGNAL LINES, THE TWO THINGS THAT ARE BEING

21   CONNECTED.

22         **THE COURT:**  I GUESS WE CAN SAY THAT.  CONDUCTIVE

23   ELEMENTS THAT ELECTRICALLY CONNECT CONTACT PINS WITH SIGNAL LINES

24   AND THAT ARE NEITHER CONTACT PINS NOR SIGNAL LINES.

25         **MR. MAIORANA:**  YES.  YES, YOUR HONOR.

1              **MR. KELLA:**  I THINK WE ABSOLUTELY AGREE WITH THE FIRST

2    PART.  IF WE WANT TO SAY --

3              **THE COURT:**  WELL, THAT'S BECAUSE IT WAS YOUR WORDS.

4              **MR. KELLA:**  THAT'S RIGHT, YOUR HONOR.  THAT ALWAYS

5    MAKES IT EASY.

6         THE PROBLEM IS AS LONG AS NOTHING IN THAT CONSTRUCTION MEANS

7    THAT THE CONTACT PINS AND INTERCONNECTION MEANS CAN'T BE

8    MANUFACTURED FROM THE SAME PIECE OF METAL, WE'RE OKAY WITH THAT

9    CONSTRUCTION.

10             **THE COURT:**  WELL, WE'RE GOING TO LOOK BACK AND SEE

11   WHETHER THEY WERE MANUFACTURED FROM THE SAME PIECE OF METAL?

12             **MR. KELLA:**  I DON'T THINK WE NEED TO DO THAT ON CLAIM

13   CONSTRUCTION.  AND I THINK IT WOULD IMPROPER TO PUT THAT INTO THE

14   CLAIM CONSTRUCTION.  THE PROBLEM IS THAT IN DEFENDANTS' BRIEF

15   THEY CONSTRUE THEIR OWN CONSTRUCTION.  SO THEY ARE PROPOSING

16   THEIR CONSTRUCTION, AND THEN THEY ARE SAYING:

17             "YOUR HONOR, THIS IS WHAT OUR CONSTRUCTION MEANS."

18        AND THEY SAY IT EXPLICITLY IN THEIR BRIEF AT PAGE 28.

19             "THE SAME PIECE OF METAL CANNOT BE BOTH AN

20        INTERCONNECTION MEANS AND A CONTACT PIN."

21             **THE COURT:**  I AGREE WITH THAT.  IT CANNOT.  YOU COULD

22   START WITH THE SAME PIECE OF METAL AND YOU COULD CUT IT IN HALF.

23   AND YOU COULD TURN ONE HALF INTO A CONTACT PIN AND TURN THE OTHER

24   HALF INTO AN INTERCONNECTING LINE.  THAT WOULD BE FINE.

25        BUT IF THEY ARE STILL PHYSICALLY ONE PIECE OF METAL THEN,

1    NO, THEY CAN'T BE BOTH THINGS.

2           **MR. KELLA:**  WELL, THEY CAN BE -- YOU CAN HAVE -- WELL,

3    GOING BACK TO YOUR EXAMPLE, IF YOU STARTED WITH ONE THING AND YOU

4    CUT IT IN HALF AND YOU SOLDERED IT BACK TOGETHER, YOU'D STILL

5    HAVE AN INTERCONNECTION MEANS THAT ELECTRICALLY CONNECTS THE

6    CONTACT PIN TO THE SIGNAL LINE.

7        AND IT'S VERY TYPICAL TO HAVE STRUCTURE --

8           **THE COURT:**  YOU SOLDER THESE THINGS TOGETHER?

9           **MR. KELLA:**  ABSOLUTELY.  ACTUALLY, THEIR EXPERT AT THE

10   ITC TESTIFIED THAT WAS --

11          **MR. MAIORANA:**  YOUR HONOR, THEY ARE CONFLATING THINGS

12   IN THE CLAIMS.  AND INTERCONNECTION MEANS CONNECTS X AND Y.  THEY

13   ARE TRYING TO SAY X AND Y AND THE INTERCONNECTION MEANS CAN ALL

14   BE ONE PIECE OF METAL.

15       IT MAKES NO SENSE.  YOU CAN'T HAVE ONE PIECE OF METAL

16   CONNECT TO ITSELF.

17          **THE COURT:**  AND YOU STARTED OUT WITH ONE PIECE OF METAL

18   AND YOU CUT THEM IN HALF, AND THEN YOU SOLDERED THEM BACK

19   TOGETHER.

20          **MR. MAIORANA:**  YES.  IT'S STILL ONE PIECE OF METAL.  IT

21   CAN'T CONNECT TO ITSELF.  IT HAS TO --

22          **THE COURT:**  WELL, HOW DO THESE THINGS CONNECT WITH ONE

23   ANOTHER?  BY SOLDERING OR BY SOME SORT OF LITTLE JOINT, LITTLE

24   SCREW OR SOME LITTLE ELBOW JOINT OR SOMETHING?

25          **MR. MAIORANA:**  RIGHT, BY WIRES.  THE CONTACT PINS --

1            **THE COURT:**  HOW DO THE WIRES CONNECT WITH ONE ANOTHER?

2            **MR. MAIORANA:**  RIGHT, THEY ARE SOLDERED.

3            **THE COURT:**  THEY ARE SOLDERED.

4            **MR. MAIORANA:**  THEY'RE SOLDERED.

5            **THE COURT:**  OKAY.  SO YOU HAVE A PIECE OF METAL AND YOU

6     CUT IT IN HALF, AND THEN YOU SOLDER IT BACK TOGETHER?

7            **MR. MAIORANA:**  NO.  WHAT HE'S TALKING ABOUT IS IN THE

8     DEFENDANTS' PRODUCTS IN SOME INSTANCES YOU HAVE WHAT THEY ARE

9     CALLING "THE INTERCONNECTION," THE CONTACT PIN AND THE

10    INTERCONNECTION PIN AND THE SIGNAL LINE IS ALL ONE THING.  AND

11    WE'RE SAYING YOU CAN'T CONNECT TO YOURSELF.  X AND Y CANNOT BE

12    THE SAME THING.  INTERCONNECTION MEANS ARE CONNECTING TWO

13    DIFFERENT THINGS.

14           **THE COURT:**  IF YOU CONNECT THEM BY SOLDERING THEM

15    TOGETHER DOES THAT MAKE THEM ONE THING OR STILL TWO THINGS?

16           **MR. MAIORANA:**  THEY ARE STILL TWO THINGS.

17           **THE COURT:**  THEY ARE STILL TWO THINGS IF YOU SOLDER

18    THEM.  THEY ARE ONE THING IF YOU DON'T CUT THEM APART IN THE

19    FIRST PLACE.

20      WE'VE GOT SOME ANGELS DANCING ON THE HEAD OF A PIN HERE, I

21    WOULD SAY.  BUT I GUESS WE'LL JUST HAVE TO WORRY ABOUT THAT

22    LATER.

23           **MR. MAIORANA:**  YOU HAD IT RIGHT AT THE BEGINNING, YOUR

24    HONOR.  X AND Y, IF SOMETHING IS CONNECTING X AND Y IT CAN'T BE

25    THE SAME THING AS X AND Y.  OTHERWISE, IT MAKES NO SENSE.

```
 1          THE COURT:  THEN, THAT BEGS THE QUESTION OF WHETHER IF

 2   SOMETHING IS SOLDERED TOGETHER IS IT NOW ONE THING OR DOES IT

 3   REMAIN TWO THINGS?

 4          MR. MAIORANA:  THE CONSTRUCTION THAT WE WERE JUST GOING

 5   THROUGH, YOUR HONOR, THE DEFENDANTS AGREE WITH THAT.  IT CAN'T

 6   BE --

 7          THE COURT:  OKAY.  LET'S MOVE ON TO MEMORY MEDIA CARD.

 8   SO YOU TELL ME WHAT THE MEDIA IS IN THAT GROUP OF WORDS.

 9          MR. KELLA:  YES, YOUR HONOR.  AND IF I COULD DIRECT YOU

10   TO EXHIBIT 14 TO DEFENDANTS' BRIEF.  AND THIS IS A PRIME EXAMPLE

11   OF WHY THE MEDIA LIMITATION IS IMPORTANT AND WHY DEFENDANTS'

12   CONSTRUCTION IS GOING WAY TOO BROAD HERE.

13          THE COURT:  EXHIBIT 14 TO DEFENDANTS' BRIEF.

14          MR. KELLA:  YES.  AND I HAVE THE RELEVANT PASSAGES IN A

15   SLIDE, IF THAT WOULD BE EASIER.

16          THE COURT:  CAN YOU JUST TELL ME WHAT "MEDIA" IS?

17          MR. KELLA:  ABSOLUTELY.

18          THE COURT:  OKAY.  WHAT IS IT?

19          MR. KELLA:  IT'S MEDIA -- AND THIS IS DESCRIBED IN

20   DEFENDANTS' OWN EXTRINSIC EVIDENCE.  IT SAYS:

21            "DIGITAL MEDIA MEANS INSERTABLE REMOVABLE MEMORY MEDIA

22          FOR STORING AND TRANSFERRING LARGE DIGITAL FILES, ESPECIALLY

23          AUDIO, DATA AND IMAGE FILES."

24          AND THAT'S A DESCRIPTION OF MEDIA.  MEDIA HAS --

25          THE COURT:  SAY IT AGAIN.
```

1          **MR. KELLA:**  WELL, THIS IS -- THIS IS THEIR EXTRINSIC

2     EVIDENCE THAT SAYS:

3               "DIGITAL MEDIA MEANS INSERTABLE REMOVABLE MEMORY MEDIA

4          FOR STORING AND TRANSFERRING LARGE DIGITAL FILES, ESPECIALLY

5          AUDIO, DATA AND IMAGE FILES."

6          **THE COURT:**  THAT'S THEIR EXPLANATION.

