# Exhibit A

PARTIES LISTED ON SIGNATURE PAGE

1

2
**UNITED STATES DISTRICT COURT**
3
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**
4

5

| | |
|---|---|
| TECHNOLOGY PROPERTIES LIMITED LLC and MCM PORTFOLIO LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>CANON INC., et al.,<br><br>    Defendants. | Civil Action No. 14-03640 CW<br><br>**DEFENDANTS' <span style="color:red">AMENDED</span> INVALIDITY CONTENTIONS AND DISCLOSURES PURSUANT TO PATENT L.R. 3-3 AND 3-4** |
| TECHNOLOGY PROPERTIES LIMITED LLC and MCM PORTFOLIO LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>HEWLETT PACKARD COMPANY,<br><br>    Defendant. | Civil Action No. 14-03643 CW<br><br>**DEFENDANTS' <span style="color:red">AMENDED</span> INVALIDITY CONTENTIONS AND DISCLOSURES PURSUANT TO PATENT L.R. 3-3 AND 3-4** |
| TECHNOLOGY PROPERTIES LIMITED LLC and MCM PORTFOLIO LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>NEWEGG INC., et al.,<br><br>    Defendants. | Civil Action No. 14-03645 CW<br><br>**DEFENDANTS' <span style="color:red">AMENDED</span> INVALIDITY CONTENTIONS AND DISCLOSURES PURSUANT TO PATENT L.R. 3-3 AND 3-4** |

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3  TECHNOLOGY PROPERTIES LIMITED
   LLC and MCM PORTFOLIO LLC,

4                                              Civil Action No. 14-03646 CW

5              Plaintiffs,

6        v.                                    **DEFENDANTS' <span style="color:red">AMENDED</span>
                                               INVALIDITY CONTENTIONS AND
7  SEIKO EPSON CORPORATION., et al.,           DISCLOSURES PURSUANT TO
                                               PATENT L.R. 3-3 AND 3-4**

8              Defendants.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEFENDANTS' INVALIDITY CONTENTIONS AND
## DISCLOSURES PURSUANT TO PATENT LOCAL RULES 3-3 AND 3-4

Pursuant to Patent Local Rules 3-3 and 3-4, and in further view of Technology Properties Limited LLC ("TPL") and MCM Portfolio LLC ("MCM") (collectively, "Plaintiffs") own disclosures and discovery responses to date, Defendants, by and through their attorneys, hereby provide the following ~~preliminary~~ Amended Invalidity Contentions with respect to the claims of U.S. Patents Nos. 7,295,443 ("the '443 patent"), 7,522,424 ("the '424 patent"), and 7,719,847 ("the '847 patent") (collectively, "the patents-in-suit") asserted by Plaintiffs. These amendments are to Defendants' preliminary Invalidity Contentions served on January 16, 2015. These amendments are made in view of the Court's Order Construing Disputed Claim Terms (D.I. 334) issued September 18, 2015, and by further discovery to date including documents produced by and deposition of third party SanDisk Corporation.

## I.    PRELIMINARY MATTERS

Defendants' Invalidity Contentions are in response to Plaintiffs' Infringement Contentions served on December 3, 2014.  These Invalidity Contentions address only the asserted claims in Plaintiffs' Infringement Contentions (collectively referred to as the "asserted claims of the patents-in-suit"), which are:

- '443 patent: claims 1, 3, 4, 7, 9, 11, 12, and 14
- '424 patent: claims 25, 26, 28, and 29
- '847 patent: claims 1, 2, and 3.

Defendants Canon Inc., Canon U.S.A., Inc., Epson America, Inc., Seiko Epson Corporation, Sony Corporation, and Sony Corporation of America contend that Plaintiffs have failed to meet their burden under Patent L.R. 3-1 subparagraphs (a), (b), (c), and (e).  For instance, Plaintiffs have not satisfied the requirements of the Local Patent Rules for each product identified by Plaintiffs as a purportedly "accused product."  Defendants reserve all rights regarding Plaintiffs' deficient contentions.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants additionally disagree that the asserted claims of the patents-in-suit are entitled to claim priority to the application identified in Plaintiffs' Patent L.R. 3-1(f) disclosure – "U.S. Patent No. 6,438,638/Application No. 09/610,904", filed July 6, 2000.   It is, and remains, Plaintiffs' burden to establish the right to priority to any earlier applications.   In this case, the patents purport to claim priority through a number of continuations-in-part with varying disclosures.  Accordingly, Plaintiffs must establish a continuous chain of disclosures meeting the requirements of 35 U.S.C. § 112 for each asserted claim, reaching back to the earliest claimed priority date.  Plaintiffs provided no information regarding how their claims are purportedly entitled to the priority date claimed in their Patent L.R. 3-1(f) disclosure.   Indeed, none of the asserted claims of the patents-in-suit are entitled to claim priority to "U.S. Patent No. 6,438,638/Application No. 09/610,904", filed July 6, 2000.  Examples of claim limitations that are not disclosed by this prior application are set forth in Section II below.

These Invalidity Contentions are accompanied by Exhibits 443-1 to 443-33, 424-1 to 424-33, and 847-1 to 847-33.  These exhibits identify various anticipation and obviousness contentions by disclosing exemplary locations in the prior art where each limitation of each asserted claim can be found.  Defendants rely on the anticipation and obviousness contentions of Exhibits 443-1 to 443-33, 424-1 to 424-33, and 847-1 to 847-33 regardless of whether any such contentions are repeated in the text of this document.  Moreover, the citations to prior art and explanations provided in the attached exhibits are exemplary, and Defendants reserve the right to rely on any other portions or aspects of the cited prior art, as well as systems or products embodying that art or testimony from others regarding that art, in proving the invalidity of the asserted claims of the patents-in-suit.

As discussed in more detail below, any reference identified as anticipating any asserted claim under 35 U.S.C. § 102 also renders the asserted claim invalid as obvious under 35 U.S.C. § 103, either by itself or when combined with any of the other cited prior art references or the knowledge of one of ordinary skill in the art.  All of the identified prior art within an individual claim chart relates and is directed to the relevant technology of the patents-in-suit, and

Defendants rely upon the disclosures of these references themselves, as well as the nature of the problem purportedly solved by the asserted claims, to demonstrate that one of ordinary skill in the art would have known and been motivated to combine the references as disclosed to practice the asserted claims of the patents-in-suit.   Where a particular item of prior art incorporates by reference other documents or materials, Defendants' identification of the particular prior art reference includes all such incorporated documents or materials.

These Invalidity Contentions should not be interpreted to rely upon, or in any way affect, the claim construction or non-infringement arguments that Defendants have put forth or intend to put forth in this case.   ~~Rather, T~~these contentions are being provided in response to Plaintiffs' December 3, 2014 Infringement Contentions (to the extent understood) and the construction of the claims implicit therein.   Therefore, the attached charts contain (among other things) examples of where the features of the accused products are found in the prior art, such that any interpretation of the asserted claims proffered by Plaintiffs that would purport to cover the accused products would also cause the claims to necessarily cover the prior art.

References cited in the attached exhibits may disclose the elements of the asserted claims either explicitly and/or inherently, and/or may be relied upon to show the state of the art in the relevant timeframes.   The suggested obviousness combinations are in the alternative to Defendants' anticipation contentions and are not to be construed to suggest that any obviousness reference is not also anticipatory.

Any and all cites to particular figures in the invalidity charts shall be deemed to wholly incorporate the figure by reference, and include the figure as if it had been inserted into the chart itself, as well as any text discussing the figure.   Figures which have not been explicitly cited in the chart or text of these Invalidity Contentions, but which appear on the cited pages of the reference, are also wholly incorporated by reference into these Invalidity Contentions.

Defendants' discovery and investigation in connection with this lawsuit and the patents-in-suit are continuing, and thus, these Invalidity Contentions are based on information obtained to date.   ~~Among other things, d~~Discovery is still underway~~, no witnesses have been deposed in this~~

case to date, and the Court has not yet construed the terms of the asserted claims of the patents-in-suit.   Additionally, Defendants intend to seek permission from third parties to use certain prior art materials they produced in the ITC under protective order, and intend to supplement these disclosures based on such materials once permission is obtained from the third parties, or the ITC record containing those materials has been transmitted to the district court for use in these proceedings.  Accordingly, Defendants' Invalidity Contentions are subject to further modification, amendment, or supplementation in accordance with the Court's orders, the Local and Patent Rules of the Northern District of California, and/or the Federal Rules of Civil Procedure as this action progresses and additional information is obtained.

Defendants also incorporate by reference the following items:

- Inv. 337-TA-841 Initial Expert Report of Joseph C. McAlexander, III, October 19, 2012.

- Inv. 337-TA-841 Attachments C, D, and E to Initial Expert Report of Joseph C. McAlexander, III: RDX-1512 through RDX-1545.

- Inv. 337-TA-841 Rebuttal Expert Report of Joseph C. McAlexander, III, November 5, 2012.

- Inv. 337-TA-841 Trial Testimony of Joseph C. McAlexander, III, at January 10, 2012, p. 1448-1553.

- Inv. 337-TA-841 Direct Witness Statement of Joseph C. McAlexander, III: RX-0460C.

- Inv. 337-TA-841 Respondents' Notice of Prior Art, August 31, 2012.

- Inv. 337-TA-807 Opening Expert Report of Dr. Robert L. Stevenson, June 1, 2012.

- Inv. 337-TA-807 Direct Witness Statement of Dr. Robert L. Stevenson:  RX-148C.

- Inv. 337-TA-807 Sony Respondents' Notice of Prior Art, April 30, 2012.

## II.    PATENT L.R. 3-3 DISCLOSURES

### A.    Patent L.R. 3-3(a) Disclosures

Defendants incorporate by reference Exhibits 443-1 to 443-33, 424-1 to 424-33, and 847-1 to 847-33 hereto.  In addition, Defendants further identify the below prior art to the asserted patents-in-suit.[1] Although Defendants have segregated the prior art by asserted patent, Defendants may rely on any of the below prior art in support of any of the defenses and/or counterclaims, including without limitation, to demonstrate the state of the art and/or the knowledge of a person of ordinary skill in the art.