7          **MR. KELLA:**  YEAH.  I'M NOT SURE --

8          **THE COURT:**  AND YOURS IS?

9          **MR. KELLA:**  I'M NOT SURE IF THEY NOTICED THAT IN THEIR

10    EXTRINSIC EVIDENCE BECAUSE THEY CERTAINLY DIDN'T POINT THAT OUT.

11    BUT THIS SHOWS THAT THE WORD "MEDIA" HAS IMPORTANCE.  AND "MEDIA"

12    IS JUST NOT ANY DATA OUT THERE IN THE WORLD.

13         **THE COURT:**  WELL, I AGREE IT'S IMPORTANT.  AND I'M

14    ASKING YOU FOR YOUR DEFINITION.  AND YOU'RE TELLING ME YOUR

15    DEFINITION IS WHAT THEY SAID.

16         **MR. KELLA:**  WELL, SURE.

17         **MR. WALKER:**  WE DID NOT SAY THAT.  I MEAN, THEY PULLED

18    THAT OUT OF A PIECE OF EXTRINSIC EVIDENCE WE SUBMITTED.

19         **THE COURT:**  OKAY.  BUT IF THAT'S THE DEFINITION YOU

20    WOULD LIKE, YOU CAN PROPOSE THAT, AND I CAN HEAR FROM THEM WHY

21    THEY DON'T LIKE IT.

22         **MR. KELLA:**  SURE.  AND I THINK FOR MEDIA, A MEMORY

23    MEDIA CARD IS A MEMORY CARD THAT STORES MEDIA SUCH AS LARGE

24    DIGITAL FILES, ESPECIALLY AUDIO, DATA AND IMAGE FILES.

25         **THE COURT:**  SO MEDIA IS A LARGE DIGITAL FILE.  HOW

1   LARGE?

2              **MR. KELLA:**  WELL, SO --

3              **THE COURT:**  HOW LARGE IS LARGE?

4              **MR. KELLA:**  AGAIN, I THINK SOME THINGS BECOME ISSUES OF

5   FACT AND WE NEED TO HEAR FROM PEOPLE OF ORDINARY SKILL IN THE

6   ART.  BUT THE POINT IS MEDIA IS NOT JUST ANY DATA.

7              **THE COURT:**  NO.  IT'S A LARGE FILE, NOT A SMALL FILE.

8   AND IT'S ESPECIALLY THOSE THINGS YOU SAY, BUT IT DOESN'T SOUND

9   LIKE IT'S LIMITED.  YOU'RE NOT SAYING IT'S LIMITED TO THOSE

10  THINGS YOU SAID.  BUT LET'S PUT -- LET'S SET ONE THING ASIDE.

11      ONE CANDIDATE FOR MEDIA IS THE STORAGE MEDIA ITSELF, THE CD,

12  THE MAGNETIC TAPE, THE HARD DRIVE.  YOU'RE NOT SAYING THAT.

13             **MR. KELLA:**  WELL, I THINK --

14             **THE COURT:**  YOU'RE NOT SAYING THAT.

15             **MR. KELLA:**  THAT'S NOT WHAT I'M SAYING.

16             **THE COURT:**  OKAY.  SO IF IT'S NOT THAT THEN THE MEDIA

17  IS THE THING THAT'S ON THE MEMORY CARD.  IT'S THE THING THAT

18  YOU'RE TRYING TO READ.  THE CONTENT.  OKAY.

19      SO THE CONTENT THEN IS WHAT?  WE KNOW IT'S DIGITAL.  WE KNOW

20  IT'S A FILE.  YOU WANT IT TO BE A LARGE FILE.  THAT'S OKAY IF WE

21  KNOW HOW LARGE IS LARGE.  AND YOU THINK IT'S ESPECIALLY CERTAIN

22  THINGS, BUT THAT DOESN'T MEAN IT ISN'T OTHER THINGS.

23      SO ALL WE'RE GETTING DOWN TO IS A LARGE DIGITAL FILE.

24             **MR. KELLA:**  WELL, JUST TO BE CLEAR, WE'RE TALKING ABOUT

25  A MEMORY MEDIA CARD.  SO IT'S A MEMORY CARD CAPABLE OF STORING

```
 1    MEDIA.

 2              THE COURT:  YES.

 3              MR. KELLA:  AND MEDIA CAN BE -- IT IS DIGITAL MEDIA

 4    WHICH IS --

 5              THE COURT:  WELL, DON'T USE THE WORD TO DEFINE THE

 6    WORD.

 7         MEDIA IS A DIGITAL FILE.

 8              MR. KELLA:  LARGE DIGITAL FILES.

 9              THE COURT:  LARGE DIGITAL FILE.

10              MR. KELLA:  AND EXAMPLES ARE AUDIO, DATA AND IMAGE

11    FILES.

12              THE COURT:  OKAY.

13              MR. KELLA:  YOU COULD ALSO HAVE VIDEO FILES.  YOU COULD

14    HAVE --

15              THE COURT:  SO THAT'S KIND OF -- AUDIO, DATA AND IMAGE

16    KIND OF COVERS THE TERRITORY.  THAT COULD INCLUDE NUMBERS.  IT

17    COULD INCLUDE WORDS.  IT COULD INCLUDE ONES AND ZEROS.  IT COULD

18    INCLUDE MUSIC, VIDEO, RINGTONES, WHATEVER.  IT'S NOT GOING TO

19    EXCLUDE SIM CARDS, IF THAT'S WHAT YOU'RE GETTING AT, BECAUSE SIM

20    CARDS HAVE DATA ON THEM.

21              MR. KELLA:  WELL, I DON'T THINK JUST ANY DATA IS MEDIA.

22    IN OTHER WORDS, IF I HAVE --

23              THE COURT:  SURE.  IT'S A LARGE -- WELL, IT HAS TO BE

24    LARGE, YOU SAID.  IT HAS TO BE IN A FILE, YOU SAID.  BUT ALL

25    DIGITAL STUFF IS IN FILES.  THEY ARE NOT ALL LARGE.  THAT'S TRUE.
```

1   SO IF YOU WANT TO SAY HOW LARGE IT HAS TO BE, MAYBE YOU CAN

2   EXCLUDE SIM CARDS BECAUSE THEY DON'T HAVE LARGE FILES.  BUT THEY

3   CAN HAVE LARGE FILES.

4           **MR. KELLA:**  WELL, YOUR HONOR, THE SAME PIECE OF

5   EXTRINSIC EVIDENCE DEFENDANTS CITE, THEY TALK ABOUT BOTH DIGITAL

6   MEDIA.  AND THEN, IT TALKS ABOUT SIM CARDS.  AND IT TALKS ABOUT

7   SIM CARDS DIFFERENTLY.  AND THIS IS WHAT IT SAYS.  AND THIS IS AT

8   EXHIBIT --

9           **THE COURT:**  I DON'T UNDERSTAND WHY YOU'RE TELLING ME

10  THIS.  I'M ASKING YOU FOR YOUR DEFINITION OF "MEDIA" AND YOU'RE

11  TELLING ME SOMETHING THEY SAID.  WHY IS THAT HELPFUL?

12          **MR. KELLA:**  WELL, I'M SAYING SIM CARDS HAVE TO BE

13  EXCLUDED FROM THE DEFINITION.

14          **THE COURT:**  I DON'T SEE HOW.