#### 1.    U.S. Patent No. 7,295,443

Plaintiffs identified claims 1, 3, 4, 7, 9, 11, 12, and 14 of the '443 patent as the asserted claims in their December 3, 2014 Infringement Contentions.  Plaintiffs allege that these claims are entitled to the benefit of the July 6, 2000 filing date of U.S. Patent No. 6,438,638/Application No. 09/610,904.  The '638 patent, however, is directed to very different architectures of passive adapters, as opposed to the active adapter design disclosed and claimed in the '443 patent.  The '638 patent provides no support under 35 U.S.C. § 112 for several elements of the asserted claims, including, but not limited to, the following elements:

Claim 1:

- a *multi-memory media adapter;*

---

[1]    Defendant Kingston Technology Company, Inc. ("Kingston") does not join in any invalidity contentions or charts against claims 1, 3, 4, and 7 of the '443 patent  and all claims of the '847 patent, as those are claims which Kingston is not accused of infringing.  Defendants Sony Corporation and Sony Corporation of America (collectively "Sony"), Canon Inc. and Canon U.S.A, Inc. (collectively "Canon"), and Seiko Epson Corp. and Epson America, Inc. (collectively "the Epson Defendants") do not join in any invalidity contentions or charts against claims of the '847 patent, as those are claims which Sony, Canon, and the Epson Defendants are not accused of infringing.

- a *first planar element* having an *upper surface* and a *lower surface*, the first planar element comprising *molded plastic*;

- a *second planar element* having an *upper surface* and a *lower surface*, the first planar element and the second planar element disposed such that a port is formed between the lower surface of the first planar element and the upper surface of the second planar element, the port capable of receiving a memory media card, the second planar element comprising *molded plastic*;

- at least one set of contact pins *protruding from the lower surface* of the first planar element *or the upper surface of the second planar element* such that the at least one set of contact pins are disposed within the port, the at least one set of contact pins capable of contacting a set of memory media card contacts, wherein the at least one set of *contact pins are integrated within the molded plastic* of the first planar element or the second planar element;

- a controller chip to map at least a subset of the at least one set of contact pins to a set of *signal lines* or power lines, *based on an identified type of a memory media card*.

Claim 3:

- *a system connector surface-mounted* thereon, the system connector electrically coupled to the at least one set of contact pins.

Claim 4:

- wherein the system connector is selected from the group comprising of a PCMCIA, USB, *WiFi*, Firewire, IDE, *serial ATA connector*, an IDE, and a CompactFlash connector.

Claim 7:

- having at least 18 contact pins configured to accommodate at least one of a group comprising, an *xD*, MMC/SD, Memory Stick, *miniSD*, *RSMMC*, and *MS Duo*.

Claim 9:

- a *multi-memory media adapter* to read data from a plurality of memory media cards, the multi-memory media adapter having at least one port formed between *an upper portion and a lower portion* of the multi-memory media adapter, the port to receive a memory media card of the plurality of memory media cards;

- a set of contact pins *protruding from the upper portion or the lower portion*, the set of contact pins to contact a set of memory media card contacts, wherein *the set of contact pins are integrated within molded plastic of the upper portion or the lower portion; and*

- a controller *integrated into* the multi-memory media adapter to map at least a subset of the set of contact pins to a set of *signal lines* or power lines, *based on an identified type of the memory media card*.

Claim 11:

- a system connector, the system connector electrically coupled to the set of contact pins.

Claim 12:

- wherein the system connector is selected from the group comprising of a PCMCIA, USB, *WiFi*, Firewire, IDE, *serial ATA connector,* an IDE, and a CompactFlash connector.

Claim 14:

- having at least eighteen contact pins configured to accommodate at least one of a group comprising, an *xD*, MMC/SD, Memory Stick, *miniSD*, *RSMMC*, and *MS Duo*.

Accordingly, claims 1, 3, 4, 7, 9, 11, 12, and 14 of the '443 patent are not entitled to a priority date of July 6, 2000.  Claims 1, 3, 9, and 11 are not entitled to a priority date earlier than September 4, 2002, which is the filing date of U.S. Patent No. 6,859,369/Application No.

10/064,966.  And claims 4, 7, 12, and 14 are not entitled to a priority date earlier than July 8, 2004, which is the filing date of U.S. Patent 7,095,618/Application No. 10/887,635.

Defendants identify the following prior art patents and patent publications that anticipate and/or render obvious the asserted claims of the '443 patent:

| Prior Art Reference | Country of Origin | Date of Issue or Publication[2] |
|---|---|---|
| JP 2001-184462 | Japan | 7/06/2001 |
| U.S. Pat. No. 6,663,007 | U.S.A. | 12/16/2003 |
| EP  1 037 159 | Finland | 9/20/2000 |
| U.S. Pat. No. 6,612,498 | U.S.A. | 9/02/2003 |
| U.S. Pat. No. 5,887,145 | U.S.A. | 3/23/1999 |
| U.S. Pat. No. 6,746,280 | U.S.A. | 6/08/2004 |
| JP H11-15928 Publication | Japan | 1/22/1999 |
| U.S. Pat. App. Pub. No. 2003/0084220 | U.S.A. | 5/01/2003 |
| U.S. Pat. No. 6,247,947 | U.S.A. | 6/19/2001 |
| U.S. Pat. No. 6,857,038 | U.S.A. | 2/15/2005 |
| U.S. Pat. No. 6,524,137 | U.S.A. | 2/25/2003 |
| U.S. Pat. No. 5,799,171 | U.S.A. | 8/25/1998 |
| U.S. Pat. No. 6470284 | U.S.A. | 10/22/2002 |

---

[2]     As indicated, the "date" provided in this and the other tables in Section II(A) of this document is the date required to be identified by Patent Rule 3-3(a).   For example, for patents, "date" refers to the date of issue. For publications, "date" refers to the date of publication.   Nothing in the "date" column is intended to be a limitation on the availability of the particular patent, reference, product or knowledge as "prior art."

| Prior Art Reference | Country of Origin | Date of Issue or Publication[2] |
|---|---|---|
| U.S. Pat. No. 6824063 | U.S.A. | 11/30/2004 |
| U.S. Pat. No. 6,385,677 | U.S.A. | 5/07/2002 |
| U.S. Pat. No. 6,612,492 | U.S.A. | 9/02/2003 |
| U.S. Pat. App. Pub. No. 2003/0095386 | U.S.A. | 5/22/2003 |
| U.S. Pat. No. 6,402,529 | U.S.A. | 6/11/2002 |
| U.S. Pat. No. 6,699,061 | U.S.A. | 3/02/2004 |
| U.S. Pat. App. Pub. No. 2002/065001 | U.S.A. | 8/22/2002 |
| U.S. Pat. No. 6,402,558 | U.S.A. | 6/11/2002 |
| JP 2001-67303 | Japan | 3/16/2001 |
| U.S. Pat. No. 6,352,445 | U.S.A. | 5/31/2001 |
| U.S. Pat. No. 6,062,887 | U.S.A. | 8/31/1998 |
| U.S. Pat. No. 5,320,552 | U.S.A. | 12/9/1991 |
| JP 2001-223044 Publication | Japan | 8/17/2001 |
| U.S. Pat. No. 5,815,426 | U.S.A. | 9/29/1998 |
| U.S. Pat. No. 5,675,628 | U.S.A. | 10/7/1997 |
| U.S. Pat. No. 5,748,720 | U.S.A. | 5/5/1998 |
| JPH06-195524 | Japan | 7/15/1994 |
| JPH10-171744 | Japan | 6/26/1998 |
| JP 2001-135383 | Japan | 5/18/2001 |
| JP 2001-143816 | Japan | 4/30/2001 |

| Prior Art Reference | Country of Origin | Date of Issue or Publication[2] |
|---|---|---|
| U.S. Pat. App. Pub. No. US 2001/0036770 | U.S.A. | 11/1/2001 |
| U.S. Pat. No. 5,667,397 | U.S.A. | 9/16/1997 |

Further, Defendants identify the following prior art non-patent publications that also anticipate and/or render obvious the asserted claims of the '443 patent:

| Prior Art Reference: Author, Title, and Publisher | Date of Publication |
|---|---|
| SD Memory Card Specs: Part 1, Physical Layer Spec v. 0.96 | Jan. 2000 |
| SD Memory Card Specs: Part 1, Physical Layer Spec v. 1.0 | Mar. 2000 |
| Toshiba TC6371AF Controller | 2001 |
| Toshiba TC6374AF Controller | 2001 |
| SIM card GSM 02.17 specification | Nov. 1999 |
| Electronic Packaging and Interconnection Handbook, 2nd Edition, Harper | 1997 |
| Intel PXA250 Controller Datasheet | Feb. 2002 |
| Yamaichi FPS 009-3000 Datasheet | 2001 |
| Yamaichi FRS 001-2000 Datasheet | 2001 |
| Anderson, Don. PCMCIA System Architecture: 16-Bit PC Cards, Second Edition. Mindshare, Inc. | 1995 |
| Electronic Connector Handbook, Mroczkowski | 1998 |

| Prior Art Reference: Author, Title, and Publisher | Date of Publication |
|---|---|
| MMC Specifications | 1999 |
| SD Memory Card Specs: Part 1, Physical Layer Spec v. 0.9 | Sep. 1999 |
| SD Memory Card Simplified Specs: Part 1, Physical Layer Spec v. 0.9 | Oct. 1999 |