15          **MR. KELLA:**  WELL, BECAUSE IT'S THEIR EVIDENCE.

16          **THE COURT:**  YOU GIVE ME WORDS.  YOU TELL ME WHAT MEDIA

17  IS THAT DON'T INCLUDE SIM CARDS, AND THEN I'D BE INTERESTED TO

18  HEAR IT.

19          **MR. KELLA:**  WELL, I THINK THAT'S WHY THE MEDIA TERM IS

20  IMPORTANT.

21          **THE COURT:**  IT'S IMPORTANT.  I AGREE WITH YOU.  THAT'S

22  WHY I'M TRYING TO ASK YOU WHAT IT MEANS.

23          **MR. KELLA:**  WELL, I THINK IT'S DIFFICULT TO COME UP

24  WITH A BETTER WORD FOR "MEDIA" THAN THE WORD "MEDIA" ITSELF.

25          **THE COURT:**  WELL, BUT ONE OF THE PRINCIPLES OF DEFINING

1    THINGS IS YOU DON'T USE THE WORD YOU'RE DEFINING WITHIN YOUR

2    DEFINITION.

3         SO IF YOU THINK I NEED TO DEFINE -- WELL, I THINK I NEED TO

4    DEFINE "MEDIA, MEMORY MEDIA CARD."  THEN, I NEED A PROPOSAL AS TO

5    WHAT "MEDIA" MEANS THAT DOESN'T USE THE WORD "MEDIA."  AND IF YOU

6    GIVE ME A PROPOSAL THAT I CAN USE AND YOUR PROPOSAL EXCLUDES A

7    SIM CARD, YOU'LL BE HAPPY, BUT YOU'LL HAVE TO COME UP WITH IT,

8    BECAUSE I CAN'T THINK OF ONE.

9              **MR. KELLA:**  LARGE FILES.

10             **THE COURT:**  LARGE FILES.  LARGE DIGITAL FILES.  HOW

11   LARGE?  ARE YOU GOING TO HAVE A CUTOFF HERE?  A MEGABYTE?  A

12   GIGABYTE?  A TERABYTE?

13             **MR. KELLA:**  WELL, I THINK MORE THAN A MEGABYTE.

14             **THE COURT:**  MORE THAN A MEGABYTE?  THAT'S PRETTY SMALL.

15             **MR. KELLA:**  WELL, I MEAN, SIM CARDS --

16             **THE COURT:**  SIM CARDS ARE --

17             **MR. KELLA:**  -- ARE VERY SMALL.  SIM CARDS IS LIKE A --

18             **THE COURT:**  YOU HAVE YOUR WHOLE PHONE BOOK ON THERE.

19             **MR. KELLA:**  WELL, A SIM CARD IS -- TYPICALLY, IT'S A

20   CARD YOU PUT IN YOUR PHONE.

21             **THE COURT:**  I KNOW.

22             **MR. SIMON:**  IT HAS LIKE NUMBERS ON IT SO IT KNOWS

23   YOU'RE ALLOWED ON THIS NETWORK.

24             **THE COURT:**  IT CAN HAVE YOUR WHOLE PHONE BOOK IN IT.

25             **MR. KELLA:**  WELL, QUITE HONESTLY I'M NOT --

1      **THE COURT:**  I TAKE THE SIM CARD OUT OF MY ONE PHONE AND

2   STICK IT IN MY OTHER PHONE.  THE PHONE I STICK IT IN IS GOING TO

3   HAVE MY CONTACTS IN THERE.

4      **MR. KELLA:**  THAT'S NOT NECESSARILY -- I'M NOT QUITE

5   HONESTLY --

6      **THE COURT:**  BUT I THINK IT CAN HAPPEN.  IT HAPPENS.

7      **MR. KELLA:**  PERHAPS.  BUT EVEN WHEN WE'RE TALKING ABOUT

8   DATA, WHEN WE'RE JUST TALKING ABOUT A PHONE BOOK ON A PHONE, I

9   MEAN THAT DOESN'T REQUIRE THAT MUCH DATA.  I MEAN, WHEN WE'RE

10  TALKING ABOUT JUST WORDS.  I MEAN, THAT'S VERY -- YOU KNOW,

11  THAT'S PRETTY RUDIMENTARY.

12     **THE COURT:**  YES.  WELL, EVEN SO, I'M NOT SURE I CAN

13  REALLY JUSTIFY CALLING IT A LARGE DIGITAL FILE WHEN THERE'S

14  NOTHING ABOUT THE WORDS THAT TELL ME IT NEEDS TO BE LARGE.

15     **MR. KELLA:**  WELL, DEFENDANTS' OWN EXTRINSIC EVIDENCE.

16     **THE COURT:**  A PHOTOGRAPH, A LITTLE TEN KILOBYTE

17  PHOTOGRAPH.  AND THAT WOULDN'T COUNT BECAUSE IT WAS TOO SMALL?

18     **MR. KELLA:**   WELL, DEFENDANTS' OWN EXTRINSIC EVIDENCE

19  SAYS MEDIA CONNOTES -- I'M PARAPHRASING.  BUT IT'S AT EXHIBIT

20  14-6, COLUMN SIX, LINE 15 TO 23.  THAT THE SHORTAGE REQUIREMENT

21  IS TYPICALLY HIGH CAPACITY, I.E., ABOUT ONE MEGABIT OR GREATER.

22     WHEN IT TALKS ABOUT SIM CARDS COLUMN -- AND THIS IS AT

23  COLUMN FOUR, LINES 23 TO 42, IT SAYS SIMS OFFER ONLY A VERY

24  LIMITED AMOUNT OF MEMORY, TYPICALLY LESS THAN ONE KILOBIT.  AND

25  ONE KILOBIT IS ABOUT -- IT'S A TENTH OF A MEGABIT.  OKAY?

1    AND THIS IS AT THE TIME THIS PATENT WAS FILED, WHICH WAS IN

2  1997.  THAT'S NOT TODAY.  AND IN TALKING ABOUT SIM CARDS IT GIVES

3  EXAMPLES OF WHAT SIM CARDS HOLD:  SMALL AMOUNT OF DATA FOR CALL

4  METERING, PHONE STORAGE, AND IN SOME CASES VERY SHORT DATA

5  MESSAGES.

6    AND IT SAYS IT'S A LOW MEMORY CAPACITY CARD FORMAT.  IT'S

7  KNOWN AS THE SUBSCRIBER IDENTIFICATION MODULE:  SIM.

8    **THE COURT:**  OKAY.  WELL, I'M BEGINNING TO SEE THE MERIT

9  IN THEIR CONSTRUCTION, WHICH IS A REMOVABLE MODULE CAPABLE OF

10  STORING ELECTRONIC DATA.  AND I GUESS THE ONLY THING YOU WOULD

11  DISAGREE WITH THERE YOU WOULD SAY "CAPABLE OF STORING LARGE

12  DIGITAL FILES."

13    **MR. KELLA:**  THAT WOULD BE CORRECT, YOUR HONOR.  I THINK

14  THAT GETS US CLOSER TO THE IMPORT OF THE WORD "MEDIA."

15    AND ONE OTHER POINT IS I DON'T QUITE UNDERSTAND WHY THEY ARE

16  USING THE WORD "MODULE" INSTEAD OF "CARD," ESPECIALLY FOR --

17    **THE COURT:**  I THINK "CARD" IS THE WORD WE'RE DEFINING,

18  AND WE DON'T DEFINE WORDS BY USING THAT SAME WORD.

19    **MR. KELLA:**  WELL, MY POINT IS, YOU KNOW, CLAIM

20  CONSTRUCTION IS NOT AN EXERCISE IN REDUNDANCY.  AND WE DON'T NEED

21  TO GIVE A DEFINITION TO EVERY CLAIM TERM ON CLAIM CONSTRUCTION.

22  AND WHAT WE NEED TO DO IS RESOLVE THE PARTIES' DISPUTE.

23    **THE COURT:**  YOU NEED TO SAY SOMETHING THAT I CAN TELL

24  THE JURY SOMETHING IS.  AND IF THEY THINK A CARD IS SOMETHING YOU

25  GET ON MOTHER'S DAY, THEN THAT'S NOT GOING TO BE HELPFUL.

1            MR. KELLA:  WELL, THE CLAIM TERM IS A MEMORY MEDIA

2       CARD.

3            THE COURT:  YES.

4            MR. KELLA:  AND I DON'T THINK ANYBODY IS GOING TO THINK

5       A CARD IS JUST ANY MODULE.  AND SO THEY ARE TRYING TO BROADEN IT

6       UP, I THINK, SO THEY CAN JUST SAY ANYTHING IS A MODULE.  WELL,

7       THAT'S A MODULE THAT STORES DATA.  AND YOU CAN POINT TO ANY

8       COMPONENT IN A COMPUTER.

9            THE COURT:  OKAY.  GIVE ME ANOTHER WORD THAT ISN'T

10      "CARD."