The asserted claims of the '443 patent are further invalid as anticipated and/or obvious in view of at least the following items offered for sale, or which were publicly used or known:

| Prior Art Item | On Sale, Offered For Sale, and/or Publicly Available Date | Disclosing Entity |
|---|---|---|
| Fujitsu C2210 multi-memory media adapter | Oct. 2002 | Fujitsu Limited |
| Kingston FCR-U26/1 6-in-1 reader | 3/01/2002 | Kingston Technology Company, Inc. |
| Imation FlashGO! Plus 32 Memory Card Adapter | 10/16/2001 | Imation |
| Dazzle 6-in-1 Universal Reader DM-21200 | 10/01/2001 | SCM Microsystems Inc. |
| Dazzle SD/MMC Reader DM-8300 | Jan. 2002 | SCM Microsystems Inc. |
| Dazzle DM-8400 | Oct. 2001 | SCM Microsystems Inc. |
| Dazzle 3-in-1 Reader/Writer | Oct. 2001 | SCM Microsystems Inc. |

| Prior Art Item | On Sale, Offered For Sale, and/or Publicly Available Date | Disclosing Entity |
|---|---|---|
| Panasonic BN-SD Reader/Writer | 11/09/2000 | Panasonic Corp. |
| Acomdata Multiflash product (2001) | 2001 | DuraMicro Corp. |
| Palm M500 (2001) | 2001 | Palm |
| ARM Primecell Multimedia Card Interface (PL180) | 1998 | ARM Inc. and/or ARM Ltd. |
| Kingston FCR-U2MMC/SD reader | 3/1/2002 | Kingston Technology Company, Inc. |
| OnSpec Products Identified in TPL389798-389900 | *See* TPL389798-389900 | OnSpec Electronics, Inc. |
| SanDisk SecureMate External Drive for MultiMediaCard & Secure Digital (SDDR-33) | Jul. 2001 | SanDisk Corporation |

Moreover, the asserted claims of the '443 patent are invalid under 35 U.S.C. § 102(f) based on the SD Specification. To the extent that Plaintiffs allege that the asserted claims of the '443 patent cover the accused products because they can read and write to SD/MMC cards inserted into a common flash memory connector – which Defendants understand is Plaintiffs' position from their December 3, 2014 Infringement Contentions – this subject matter was derived from the SD Specification. And the features described in the SD Specification were invented by the SD Group, not the inventors of the '443 patent. Indeed, the '638 patent, the earliest filed patent to which the '443 patent attempts to claim priority, identifies the SD Group as the source of SD card and its features. ('638 patent, 2:12-37.) Because the inventors of the '443 patent accessed the SD Specification and because they did not invent the features described in the SD

Specification themselves, the asserted claims of the '443 patent are invalid under 35 U.S.C. § 102(f).

The asserted claims of the '443 patent are also invalid over admitted prior art identified in the background of the '443 patent. The '443 patent, at FIG. 2, identifies a then-standard commercial product. To the extent that Plaintiffs allege that the asserted claims of the '443 patent cover the accused products because they can read and write to SD/MMC cards inserted into a common flash memory connector – which Defendants understand is Plaintiffs' position from their December 3, 2014 Infringement Contentions – this subject matter is present in the admitted prior art identified in the '443 patent. For example, although the Defendants dispute Plaintiffs' interpretation, if the claims' "mapping" elements are to be interpreted to cover handshaking and data transfer by a card reader with MMC and SD cards, the admitted prior art performs this subject matter. Moreover, the inventors of the '443 patent have testified, under oath, that the subject matter that the standard product did not possess, namely contact pins embedded in a molded plastic connector, was commonplace in the late 1990s, long before the '443 patent was filed. The inventors' own testimony demonstrates that the subject matter of the asserted claims of the '443 patent, as Plaintiffs read them for their infringement purposes, is invalid over admitted prior art from their own patents.

## 2. U.S. Patent No. 7,522,424

Plaintiffs identified claims 25, 26, 28, and 29 of the '424 patent as the asserted claims in their December 3, 2014 Infringement Contentions. Plaintiffs allege that these claims are entitled to the benefit of the July 6, 2000 filing date of U.S. Patent No. 6,438,638/Application No. 09/610,904. The '638 patent, however, is directed to very different architectures of passive adapters, as opposed to the active adapter design disclosed and claimed in the '424 patent. The '638 patent provides no support under 35 U.S.C. § 112 for several elements of the asserted claims, including, but not limited to, the following elements:

Claim 25:

- a housing having a port and a surface;

- an interconnection means having a plurality of interconnection pins;

- one or *more sets of contact pins mounted on said surface at locations* adapted to interface with the electrical contacts of a corresponding one of *a plurality of different types of memory media cards when inserted into said port*;

- a set of signal lines connected to said interconnection pins;

- means for identifying the type of memory card inserted into said port;

- means for mapping power, ground or data signals between said interconnection pins and said one or more contact pins depending upon the identification of the type of memory card inserted into said port.

Claim 26:

- the means for mapping comprises a controller.

Claim 28:

- a housing having a port and a surface;

- a *plurality of sets of contact pins mounted on said surface at locations* adapted to interface with the electrical contacts of a corresponding one of a plurality of *different type memory media cards when inserted into said port*;

- a set of signal lines connected to an interconnection means;

- means for identifying the type of memory card inserted into said port;

- means for mapping power, ground or data signals between said interconnection means and said one or more contact pins depending upon the identification of the type of memory card inserted into said port.

Claim 29:

- said means for mapping comprises a controller.

Accordingly, claims 25, 26, 28, and 29 of the '424 patent are not entitled to a priority date of July 6, 2000. Claims 25, 26, 28, and 29 are not entitled to a priority date earlier than September 4, 2002, which is the filing date of U.S. Patent No. 6,859,369/Application No. 10/064,966.

Defendants identify the following prior art patents and patent publications that anticipate and/or render obvious the asserted claims of the '424 patent:

| Prior Art Reference | Country of Origin | Date of Issue or Publication[3] |
|---|---|---|
| JP 2001-184462 | Japan | 7/06/2001 |
| U.S. Pat. No. 6,663,007 | U.S.A. | 12/16/2003 |
| EP 1 037 159 | Finland | 9/20/2000 |
| U.S. Pat. No. 6,612,498 | U.S.A. | 9/02/2003 |
| U.S. Pat. No. 5,887,145 | U.S.A. | 3/23/1999 |
| U.S. Pat. No. 6,746,280 | U.S.A. | 6/08/2004 |
| JP H11-15928 Publication | Japan | 1/22/1999 |
| U.S. Pat. App. Pub. No. 2003/0084220 | U.S.A. | 5/01/2003 |
| U.S. Pat. No. 6,247,947 | U.S.A. | 6/19/2001 |
| U.S. Pat. No. 6,857,038 | U.S.A. | 2/15/2005 |
| U.S. Pat. No. 6,524,137 | U.S.A. | 2/25/2003 |

---

[3] As indicated, the "date" provided in this and the other tables in Section II(A) of this document is the date required to be identified by Patent Rule 3-3(a). For example, for patents, "date" refers to the date of issue. For publications, "date" refers to the date of publication. Nothing in the "date" column is intended to be a limitation on the availability of the particular patent, reference, product or knowledge as "prior art."

| Prior Art Reference | Country of Origin | Date of Issue or Publication[3] |
|---|---|---|
| U.S. Pat. No. 5,799,171 | U.S.A. | 8/25/1998 |
| U.S. Pat. No. 6470284 | U.S.A. | 10/22/2002 |
| U.S. Pat. No. 6824063 | U.S.A. | 11/30/2004 |
| U.S. Pat. No. 6,385,677 | U.S.A. | 5/07/2002 |
| U.S. Pat. No. 6,612,492 | U.S.A. | 9/02/2003 |
| U.S. Pat. App. Pub. No. 2003/0095386 | U.S.A. | 5/22/2003 |
| U.S. Pat. No. 6,402,529 | U.S.A. | 6/11/2002 |
| U.S. Pat. No. 6,699,061 | U.S.A. | 3/02/2004 |
| U.S. Pat. App. Pub. No. 2002/065001 | U.S.A. | 8/22/2002 |
| U.S. Pat. No. 6,402,558 | U.S.A. | 6/11/2002 |
| JP 2001-67303 | Japan | 3/16/2001 |
| U.S. Pat. No. 6,352,445 | U.S.A. | 5/31/2001 |
| U.S. Pat. No. 6,062,887 | U.S.A. | 8/31/1998 |
| U.S. Pat. No. 5,320,552 | U.S.A. | 12/9/1991 |
| JP 2001-223044 Publication | Japan | 8/17/2001 |
| U.S. Pat. No. 5,815,426 | U.S.A. | 9/29/1998 |
| U.S. Pat. No. 5,675,628 | U.S.A. | 10/7/1997 |
| U.S. Pat. No. 5,748,720 | U.S.A. | 5/5/1998 |
| JPH06-195524 | Japan | 7/15/1994 |
| JPH10-171744 | Japan | 6/26/1998 |

| Prior Art Reference | Country of Origin | Date of Issue or Publication[3] |
|---|---|---|
| JP 2001-135383 | Japan | 5/18/2001 |
| JP 2001-143816 | Japan | 4/30/2001 |
| U.S. Pat. App. Pub. No. US 2001/0036770 | U.S.A. | 11/1/2001 |
| U.S. Pat. No. 5,667,397 | U.S.A. | 9/16/1997 |

Further, Defendants identify the following prior art non-patent publications that also anticipate and/or render obvious the asserted claims of the '424 patent:

| Prior Art Reference: Author, Title, and Publisher | Date of Publication |
|---|---|
| SD Memory Card Specs: Part 1, Physical Layer Spec v. 0.96 | Jan. 2000 |
| SD Memory Card Specs: Part 1, Physical Layer Spec v. 1.0 | Mar. 2000 |
| Toshiba TC6371AF Controller | 2001 |
| Toshiba TC6374AF Controller | 2001 |
| SIM card GSM 02.17 specification | Nov. 1999 |
| Electronic Packaging and Interconnection Handbook, 2nd Edition, Harper | 1997 |
| Intel PXA250 Controller Datasheet | Feb. 2002 |
| Yamaichi FPS 009-3000 Datasheet | 2001 |
| Yamaichi FRS 001-2000 Datasheet | 2001 |

| Prior Art Reference: Author, Title, and Publisher | Date of Publication |
|---|---|
| Anderson, Don.  PCMCIA System Architecture: 16-Bit PC Cards, Second Edition.  Mindshare, Inc. | 1995 |
| Electronic Connector Handbook, Mroczkowski | 1998 |
| MMC Specifications | 1999 |
| SD Memory Card Specs: Part 1, Physical Layer Spec v. 0.9 | Sep. 1999 |
| SD Memory Card Simplified Specs: Part 1, Physical Layer Spec v. 0.9 | Oct. 1999 |