11           MR. KELLA:  YOUR HONOR, QUITE HONESTLY, I DON'T KNOW A

12      BETTER WORD THAN "CARD" THERE IS.  AND WE DON'T HAVE --

13           THE COURT:  GENTLEMEN ON THE JURY THINK A CARD IS THE

14      THING YOU GET IN THE MAIL ON FATHER'S DAY.  AND YOU ARE GOING TO

15      EXPLAIN TO THEM THAT A CARD IS REALLY A --

16           MR. KELLA:  I THINK THE EXPERTS WOULD BE PERFECTLY

17      QUALIFIED TO SAY THAT, TO EXPLAIN WHAT A CARD IS AND --

18           THE COURT:  I NEED TO SAY IN A JURY INSTRUCTION WHAT A

19      CARD IS.  AND WHAT AM I GOING TO SAY?

20           MR. KELLA:  WELL, I'M NOT -- I'M NOT SURE THAT WE NEED

21      A JURY INSTRUCTION THAT DEFINES --

22           THE COURT:  WELL, YOU THINK I DON'T, BUT I THINK DO

23      BECAUSE I DON'T THINK "MEMORY MEDIA CARD" IS SELF-EVIDENT TO A

24      JURY.  I KNOW THAT'S WHAT YOU THINK.  BUT I'M DISAGREEING WITH

25      YOU.  SO IF YOU WANT INPUT INTO WHAT I'M GOING TO SAY INSTEAD,

```
1    YOU NEED TO TELL ME SOMETHING.  AND IF NOT, I'LL USE WHAT THEY

2    HAVE TOLD ME.

3           MR. KELLA:  PERHAPS SMALL FORM FACTOR REMOVABLE

4    COMPUTER STORAGE DEVICE.

5           THE COURT:  REMOVABLE COMPUTER STORAGE DEVICE.

6    COMPUTER STORAGE.  NO, IT'S NOT STORING COMPUTERS.  REMOVABLE

7    DEVICE FOR STORING ELECTRONIC DATA.

8        WE COULD SAY "DEVICE" INSTEAD OF "MODULE," YES.  THAT WOULD

9    WORK.

10           MR. KELLA:  THAT WOULD BE BETTER, YOUR HONOR.  AND JUST

11   AS LONG AS WE CAN STILL HAVE A LIMITATION ON THERE LIKE LARGE

12   DIGITAL FILES OR LARGE ELECTRONIC DATA THAT MAKES YOUR WORD

13   KEEPING WITH THE IMPORT OF THE MEDIA --

14           THE COURT:  WELL, CAPABLE OF STORING LARGE DIGITAL

15   FILES.  BUT IT'S ALSO CAPABLE OF STORING SMALL DIGITAL FILES,

16   RIGHT?

17           MR. KELLA:  IT IS.  BUT TO BE A MEMORY MEDIA CARD, TO

18   BE A MEMORY CARD, YOU HAVE TO BE CAPABLE OF STORING LARGE FILES

19   IF YOU WANT TO BE A CARD THAT YOU CAN SELL AS A MEMORY CARD.

20           THE COURT:  OKAY.

21           MR. KELLA:  A MEMORY MEDIA CARD.

22           THE COURT:  OKAY.  DO YOU HAVE ANY PROBLEM WITH

23   "REMOVABLE DEVICE CAPABLE OF STORING LARGE DIGITAL FILES OF

24   ELECTRONIC DATA"?

25           MR. WALKER:  YES, I THINK THE "LARGE" HAS NO PRESENCE
```

1    IN THE PATENT.  THE PATENT DOESN'T DISCUSS --

2              **THE COURT:**  WELL, HE MAKES A GOOD POINT.  WHO IS GOING

3    TO HAVE A MEMORY CARD THAT CAN'T STORE A LARGE FILE?  YOU DON'T

4    WANT TO SELL A MEMORY CARD THAT ONLY STORES A SMALL FILE.

5              **MR. WALKER:**  WELL, I REALLY DON'T THINK THAT'S --

6              **THE COURT:**  ESPECIALLY WHEN HE SAYS LARGE IS ONLY ONE

7    MEGABYTE.

8              **MR. WALKER:**  I REALLY DON'T THINK THAT THAT KIND OF

9    ANALYSIS IS PROPER TO LOOK WHAT IS COMMERCIALLY VIABLE AND THEN

10   SAY WHAT IT'S LIMITED TO THAT IN THE PATENT.

11       THE PATENT DOESN'T TALK ABOUT HOW BIG FILES NEED TO BE OR

12   HOW MUCH MEMORY HAS TO BE STORED.  IT DOESN'T TALK -- YOU KNOW,

13   THAT THIS HAS TO BE CAPABLE OF STORING PICTURES AND ALL THIS SORT

14   OF STUFF.  THERE'S NO BASIS WHATSOEVER IN THIS PATENT FOR THAT.

15             **THE COURT:**  YOU'RE WORRIED THAT A SIM CARD WILL BE TOO

16   SMALL AND YOU WON'T --

17             **MR. WALKER:**  I'M NOT HERE TO REALLY TALK ABOUT A SIM

18   CARD.

19             **THE COURT:**  THAT SEEMS TO BE WHAT IS SUB ROSA GOING ON

20   HERE.

21             **MR. WALKER:**  CERTAINLY IN THE BACKGROUND IT IS.  BUT

22   OUR DEFINITION ISN'T ADDRESSING SIM CARD.  AND IF I COULD JUST

23   BRIEFLY -- YOU KNOW, THE PATENT IN HERE TALKS ABOUT MEMORY MEDIA.

24   AND THEN, THE PLAINTIFFS POINT OUT IN THEIR BRIEF THAT HE USES

25   THE WORD "MEMORY MEDIA," IT USES "FLASH MEDIA."

1          MEDIA IS A STRUCTURE.  IT CAN MEAN CONTENT, BUT IN THIS

2     PATENT WHEN IT USES MEDIA IT'S TALKING ABOUT STRUCTURE.  AND YOU

3     KNOW THAT BECAUSE WHEN IT SAYS --

4               **THE COURT:**  STRUCTURE?

5          **MR. WALKER:**  STRUCTURE, A THING, A PHYSICAL THING.

6          **THE COURT:**  I DON'T KNOW WHAT YOU MEAN BY THAT.

7          **MR. WALKER:**  A MEDIUM.  SO YOU HAVE -- LET ME POINT YOU

8     TO THE '424 PATENT.

9          **THE COURT:**  THE MEDIA IS THE CONTENT THAT IS ON THE

10    MEDIA CARD, I'M TOLD.

11         **MR. WALKER:**  SO WHEN PEOPLE USE THE TERM "FLASH MEDIA,"

12    THEY ARE TALKING ABOUT THIS (INDICATING).  THEY ARE TALKING ABOUT

13    A MEDIA. YOU MENTIONED I EARLIER.  YOU CAN HAVE MAGNETIC MEDIA.

14         **THE COURT:**  RIGHT.  BUT THEY SAID THAT'S NOT WHAT IT

15    MEANT.  IT MEANT THE CONTENT THAT'S ON THE CARD.

16         **MR. WALKER:**  AND I'M SAYING I DISAGREE WITH THEM.  AND

17    IT'S NOT THE CONTENT.  THERE'S NOTHING THAT TALKS ABOUT CONTENT

18    IN THIS PATENT.  WHAT IT TALKS ABOUT IS -- AND I'M READING

19    DIRECTLY FROM THE PATENT HERE.  IT SAYS:

20         "WE'VE GIVEN YOU THESE EXAMPLES:  XD, SMARTMEDIA,

21      MMC, SD AND EVERYTHING ELSE."

22      BUT, IN GENERAL -- AND THIS IS QUOTE:

23         "IN GENERAL, THE EMBODIMENTS OF THE INVENTION ARE

24      APPLICABLE TO ANY GENERIC FLASH MEDIA.  ANY GENERIC FLASH

25      MEDIA."

 1              **THE COURT:**  YOU'RE SAYING MEDIA MEANS THE STORAGE

 2   MEDIUM, TO-WIT: A CD, A DVR, A MAGNETIC TAPE.

 3              **MR. WALKER:**  YES.

 4              **THE COURT:**  A FLASH DRIVE, A USB DRIVE.  ALL THOSE

 5   THINGS ARE THE MEDIA.

 6              **MR. WALKER:**  YES.