The asserted claims of the '424 patent are further invalid as anticipated and/or obvious in view of at least the following items offered for sale, or which were publicly used or known:

| Prior Art Item | On Sale, Offered For Sale, and/or Publicly Available Date | Disclosing Entity |
|---|---|---|
| Fujitsu C2210 multi-memory media adapter | Oct. 2002 | Fujitsu Limited |
| Kingston FCR-U26/1 6-in-1 reader | 3/01/2002 | Kingston Technology Company, Inc. |
| Imation FlashGO! Plus 32 Memory Card Adapter | 10/16/2001 | Imation |
| Dazzle 6-in-1 Universal Reader DM-21200 | 10/01/2001 | SCM Microsystems Inc. |
| Dazzle SD/MMC Reader DM-8300 | Jan. 2002 | SCM Microsystems Inc. |

| Prior Art Item | On Sale, Offered For Sale, and/or Publicly Available Date | Disclosing Entity |
|---|---|---|
| Dazzle DM-8400 | Oct. 2001 | SCM Microsystems Inc. |
| Dazzle 3-in-1 Reader/Writer | Oct. 2001 | SCM Microsystems Inc. |
| Panasonic BN-SD Reader/Writer | 11/09/2000 | Panasonic Corp. |
| Acomdata Multiflash product (2001) | 2001 | DuraMicro Corp. |
| Palm M500 (2001) | 2001 | Palm |
| ARM Primecell Multimedia Card Interface (PL180) | 1998 | ARM Inc. and/or ARM Ltd. |
| Kingston FCR-U2MMC/SD reader | 3/1/2002 | Kingston Technology Company, Inc. |
| OnSpec Products Identified in TPL389798-389900 | *See* TPL389798-389900 | OnSpec Electronics, Inc. |
| SanDisk SecureMate External Drive for MultiMediaCard & Secure Digital (SDDR-33) | Jul. 2001 | SanDisk Corporation |

Moreover, the asserted claims of the '424 patent are invalid under 35 U.S.C. § 102(f) based on the SD Specification. To the extent that Plaintiffs allege that the asserted claims of the '424 patent cover the accused products because they can read and write to SD/MMC cards inserted into a common flash memory connector – which Defendants understand is Plaintiffs' position from their December 3, 2014 Infringement Contentions – this subject matter was derived from the SD Specification. And the features described in the SD Specification were invented by the SD Group, not the inventors of the '424 patent. Indeed, the '638 patent, the earliest filed

patent to which the '424 patent attempts to claim priority, identifies the SD Group as the source of SD card and its features.  ('638 patent, 2:12-37.)  Because the inventors of the '424 patent accessed the SD Specification and because they did not invent the features described in the SD Specification themselves, the asserted claims of the '424 patent are invalid under 35 U.S.C. § 102(f).

The asserted claims of the '424 patent are also invalid over admitted prior art identified in the background of the '424 patent.  The '424 patent, at FIG. 2, identifies a then-standard commercial product.  To the extent that Plaintiffs allege that asserted claims of '424 patent cover the accused products because they can read and write to SD/MMC cards inserted into a common flash memory connector – which Defendants understand is Plaintiffs' position from their December 3, 2014 Infringement Contentions – this subject matter is present in the admitted prior art identified in the '424 patent.  For example, although the Defendants dispute Plaintiffs' interpretation, if the claims' "mapping" elements are to be interpreted to cover handshaking and data transfer by a card reader with MMC and SD cards, the admitted prior art performs this subject matter.

3.      **U.S. Patent No. 7,719,847**

Plaintiffs identified claims 1, 2, and 3 the '847 patent as the asserted claims in their December 3, 2014 Infringement Contentions.  Plaintiffs allege that these claims are entitled to the benefit of the July 6, 2000 filing date of U.S. Patent No. 6,438,638/Application No. 09/610,904.  The '638 patent, however, is directed to very different architectures of passive adapters, as opposed to the active adapter design disclosed and claimed in the '847 patent.  The '638 patent provides no support under 35 U.S.C. § 112 for several elements of the asserted claims, including, but not limited to, the following elements:

Claim 1:

- a housing having a port and a surface;

- a plurality of sets of contact pins mounted on said surface at locations adapted to interface with the electrical contacts of a plurality of different type memory media cards when inserted into said port;

- a set of signal lines connected to a controller, the number of signal lines being fewer than the number of contact pins;

- said interconnection means being located between the signal lines and the plurality of sets of contact connecting said signal lines to said one or more contact pins;

- means for mapping power, ground or data signals between said signal lines and said contact pins depending upon the identification of the type of memory card inserted into said port;

- wherein the means for mapping comprises a controller.

Claim 2:

- where said controller comprises means for determining the type of memory card inserted into said port.

Claim 3:

- wherein said interconnection means is selected from a group consisting of simple wires, flat cables, printed circuit board interconnections, or wiring traces.

Accordingly, claims 1, 2, and 3 of the '847 patent are not entitled to a priority date of July 6, 2000. Claims 1, 2, and 3 are not entitled to a priority date earlier than September 4, 2002, which is the filing date of U.S. Patent No. 6,859,369/Application No. 10/064,966.

Defendants identify the following prior art patents and patent publications that anticipate and/or render obvious the asserted claims of the '847 patent:

| Prior Art Reference | Country of Origin | Date of Issue or Publication[4] |
|---|---|---|
| JP 2001-184462 | Japan | 7/06/2001 |
| U.S. Pat. No. 6,663,007 | U.S.A. | 12/16/2003 |
| EP 1 037 159 | Finland | 9/20/2000 |
| U.S. Pat. No. 6,612,498 | U.S.A. | 9/02/2003 |
| U.S. Pat. No. 5,887,145 | U.S.A. | 3/23/1999 |
| U.S. Pat. No. 6,746,280 | U.S.A. | 6/08/2004 |
| JP H11-15928 Publication | Japan | 1/22/1999 |
| U.S. Pat. App. Pub. No. 2003/0084220 | U.S.A. | 5/01/2003 |
| U.S. Pat. No. 6,247,947 | U.S.A. | 6/19/2001 |
| U.S. Pat. No. 6,857,038 | U.S.A. | 2/15/2005 |
| U.S. Pat. No. 6,524,137 | U.S.A. | 2/25/2003 |
| U.S. Pat. No. 5,799,171 | U.S.A. | 8/25/1998 |
| U.S. Pat. No. 6470284 | U.S.A. | 10/22/2002 |
| U.S. Pat. No. 6824063 | U.S.A. | 11/30/2004 |
| U.S. Pat. No. 6,385,677 | U.S.A. | 5/07/2002 |
| U.S. Pat. No. 6,612,492 | U.S.A. | 9/02/2003 |
| U.S. Pat. App. Pub. No. 2003/0095386 | U.S.A. | 5/22/2003 |

---

[4]     As indicated, the "date" provided in this and the other tables in Section II(A) of this document is the date required to be identified by Patent Rule 3-3(a).   For example, for patents, "date" refers to the date of issue. For publications, "date" refers to the date of publication.   Nothing in the "date" column is intended to be a limitation on the availability of the particular patent, reference, product or knowledge as "prior art."

| Prior Art Reference | Country of Origin | Date of Issue or Publication[4] |
|---|---|---|
| U.S. Pat. No. 6,402,529 | U.S.A. | 6/11/2002 |
| U.S. Pat. No. 6,699,061 | U.S.A. | 3/02/2004 |
| U.S. Pat. App. Pub. No. 2002/065001 | U.S.A. | 8/22/2002 |
| U.S. Pat. No. 6,402,558 | U.S.A. | 6/11/2002 |
| JP 2001-67303 | Japan | 3/16/2001 |

| Prior Art Reference | Country of Origin | Date of Issue or Publication[5] |
|---|---|---|
| U.S. Pat. No. 6,352,445 | U.S.A. | 5/31/2001 |
| U.S. Pat. No. 6,062,887 | U.S.A. | 8/31/1998 |
| U.S. Pat. No. 5,320,552 | U.S.A. | 12/9/1991 |
| JP 2001-223044 Publication | Japan | 8/17/2001 |
| U.S. Pat. No. 5,815,426 | U.S.A. | 9/29/1998 |
| U.S. Pat. No. 5,675,628 | U.S.A. | 10/7/1997 |
| U.S. Pat. No. 5,748,720 | U.S.A. | 5/5/1998 |
| JPH06-195524 | Japan | 7/15/1994 |
| JPH10-171744 | Japan | 6/26/1998 |

---

[5]     As indicated, the "date" provided in this and the other tables in Section II(A) of this document is the date required to be identified by Patent Rule 3-3(a).    For example, for patents, "date" refers to the date of issue. For publications, "date" refers to the date of publication.    Nothing in the "date" column is intended to be a limitation on the availability of the particular patent, reference, product or knowledge as "prior art."

| Prior Art Reference | Country of Origin | Date of Issue or Publication[5] |
|---|---|---|
| JP 2001-135383 | Japan | 5/18/2001 |
| JP 2001-143816 | Japan | 4/30/2001 |
| U.S. Pat. App. Pub. No. US 2001/0036770 | U.S.A. | 11/1/2001 |
| U.S. Pat. No. 5,667,397 | U.S.A. | 9/16/1997 |