 7              **THE COURT:**  AND WHAT'S ON THEM DOESN'T MATTER.

 8              **MR. WALKER:**  IS IRRELEVANT.  AND THE REASON --

 9              **THE COURT:**  IT COULD GO -- I MEAN, IT COULD BE BOTH.

10   IT IS BOTH, IN FACT.  BOTH ARE MEDIA, SO --

11              **MR. WALKER:**  I UNDERSTAND.

12              **THE COURT:**  -- DOES IT MATTER?

13              **MR. WALKER:**  BUT WHEN YOU READ THIS PATENT AND YOU LOOK

14   AT THE PLACES WHERE IT USES THE TERM "MEDIA" IN THE SPECIFICATION

15   IT'S TALKING ABOUT A THING.  IT'S NOT TALKING ABOUT CONTENT.

16   IT'S TALKING ABOUT A PHYSICAL THING.

17        AND JUST TO GO ON, I MEAN, YOU HAVE MAGNETIC MEDIA, JUST

18   LIKE YOU SAID.  YOU HAVE OPTICAL MEDIA, LIKE CD'S AND DVD'S.

19        YOU ALSO HAVE FLASH MEDIA, WHICH IS A CIRCUIT.

20              **THE COURT:**  OKAY.  SO IT COULD BE THAT.  BUT IN

21   ADDITION TO THAT THE CARD HAS STUFF ON IT.

22              **MR. WALKER:**  AND SO --

23              **THE COURT:**  AND THE STUFF THAT IS ON IT CAN ALSO BE

24   REFERRED TO AS "MEDIA" BECAUSE IT COULD BE A PHOTO OR A VIDEO OR

25   A --

1      **MR. WALKER:**  IT CERTAINLY CAN.

2      **THE COURT:**  SO --

3      **MR. WALKER:**  BUT THIS PATENT DOESN'T TALK ABOUT THOSE

4  THINGS AS BEING MEDIA.

5      **THE COURT:**  WELL --

6      **MR. WALKER:**  WHEN THIS PATENT USES THE TERM "MEDIA"

7  IT'S TALKING ABOUT A PHYSICAL THING.

8      **THE COURT:**  OKAY.  ALL RIGHT.  OKAY.  SO HOW DO I KNOW

9  THAT IT REALLY MEANS THE CONTENTS AND NOT THE DEVICE ITSELF?  AND

10  DOES IT MATTER?  DOES THIS MATTER?

11      **MR. WALKER:**  WELL, I MEAN, THEY ARE TRYING TO PLACE

12  LIMITATIONS ON SIZE NOW OF THE CONTENT THAT IT CAN STORE.  AND

13  THERE'S NOTHING IN THIS PATENT THAT TALKS ABOUT THE SIZE OF THE

14  CONTENT.  IT SAYS IT'S APPLICABLE TO ANY GENERIC TYPE OF FLASH

15  MEDIA.  THAT'S WHAT THE PATENT SAYS.

16      **THE COURT:**  OKAY.  SO I GUESS I TOOK YOUR ANSWER TO BE

17  THE RIGHT ANSWER, BUT THEY DISAGREED WITH IT, WHICH I WASN'T

18  AWARE OF IT.  SO NOW I NEED TO KNOW WHY YOU THINK THE WORD

19  "MEDIA" IN THIS PHRASE "MEMORY MEDIA CARD" MEANS THE CONTENTS

20  THAT'S ON THE CARD VERSUS THE STORAGE MEDIUM THAT IS THE CARD.

21      **MR. KELLA:**  WELL, FIRST, THEY ARE TWO DIFFERENT TERMS.

22  THEY ARE TWO DIFFERENT WORDS, FLASH MEDIA AND MEMORY MEDIA.  SO

23  WE HAVE TO LOOK AT THEM IN CONTEXT.  AND PEOPLE --

24      **THE COURT:**  I'M ASKING THE MEDIA AS THE THING THAT

25  HOLDS DATA OR THE CONTENT THAT IS BEING HELD.  "MEDIA" COULD MEAN

1    BOTH THINGS.  YOU TOLD ME THAT YOU THOUGHT IT MEANT THE CONTENT

2    BEING HELD.

3        THEY SAY NO, IT MEANS THE STORAGE -- THAT'S DEFINING IT BY

4    USING THE SAME WORDS.

5            **MR. WALKER:**  IT'S THE PHYSICAL THING THAT STORES IT.

6    THE DEVICE.

7            **THE COURT:**  THE DEVICE ITSELF.  SO IT IS, IN FACT,

8    BOTH.  IN COMMON PARLANCE THE WORD "MEDIA" IS USED FOR BOTH.

9            **MR. KELLA:**  CORRECT.

10           **THE COURT:**  SO HOW DO I KNOW IN THIS PHRASE IT REALLY

11   MEANS THE CONTENTS AS OPPOSED TO THE STORAGE CAPACITY ITSELF?

12           **MR. KELLA:**  WELL, I THINK IT'S USING AN ADJECTIVE, A

13   MEMORY MEDIA CARD.  WE'RE DESCRIBING A CARD, SO IT'S A MEMORY

14   MEDIA CARD.  BUT WHETHER IT'S --

15           **THE COURT:**  SO IT'S A MEDIA CARD.  COULD BE A CARD

16   WHICH IS A MEDIUM FOR STORING MEDIA.

17           **MR. KELLA:**  WELL, THE MEMORY IS THE MEDIUM FOR STORING

18   MEDIA.

19           **THE COURT:**  NO, MEMORY IS THE CONTENT.  THE DEVICE IS

20   LITTLE -- I DON'T KNOW -- LITTLE THINGS THAT YOU STICK IN

21   COMPUTERS AND THEY STORE DATA.

22           **MR. KELLA:**  MEMORY IS NOT CONTENT.  MEMORY IS A

23   PHYSICAL -- IS A PHYSICAL STRUCTURE THAT YOU PUT CONTENT ON.  SO

24   YOU PUT DATA INTO MEMORY.  SO IF YOU JUST HAVE A MEMORY CARD THEN

25   YOU SEE MEMORY CARD AND SAY:

1      "WELL, IT'S A CARD WITH MEMORY."