Further, Defendants identify the following prior art non-patent publications that also anticipate and/or render obvious the asserted claims of the '847 patent:

| Prior Art Reference: Author, Title, and Publisher | Date of Publication |
|---|---|
| SD Memory Card Specs: Part 1, Physical Layer Spec v. 0.96 | Jan. 2000 |
| SD Memory Card Specs: Part 1, Physical Layer Spec v. 1.0 | Mar. 2000 |
| Toshiba TC6371AF Controller | 2001 |
| Toshiba TC6374AF Controller | 2001 |
| SIM card GSM 02.17 specification | Nov. 1999 |
| Electronic Packaging and Interconnection Handbook, 2nd Edition, Harper | 1997 |
| Intel PXA250 Controller Datasheet | Feb. 2002 |
| Yamaichi FPS 009-3000 Datasheet | 2001 |
| Yamaichi FRS 001-2000 Datasheet | 2001 |
| Anderson, Don.  PCMCIA System Architecture: 16-Bit PC Cards, | 1995 |

| | |
|---|---|
| Second Edition.  Mindshare, Inc. | |
| Electronic Connector Handbook, Mroczkowski | 1998 |
| MMC Specifications | 1999 |
| SD Memory Card Specs: Part 1, Physical Layer Spec v. 0.9 | Sep. 1999 |
| SD Memory Card Simplified Specs: Part 1, Physical Layer Spec v. 0.9 | Oct. 1999 |

The asserted claims of the '847 patent are further invalid as anticipated and/or obvious in view of at least the following items offered for sale, or which were publicly used or known:

| Prior Art Item | On Sale, Offered For Sale, and/or Publicly Available Date | Disclosing Entity |
|---|---|---|
| Fujitsu C2210 multi-memory media adapter | Oct. 2002 | Fujitsu Limited |
| Kingston FCR-U26/1 6-in-1 reader | 3/01/2002 | Kingston Technology Company, Inc. |
| Imation FlashGO! Plus 32 Memory Card Adapter | 10/16/2001 | Imation |
| Dazzle 6-in-1 Universal Reader DM-21200 | 10/01/2001 | SCM Microsystems Inc. |
| Dazzle SD/MMC Reader DM-8300 | Jan. 2002 | SCM Microsystems Inc. |
| Dazzle DM-8400 | Oct. 2001 | SCM Microsystems Inc. |
| Dazzle 3-in-1 Reader/Writer | Oct. 2001 | SCM Microsystems Inc. |
| Panasonic BN-SD Reader/Writer | 11/09/2000 | Panasonic Corp. |

| | | |
|---|---|---|
| Acomdata Multiflash product (2001) | 2001 | DuraMicro Corp. |
| Palm M500 (2001) | 2001 | Palm |
| ARM Primecell Multimedia Card Interface (PL180) | 1998 | ARM Inc. and/or ARM Ltd. |
| Kingston FCR-U2MMC/SD reader | 3/1/2002 | Kingston Technology Company, Inc. |
| OnSpec Products Identified in TPL389798-389900 | *See* TPL389798-389900 | OnSpec Electronics, Inc. |
| SanDisk SecureMate External Drive for MultiMediaCard & Secure Digital (SDDR-33) | Jul. 2001 | SanDisk Corporation |

Moreover, the asserted claims of the '847 patent are invalid under 35 U.S.C. § 102(f) based on the SD Specification.  To the extent that Plaintiffs allege that the asserted claims of the '847 patent cover the accused products because they can read and write to SD/MMC cards inserted into a common flash memory connector – which Defendants understand is Plaintiffs' position from their December 3, 2014 Infringement Contentions – this subject matter was derived from the SD Specification.  And the features described in the SD Specification were invented by the SD Group, not the inventors of the '847 patent.  Indeed, the '638 patent, the earliest filed patent to which the '847 patent attempts to claim priority, identifies the SD Group as the source of SD card and its features.  ('638 patent, 2:12-37.)  Because the inventors of the '847 patent accessed the SD Specification and because they did not invent the features described in the SD Specification themselves, the asserted claims of the '847 patent are invalid under 35 U.S.C. § 102(f).

The asserted claims of the '847 patent are also invalid over admitted prior art identified in the background of the '847 patent.  The '847 patent, at FIG. 2, identifies a then-standard commercial product.  To the extent that Plaintiffs allege that asserted claims of '847 patent cover

1
2
3
4
5
6
7
8
9
10

the accused products because they can read and write to SD/MMC cards inserted into a common

flash memory connector – which Defendants understand is Plaintiffs' position from their

December 3, 2014 Infringement Contentions – this subject matter is present in the admitted prior

art identified in the '847 patent.  For example, although the Defendants dispute Plaintiffs'

interpretation, if the claims' "mapping" elements are to be interpreted to cover handshaking and

data transfer by a card reader with MMC and SD cards, the admitted prior art standard product

performs this subject matter.  Moreover, standard products provided fewer signal lines than

interconnection pins because prevailing standards documents identified that power and ground

supplies each would be provided to cards via multiple contact pins that would be electrically

shorted together.

11

### B.    Patent L.R. 3-3(b)  Disclosures[6]

12
13
14
15
16
17
18
19
20
21
22
23
24
25

With respect to Patent Rule 3-3(b), Exhibits 443-1 to 443-33, 424-1 to 424-33, and 847-1

to 847-33 specifically identify prior art that anticipates each asserted claim or renders it obvious.

Those exhibits also list various combinations of prior art that render the asserted claims invalid as

obvious and are hereby incorporated by reference.   In addition to the references specifically

identified in these Exhibits, Defendants reserve the right to rely on admissions in the asserted

patents, their file wrappers, and any related patents or applications regarding the prior art.

Defendants further reserve the right to rely on any of the patents or publications deriving from

applications in the claimed priority chain of each asserted patent.  Defendants may also rely on

expert testimony, and any additional prior art located or developed during the course of

discovery.  Defendants further note that they may rely on any of the Background sections (e.g.,

"Background of the Invention") in any of the cited prior art references in the Patent Rule 3-3(a)

disclosures above to demonstrate a motivation to combine.  Defendants may also rely on any U.S.

or foreign equivalents of any of the patent or patent publication prior art references identified

above in Section II.A.

26
27
28

---

[6]    Any and all citations in the text of Defendants' Invalidity Contentions are exemplary and in no way limiting.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants' discussion of the references that anticipate or render the asserted claims obvious is preliminary.  Defendants reserve their rights to amend these contentions based upon discovery not yet taken, Plaintiffs' claim construction positions, Plaintiffs' rebuttals to Defendants' Section 112 invalidity positions and/or any claim construction order of this Court. Nothing in these Patent Rule 3-3(b) disclosures should be construed as an admission that any claim complies with the requirements of 35 U.S.C. § 112, ¶ 2.

Additionally, Defendants identify the below exemplary discussion regarding references that anticipate the asserted claims and/or render those claims obvious.  Nothing in that discussion should be construed as an admission that any particular prior art reference is missing any limitation required by an asserted claim.

### 1.   **U.S. Patent No. 7,295,443**

The limitations of each of the asserted claims of the '443 patent are disclosed in and taught by the prior art references as set forth in Exhibits 443-1 to 443-33.  The asserted claims are each anticipated (and/or rendered obvious) by the art as set forth in those Exhibits.

To the extent any of the asserted claims of the '443 patent are not anticipated by the prior art listed above, that prior art, either alone or in combination with any of the other references listed in Section II.A and/or the general knowledge of those of skill in the art, render those claims obvious pursuant to 35 U.S.C. § 103(a).  In other words, to the extent that any particular prior art reference is found not to disclose a particular claim limitation, that reference may be combined with any of the other prior art references disclosed as possessing that claim limitation to render the asserted claim obvious.  Exemplary combinations are shown in Exhibits 443-1 to 443-33.

Moreover, the asserted claims of the '443 patent are, at best, directed to obvious combinations of old and familiar elements or component parts, each performing the same function it has long been known to perform, which yields nothing more than predictable results.  Put another way, the claimed subject matter is obvious because it is nothing more than (i) combinations of prior art elements according to known methods to yield predictable results, (ii) simple substitutions of one known element for another to yield predictable results, (iii)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

applications of known techniques to known devices ready for improvement to yield predictable results, and/or (iv) obvious to try.  One of skill in the art would have been motivated to either modify the prior art identified in Section II.A or to combine that prior art in the manner indicated, by, for example, their background knowledge, design incentives, effects of demands known to the design community, or other market forces, in particular the desire and need for more efficient memory card readers.  Further, the prior art discussed in this section all relates to the same general field (memory card readers) and addresses a similar problem (reading different types of memory cards).  This would have further motivated one of skill in the art to combine those references.  In view of the simplicity of the claimed subject matter and its use of well-known components with recognized benefits, the common sense of those skilled in the art also would have served as a motivation to combine any of the identified references and demonstrates that the asserted claims of the '443 patent would be obvious.

As shown in Exhibits 443-1 to 443-33, all of the elements of the asserted claims in the '443 patent were well known to persons of skill before the alleged invention of the '443 patent and before the patent application was filed.  Therefore, if any of the primary prior art references are determined not to include, disclose, or render obvious any element of any asserted claim, it would have been obvious to combine that reference with one or more of the other references from Section II.A that disclose the allegedly missing element.  By way of non-limiting examples only, the prior art is replete with disclosures of:

Multi-memory media adapter — It would have been obvious to a person of ordinary skill in the art seeking an adapter for multiple types of media cards to seek an adapter compatible with already-available memory cards, including a SIM card.  The fact that a SIM card is a type of memory media card is taught by a number of prior art references, including at least the '628 Patent (*see, e.g.,* 5:39-44 and Fig. 2, referring to a SIM card as "a memory card or memory module"), the '720 Patent (*see, e.g.,* 5:46-55, 6:1-6, and Fig. 2, describing "an electrically alterable memory location" in a SIM card and referring to a SIM card as a "memory card or memory module"), the '426 Patent (*see, e.g.,* 4:23-53 and Fig. 2, describing a SIM card as a "low

memory capacity card format"), and the GSM 02.17 Standard (*see, e.g.,* Section 6.1 at pp. 10-11, listing the "mandatory storage" requirements for a SIM card). These combinations would have been obvious to a person or ordinary skill at least because (1) the references are in the same field; (2) the references show that a SIM card is a memory card; (3) such a combination would be a trivial modification capable of being implemented as a mere workshop improvement; and (4) such a combination would yield predictable and expected results.