2      AND THEN, YOU SAY "MEMORY MEDIA CARD."  AND THAT CONNOTES

3  THAT, WELL, WHAT KIND OF MEMORY MEDIA CARD?

4           **THE COURT:**  WELL, "MEDIA" COULD MODIFY "MEMORY," AS

5  WELL. MEDIA FOR PUTTING MEMORY ON.  SO A CD IS A MEMORY MEDIA

6  DISK BECAUSE IT'S A MEDIUM, A CD.  AND IT HAS MEMORY AND YOU CAN

7  PUT DATA IN IT AND IT WILL STORE IT.

8      CLEARLY IT CAN BE BOTH.  SO THE QUESTION IS:  DOES IT MATTER

9  WHICH ONE IS MEANT IN THIS PARTICULAR PHRASE?  AND HOW DO WE

10 EXPLAIN THAT TO A JURY?  AND IF YOU THINK IT MATTERS AND IF YOU

11 THINK IT MEANS "CONTENT" THEN YOU NEED TO TELL ME WHY YOU THINK

12 IT MEANS "CONTENT" AND NOT THE STORAGE CAPABILITY ITSELF.

13          **MR. KELLA:**  I THINK IT MEANS CONTENT IN THE CONTEXT OF

14 THE CLAIM AND IN THE CONTEXT OF THE WORD "MEDIA," WHICH WE'VE

15 LOOKED AT IN THE PATENT, EXHIBIT 14 THAT DEFENDANTS SUBMITTED TO

16 GIVE MEANING TO "MEMORY MEDIA CARD."

17     I MEAN, THAT WAS DEFENDANTS' EXTRINSIC EVIDENCE THAT THEY

18 HAVE SUBMITTED IN SUPPORT OF THEIR CONSTRUCTION.

19          **THE COURT:**  OKAY.  WELL, I'LL HAVE TO GIVE IT SOME

20 THOUGHT.

21          **MR. WALKER:**  WELL, JUST TO CONTINUE JUST BRIEFLY TO

22 WRAP THIS UP, "MEMORY MEDIA" IS A GENERIC TERM, AND IT'S USED IN

23 THE PATENT.  "MEMORY MEDIA."

24     AND IT'S TALKING ABOUT THE THING ON WHICH YOU HAVE THE

25 MEMORY.  AND IT CAN BE, AS YOU SAID, DIFFERENT TYPES:  FLASH

```
1   MEDIA.  IT COULD BE OPTICAL MEDIA.  IT CAN BE MAGNETIC MEDIA.

2   BUT YOU CAN ALSO HAVE MEMORY MEDIA ON A COMPUTER, JUST IN THE

3   COMPUTER ITSELF.  AND SO YOU NEED THE WORD "CARD" BECAUSE THIS IS

4   A REMOVABLE THING.

5        IT'S NOT MEMORY MEDIA THAT EXISTS IN YOUR COMPUTER.  THE

6   CARD MEANS THAT IT'S SEPARATE.  JUST LIKE YOU SAID ABOUT YOU

7   COULD HAVE A MEMORY MEDIA DISK, THAT SPECIFIES THAT THE MEDIA IS

8   A DISK.

9        IN THIS PARTICULAR CASE I THINK A CARD, BECAUSE IT'S -- I

10  THINK A CARD IS ANY REMOVABLE DEVICE.

11            THE COURT:  IT COULD ALSO BE A MEDIA CARD.  IT COULD BE

12  A CARD UPON WHICH YOU PUT MEDIA.  AND YOU COULD PUT --

13            MR. WALKER:  IT CERTAINLY COULD BE.

14            THE COURT:  -- PHOTOS ON IT.  AND PHOTOS ARE MEDIA.

15  AND THIS IS A CARD THAT HAS PHOTOS THAT ARE MEDIA ON IT.

16            MR. WALKER:  IT CERTAINLY COULD BE.

17            THE COURT:  WHAT'S WRONG WITH THAT?  IT'S BOTH.  IT'S A

18  MEMORY MEDIA MEDIA CARD, IF YOU WANT TO SAY IT TWICE.  BOW DOES

19  IT MATTER?  I MEAN, I GUESS I COULD TRY TO FIGURE THIS OUT.  BUT

20  I HOPE --

21            MR. WALKER:  AS LONG AS THERE'S NO SIZE LIMITATION.

22            THE COURT:  WHAT?

23            MR. WALKER:  AS LONG AS THERE'S NO SIZE LIMITATION IT

24  DOESN'T MATTER TO ME BECAUSE --

25            THE COURT:  OKAY.  YOU THINK IT DOES MATTER?
```

1          **MR. KELLA:**  OUR POSITION, YOUR HONOR, IS IT DOES

2   MATTER, BECAUSE WE'RE, AGAIN, REMOVING THE WORD "MEDIA."

3          **THE COURT:**  I'M NOT GOING TO REMOVE IT.  I THINK I

4   MIGHT ADD ANOTHER ONE.  I'M GOING TO CALL IT "MEMORY MEDIA MEDIA

5   CARD," WHICH IS A MEMORY MEDIA WHICH HAS MEDIA ON IT.

6          **MR. WALKER:**  AND IT'S REMOVABLE.

7          **MR. KELLA:**  WELL, THAT WOULD BE FINE WITH PLAINTIFFS,

8   YOUR HONOR.

9          **THE COURT:**  ALL RIGHT.  THEN, WE HAVE TYPE OF MEMORY

10  MEDIA CARD.  AND, AGAIN, PLAINTIFFS SAY NO CONSTRUCTION

11  NECESSARY.  I THINK ONE IS BECAUSE WE NEED TO KNOW HOW TO TELL

12  WHETHER WE HAVE TWO CARDS OF TWO DIFFERENT TYPES OR DO WE HAVE

13  ONLY TWO CARDS OF THE SAME TYPE?

14      SO I'M GOING TO NEED SOMETHING THAT TELLS ME HOW TO TELL

15  WHAT'S A TYPE.

16      SO, PLAINTIFF, IF YOU HAD TO TELL ME SOMETHING, WHAT WOULD

17  IT BE?

18          **MR. KELLA:**  SD AND MMC ARE UNDOUBTEDLY TWO DIFFERENT

19  CARD TYPES.  THEY ARE TWO DIFFERENT CARD TYPES IN THE INDUSTRY.

20          **THE COURT:**  WELL, THAT'S YOUR --

21          **MR. KELLA:**  WELL, THERE ARE TWO DIFFERENT CARD TYPES

22  IN --

23          **THE COURT:**  -- POSITION, BUT DEFINE FOR ME WHAT IS A

24  TYPE OF MEMORY CARD.  HOW DO YOU DISTINGUISH ONE TYPE FROM

25  ANOTHER?

1          **MR. KELLA:**  A MEMORY CARD THAT IS DIFFERENT FROM

2   ANOTHER MEMORY CARD.

3          **THE COURT:**  IN WHAT WAY?

4          **MR. KELLA:**  A MEMORY CARD THAT HAS ITS OWN

5   SPECIFICATION.

6          **THE COURT:**  SPECIFICATION OF WHAT?

7          **MR. KELLA:**  OF HOW IT OPERATES.

8          **THE COURT:**  IN WHAT SENSE?

9          **MR. KELLA:**  I MEAN, IN THIS ESSENTIAL, YOUR HONOR.

10          **THE COURT:**  IN OTHER WORDS, WHAT IS DIFFERENT?  WHAT IS

11   DIFFERENT?  I SAY LET'S HAVE TWO DIFFERENT TYPES OF MUSIC,

12   CLASSICAL AND --

13          **MR. WALKER:**  WELL --

14          **THE COURT:**  -- HIP HOP AND RAP. AND IS THAT TWO

15   DIFFERENT TYPES?  I DON'T KNOW.  HOW DO I DECIDE WHAT IS A TYPE?

16          **MR. KELLA:**  COULD I GIVE AN EXAMPLE ON THE ELMO THAT I

17   THINK WOULD BE HELPFUL?

18          **THE COURT:**  NO, BECAUSE I NEED A DEFINITION, NOT AN

19   EXAMPLE.

20          **MR. KELLA:**  A CARD THAT HAS ITS OWN STANDARD.

21          **THE COURT:**  OF WHAT?

22          **MR. KELLA:**  OF OPERATION.

23          **THE COURT:**  WHAT --

24          **MR. KELLA:**  WELL, THIS IS --

25          **THE COURT:**  THAT DOESN'T HELP ME.  I'VE GOT TWO CARDS

 1  SITTING IN FRONT OF ME.  HE SAYS THEY ARE THE SAME TYPE.  YOU SAY

 2  THEY ARE DIFFERENT TYPES.  HOW DO I KNOW?

 3          **MR. KELLA:**  EACH HAS A SPECIFICATION OF OPERATION THAT

 4  IS DIFFERENT.  WELL, THE ISSUE IS HERE THERE'S MANY DIFFERENT

 5  WAYS A CARD CAN BE DIFFERENT.  OKAY?  ONE EXAMPLE THE SPEC GIVES

 6  SPECIFIC TO MMC AND SD IS THAT THEY CAN HAVE DIFFERENT PIN OUT.

 7       AND THIS IS ALL CITED IN OUR BRIEF.  BUT DURING

 8  PROSECUTION  -- WELL, WHY DON'T WE START WITH THE SPEC?  AND THIS

 9  IS CITED IN OUR BRIEF.  BUT THE SPEC SAYS MMC AND SD HAVE

10  DIFFERENT PIN OUT, MEANING THEY HAVE DIFFERENT NUMBERS OF CONTACT

11  PINS.  AND YOUR HONOR MENTIONED EARLIER:

12          "WHAT ARE THE THINGS ON THE CARDS THAT CONNECT TO THE

13       CONTACT PINS?"  THOSE ARE CONTACT PATHS.  SD CARDS AND MMC

14  CARDS HAVE DIFFERENT NUMBERS OF CONTACT PATHS.  AND THE APPLICANT

15  DESCRIBED DURING PROSECUTION --

16          **THE COURT:**  SO IF YOU HAD TWO CARDS THAT WERE UTTERLY

17  DIFFERENT IN EVERY WAY, BUT THEY BOTH HAPPEN TO HAVE EIGHT

18  CONTACT PINS, THOSE WOULD BE THE SAME TYPE?

19          **MR. KELLA:**  NO.  NO.

20          **THE COURT:**  WE'RE RESULT ORIENTED HERE.  YOU BOTH ARE.