Molded plastic housings – It would have been obvious to a person of ordinary skill in the art to use industry-standard plastic housings with protruding contact pins as taught by, for example, the '044 Publication at ¶¶ 25-27, the SD Specifications at pp. 112-113, the '498 Patent (*see, e.g.,* at 6:21-32, 11:51-67 and Figs. 2a2, 2b and 9), the '947 Patent (*see, e.g.,* at 2:10-40 and Figs. 1 and 4), the '061 Patent (*see, e.g.,* at 3:61-64 and Figs. 1 and 3), the '492 Patent (*see, e.g.,* at 2:41-55, 2:56-3:19 and Fig. 3), the '529 Patent (*see, e.g.,* at 5:7-15, 5:34-52 and Fig. 5) or the Interconnection Handbook (at p. 3.25). These combinations would have been obvious to a person or ordinary skill at least because (1) the references are in the same field; (2) the references show housings for similar memory cards; (3) such a combination would be a trivial modification capable of being implemented as a mere workshop improvement; and (4) such a combination would yield predictable and expected results.

System connectors – It would have been obvious to a person of ordinary skill in the art to use industry-standard system connectors as taught by, for example, '928 Publication, the '492 Patent, the '677 Patent, the '386 Publication, the Toshiba TC6374AF controller datasheet, or the Intel PXA250 controller datasheet. These combinations would have been obvious to a person or ordinary skill at least because (1) the references are in the same field; (2) the references show housings for similar memory cards; (3) such a combination would be a trivial modification capable of being implemented as a mere workshop improvement; and (4) such a combination would yield predictable and expected results.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2. **U.S. Patent No. 7,522,424**

The limitations of each of the asserted claims of the '424 patent are disclosed in and taught by the prior art references as set forth in Exhibits 424-1 to 424-33. The asserted claims are each anticipated (and/or rendered obvious) by the art as set forth in those Exhibits.

To the extent any of the asserted claims of the '424 patent are not anticipated by the prior art listed above, that prior art, either alone or in combination with any of the other references listed in Section II.A and/or the general knowledge of those of skill in the art, render those claims obvious pursuant to 35 U.S.C. § 103(a). In other words, to the extent that any particular prior art reference is found not to disclose a particular claim limitation, that reference may be combined with any of the other prior art references disclosed as possessing that claim limitation to render the asserted claim obvious. Exemplary combinations are shown in Exhibits 424-1 to 424-33.

Moreover, the asserted claims of the '424 patent, at best, are directed to obvious combinations of old and familiar elements or component parts, each performing the same function it has long been known to perform, which yield nothing more than predictable results. Put another way, the claimed subject matter is obvious because it is nothing more than (i) combinations of prior art elements according to known methods to yield predictable results, (ii) simple substitutions of one known element for another to yield predictable results, (iii) applications of known techniques to known devices ready for improvement to yield predictable results, and/or (iv) obvious to try. One of skill in the art would have been motivated to either modify the prior art identified in Section II.A or to combine that prior art in the manner indicated, by, for example, their background knowledge, design incentives, effects of demands known to the design community, or other market forces, in particular the desire and need for more efficient memory card readers. Further, the prior art discussed in this section all relates to the same general field (memory card readers) and addresses a similar problem (reading different types of memory cards). This would have further motivated one of skill in the art to combine those references. In view of the simplicity of the claimed subject matter and its use of well-known components with recognized benefits, the common sense of those skilled in the art also would have served as a

motivation to combine any of the identified references and demonstrates that the asserted claims of the '424 patent would be obvious.

As shown in Exhibits 424-1 to 424-33, all of the elements of the asserted claims in the '424 patent were well known to persons of skill before the alleged invention of the '424 patent and before the patent application was filed. Therefore, if any of the primary prior art references are determined not to include, disclose, or render obvious any element of any asserted claim, it would have been obvious to combine that reference with one or more of the other references from Section II.A that disclose the allegedly missing element. By way of non-limiting examples only, the prior art is replete with disclosures of:

Plurality of different types of memory media cards — It would have been obvious to a person of ordinary skill in the art seeking an adapter for multiple types of media cards to seek an adapter compatible with already-available memory cards, including a SIM card. The fact that a SIM card is a type of memory media card is taught by a number of prior art references, including at least the '628 Patent (*see, e.g.*, 5:39-44 and Fig. 2, referring to a SIM card as "a memory card or memory module"), the '720 Patent (*see, e.g.*, 5:46-55, 6:1-6, and Fig. 2, describing "an electrically alterable memory location" in a SIM card and referring to a SIM card as a "memory card or memory module"), the '426 Patent (*see, e.g.*, 4:23-53 and Fig. 2, describing a SIM card as a "low memory capacity card format"), and the GSM 02.17 Standard (*see, e.g.*, Section 6.1 at pp. 10-11, listing the "mandatory storage" requirements for a SIM card). These combinations would have been obvious to a person or ordinary skill at least because (1) the references are in the same field; (2) the references show that a SIM card is a memory card; (3) such a combination would be a trivial modification capable of being implemented as a mere workshop improvement; and (4) such a combination would yield predictable and expected results.

Plurality of sets of contact pins – It would have been obvious to a person of ordinary skill in the art to use a housing with a plurality of sets of contact pins on a surface as taught by, for example, Admitted Prior Art (*see, e.g.,* at FIGS. 1-2), the '159 Patent (*see, e.g.,* at FIGS 2a2 and 2b, paragraphs 15 and 35), the '044 Publication (*see, e.g.,* at FIGS. 5-6), the '280 Patent (*see, e.g.,*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

at FIGS. 5-8), '928 Publication (*see, e.g.,* at FIGS. 1-5), or the '007 Patent (*see, e.g.,* at FIGS. 2-3). These combinations would have been obvious to a person or ordinary skill at least because (1) the references are in the same field; (2) the references show housings for similar memory cards; (3) such a combination would be a trivial modification capable of being implemented as a mere workshop improvement; and (4) such a combination would yield predictable and expected results.

### 3. **U.S. Patent No. 7,719,847**

The limitations of each of the asserted claims of the '847 patent are disclosed in and taught by the prior art references as set forth in Exhibits 847-1 to 847-33. The asserted claims are each anticipated (and/or rendered obvious) by the art as set forth in those Exhibits.

To the extent any of the asserted claims of the '847 patent are not anticipated by the prior art listed above, that prior art, either alone or in combination with any of the other references listed in Section II.A and/or the general knowledge of those of skill in the art, render those claims obvious pursuant to 35 U.S.C. § 103(a). In other words, to the extent that any particular prior art reference is found not to disclose a particular claim limitation, that reference may be combined with any of the other prior art references disclosed as possessing that claim limitation to render the asserted claim obvious. Exemplary combinations are shown in Exhibits 847-1 to 847-33.

Moreover, the asserted claims of the '847 patent, at best, are directed to obvious combinations of old and familiar elements or component parts, each performing the same function it has long been known to perform, which yield nothing more than predictable results. Put another way, the claimed subject matter is obvious because it is nothing more than (i) combinations of prior art elements according to known methods to yield predictable results, (ii) simple substitutions of one known element for another to yield predictable results, (iii) applications of known techniques to known devices ready for improvement to yield predictable results, and/or (iv) obvious to try. One of skill in the art would have been motivated to either modify the prior art identified in Section II.A or to combine that prior art in the manner indicated, by, for example, their background knowledge, design incentives, effects of demands known to the design community, or other market forces, in particular the desire and need for more efficient

---

memory card readers.  Further, the prior art discussed in this section all relates to the same general field (memory card readers) and addresses a similar problem (reading different types of memory cards).  This would have further motivated one of skill in the art to combine those references.  In view of the simplicity of the claimed subject matter and its use of well-known components with recognized benefits, the common sense of those skilled in the art also would have served as a motivation to combine any of the identified references and demonstrates that the asserted claims of the '847 patent would be obvious.

As shown in Exhibits 847-1 to 847-33, all of the elements of the asserted claims in the '847 patent were well known to persons of skill before the alleged invention of the '847 patent and before the patent application was filed.  Therefore, if any of the primary prior art references are determined not to include, disclose, or render obvious any element of any asserted claim, it would have been obvious to combine that reference with one or more of the other references from Section II.A that disclose the allegedly missing element.  By way of non-limiting examples only, the prior art is replete with disclosures of:

Plurality of different types of memory media cards — It would have been obvious to a person of ordinary skill in the art seeking an adapter for multiple types of media cards to seek an adapter compatible with already-available memory cards, including a SIM card.  The fact that a SIM card is a type of memory media card is taught by a number of prior art references, including at least the '628 Patent (*see, e.g.,* 5:39-44 and Fig. 2, referring to a SIM card as "a memory card or memory module"), the '720 Patent (*see, e.g.*, 5:46-55, 6:1-6, and Fig. 2, describing "an electrically alterable memory location" in a SIM card and referring to a SIM card as a "memory card or memory module"), the '426 Patent (*see, e.g.*, 4:23-53 and Fig. 2, describing a SIM card as a "low memory capacity card format"), and the GSM 02.17 Standard (*see, e.g.,* Section 6.1 at pp. 10-11, listing the "mandatory storage" requirements for a SIM card).  These combinations would have been obvious to a person or ordinary skill at least because (1) the references are in the same field; (2) the references show that a SIM card is a memory card; (3) such a combination would be

1

2

a trivial modification capable of being implemented as a mere workshop improvement; and (4) such a combination would yield predictable and expected results.

3

4

5

6

7

8

9

10

11

Plurality of sets of contact pins – It would have been obvious to a person of ordinary skill in the art to use a housing with a plurality of sets of contact pins on a surface as taught by, for example, Admitted Prior Art (*see, e.g.,* at FIGS. 1-2), the '159 Patent (*see, e.g.,* at FIGS 2a2 and 2b, paragraphs 15 and 35), the '044 Publication (*see, e.g.,* at FIGS. 5-6), the '280 Patent (*see, e.g.,* at FIGS. 5-8), '928 Publication (*see, e.g.,* at FIGS. 1-5), or the '007 Patent (*see, e.g.,* at FIGS. 2-3). These combinations would have been obvious to a person or ordinary skill at least because (1) the references are in the same field; (2) the references show housings for similar memory cards; (3) such a combination would be a trivial modification capable of being implemented as a mere workshop improvement; and (4) such a combination would yield predictable and expected results.