21  YOU'RE TRYING TO COME UP WITH A DEFINITION THAT IS GOING TO LEAD

22  TO THE ANSWER YOU WANT.  BUT WHAT I NEED IS SOMETHING THAT'S

23  BROADER THAN THAT THAT ACTUALLY DEFINES WHAT IS A TYPE AND HOW DO

24  YOU DECIDE WHETHER SOMETHING IS A DIFFERENT TYPE.

25          **MR. KELLA:**  WELL, IN THE INDUSTRY EVERY MULTIMEDIA CARD

```
1    IS GOING TO HAVE A STANDARD THAT SAYS THIS IS HOW MANY PINS YOU

2    HAVE.  THIS IS HOW MANY PINS YOU USE ON THE CARD, AND THESE ARE

3    THE DIFFERENT SIGNALS THAT YOU PUT ON THE DIFFERENT PINS THAT ARE

4    ASSOCIATED WITH THE DIFFERENT PINS, WHICH IS THE WHOLE POINT OF

5    MAPPING IN THE SPEC, BECAUSE DIFFERENT CARDS USE PINS

6    DIFFERENTLY.

7              THE COURT:  SO DIFFERENT TYPES ARE CARDS THAT HAVE

8    DIFFERENT NUMBERS OF CONTACT PINS?

9              MR. KELLA:  THAT'S CERTAINLY ONE DIFFERENCE A CARD

10   COULD HAVE.

11             THE COURT:  AND WHAT WAS THE OTHER THING?  SOMETHING

12   ABOUT WHAT THEY PUT ON EACH PIN OR SOMETHING LIKE THAT?

13             MR. KELLA:  YOU COULD HAVE DIFFERENT NUMBERS OF CONTACT

14   PINS OR YOU COULD USE CONTACT PINS DIFFERENTLY.

15             THE COURT:  OKAY.  SO HOW DO YOU LIKE THAT.

16             MR. WALKER:  WELL, WE THINK IF THEY HAVE INCOMPATIBLE

17   ELECTRICAL AND PHYSICAL INTERFACES.  IF THEY CAN BOTH --

18             THE COURT:  I DON'T SEE WHY THEY HAVE TO BE

19   INCOMPATIBLE.

20             MR. WALKER:  WHAT'S THAT?

21             THE COURT:  I DON'T SEE WHY THEY HAVE TO BE

22   INCOMPATIBLE.

23             MR. WALKER:  BECAUSE YOU HAVE AN ADAPTER.  IT'S A

24   UNIVERSAL ADAPTER.  IT HAS DIFFERENT SETS OF CONTACT PINS FOR

25   DIFFERENT TYPES OF INCOMPATIBLE CARDS THAT HAVE TO BE READ.
```

 1              **THE COURT:**  BUT YOU'RE DEFINING IT IN A RESULT-ORIENTED

 2    FASHION.

 3              **MR. WALKER:**  I'M NOT DEFINING IT RIGHT NOW.  I'M JUST

 4    TRYING TO EXPLAIN.

 5              **THE COURT:**  WELL, THAT'S WHAT I WANT YOU TO DO.

 6              **MR. WALKER:**  WELL, I UNDERSTAND.  AND I THINK WE HAVE.

 7              **THE COURT:**  WHY THEIR DEFINITION IS WRONG.  YOUR

 8    DEFINITION INCLUDES "INCOMPATIBLE" AND I DON'T SEE WHY A TYPE

 9    NEEDS TO BE INCOMPATIBLE.  SO YOU SAY TYPES OF MEMORY MEDIA CARDS

10    HAVE INCOMPATIBLE ELECTRICAL AND PHYSICAL INTERFACES.  I DON'T

11    AGREE WITH THAT.  THEY COULD BE DIFFERENT WITHOUT BEING UTTERLY

12    INCOMPATIBLE SEEMS TO ME.

13              **MR. WALKER:**  WELL, THE REASON TYPES OF MEMORY MEDIA

14    CARD IS A TERM THAT IS USED IN THE PATENT.  IT'S USED IN THE

15    CLAIMS TO MEAN SOMETHING.  AND IF YOU LOOK AT FIGURE FIVE, OR

16    FIGURE FOUR, THEY SHOW YOU THE DIFFERENT -- WHAT THEY MEAN BY

17    DIFFERENT TYPES OF CARDS.  THEY ARE ACROSS THE TOP OF THE COLUMN

18    HERE.

19        WE HAVE XD OVER HERE IN ONE COLUMN (INDICATING).  WE HAVE

20    MMC/SD HERE (INDICATING).  WE HAVE MEMORY STICK HERE

21    (INDICATING).

22              **THE COURT:**  OKAY.  TELL ME WHAT'S WRONG WITH SAYING

23    IT'S DIFFERENT NUMBERS OF CONTACT PINS OR DIFFERENT USES OF THE

24    CONTACT PINS.  WHAT WOULD BE WRONG WITH THAT?

25              **MR. WALKER:**  BECAUSE THAT --

1          **THE COURT:**  LET'S ASSUME I DON'T -- I MEAN, I WILL GO

2     BACK AND LOOK AT IT AGAIN.  BUT IF I DON'T AGREE THEY HAVE TO BE

3     INCOMPATIBLE, DO YOU HAVE A FALLBACK OR IS THEIR FALLBACK OKAY?

4          **MR. WALKER:**  SO IF YOU HAVE TWO ENTIRELY COMPATIBLE

5     CARDS, THEY WOULD CALL THOSE A DIFFERENT TYPE OF CARD?

6          **THE COURT:**  YES.  MAYBE THEY HAVE SOME OTHER

7     DIFFERENCE.  THEY ARE COMPATIBLE, BUT ONE IS BIGGER AND ONE IS

8     SMALLER.  OR ONE IS WHAT --

9          **MR. WALKER:**  WELL, THE POINT WE'RE TRYING TO MAKE IS

10    REALLY TO TRY TO BE CONSISTENT WITH THIS PATENT AND THE CLAIMS

11    THAT ARE IN HERE.  BECAUSE AS WE JUST TALKED ABOUT IN TERMS OF

12    IDENTIFYING THE TYPE OF CARD, RIGHT?  THE CLAIMS REQUIRE THAT YOU

13    IDENTIFY THE TYPE OF CARD.  AND THE STRUCTURE THAT IS REVEALED IS

14    THE CARD DETECT PINS.  BUT MMC AND SD SHARE THE SAME CARD DETECT

15    PIN.

16         **THE COURT:**  SO YOU DON'T HAVE TO HAVE A FALLBACK.  YOU

17    CAN DO EITHER/OR.  YOU CAN SAY IF YOU DON'T THINK IT HAS TO BE

18    INCOMPATIBLE, THEN I GIVE UP.  AND THAT SOUNDS LIKE WHAT YOU'RE

19    SAYING, SO LET'S MOVE ON.

20         **MR. WALKER:**  I'M SORRY.

21         **THE COURT:**  IF I DON'T USE "INCOMPATIBLE" THEN I'LL USE

22    THEIRS.  YOU'RE NOT GIVING ME ANY OTHER FALLBACK OPTION, WHICH IS

23    FINE.  YOU DON'T HAVE TO.

24         **MR. WALKER:**  OKAY.

25         **THE COURT:**  OKAY.  SO ARE THERE OTHER TECHNOLOGY

1    PROPERTIES CASES IN THIS DISTRICT BESIDES THESE HERE?  I HAVE A

2    FEELING THAT JUDGE HAMILTON HAS SOME.  AND NOT THAT I'M A GLUTTON

3    FOR PUNISHMENT, BUT I WOULD LIKE TO MANAGE THESE THINGS

4    EFFICIENTLY.

5         **MR. KELLA:**  YOUR HONOR, I APOLOGIZE.  COULD I JUST

6    MENTION ONE MORE THING FOR THE RECORD?

7         **THE COURT:**  NO, I REALLY NEED TO MOVE ON.

8        DOES JUDGE HAMILTON HAVE OR ANY OTHER JUDGE IN THIS DISTRICT

9    HAVE CASES THAT SOMEHOW SHOULD BE RELATED TO THESE CASES?

10        **MR. SIMON:**  I DON'T THINK SO, YOUR HONOR, BUT I'M HAPPY

11   TO ASK.  WE HAVE A REPRESENTATIVE HERE, IF YOU WOULD LIKE ME TO

12   ASK.

13        **THE COURT:**  WELL, YOU CAN IF YOU DON'T NEED TO DO

14   SOMETHING ELSE.

15       MY NEXT QUESTION IS:  CAN I HAVE THE ALJ'S OPINION IN THE

16   ITC IN UNREDACTED VERSION?  HOW LONG IS IT?

17        **MR. SIMON:**  YES.  WE HAVE IT HERE, YOUR HONOR.

18        **THE COURT:**  ANYONE HAVE A PROBLEM WITH ME HAVING AN

19   UNREDACTED VERSION OF IT?  YOU WANT IT FILED UNDER SEAL OR

20   SOMETHING, I SUPPOSE?

21        **MR. SIMON:**  WE HAVE NO PROBLEM WITH IT, YOUR HONOR.