12

### C.    Patent L.R. 3-3(c) Disclosures

13

14

15

16

17

18

19

20

21

22

23

24

Exhibits 443-1 to 443-33, 424-1 to 424-33, and 847-1 to 847-33 hereto identify exemplary locations in the prior art where each element of each asserted claim of the '443, '424, and '847 patents can be found. Those exhibits are hereby incorporated by reference. While Defendants have identified at least one citation per element for each charted reference, Defendants have not identified each and every disclosure of the same element in the same reference. In an effort to focus the issues, Defendants have cited exemplary relevant portions of references, although references may contain additional disclosures for a particular asserted claim element or limitation. Defendants reserve all rights to rely upon other portions of the identified references to support their claims and/or defenses. Persons of ordinary skill in the art generally read a prior art reference as a whole and in the context of other publications and literature. Defendants may rely upon uncited portions and on other publications and expert testimony to provide context and as aids to understanding and interpreting the portions of the prior art references that are cited.

25

26

27

Defendants may also rely upon uncited portions of the prior art references, other publications, admissions in the patents-in-suit and their file histories, and the testimony of experts. Where Defendants cite to a particular figure in a prior art reference, the citation should

28

be understood to encompass the caption and description of the figure and any text relating to the figure in addition to the figure itself.  Likewise, where a cited portion of text refers to a figure, the citation should be understood to include the figure as well.

Additionally, as noted above, Exhibits 443-1 to 443-33, 424-1 to 424-33, and 847-1 to 847-33 identify various combinations of the prior art that render the asserted claims of the '443, '424, and '847 patents invalid as obvious.

### D.   Patent L.R. 3-3(d) Disclosures

#### 1.   U.S. Patent No. 7,295,443

All asserted claims of the '443 patent are invalid pursuant to 35 U.S.C. 112, ¶ 1, because at least the following claim limitations are not supported by an adequate written description and/or are not enabled by the specification:

- "a controller chip to map at least a subset of the at least one set of contact pins to a set of signal lines or power lines, based on an identified type of a memory media card" (claims 1, 3, 4, and 7); and

- "a controller integrated into the multi-memory media adapter to map at least a subset of the set of contact pins to a set of signal lines or power lines, based on an identified type of the memory media card" (claims 9, 11, 12, and 14).

The '443 patent provides no disclosure of how line-to-contact pin mapping might be accomplished "based on an identified type of a memory card."  For example, the specification does not teach one of ordinary skill how to make or use a controller to perform the pin mappings illustrated in FIG. 4 and FIG. 5.  *See, e.g.,* the '443 Patent at Fig. 4 ("table of pin mappings for the SmartMedia, MMC/SD, and Memory Stick to a 21-pin connector") and Fig. 5 ("table of pin mappings for the xD, standard MMC/SD, standard Memory Stick, SmartMedia, miniSD, RSMMC, and MS Duo to an 18-pin connector"); *see also* 5:52-62 and 6:25-28.  As a result, the above-identified claim limitations are neither described nor enabled by the '443 patent's specification, and thus the claims are invalid under 35 U.S.C. 112, ¶ 1.

1

2

3

4

5

6

7

8

9

10

11

12

The Court construed "controller" to possibly include a programmable controller or a non-programmable controller. D.I. 334 at p. 15 (citing Plaintiff's expert for the proposition that the recited functions could be performed by "a computer-less, microprocessor-less integrated circuit or chip"). With respect to a non-programmable controller, the '443 patent has no disclosure teaching one of ordinary skill how to make or use a non-programmable controller to "map" the signals depending upon identification of the type of memory card inserted, as required by the claim language. With respect to a programmable controller, the '443 patent also has no disclosure describing programming or any algorithm that would teach one of skill in the art how to make or use a programmable controller to "map" the signals depending upon identification of the type of memory card inserted, as required by the claim language. As a result, the above-identified claim limitations are neither described nor enabled by the '443 patent's specification, and thus the claims are invalid under 35 U.S.C. 112, ¶ 1.

13

14

15

16

17

18

19

20

21

To the extent that Plaintiffs allege that asserted claims of the '443 patent cover the accused products because they can read and write to SD/MMC cards inserted into a common flash memory connector – which Defendants understand is Plaintiffs' position from their December 3, 2014 Infringement Contentions – the asserted claims are invalid pursuant to 35 U.S.C. 112, ¶ 1, because this subject matter is not supported by an adequate written description and/or are not enabled by the specification.  The specification does not differentiate between SD and MMC cards, and the specification does not teach how to operate SD and MMC cards differently.  Therefore, the specification of '443 patent does not show possession of this subject matter, nor does the specification of '443 patent enable this subject matter.

22

### 2.    U.S. Patent No. 7,522,424

23

24

25

All asserted claims of the '424 patent are invalid pursuant to 35 U.S.C. 112, ¶ 1, because at least the following claim limitations are not supported by an adequate written description and/or are not enabled by the specification:

26

27

- "means for identifying the type of memory card inserted into said port" (claims 25, 26, 28, and 29);

28

- "means for mapping power, ground or data signals between said interconnection pins and said one or more contact pins depending upon the identification of the type of memory card inserted into said port" (claims 25 and 26); and

- "means for mapping power, ground or data signals between said interconnection means and said one or more contact pins depending upon the identification of the type of memory card inserted into said port" (claims 28 and 29).

The '424 patent provides no disclosure of how line-to-contact pin mapping might be accomplished "based on an identified type of a memory card." For example, the specification does not teach one of ordinary skill how to make or use a "means for mapping" to perform the pin mappings illustrated in FIG. 4 and FIG. 5. *See, e.g.,* the '424 Patent at Fig. 4 ("table of pin mappings for the SmartMedia, MMC/SD, and Memory Stick to a 21-pin connector") and Fig. 5 ("table of pin mappings for the xD, standard MMC/SD, standard Memory Stick, SmartMedia, miniSD, RSMMC, and MS Duo to an 18-pin connector"); *see also* 5:55-64 and 6:32-35. As a result, the above-identified claim limitations are neither described nor enabled by the '424 patent's specification, and thus the claims are invalid under 35 U.S.C. 112, ¶ 1.

For the "means for mapping" elements, the Court construed the corresponding structure to be "a controller," which possibly can include a programmable controller or a non-programmable controller. D.I. 334 at p. 15 (citing Plaintiff's expert for the proposition that the recited functions could be performed by "a computer-less, microprocessor-less integrated circuit or chip"). With respect to a non-programmable controller, the '424 patent has no disclosure teaching one of ordinary skill how to make or use a non-programmable controller to "map" the signals depending upon identification of the type of memory card inserted, as required by the claim language. With respect to a programmable controller, the '424 patent also has no disclosure describing programming or any algorithm that would teach one of skill in the art how to make or use a programmable controller to "map" the signals depending upon identification of the type of memory card inserted, as required by the claim language. As a result, the above-identified claim

limitations are neither described nor enabled by the '424 patent's specification, and thus the claims are invalid under 35 U.S.C. 112, ¶ 1.

All asserted claims of the '424 patent are invalid as indefinite under 35 U.S.C. 112, ¶¶ 2 and 6, because the patent fails to disclose the structure for the following means-plus-function limitations:

- "means for identifying the type of memory card inserted into said port" (claims 25, 26, 28, and 29);
- "means for mapping power, ground or data signals between said interconnection pins and said one or more contact pins depending upon the identification of the type of memory card inserted into said port" (claims 25 and 26); and
- "means for mapping power, ground or data signals between said interconnection means and said one or more contact pins depending upon the identification of the type of memory card inserted into said port" (claims 28 and 29).

Further, to the extent that Plaintiffs allege that the corresponding structure may be a controller—which Defendants understand is Plaintiffs' position from their December 3, 2014 Infringement Contentions With respect to the "means for mapping" elements, Tthe Court has construed the corresponding structure to be "a controller."  —tThe '424 patent has no disclosure describing programming or any algorithm that would teach one of skill in the art how to use the controller to map the signals depending upon identification of the type of memory card inserted, as required by the claim language.

To the extent that Plaintiffs allege that asserted claims of '424 patent cover the accused products because they can read and write to SD/MMC cards inserted into a common flash memory connector – which Defendants understand is Plaintiffs' position from their December 3, 2014 Infringement Contentions – the asserted claims are invalid pursuant to 35 U.S.C. 112, ¶ 1, because this subject matter is not supported by an adequate written description and/or are not enabled by the specification.  The Court construed "means for identifying" as a means-plus-function element and construed the corresponding structure as "a controller and card detect lines."

D.I. 334 at p. 21. The specification does not differentiate between SD and MMC cards and does not teach how to distinguish between SD and MMC cards using "a controller and card detect lines." , andFurther, the specification does not teach how to operate SD and MMC cards differently.  Therefore, the specification of '424 patent does not show possession of this subject matter, nor does the specification of '424 patent enable this subject matter.

The asserted claims of the '424 patent are also invalid under 35 U.S.C. § 112, ¶ 1, because the "means for identifying the type of card inserted into said port" element does not find support in the originally filed '424 specification.  Instead, to the extent there is any support for this limitation in the '424 specification, it is material that was newly added by amendment during the prosecution of the '424 patent.  Accordingly, because this claim relies on new mater for written description, it is invalid for a lack of written description.

3.    **U.S. Patent No. 7,719,847**

All asserted claims of the '847 patent are invalid pursuant to 35 U.S.C. 112, ¶ 1, because at least the limitation "means for mapping power, ground or data signals between said signal lines and said contact pins depending upon the identification of the type of memory card inserted into said port" is not supported by an adequate written description and/or are not enabled by the specification.  The '847 patent provides no disclosure of how line-to-contact pin mapping might be accomplished "based on an identified type of a memory card."  For example, the specification does not teach one of ordinary skill how to make or use a "means for mapping" to perform the pin mappings illustrated in FIG. 4 and FIG. 5.  *See, e.g.,* the '847 Patent at Fig. 4 ("table of pin mappings for the SmartMedia, MMC/SD, and Memory Stick to a 21-pin connector") and Fig. 5 ("table of pin mappings for the xD, standard MMC/SD, standard Memory Stick, SmartMedia, miniSD, RSMMC, and MS Duo to an 18-pin connector"); *see also* 5:43-59 and 6:19-24.  As a result, the above-identified claim limitations are neither described nor enabled by the '847 patent's specification, and thus the claims are invalid under 35 U.S.C. 112, ¶ 1.