22        **MR. DEVITT:**  YOUR HONOR, THERE ARE A NUMBER OF PARTIES.

23   BILL DEVITT.

24        **THE COURT:**  YOU CAN FILE IT UNDER SEAL.  WOULD SOMEONE

25   FILE IT UNDER SEAL?

KATHERINE WYATT, PRO TEM REPORTER, CSR, RMR (925) 212-5224

1          **MR. DEVITT:**  I AM JUST CONCERNED THERE ARE OTHER

2    PARTIES WHO WERE PARTIES IN THAT CASE THAT THEY MAY

3    CONFIDENTIAL --

4          **THE COURT:**  SOMEBODY JUST FILE IT UNDER SEAL.  FILE IT

5    WITH A REQUEST FOR A SEALING ORDER, AND I'LL FILE IT UNDER SEAL.

6    OKAY.

7          **MR. SIMON:**  THE INITIAL DETERMINATION, YOUR HONOR, OR

8    JUST THE CLAIM CONSTRUCTION ORDER OR BOTH?

9          **THE COURT:**  HOW LONG IS IT?

10          **MR. SIMON:**  THEY ARE BOTH PRETTY LONG.

11          **MR. DEVITT:**  THERE'S THE INITIAL DETERMINATION FROM ALJ

12    AND COMMISSION REPORT.  WE'LL FILE THOSE BOTH UNDER SEAL FOR YOUR

13    HONOR.

14          **THE COURT:**  OKAY.

15          **MR. SIMON:**  THEY ARE UNDER A HUNDRED PAGES FOR THE

16    CLAIM CONSTRUCTION ORDER.

17          **THE COURT:**  OKAY.  JUST FILE THEM.  WE HAVE A LOT OF

18    ELECTRONIC MEDIA.

19          **MR. SIMON:**  OKAY.  WE WILL DO THAT.  I'M SORRY.

20          **THE COURT:**  ON YOUR CASE MANAGEMENT YOU MENTION THAT

21    YOU HAVE BEEN MEDIATING AND THAT YOU WILL CONTINUE TO MEDIATE, SO

22    I WOULD LIKE YOU TO DO THAT.  SOME PEOPLE HAVE SETTLED.  THOSE OF

23    YOU WHO HAVEN'T SHOULD CONTINUE TALKING IF THERE'S ANY PROSPECT

24    OF MORE OF YOU SETTLING.

25          YOU'VE GOT YOUR ARGUMENT ABOUT THE REPRESENTATIVE PRODUCTS

1    AND SOMEBODY THINKS YOU CAN'T DECIDE ON THAT UNTIL IT'S DECIDED

2    WHETHER THE INFRINGEMENT CONTENTIONS ARE GOOD ENOUGH.

3         I WISH WE COULD GET THAT DONE A LITTLE BIT QUICKER, BUT I

4    GUESS THAT'S GOING TO BE DONE ON JULY 16TH, SO I GUESS AFTER THAT

5    YOU SHOULD DISCUSS WHETHER YOU CAN AGREE UPON REPRESENTATIVE

6    PRODUCTS.

7         THIS ISSUE ABOUT THE DISCOVERY AND WHETHER YOU HAVE TO TURN

8    OVER THINGS WITHIN YOUR CUSTODY AND POSSESSION AND CONTROL, ONE

9    SIDE SAYS YOU HAVE TO DO THAT.  AND IT SEEMS THAT YOU DO.  BUT

10   THE OTHER SIDE SAYS NO, WHAT THEY REALLY MEAN IS WE HAVE TO GIVE

11   OVER THIRD-PARTY STUFF.  AND THAT YOU DON'T HAVE TO DO.

12        SO IF YOU'VE GOT SOME LACK OF CLARITY ABOUT WHAT DOCUMENTS

13   YOU HAVE TO TURN OVER WE'LL REFER THAT TO JUDGE RYU, AS WELL.

14            **MR. SIMON:**  SHOULD WE JUST FILE SOMETHING IN ACCORDANCE

15   WITH THE RULES IN ACCORDANCE WITH YOUR STANDING ORDER?

16            **THE COURT:**  YES.  FILE A JOINT LETTER BRIEF EXPLAINING

17   WHAT YOUR DISCOVERY DISPUTE IS ABOUT WHAT DOCUMENTS HAVE TO BE

18   TURNED OVER.

19        BUT FIRST TALK TO EACH OTHER.  WHAT YOU SAID SOUNDS LIKE,

20   YES, THEY DO HAVE TO TURN THAT OVER.  WHAT THEY SAY IS WHAT

21   YOU'RE REALLY ASKING FOR IS FOR THEM TO TURN OVER STUFF THAT THEY

22   DON'T HAVE AND ONLY THIRD PARTIES HAVE.

23        SO YOU NEED TO RESOLVE IF IT'S THIRD-PARTIES, THEN, NO, THEY

24   DON'T TO HAVE TURN IT OVER.  YOU HAVE TO GET IT FROM THE THIRD

25   PARTIES.  IF IT'S STUFF WITHIN THEIR CARE, CUSTODY AND CONTROL.

1    THEN.  YES.  THEY HAVE TO TURN IT OVER.

2        THAT'S PRETTY STRAIGHTFORWARD.  IF YOU'VE GOT A DISPUTE

3    ABOUT THAT THEN YOU NEED TO EXPLAIN YOUR RESPECTIVE SIDES AND

4    GIVE IT TO JUDGE RYU.

5            **MR. DEVITT:**  BILL DEVITT ON BEHALF OF THE DEFENDANTS.

6    WE AGREE WITH EXACTLY WHAT YOU SAID.  SO OUR POSITION IS THAT --

7            **MR. SIMON:**  WE'LL FILE IT, YOUR HONOR.  WE'LL FILE IT.

8            **THE COURT:**  ON THE OTHER HAND, YOU KNOW, IF YOU COULD

9    GET THEM, IT'S EASIER TO SWITCH THAN FIGHT AND JUST GIVE IT TO

10   THEM, FOR GOODNESS SAKE.

11       OKAY.  WHAT ELSE?  OH, WE WERE -- YOU HAVE PROPOSED

12   SCHEDULES WHICH ARE ABOUT THREE MONTHS APART IN HOW THEY COME

13   OUT.

14       SO I GUESS I CAN JUST PICK ONE AND INCLUDE IT WHEN I PUT OUT

15   THE ORDER SINCE I DON'T REALLY HAVE TIME TO GO OVER IT RIGHT NOW.

16           **MR. SIMON:**  YOUR HONOR,  ONE POINT ON THAT IS THAT'S

17   DEPENDENT IN PART ON THIS REPRESENTATIVE PRODUCTS AND THIS

18   DISCOVERY.  IF WE HAVE TO GO TO JAPAN OR CHINA AND TAKE

19   DISCOVERY, AND WE'RE GOING TO HAVE TO DO IT FOR 5,000 PRODUCTS,

20   BECAUSE THEY WON'T AGREE TO REPRESENTATIVE PRODUCTS IT'S GOING TO

21   TAKE A LOT LONGER THAN THE PROPOSED SCHEDULE.

22       WE'RE ASSUMING WE CAN WORK THAT OUT.

23           **THE COURT:**  OKAY.  WELL, YOURS WAS SHORTER THAN THEIRS.

24           **MR. SIMON:**  RIGHT.  AND WE ARE ASSUMING IF WE CAN WORK

25   IT OUT IT CAN BE REAL SHORT.  AS YOU HEARD ALL THESE PRODUCTS

1    OPERATE THE SAME.  IT'S SD MMC.  WE KNOW HOW THEY WORK.  SO WE

2    ARE HOPEFUL WE CAN WORK IT OUT.  I JUST WANT TO MAKE IT CLEAR.

3        ONE OTHER HOUSEKEEPING MATTER, YOUR HONOR, YOU HAD ASKED FOR

4    AND I THINK WE GAVE YOU THIS BEFORE, BUT THE SUPPORT FOR THE MCMD

5    LINES IS AN EXHIBIT O TO OUR BRIEF, PARAGRAPH 40.  THAT'S OUR

6    EXPERT'S DECLARATION.  AND HE GOES THROUGH EVERY PAGE AND LINE

7    NUMBER FOR MCMD.

8            **THE COURT:**  OKAY.

9        OKAY.  THANK YOU.

10            **MR. SIMON:**  THANK YOU.

11            (THEREUPON, THIS HEARING WAS CONCLUDED.)

12   STENOGRAPHY CERTIFICATION

13            "I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
     FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER."
14            JULY 28, 2015
              KATHERINE WYATT
15   _____

16

17

18

19

20

21

22

23

24

25