For the "means for mapping" element, the Court construed the corresponding structure to be "a controller," which can possibly include a programmable controller or a non-programmable

1
2
3
4
5
6
7
8
9
10
11

controller. D.I. 334 at p. 15 (citing Plaintiff's expert for the proposition that  the recited functions could be performed by "a computer-less, microprocessor-less integrated circuit or chip"). With respect to a non-programmable controller, the '847 patent has no disclosure teaching one of ordinary skill how to make or use a non-programmable controller to "map" the signals depending upon identification of the type of memory card inserted, as required by the claim language. With respect to a programmable controller, the '847 patent also has no disclosure describing programming or any algorithm that would teach one of skill in the art how to make or use a programmable controller to "map" the signals depending upon identification of the type of memory card inserted, as required by the claim language. As a result, the above-identified claim limitations are neither described nor enabled by the '847 patent's specification, and thus the claims are invalid under 35 U.S.C. 112, ¶ 1.

12
13
14
15
16
17
18
19
20
21
22
23
24
25

All asserted claims of the '847 patent further fail to satisfy the written description and/or enablement requirement because neither the claims nor the specification adequately describes the claimed subject matter in sufficient detail that a person of ordinary skill in the art can reasonably conclude that the inventor had possession of the claimed subject matter.  Claim 1 of the '847 Patent, in particular, requires two controllers when it recites both "a set of signal lines connected to a controller" and "wherein the means for mapping comprises a controller." The '847 Patent, for example, provides no disclosure of how two controllers would cooperate to provide all of the claimed functions required by the claims.  A person of ordinary skill in the art would be left to perform undue and undesirable experimentation in order to determine how the interplay between two such controllers could function to create the claimed subject matter.   Moreover, the recitation of two controllers in claim 1 is insolubly ambiguous, and, therefore, all asserted claims of the '847 patent are invalid as indefinite under 35 U.S.C. § 112, ¶ 2.  Further, claim 2 recites "said controller" and it is unclear which controller in claim 1 this "said controller" is referencing. Therefore, claim 2 is invalid as indefinite under 35 U.S.C. § 112, ¶ 2.

26
27

All asserted claims of the '847 patent are invalid under 35 U.S.C. § 112, ¶ 6 because the patent fails to disclose the structure for the means-plus-function limitation "means for mapping

28

power, ground or data signals between said signal lines and said contact pins depending upon the identification of the type of memory card inserted into said port."  With respect to the "means for mapping" elements, the Court has construed the corresponding structure to be "a controller." Further, to the extent that Plaintiffs allege that the corresponding structure may be a controller – which Defendants understand is Plaintiffs' position from their December 3, 2014 Infringement Contentions – Tthe '847 patent has no disclosure describing programming or any algorithm that would teach one of skill in the art how to use the controller to map the signals depending upon identification of the type of memory card inserted, as required by the claim language.

To the extent that Plaintiffs allege that asserted claims of '847 patent cover the accused products because they can read and write to SD/MMC cards inserted into a common flash memory connector – which Defendants understand is Plaintiffs' position from their December 3, 2014 Infringement Contentions – the asserted claims are invalid pursuant to 35 U.S.C. 112, ¶ 1, because this subject matter is not supported by an adequate written description and/or are not enabled by the specification.  The specification does not differentiate between SD and MMC cards, and the specification does not teach how to operate SD and MMC cards differently.  Therefore, the specification of '847 patent does not show possession of this subject matter, nor does the specification of '847 patent enable this subject matter.  With respect to claim 2, the Court construed "means for identifying" as a means-plus-function element and construed the corresponding structure as "a controller and card detect lines." D.I. 334 at p. 21. The specification does not differentiate between SD and MMC cards and does not teach how to distinguish between SD and MMC cards using "a controller and card detect lines." Further, the specification does not teach how to operate SD and MMC cards differently.  Therefore, the specification of '847 patent does not show possession of this subject matter, nor does the specification of '847 patent enable this subject matter.

1

2

### III.     PATENT L.R. 3-4 DISCLOSURES

Defendants have produced in the ITC and the Eastern District of Texas, are currently producing, or will make available for inspection and copying documentation sufficient to show the operation of aspects or elements of the products identified as accused instrumentalities in Plaintiffs' December 3, 2014 Infringement Contentions, and they have thus complied with Patent L.R. 3-4(a).  Similarly, Defendants have produced copies of the prior art identified pursuant to Patent L.R. 3-3(a) in the ITC and the Eastern District of Texas, and they have thus complied with Patent L.R. 3-4(b).  In addition, Defendants identify the following documents: SDK000001-SDK000854; HP204517-204519.

1    Dated: ~~January 16~~, 2015      Respectfully submitted,

2

         /s/ David M. Maiorana

3

         David M. Maiorana (Ohio Bar No. 0071440)
4          Email: dmaiorana@jonesday.com
         Calvin P. Griffith (Ohio Bar No. 0039484)
5          Email: cpgriffith@jonesday.com
         JONES DAY
6          North Point
         901 Lakeside Avenue
7          Cleveland, OH 44114-1190
         Telephone:   (216) 586-3939
8          Facsimile:    (216) 579-0212

9

         Tracy A. Stitt (Washington Bar No. 1015680)
10          Email: tastitt@jonesday.com
         JONES DAY
11          51 Louisiana Avenue, N.W.
         Washington, D.C. 20001-2113
12          Telephone:   (202) 879-3939
         Facsimile:    (202) 626-1700
13

14          Jacqueline K. S. Lee (CA Bar No. 247705)
         Email: jkslee@jonesday.com
15          JONES DAY
         1755 Embarcadero Road
16          Palo Alto, CA 94303
         Telephone:    (650) 739-3939
17          Facsimile:     (650) 739-3900

18

19          *ATTORNEYS FOR DEFENDANTS*
         *CANON INC. AND CANON U.S.A., INC.*

20

21

22

23

24

25

26

27

28

DEFENDANTS' INVALIDITY
CONTENTIONS AND DISCLOSURES    - 44 -    C 14-03640-CW, C 14-03643-CW, C 14-03645-CW,
PURSUANT TO PATENT L.R. 3-3 AND 3-4      C 14-03646-CW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: s/ Kent E. Baldauf, Jr.

Kent E. Baldauf, Jr.
kbaldaufjr@webblaw.com
Bryan P. Clark
BClark@webblaw.com
THE WEBB LAW FIRM
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
Tel: (412) 471-8815
Fax: (412) 471-4094

Gordon M. Fauth, Jr.
gmf@classlitigation.com
LITIGATION LAWGROUP
1801 Clement Ave., Ste. 101
Alameda, CA 94501
Tel: (510) 238-9610
Fax: (510) 337-1431

Counsel for Defendants Newegg Inc.,
Rosewill Inc., and Falcon Northwest
Computer Systems, Inc.

1

2
                                     */s/ Matthew J. Hertko*_____

3
                                     Kyle T. Barrett (State Bar No. 284595)

4
                                     kbarrett@jonesday.com
                                     JONES DAY

5
                                     1755 Embarcadero Road
                                     Palo Alto, CA  94303

6
                                     Telephone:      (650) 739-3939
                                     Facsimile:      (650) 739-3900

7

8
                                     William E. Devitt (admitted Pro Hac Vice)
                                     wdevitt@jonesday.com

9
                                     Matthew J. Hertko (admitted Pro Hac Vice)
                                     mhertko@jonesday.com

10
                                     JONES DAY

11
                                     77 W. Wacker, Suite 3500
                                     Chicago, IL  60601

12
                                     Telephone:      (312) 782-3939
                                     Facsimile:      (312) 782-8585

13

14
                                   *ATTORNEYS FOR DEFENDANTS SEIKO EPSON*
                                   *CORPORATION AND EPSON AMERICA, INC.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' INVALIDITY
CONTENTIONS AND DISCLOSURES        - 46 -     C 14-03640-CW, C 14-03643-CW, C 14-03645-CW,
PURSUANT TO PATENT L.R. 3-3 AND 3-4         C 14-03646-CW

1

s/ Marcia H. Sundeen
Michael Zachary (SBN 112479)

2

KENYON & KENYON LLP

3

1801 Page Mill Road
Suite 210

4

Palo Alto, CA  94304-1216
Telephone: 650.384.4700

5

Facsimile: 650.384.4701
Email: mzachary@kenyon.com

6

7

T. Cy Walker (admitted *Pro Hac Vice*)
Adeel Haroon (admitted *Pro Hac Vice*)

8

KENYON & KENYON LLP
1500 K Street, NW, Suite 700

9

Washington, DC 20005
Telephone: 202-220-4200

10

Facsimile: 202-220-4201

11

Email: cwalker@kenyon.com
Email: aharoon@kenyon.com

12

Rose Cordero Prey (admitted *Pro Hac Vice*)

13

KENYON & KENYON LLP
One Broadway

14

New York, NY 10004-1007
Telephone: 212-425-7200

15

Facsimile: 212-425-5288

16

Email: rcordero@kenyon.com

17

Marcia H. Sundeen (admitted *Pro Hac Vice*)

18

GOODWIN PROCTER LLP
901 New York Avenue, N.W.

19

Washington, DC 20001
Telephone: (202) 346-4000

20

Facsimile: (202) 346-4444
Email: msundeen@goodwinprocter.com

21

22

COUNSEL FOR DEFENDANT HEWLETT-
PACKARD COMPANY

23

24

25

26

27

28

DEFENDANTS' INVALIDITY
CONTENTIONS AND DISCLOSURES
PURSUANT TO PATENT L.R. 3-3 AND 3-4

- 47 -

C 14-03640-CW, C 14-03643-CW, C 14-03645-CW,
C 14-03646-CW